**EXHIBIT A**

| INTERROGATORIES TO CLASS PLAINTIFFS | | PROPOSED COMPROMISES | COURT'S RULING |
|---|---|---|---|
| **INTERROGATORY NO. 7**<br><br>Of those Xyrem patients and Xyrem prescriptions concerning which You are claiming overcharge over the time period for which You are claiming overcharge, identify whether You offered prescription drug coverage to Your members and their family members under self-insured health or prescription drug plans, and for each of such plans, identify the number of individuals covered each year; which entity paid the health care claims submitted by members; any PBM, health insurer, or third-party claims administrator associated with the plan; the total annual amount of drug claims You incurred; the total annual amount of drug costs incurred by Your members (in the form of deductible, copayment, and co-insurance payments); the total annual amount of plan premiums You received from Your members; the total annual amount | **CLASS PLAINTIFFS' OBJECTIONS & RESPONSES TO INTERROGATORY NO. 7**<br><br>In addition to the General Objections set forth above, and without waiving them, Class Plaintiffs object to this Interrogatory to the extent it seeks information that is not relevant to any claim or defense relating to the Class Plaintiffs' case or class certification. Class Plaintiffs further object to this Interrogatory as overbroad, unduly burdensome and neither relevant to any claim or defense brought by the Class Plaintiffs nor proportional to the needs of this case. Class Plaintiffs object to this interrogatory as vague and ambiguous in that it does not define the terms "self-insured health or prescription drug plans." Class Plaintiffs also object to this Interrogatory on the ground that it is compound. Class Plaintiffs further object to this Interrogatory seeking premium and employer contributions as not relevant to any claim or defense at issue in this litigation and are not proportional to the needs of the case. Class Plaintiffs pay all or a portion of prescription drug costs at the pharmacy counter and, by definition, do not set premiums. In self-funded plans, such as certain of the Class Plaintiffs here excluding | N/A | **DENIED** as overbroad and not proportional to the needs of the case at this time because Defendants have provided no factual basis that past drug charges are a factor in premium calculations. |

1

| | | | |
|---|---|---|---|
| of any other Member plan contributions or fees You received from Your members; and the total annual amount of plan contributions or fees You received from any other entities that were used to finance, reimburse, or otherwise pay for plan expenditures. | Class Plaintiff BCBSA and Class Plaintiff GEHA, the employer assumes the direct risk for payment of the claims for benefits by negotiating contribution rates with the applicable union and depositing their funds into a trust from which medical benefits, including pharmaceutical benefits, are paid. The contribution rates are set by contracts that can span a number of years and, like premiums, are determined through a process of estimating future aggregate healthcare spending over the life of the contract, but predicting future expenses is not a pass-on of charges already incurred. Federal courts that have considered the issue have considered and rejected discovery of this type. *See, inter alia, In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, MDL No. 14-2503-DJC, 2016 WL 6897809, at *2 (D. Mass. Sept. 19, 2016) ("The Court finds persuasive the reasoning of those courts that have found that insurance premiums are not a 'pass on' of alleged overcharges because premiums are set by anticipating future projected costs, not to recover money that insurers paid in the past."); *In re Asacol Antitrust Litig.*, Civil Action No. 15-12730-DJC, 2017 WL 53695, at *5 (D. Mass. Jan. 4, 2017) (denying discovery into plaintiffs' "Sales, Pricing, and Premium information"); Civil Minutes, *In re Lidoderm Antitrust Litig.*, Case No. 14-md-02521-WHO (N.D. Cal. April 5, 2016), ECF No. 435 (the "pass-on defense does not appear | | |

| | to be appropriate in this context" because employers do not "'recoup' amounts spent in the past on prescription drugs in setting employer contribution rates"); Order, *In re Suboxone (Buprenorphine Hydrochloride and Naloxone) Antitrust Litig.*, MDL No. 2455, (E.D. Pa. Jan. 14, 2016), ECF No. 183; Electronic Order, *In re Nexium (Esomeprazole) Antitrust Litig.*, No. 12-md-02409 (D. Mass. July 24, 2013), ECF No. 264. Class Plaintiffs further object to the terms "premiums" and "employer contributions" as undefined, vague, ambiguous, overbroad, unduly burdensome, irrelevant and not proportional to the needs of this case. Class Plaintiffs object on the grounds the Interrogatory calls for a legal conclusion. Class Plaintiffs further object to this Interrogatory on the grounds that it calls for information subject to the attorney-client privilege, work product doctrine, the common interest privilege, joint prosecution or defense privilege, or any other applicable privilege. Class Plaintiffs further object to this Interrogatory to the extent it seeks Sensitive Personally Identifiable Information ("SPII") for plan members who did not purchase Xyrem, Xywav, or sodium oxybate. Class Plaintiffs further object to this Interrogatory to the extent it seeks documents or data protected by the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), 42 U.S.C. § 1320d, *et seq.*, Employee | | |
|---|---|---|---|

|  | Retirement Income Security Act ("ERISA"), 29 U.S.C. §1181, *et seq*., and/or other applicable federal or state medical privacy laws. Class Plaintiffs also object to this Interrogatory to the extent that it seeks information that is already in the possession, custody, or control of, or readily accessible to, Defendants, including, but not limited to, public records that are accessible to all parties. Subject to Class Plaintiffs' general and specific objections and without waiving any such objections, pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, Class Plaintiffs' produced formularies/drug lists are identified in Response to Interrogatory #1 above. In addition, Class Plaintiffs have produced data sufficient to identify purchases or reimbursements of Xyrem, Xywav and sodium oxybate, as identified in Response to Interrogatory #3 above.<br><br>Class Plaintiffs BCBSA further respond that the FEHB plans offered by BCBSA are fully-insured plans.<br><br>Class Plaintiff SISC further responds that of the Xyrem patients and Xyrem prescriptions, SISC has 42 self-insured plans as of now that have paid claims. The pharmacy utilization for these plans, which is self-insured by SISC and administered by the Navitus PBM. (See Table 1 attached). |  |  |
|---|---|---|---|

| | | | |
|---|---|---|---|
| **INTERROGATORY NO. 8**<br><br>State whether Your plan premium rates are designed to offset, either fully or partially, member costs that are incurred through their prescription drug benefits (i.e., their pharmaceutical drug costs). | **CLASS PLAINTIFFS' OBJECTIONS & RESPONSES TO INTERROGATORY NO. 8**<br><br>In addition to the General Objections set forth above, and without waiving them, Class Plaintiffs object to this Interrogatory to the extent it seeks information that is not relevant to any claim or defense relating to the Class Plaintiffs' case or class certification. Class Plaintiffs further object to this Interrogatory as vague, ambiguous, overbroad, unduly burdensome and neither relevant to any claim or defense brought by the Class Plaintiffs nor proportional to the needs of this case. Class Plaintiffs further object to this Interrogatory seeking premium and employer contributions as not relevant to any claim or defense at issue in this litigation and are not proportional to the needs of the case. Class Plaintiffs pay all or a portion of prescription drug costs at the pharmacy counter and, by definition, do not set premiums. In self-funded plans, such as certain of the Class Plaintiffs here, the employer assumes the direct risk for payment of the claims for benefits by negotiating contribution rates with the applicable union and depositing their funds into a trust from which medical benefits, including pharmaceutical benefits, are paid. The contribution rates are set by contracts that can span a number of years and, like premiums, are determined through a process of | N/A | **GRANTED IN PART.**<br><br>All Plaintiffs must provide a supplemental response that clarifies whether their premium rates are designed, during the Relevant Time Period, to offset member costs that are incurred through members' prescription drug benefit. Supplemental response due **October 25, 2022**. |

| | | | |
|---|---|---|---|
| | estimating future aggregate healthcare spending over the life of the contract, but predicting future expenses is not a pass-on of charges already incurred. Federal courts that have considered the issue have considered and rejected such discovery. *See, inter alia, In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, MDL No. 14-2503-DJC, 2016 WL 6897809, at *2 (D. Mass. Sept. 19, 2016) ("The Court finds persuasive the reasoning of those courts that have found that insurance premiums are not a 'pass on' of alleged overcharges because premiums are set by anticipating future projected costs, not to recover money that insurers paid in the past."); *In re Asacol Antitrust Litig.*, Civil Action No. 15-12730-DJC, 2017 WL 53695, at *5 (D. Mass. Jan. 4, 2017) (denying discovery into plaintiffs' "Sales, Pricing, and Premium information"); Civil Minutes, *In re Lidoderm Antitrust Litig.*, Case No. 14-md-02521-WHO (N.D. Cal. April 5, 2016), ECF No. 435 (the "pass-on defense does not appear to be appropriate in this context" because employers do not "'recoup' amounts spent in the past on prescription drugs in setting employer contribution rates"); Order, *In re Suboxone (Buprenorphine Hydrochloride and Naloxone) Antitrust Litig.*, MDL No. 2455, (E.D. Pa. Jan. 14, 2016), ECF No. 183; Electronic Order, *In re Nexium (Esomeprazole) Antitrust Litig.*, No. 12-md-02409 (D. Mass. July 24, 2013), ECF No. | | |

264. Class Plaintiffs further object to the terms "premiums" and "employer contributions" as undefined, vague, ambiguous, overbroad, unduly burdensome, irrelevant and not proportional to the needs of this case. Class Plaintiffs object on the grounds the Interrogatory calls for a legal conclusion. Class Plaintiffs further object to this Interrogatory on the grounds that it calls for information subject to the attorney-client privilege, work product doctrine, the common interest privilege, joint prosecution or defense privilege, or any other applicable privilege. Class Plaintiffs further object to this Interrogatory seeking premium and employer contributions as not relevant to any claim or defense at issue in this litigation and are not proportional to the needs of the case. Class Plaintiffs pay all or a portion of prescription drug costs at the pharmacy counter and, by definition, do not set premiums. In self-funded plans, such as certain of the Class Plaintiffs here including COP, AFL, NYST, and UFCW, the employer assumes the direct risk for payment of the claims for benefits by negotiating contribution rates with the applicable union and depositing their funds into a trust from which medical benefits, including pharmaceutical benefits, are paid. The contribution rates are set by contracts that can span a number of years and, like premiums, are determined through a process of estimating future aggregate healthcare

spending over the life of the contract, but predicting future expenses is not a pass-on of charges already incurred.

Class Plaintiff BCBSA responds that it has entered into contracts with the U.S. Office of Personnel Management (OPM) to offer the Government-wide Service Benefit Plan, also referred to as the Federal Employee Plan (FEP), to federal employees and annuitants and their dependents (referred to jointly as "enrollees"). The terms of the FEP and BCBSA's role and responsibilities as the carrier of the Service Benefit Plan are governed by the FEHBA, 5 U.S.C. § 8901 et seq., regulations issued at 5 C.F.R. § 890.101 et. seq., and the contract between BCBSA/GEHA and OPM, issued in accordance with the FEHBA and the regulations are renewed yearly.

The FEHB plans offered by BCBSA are fully-insured plans. Annually, BCBSA determines the benefits structure, within parameters set by and in negotiations with OPM, including the premiums to charge for each FEHB plan offered. These premiums are intended to cover all benefits offered, including medical and pharmacy benefits; no specific amount is allocated to cover pharmacy benefits, much less Defendants' products. Once approved by OPM and memorialized in the contract between BCBSA/GEHA and OPM, the premiums are set for the year. OPM is not

|  | required to make available for the plans anything more than the premiums collected for each enrollee in the plans, plus the administrative expenses and service charge agreed to in the contract. *See e. g.*, XYREM-BCBSA-00030594 at XYREM-BCBSA-00030633-34 (identifying the annual subscription rates and payments owed by OPM for the Federal Employee Plan for 2016); XYREM-BCBSA-00030993 at XYREM-BCBSA-00031017-18 (same for 2017); XYREM-BCBSA-00031028 at XYREM-BCBSA-00031057-58 (same for 2018); XYREM-BCBSA-00030773 at XYREM-BCBSA-00030795-96 (same for 2019); XYREM-BCBSA-00030689 at XYREM-BCBSA-00030731-32 (same for 2020); XYREM-BCBSA-00030527 at XYREM-BCBSA-00030581-82 (same for 2021). To the extent that the premiums collected by OPM do not cover the health benefits payments required for enrollees of the Federal Employee Plan, BCBSA and/or the 3435 BCBS Plans or GEHA are responsible for any overages. The contract requires BCBSA to "maintain sufficient financial resources…to meet its obligations" under the contract. *See* XYREM-BCBSA-00030806 at XYREM-BCBSA-00030822 (Section 1.12, "Correction of Deficiencies").<br><br>Class Plaintiff GEHA responds that it has entered into contracts with the U.S. Office of Personnel Management (OPM) to offer the |  |  |
|--|--|--|--|

<table>
<tr>
<td></td>
<td>

Government Employees Health Association, Inc. Employee Organization Plan. Additionally, starting in 2020 to present, GEHA offers the Government Employees Health Association Indemnity Benefit Plan, to federal employees and annuitants and their dependents (referred to jointly as "enrollees"). The terms of GEHA's benefit plans and GEHA's role and responsibilities as the carrier of the Service Benefit Plan are governed by the FEHBA, 5 U.S.C. § 8901 et seq., regulations issued at 5 C.F.R. § 890.101 et. seq., and the contract between GEHA and OPM, issued in accordance with the FEHBA and renewed yearly.

Under FEHBA, the federal government pays for the majority of the premium cost for each enrollee, with the enrollee paying the remainder. All premiums are deposited initially into the Employees Health Benefits Fund within the U.S. Treasury. Carriers of experience-rated FEHBA plans do not receive the premiums as they are paid into the Employees Health Benefits Fund in the federal Treasury. Instead, the premiums for the plans are placed into a special letter of account in the Treasury fund to pay for benefit claims and allowable administrative expenses. GEHA must pay for benefits and administrative expenses if all the federal Treasury funds are exhausted. However, unlike a traditional insurance product, GEHA does not get to keep any excess funds. Instead,

</td>
<td></td>
<td></td>
</tr>
</table>

| | | | |
|---|---|---|---|
| | any Plan premiums that are not used to pay benefits and administrative expenses remain the property of the U.S. government.<br><br>Class Plaintiff SISC responds that SISC plan premiums are intended to fully account for future, portfolio wide estimated costs for prescription drug coverage.<br><br>Class Plaintiffs also object to this Interrogatory as vague, ambiguous, unduly burdensome, overbroad, irrelevant, and not proportional to the needs of this case to the extent the Interrogatory seeks financial information about other pharmaceuticals besides those at issue in this litigation and to the extent the Interrogatory seeks the financial status of the Plan over and above that status which is relevant to the subject of this litigation. In addition, Class Plaintiffs object to this Interrogatory to the extent it seeks documents that are not in Class Plaintiffs' possession, custody or control. Class Plaintiffs also object to this Interrogatory to the extent that it seeks information that is already in the possession, custody, or control of, or readily accessible to, Defendants, including, but not limited to, public records that are accessible to all parties." | | |

| <u>**INTERROGATORY NO. 9**</u><br><br>Identify the factors that are or have been incorporated into Your plan premium rates during the Relevant Time Period, including whether historical or expected future costs for individual drugs (including Xyrem) or therapeutic categories are incorporated, and if so, how. Please include in Your response whether Your premium calculations are performed on a retrospective (i.e., recovery for historical costs) or prospective (i.e., recovery for future expected costs) basis. | <u>**CLASS PLAINTIFFS' OBJECTIONS & RESPONSES TO INTERROGATORY NO. 9**</u><br><br>*See* Objections to Interrogatory #8. | N/A | **GRANTED IN PART.**<br><br>All Plaintiffs must provide a supplemental response listing the factors incorporated into their plan premium rates during the Relevant Time Period. Supplemental response due **October 25, 2022**. |
|---|---|---|---|

| **INTERROGATORY NO. 10**<br><br>Identify any Documents describing or performing the calculations by which Your premium rates were set during the Relevant Time Period. | **CLASS PLAINTIFFS' OBJECTIONS & RESPONSES TO INTERROGATORY NO. 10**<br><br>*See* Objections to Interrogatory #8. | N/A | **DENIED** as not proportional to the needs of the case at this time.  This ruling is without prejudice to Defendants' ability to renew this interrogatory upon a showing of a more substantial factual basis that Xyrem was or may have been a factor in the calculation of Plaintiffs' premium rates. |
| --- | --- | --- | --- |
| **INTERROGATORIES TO UNITED HEALTHCARE SERVICES, INC.** | | **PROPOSED COMPROMISES** | **COURT'S RULING** |
| **INTERROGATORY NO. 1**<br><br>Of those Xyrem patients and Xyrem prescriptions concerning which You are claiming overcharge over the time period for which You are claiming overcharge, identify whether You offered prescription drug coverage to Your members and their family members under self-insured health or prescription drug plans, and for each of such plans, identify the number of individuals covered each year; | UHS's General Objection No. 11 stated: "UHS objects to the Interrogatories, including the Definitions and Instructions set forth therein, to the extent they seek documents or information about UHS's profits, costs, financial condition, premiums, or transactions with third parties, or documents from third parties, as such information is irrelevant to the subject matter of this litigation or any applicable claims or defenses, and any requests for such information are overbroad, unduly burdensome, vague, ambiguous, oppressive, designed to harass UHS and/or seek to invade UHS's privacy." | N/A | **DENIED** as overbroad and not proportional to the needs of the case at this time because Defendants have provided no factual basis that past drug charges are a factor in premium calculations. |

| | | | |
|---|---|---|---|
| which entity paid the health care claims submitted by members; any PBM, health insurer, or third-party claims administrator associated with the plan; the total annual amount of drug claims You incurred; the total annual amount of drug costs incurred by Your members (in the form of deductible, copayment, and co-insurance payments); the total annual amount of plan premiums You received from Your members; the total annual amount of any other Member plan contributions or fees You received from Your members; and the total annual amount of plan contributions or fees You received from any other entities that were used to finance, reimburse, or otherwise pay for plan expenditures. | In addition to the General Objections, UHS objects to this Interrogatory as overbroad and unduly burdensome, and to the extent it seeks information not relevant to any party's claims or defenses, and not proportional to the needs of the case. UHS further objects to this Interrogatory to the extent that it seeks information protected by the attorney work-product doctrine, attorney-client privilege, joint prosecution privilege, and/or common interest privilege. UHS further objects to this interrogatory as prematurely seeking information relating to trial in advance of any deadline set by the Court for such disclosure, and to the extent that it calls for the premature production of expert reports, analysis, opinions, or testimony in advance of any deadline set by the Court. UHS further objects to this Interrogatory to the extent it improperly seeks information about "plan premiums" and "plan contributions or fees" as irrelevant to the subject matter of this litigation or any applicable claims or defenses, and overbroad, unduly burdensome, oppressive, designed to harass UHS and/or seek to invade UHS's privacy.<br><br>Subject to and without waiving any of the foregoing objections, UHS responds as follows:<br><br>UHS has already produced transactional claims data that provides the requested information to the extent readily available, including: the payment amount for each transaction, the insured member's copay/cost-sharing obligation on each claim, the PBM used to adjudicate the claim, and whether | | |

| | claims are fully insured or self-funded. *See* UHS-XYREM-000011020, UHS-XYREM-000017795, UHS-XYREM-000018730, UHS-XYREM-000020073, UHS-XYREM-000020230, and UHS-XYREM-000020278. This data aggregated provides "the total annual amount of drug costs incurred by Your members." | | |
|---|---|---|---|

| INTERROGATORY NO. 2<br><br>State whether Your plan premium rates are designed to offset, either fully or partially, member costs that are incurred through their prescription drug benefits (i.e., their pharmaceutical drug costs). | In addition to the General Objections, UHS objects to this Interrogatory as overbroad and unduly burdensome, and to the extent it seeks information not relevant to any party's claims or defenses, and not proportional to the needs of the case. UHS further objects to this Interrogatory to the extent that it seeks information protected by the attorney work-product doctrine, attorney-client privilege, joint prosecution privilege, and/or common interest privilege. UHS further objects to this Interrogatory to the extent it improperly seeks information about "plan premium rates" as irrelevant to the subject matter of this litigation or any applicable claims or defenses, and overbroad, unduly burdensome, oppressive, designed to harass UHS and/or seek to invade UHS's privacy.<br><br>On the basis of its objections, UHS will not provide information in response to this Interrogatory. | N/A | GRANTED IN PART.<br><br>All Plaintiffs must provide a supplemental response that clarifies whether their premium rates are designed, during the Relevant Time Period, to offset member costs that are incurred through members' prescription drug benefit. Supplemental response due **October 25, 2022**. |
|---|---|---|---|

| **INTERROGATORY NO. 3**<br><br>Identify the factors that are or have been incorporated into Your plan premium rates during the Relevant Time Period, including whether historical or expected future costs for individual drugs (including Xyrem) or therapeutic categories are incorporated, and if so, how. Please include in Your response whether Your premium calculations are performed on a retrospective (i.e., recovery for historical costs) or prospective (i.e., recovery for future expected costs) basis. | In addition to the General Objections, UHS objects to this Interrogatory as overbroad and unduly burdensome, and to the extent it seeks information not relevant to any party's claims or defenses, and not proportional to the needs of the case. UHS further objects to this Interrogatory to the extent that it seeks information protected by the attorney work-product doctrine, attorney-client privilege, joint prosecution privilege, and/or common interest privilege. UHS further objects to this Interrogatory to the extent it improperly seeks information about "plan premium rates" as irrelevant to the subject matter of this litigation or any applicable claims or defenses, and overbroad, unduly burdensome, oppressive, designed to harass UHS and/or seek to invade UHS's privacy.<br><br>On the basis of its objections, UHS will not provide information in response to this Interrogatory. | N/A | **GRANTED IN PART.**<br><br>All Plaintiffs must provide a supplemental response listing the factors incorporated into their plan premium rates during the Relevant Time Period. Supplemental response due **October 25, 2022**. |
|---|---|---|---|

| **INTERROGATORY NO. 4**<br><br>Identify any Documents describing or performing the calculations by which Your premium rates were set during the Relevant Time Period. | In addition to the General Objections, UHS objects to this Interrogatory as overbroad and unduly burdensome, and to the extent it seeks information not relevant to any party's claims or defenses, and not proportional to the needs of the case. UHS further objects to this Interrogatory to the extent that it seeks information protected by the attorney work-product doctrine, attorney-client privilege, joint prosecution privilege, and/or common interest privilege. UHS further objects to this Interrogatory to the extent it improperly seeks information about "premium rates" as irrelevant to the subject matter of this litigation or any applicable claims or defenses, and overbroad, unduly burdensome, oppressive, designed to harass UHS and/or seek to invade UHS's privacy.<br><br>On the basis of its objections, UHS will not provide information in response to this Interrogatory. | N/A | **DENIED** as not proportional to the needs of the case at this time.  This ruling is without prejudice to Defendants' ability to renew this interrogatory upon a showing of a more substantial factual basis that Xyrem was or may have been a factor in the calculation of Plaintiffs' premium rates. |