[Submitting Counsel on Signature Page]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: XYREM (SODIUM OXYBATE) ANTITRUST LITIGATION | Case No. 3:20-md-02966-RS |
| | **CLASS PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS CERTIFICATION SETTLEMENT** |
| THIS FILING RELATES TO: ALL CLASS ACTIONS | **MOTION HEARING** |
| | Date:          TBD |
| | Time:          TBD |
| | Courtroom:   3, 17th Floor |
| | Honorable Richard Seeborg |

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL ............................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................... 2

I.   INTRODUCTION ................................................................... 2

II.  PROCEDURAL HISTORY ............................................................ 4

    A.   The MDL.................................................................... 4

    B.   Discovery ................................................................ 4

    C.   Class Certification ...................................................... 5

    D.   Settlement Negotiations .................................................. 5

III. THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT. .............. 6

    A.   Legal Standard ........................................................... 6

    B.   Certification of the Settlement Class is Likely. ......................... 8

        1.   The Settlement Class Satisfies Rule 23(a)'s Requirements. ......... 8

            a.   Numerosity ................................................... 9

            b.   Commonality.................................................. 9

            c.   Typicality .................................................. 10

            d.   Adequacy ................................................... 11

        2.   The Settlement Class Satisfies Rule 23(b)(3)'s Requirements. ..... 12

            a.   Predominance ................................................ 12

            b.   Superiority ................................................. 13

        3.   The Settlement Class Satisfies Other Procedural Guidelines. ...... 14

    C.   The Court Should Preliminarily Approve the Settlement. .................. 15

        1.   Procedural Considerations ....................................... 16

            a.   Adequate Representation of the Class.......................... 16

            b.   Arm's Length Negotiations .................................... 16

        2.   Substantive Considerations ...................................... 17

            a.   Strength of Class Plaintiffs' Case and Risks of Continued
                Litigation ................................................... 18

            b.   The Settlement Provides Adequate Relief to the Settlement
                Class ........................................................ 19

            c.   Attorney Fees and Service Awards ............................. 19

            d.   Equitable Treatment of Class Members ......................... 20

i

        e.      The Released Claims Are Consistent with Those Pled in the
Litigation ........................................................................... 21

        f.       Supplemental Agreements ............................................ 21

        g.      Reversion ...................................................................... 21

        h.      Past Distributions ......................................................... 22

IV.     NOTICE AND SCHEDULING A FINAL APPROVAL HEARING SHOULD BE
DEFERRED.  22

V.      THE COURT SHOULD APPOINT CITIBANK AS THE ESCROW AGENT. .............. 22

VI.    CONCLUSION ..................................................................................................... 23

ii

Plaintiffs' Notice of Motion & Motion for Preliminary Approval of Class Certification Settlement
Case No. 3:20-md-02966-RS

1

**TABLE OF AUTHORITIES**

2

**CASES**

3

*Alaska Airlines v. United Airlines*,
948 F.2d 536 (9th Cir. 1991) ................................................................................. 13

4

*Amchem Products, Inc. v. Windsor*,
521 U.S. 591 (1997) ....................................................................................... 11, 13

5

6

*Boston Retirement System v. Uber Technologies, Inc.*,
2022 WL 2954937 (N.D. Cal. 2022) ..................................................................... 11

7

*Castillo v. Bank of America, NA*,
980 F.3d 723 (9th Cir. 2020) ................................................................................. 10

8

9

*Cottle v. Plaid Inc.*,
340 F.R.D. 356 (N.D. Cal. 2021) ........................................................................... 15

10

*Garner v. State Farm. Mut. Auto. Ins. Co.*,
2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ....................................................... 18

11

12

*Giusti-Bravo v. U.S. Veterans Admin.*,
853 F. Supp. 34 (D.P.R. 1993) .............................................................................. 19

13

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ............................................................... 11, 12, 16

14

15

*Haralson v. U.S. Aviation Servs. Corp.*,
383 F. Supp. 3d 959 (N.D. Cal. 2019) ................................................................... 15

16

*Hosp. Auth, of Metro. Gov't of Nashville & Davidson Cty v. Momenta Pharm., Inc.*,
333 F.R.D. 390 (M.D. Tenn. Sept. 20, 2019) ......................................................... 8

17

18

*In re Cardizem CD Antitrust Litig.*,
200 F.R.D. 326 (E.D. Mich. 2001) ........................................................................ 11

19

*In re Cardizem CD Antitrust Litig.*,
218 F.R.D. 508 (E.D. Mich. 2003) .......................................................................... 8

20

21

*In re Cipro Cases I & II*,
121 Cal. App. 4th 402 (2004) ................................................................................ 12

22

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
2006 WL 1530166 (N.D. Cal. June 5, 2006) ......................................................... 10

23

24

*In re EpiPen (Epinephrine Injection, USP) Marketing, Sales Practices and Antitrust Litig.*,
2020 WL 1180550 (D. Kan. Mar. 10, 2020) ........................................................... 8

25

26

*In re Flonase Antitrust Litig.*,
284 F.R.D. 207 (E.D. Pa. 2012) ..................................................................... 10, 13

27

*In re Glumetza Antitrust Litig.*,

iii

28

336 F.R.D. 468 (N.D. Cal. 2020) ....................................................................... 13

*In re High-Tech Employee Antitrust Litig.*,
   985 F. Supp. 2d 1167 (N.D. Cal. 2013) ................................................................ 10

*In re Hyundai & Kia Fuel Econ. Litig.*,
   926 F.3d 539 (9th Cir. 2019) ........................................................................... 7, 12

*In re Imprelis Herbicide Mktg., Sales Practices, & Prods. Liability Litig.*, 296
   F.R.D. 351 (E.D. Pa. 2013) ................................................................................. 19

*In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prod. Liab. Litig.*,
   2022 WL 2343268 (N.D. Cal. June 28, 2022) ........................................................ 9

*In re Lidoderm Antitrust Litig.*,
   2017 WL 679367 (N.D. Cal. Feb. 21, 2017) ............................................... 8, 10, 13

*In re Loestrin 24 FE Antitrust Litig.*,
   410 F. Supp. 3d 352 (D.R.I. Oct. 17, 2019) ........................................................... 8

*In re Lorazepam & Clorazepate Antitrust Litig.*,
   205 F.R.D. 369 (D.D.C. 2002) .............................................................................. 8

*In re Namenda Indirect Purchaser Antitrust Litig.*,
   338 F.R.D. 527 (S.D.N.Y. Feb. 11, 2021) ............................................................. 8

*In re Opana ER Antitrust Litig.*,
   2021 WL 3627733 (N.D. Ill. June 4, 2021*)* ......................................................... 8

*In re Puerto Rican Cabotage Antitrust Litig.*,
   269 F.R.D. 125 (D.P.R. 2010) ............................................................................. 15

*In re Ranbaxy Generic Drug Application Antitrust Litig.*,
   338 F.R.D. 294 (D. Mass. May 14, 2021) .............................................................. 8

*In re Relafen Antitrust Litig.*,
   221 F.R.D. 260 (D. Mass. 2004) .............................................................. 10, 11, 13

*In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*,
   335 F.R.D. 1 (E.D.N.Y. 2020*)* ...................................................................... 8, 13

*In re Se. Milk Antitrust Litig.*,
   2013 WL 2155379 (E.D. Tenn. May 17, 2013) ..................................................... 19

*In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*,
   2017 WL 4621777 (D. Mass. Oct. 16, 2017) ........................................... 8, 10, 11, 13

*In re Tableware Antitrust Litig.*,
   484 F. Supp. 2d 1078 (N.D. Cal. 2007) ............................................................... 15

*In re Warfarin Sodium Antitrust Litig.*,
   212 F.R.D. 231 (D. Del. 2002), *aff'd,* 391 F.3d 516 (3d Cir. 2004) ................. 8, 11

*In re: Zetia (Ezetimibe) Antitrust Litig.*,
   2021 WL 3704727 (E.D. Va. Aug. 20, 2021) ......................................................... 8

*Nat'l Rural Telecomm. Coop. v. DIRECTV,*

221 F.R.D. 523 (C.D. Cal. 2004) ........................................................... 16, 17

*Natchitoches Par. Hosp. Serv. Dist. v. Tyco Int'l, Ltd.*,
    262 F.R.D. 58 (D. Mass. 2008) ................................................................ 13

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982)..................................................................... 18

*Rodriguez v. West Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009)............................................................... 16, 18

*Rolland v. Celluci*,
    191 F.R.D. 3 (D. Mass. 2000) .................................................................. 19

*Sheet Metal Workers Local No. 20 Welfare and Benefit Fund v. CVS Pharmacy, Inc.*,
    540 F. Supp. 3d 182 (D.R.I. May 18, 2021) ............................................. 8

*Smith v. Kaiser Found. Hosps.*,
    2020 WL 5064282 (S.D. Cal. Aug. 26, 2020) ....................................... 15

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003)..................................................................... 11

*Teva Pharms. USA, Inc. v. Abbott Lab'ys*,
    252 F.R.D. 213 (D. Del. 2008).......................................................... 10, 11

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016) .................................................................................. 12

*Vista Healthplan, Inc. v. Warner Holdings Co. III, Ltd.*,
    246 F.R.D. 349 (D.D.C. 2007) ................................................................... 8

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ........................................................................ 9, 10, 12

**OTHER AUTHORITIES**

2 *Newberg on Class Actions*, § 11.28 ........................................................... 11

4 A. Conte & H. Newberg on Class Actions at § 11.24 (4th ed. 2002) .................. 17

5 *Moore's Federal Practice*, §23.85[2][e] (Matthew Bender 3d ed.)......................... 17

6 Herbert B. Newberg & Alba Conte, Newberg on Class Actions §18.25 (4th ed. 2002) ............................................................................................................... 13

7B Federal Practice and Procedure § 1781 ..................................................... 14

*Manual for Complex Litigation, Third* § 30.42 (1995) ................................... 17

*Newberg on Class Actions* § 8:16 ................................................................. 22

**RULES**

Fed. R. Civ. P. 23 ...............................................................................passim

Fed. R. Civ. P. 23(a).........................................................................6, 7, 8, 9

v

Fed. R. Civ. P. 23(a)(1) .................................................................................................... 9

Fed. R. Civ. P. 23(a)(2) .................................................................................................... 10

Fed. R. Civ. P. 23(a)(3) .................................................................................................... 10

Fed. R. Civ. P. 23(a)(4) .................................................................................................... 11

Fed. R. Civ. P. 23(b) .......................................................................................................... 7

Fed. R. Civ. P. 23(b)(2) ...................................................................................................... 5

Fed. R. Civ. P. 23(b)(3)(D) .............................................................................................. 13

Fed. R. Civ. P. 23(e) ........................................................................................................... 3

Fed. R. Civ. P. 23(e)(1) ....................................................................................... 6, 8, 14, 22

Fed. R. Civ. P. 23(e)(2) ................................................................................................... 6, 7

Fed. R. Civ. P. 23(e)(2)(C)(iv) ........................................................................................ 21

Fed. R. Civ. P. 23(e)(3) .............................................................................................. 7, 21

Plaintiffs' Notice of Motion & Motion for Preliminary Approval of Class Certification Settlement
Case No. 3:20-md-02966-RS

1       <u>**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL**</u>

2       **PLEASE TAKE NOTICE THAT** on a date and time convenient for the Honorable

3 Richard Seeborg of the United States District Court for the Northern District of California, San

4 Francisco Division, located in Courtroom 3, 17th Floor at 450 Golden Gate Avenue, San

5 Francisco, CA 94102, Class Plaintiffs,[1] by and through their undersigned counsel of record, will

6 and hereby do move for entry of an order:[2]

7           (1)     preliminarily approving the Class Action Settlement with Defendants Amneal

8                     Pharmaceuticals LLC ("Amneal") and Lupin Ltd. and Lupin Pharmaceuticals,

9                     Inc. ("Lupin," and together with "Amneal," the "Settling Defendants") (the

10                   "Settlement")

11          (2)     finding that certification of the following Settlement Class for purposes of

12                     settlement is likely: all persons and entities in the United States that, for

13                     consumption by themselves, their families, their members, employees,

14                     insureds, participants, or beneficiaries, and other than for resale, paid and/or

15                     provided reimbursement for some or all the purchase price for Xyrem and/or

16                     Xywav during the time from January 1, 2015, through February 28, 2023;[3]

17          (3)     staying litigation brought by Class Plaintiffs against the Settling Defendants

---

[1] Class Plaintiffs for the purposes of settlement are City of Providence, Rhode Island; A.F. of L. – A.C.G. Building Trades Welfare Plan; Blue Cross Blue Shield Association; Government Employees Health Association, Inc.; New York State Teamsters Council Health and Hospital Fund; Self-Insured Schools of California; and UFCW Local 1500 Welfare Fund.

[2] Capitalized terms in this Motion incorporate the defined terms from the Class Settlement Agreement.

[3] Excluded from Settlement Class are: (1) Defendants and their counsel, officers, directors, management, employees, parents, subsidiaries, and affiliates; (2) Express Scripts Specialty Distribution Services, Inc. and any of its counsel, officers, directors, management, employees, parents, subsidiaries, and affiliates; (3) federal and state governmental entities, not including cities, towns, municipalities, counties or carriers for Federal Employee Health Benefit plan; (4) any "single flat co-pay" consumers whose benefit plan requires a co-payment that does not vary based on the drug's status as a brand or generic; and (5) all judges assigned to this case and any members of their immediate families.

1

Plaintiffs' Notice of Motion & Motion for Preliminary Approval of Class Certification Settlement
Case No. 3:20-md-02966-RS

1                    until the Court renders a final decision regarding the approval of the

2                    Settlement;

3         (4)       approving the deferral of notice to the Settlement Class until a later date in

4                    connection with class certification, settlements with other defendants, or as

5                    otherwise ordered by the Court;

6         (5)       approving Citibank as the Escrow Agent;

7         (6)       preliminarily designating Class Plaintiffs as representatives for the Settlement

8                    Class; and

9         (7)       preliminarily designating Girard Sharp LLP and Motley Rice LLC as Co-Lead

10                    Class Counsel.

11       A copy of Class Plaintiffs' [Proposed] Order Granting Preliminary Approval of Class

12 Action Settlement is separately submitted with this Motion.

13       Class Plaintiffs' Motion is based on Federal Rule of Civil Procedure 23, the Northern

14 District's Procedural Guidance for Class Action Settlement ("District Guidelines"), this Notice of

15 Motion, the supporting Memorandum of Points and Authorities, the Joint Declaration of Dena

16 Sharp and Michael M. Buchman, and the pleadings and papers on file in MDL No. 02966 (the

17 "Litigation"), and any other matter this Court may take notice of.

18                    **MEMORANDUM OF POINTS AND AUTHORITIES**

19 **I.**     **INTRODUCTION**

20       Class Plaintiffs, on behalf of the proposed Settlement Class, seek preliminary approval of

21 a settlement with two of the five Defendants in this litigation: Amneal and Lupin.[4] This first

22 Settlement in the litigation with two later-filed generic manufacturers provides for a cash

23 Settlement Fund totaling $3,400,000, as well as evidentiary cooperation from each settling

24 defendant.[5] The Settlement was reached only after extensive fact discovery, motion practice, and

25 ─────────────

26 [4] The Settlement does not affect claims against Amneal and Lupin brought by other plaintiffs.

    [5] Under the terms of the Settlement Agreement, Amneal shall pay $1,900,000 and Lupin shall pay

27

28

arm's length negotiations between experienced pharmaceutical antitrust counsel. Subject to the Court's approval, the Settlement Fund will be placed into an escrow account for the payment of litigation costs and expenses incurred in Class Plaintiffs' continued litigation against the remaining Defendants.[6] Joint Decl., Ex. 1 (Settlement Agreement) at §§ 4, 6, 12. In exchange, Class Plaintiffs and the Settlement Class agree to release all claims against Amneal and Lupin that arise out of the alleged conduct in this litigation. The proposed Settlement leaves Class Plaintiffs to focus their efforts on seeking the full amount of the overcharges they paid from the remaining and most central Defendants in this litigation: brand manufacturer Jazz and its most immediate would-be generic competitor, Hikma. Given the relevant considerations, the Settlement Agreement is in the best interests of Xyrem and Xywav purchasers, and meets the criteria for approval under Federal Rule of Civil Procedure 23(e).

The proposed Settlement Class meets the requirements of Rule 23(e) and is likely to be certified for settlement purposes. The Settlement Class is comprised of thousands of class members who have claims arising from Defendants' anticompetitive conduct. Class Plaintiffs' claims are typical of those of all Settlement Class members and present numerous common questions of fact and law. And these common issues predominate over any questions that may affect individual class members. Accordingly, a class action is superior to other methods of adjudication.

Class Plaintiffs respectfully ask the Court to: (1) preliminarily approve the Settlement with the Settling Defendants; (2) find that the Settlement Class is likely to be certified; (3) stay

---

$1,500,000. Each settling defendant also agreed to provide certain depositions and documentary cooperation. Joint Decl., Ex. 1 (Settlement Agreement) at §§ 6, 7.

[6] The remaining Defendants are Jazz Pharmaceuticals Plc, Jazz Pharmaceuticals, Inc., and Jazz Pharmaceuticals Ireland Limited (collectively, "Jazz"), and Hikma Labs, Inc. (formerly known as Roxane Laboratories, Inc.), Hikma Pharmaceuticals USA Inc. (formerly known as West-Ward Pharmaceuticals Corp.), Eurohealth (USA), Inc., and Hikma Pharmaceuticals plc. (collectively, "Hikma"). Par Pharmaceutical, Inc. is also named as a Defendant in the operative class action complaint, but claims against Par have been stayed pursuant to bankruptcy proceedings initiated by its parent company, Endo International plc. *See* ECF 311 (Notice of Suggestion of Bankruptcy and Automatic Stay of Proceedings).

3

Plaintiffs' Notice of Motion & Motion for Preliminary Approval of Class Certification Settlement
Case No. 3:20-md-02966-RS

litigation brought by Class Plaintiffs against the Settling Defendants until the Court grants final approval of the Settlement (or if the Settlement does not become final); (4) defer notice to the Class until a later date in connection with class certification, a settlement with other defendants, or as otherwise ordered by the Court; (5) approve Citibank as the Escrow Agent; (6) preliminarily designate the named Class Plaintiffs as Class Representatives for the Settlement Class; and (7) preliminarily appoint Girard Sharp LLP and Motley Rice LLC as Co-Lead Class Counsel for the Settlement Class against the Settling Defendants.

## II.     PROCEDURAL HISTORY

### A.     The MDL

In 2020, Class Plaintiffs filed several class actions against Amneal and Lupin, as well as Jazz, Hikma, and Par. On March 8, 2021, Class Plaintiffs filed a Consolidated Class Action Complaint ("CCAC"), which contains seventeen counts asserting various antitrust and consumer protection claims under federal and state law. *See* ECF 62 at 88-121. In the CCAC, Class Plaintiffs seek damages on behalf of classes consisting of all purchasers in the United States and a subset of 36 states, and nationwide injunctive relief.

To streamline this litigation, the Honorable Lucy H. Koh directed the parties to identify ten causes of action that would proceed through initial resolution, with litigation of the remaining causes of action to be discussed with the Court thereafter. ECF 66 at 2. On March 30, 2021, Judge Koh entered an Order identifying those causes of action. ECF 83. Judge Koh subsequently denied Defendants' motion to dismiss Class Plaintiffs' seven state law claims, but dismissed the three federal Sherman Act damages claims. ECF 138 at 80-81.

### B.     Discovery

Discovery began before motions to dismiss were filed and recently concluded on January 30, 2023. Defendants have produced millions of pages of documents, provided written discovery and information, and the parties have conducted thirty depositions of Defendants' employees and third parties. Class Plaintiffs have produced relevant documents, searched their files using the

parties' agreed-upon search terms, responded to multiple sets of interrogatories, and appeared for depositions.

### C.    Class Certification

On November 16, 2022, Class Plaintiffs moved to certify two classes of purchasers of Xyrem and Xywav, seeking damages under Fed. R. Civ. P. 23(b)(3) and injunctive relief under Fed. R. Civ. P. 23(b)(2). ECFs 351–53.

Class certification briefing is ongoing and set to be completed by April 7, 2023. ECF 394. The Court has scheduled a hearing for Class Plaintiffs' Motion for Class Certification on April 19, 2023.

### D.    Settlement Negotiations

The parties reached the proposed Settlement now before the Court as a result of hard-fought and adversarial litigation. A motion to dismiss was briefed, argued, and resolved, as were numerous discovery disputes. During discovery, the parties produced and reviewed hundreds of thousands of documents, served and responded to interrogatories, and took numerous depositions of fact and percipient expert witnesses. The Settling Defendants deny Class Plaintiffs' allegations of unlawful conduct, have not conceded or admitted any liability, and have asserted a number of defenses to Class Plaintiffs' allegations. Class Plaintiffs are thus well-versed in the strengths and weaknesses of their case against the Settling Defendants—as well as Jazz and Hikma—and are well-positioned to assess and balance the risks of continuing to litigate their claims against Settling Defendants versus settling those claims. Importantly, Class Plaintiffs will continue to litigate against, and seek the full amount of their overcharge damages from, the brand manufacturer (Jazz) and its most immediate would-be generic competitor (Hikma), whose alleged pay-for-delay agreement made it impossible for other generic manufacturers to enter the market.

Class Plaintiffs have entered into the Settlement on behalf of themselves and the proposed Settlement Class. The Settlement Class is defined as:

> All persons and entities in the United States that, for consumption
> by themselves, their families, their members, employees, insureds,

---

5

participants, or beneficiaries, and other than for resale, paid and/or provided reimbursement for some or all the purchase price for Xyrem and/or Xywav during the time from January 1, 2015, through the Execution Date.

Settlement Agreement at § 1. The Execution Date, and thus the end date of the settlement Class Period, is February 28, 2023.

The following persons or entities are excluded from the Settlement Class:

    a) Defendants and their counsel, officers, directors, management, employees, parents, subsidiaries, and affiliates;

    b) Express Scripts Specialty Distribution Services, Inc. and any of its counsel, officers, directors, management, employees, parents, subsidiaries, and affiliates;

    c) federal and state governmental entities, not including cities, towns, municipalities, counties or carriers for Federal Employee Health Benefit plans;

    d) any "single flat co-pay" consumers whose benefit plan requires a co-payment that does not vary based on the drug's status as a brand or generic; and

    e) all judges assigned to this case and any members of their immediate families.

## III.    THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT.

### A.    Legal Standard

At the preliminary approval stage, the Court may direct notice of a proposed settlement to the class if it concludes that it will likely be able to certify the settlement class under Rule 23(e)(1) and to approve the settlement as fair, reasonable, and adequate under Rule 23(e)(2).

To assess the proposed settlement class under 23(e)(1), the Court conducts a two-step analysis under Rules 23(a) and 23(b).

*First*, the Court must determine whether the proposed class meets the Rule 23(a) requirements:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses

6

1  of the class; and

2  (4) the representative parties will fairly and adequately protect the interests of the class.

3  Fed. R. Civ. P. 23(a).

4  *Second,* if those four conditions are satisfied, the Court considers whether the proposed

5  settlement class satisfies one of the requirements listed in Rule 23(b). In relevant part, under Rule

6  23(b)(3), a proposed settlement class may be maintained if questions of law or fact common to

7  class members predominate over any questions affecting only individual members, and . . . a class

8  action is superior to other available methods for fairly and efficiently adjudicating the

9  controversy." Fed. R. Civ. P. 23(b)(3). The predominance inquiry is less demanding in the

10  settlement context that in the litigation context. *See In re Hyundai & Kia Fuel Econ. Litig.*, 926

11  F.3d 539, 556-57 (9th Cir. 2019) (*en banc*) (finding that manageability concerns are not an issue

12  for a settlement class).

13  To assess the whether the proposed settlement is fair, reasonable, and adequate, under

14  Rule 23(e)(2), the Court considers whether:

15  (A) the class representatives and class counsel have adequately represented the class;

16  (B) the proposal was negotiated at arm's length;

17  (C) the relief provided for the class is adequate, taking into account:

18  (i) the costs, risks, and delay of trial and appeal;

19  (ii) the effectiveness of any proposed method of distributing relief to the Class, including the method of processing class-member claims;

20  (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

21  (iv) any agreement required to be identified under Rule 23(e)(3); and

22  (D) the proposal treats class members equitably relative to each other.

23  Fed. R. Civ. P. 23(e)(2). The Court also considers the Northern District of California's

24  Guidelines.

25

26

27

28

7

Plaintiffs' Notice of Motion & Motion for Preliminary Approval of Class Certification Settlement
Case No. 3:20-md-02966-RS

## B.    Certification of the Settlement Class is Likely.

The Settlement Class is cohesive, objectively defined, and likely to be certified upon entry

of judgment. *See* Fed. R. Civ. 23(e)(1). Courts routinely certify end-payor classes alleging

antitrust violations with respect to pharmaceutical products, both for litigation and settlement

purposes.[7] As shown below, the proposed Settlement Class satisfies Rule 23 and other procedural

guidelines and is likely to be certified.

### 1.    The Settlement Class Satisfies Rule 23(a)'s Requirements.

Under Rule 23(a), certification is appropriate where: (1) the class is so numerous that

joinder of all members is impracticable; (2) there are questions of law or fact common to the

---

[7] **Litigation Classes**: *In re HIV Antitrust Litig.*, No. 19-cv-02573, ECF 1452-7 (N.D. Cal. Sept. 27, 2022); *In re Lidoderm Antitrust Litig.*, 2017 WL 679367 (N.D. Cal. Feb. 21, 2017); *In re: Zetia (Ezetimibe) Antitrust Litig.*, 2021 WL 3704727 (E.D. Va. Aug. 20, 2021); *In re Opana ER Antitrust Litig.*, 2021 WL 3627733 (N.D. Ill. June 4, 2021), *as amended*, Case No. 14-cv-10150, ECF No. 746 (N.D. Ill. Aug. 11, 2021); *Sheet Metal Workers Local No. 20 Welfare and Benefit Fund v. CVS Pharmacy, Inc.*, 540 F. Supp. 3d 182 (D.R.I. May 18, 2021); *In re Ranbaxy Generic Drug Application Antitrust Litig.*, 338 F.R.D. 294 (D. Mass. May 14, 2021); *In re Namenda Indirect Purchaser Antitrust Litig.*, 338 F.R.D. 527 (S.D.N.Y. Feb. 11, 2021); *In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 335 F.R.D. 1 (E.D.N.Y. 2020*); In re EpiPen (Epinephrine Injection, USP) Marketing, Sales Practices and Antitrust Litig.*, 2020 WL 1180550 (D. Kan. Mar. 10, 2020); *In re Loestrin 24 FE Antitrust Litig.*, 410 F. Supp. 3d 352 (D.R.I. Oct. 17, 2019); *Hosp. Auth. of Metro. Gov't of Nashville & Davidson Cty v. Momenta Pharm., Inc.*, 333 F.R.D. 390 (M.D. Tenn. Sept. 20, 2019*); In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, 2017 WL 4621777 (D. Mass. Oct. 16, 2017).

**Settlement Classes:** *In re Aggrenox Antitrust Litig.*, No. 14-MD-2516 (D. Conn, Mar 6, 2018) (ECF No. 766); *Ryan-House v. GlaxoSmithKline PLC,* No. 02-cv-442, 2005 U.S. Dist. LEXIS 33711 (E.D. Va. Jan. 10, 2005); *Ryan-House v. GlaxoSmithKline PLC,* No. 02-cv-442 (E.D. Va. July 28, 2004) (ECF No. 137); *In re Tricor Indirect Purchaser Litig.,* No. 05-cv-360 (D. Del. May 8, 2009) (ECF No. 509); *In re Abbott Labs. Norvir Antitrust Litig.,*No. 04-cv-1511 (N.D. Cal., Aug. 27, 2008) (ECF No. 612); *Vista Healthplan, Inc. v. Warner Holdings Co. III, Ltd.,*246 F.R.D. 349, 357 (D.D.C. 2007); *In re Children's Ibuprofen Oral Suspension Antitrust Litig.,* No. 04-mc-535 (D.D.C. Dec. 11, 2006) (ECF No. 33); *In re Remeron End Payor Antitrust Litig.*, Nos. 02-2007, 04-5126, 2005 U.S. Dist. LEXIS 27011 (D.N.J. Sep. 13, 2005); *Nichols v. Smithkline Beecham Corp.*, No. 00-cv-6222, 2005 U.S. Dist. LEXIS 7061 (E.D. Pa. Apr. 22, 2005); *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 517 (E.D. Mich. 2003); *In re Buspirone Antitrust Litig.*, No. 01-md-01413 (S.D.N.Y. April 21, 2003) (ECF No. 148); *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 264 (D. Del. 2002), *aff'd*, 391 F.3d 516 (3d Cir. 2004); *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 374, 396 (D.D.C. 2002).

8

---

class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). These requirements are readily satisfied here. In their class certification opposition, Jazz and Hikma (Amneal and Lupin did not sign onto the opposition given the pending settlement) did not dispute that Class Plaintiffs could satisfy Rule 23(a). Def. Opp. to Class Cert. (ECF 409) at 7–35.

### a. Numerosity

Rule 23(a)(1) requires that members of a class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). While numerosity does not require a specific number of class members, courts in the Ninth Circuit generally agree that numerosity is satisfied if the class includes 40 or more members. *See In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prod. Liab. Litig.*, No. 19-MD-02913-WHO, 2022 WL 2343268, at \*3 (N.D. Cal. June 28, 2022).

The Settlement Class easily meets this threshold. The Settlement Class includes both individual consumers and third-party payors who purchased, paid and/or provided reimbursement for some or all of the cost of Xyrem and/or Xywav prescriptions. Xyrem and/or Xywav is exclusively dispensed through Express Scripts Specialty Distribution Services ("ESSDS"). ESSDS data confirms that tens of thousands of prescriptions for Xyrem and/or Xywav are filled each month. *See* Motion for Class Certification (ECF 353) at 20 (hereinafter "Class Cert. Mtn.") (citing Conti Rpt. (ECF 353-2) ¶ 50). Common sense dictates that the number of proposed Settlement Class well exceeds 40 persons throughout the class period. Accordingly, Class Plaintiffs satisfy Rule 23(a)(1).

### b. Commonality

Rule 23(a)(2) requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). A common question is one that "is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 338 (2011). For

9

1    purposes of Rule 23(a)(2), even a single common question will suffice to satisfy the requirement.

2    *Id.* at 358; *Solodyn*, 2017 WL 4621777, at *12, n.12. "Antitrust liability alone constitutes a

3    common question that 'will resolve an issue that is central to the validity' of each class member's

4    claim 'in one stroke'" because proof of the violation "'will focus on defendants' conduct and not on

5    the conduct of individual class members.'" *In re High-Tech Employee Antitrust Litig.*, 985 F.

6    Supp. 2d 1167, 1180 (N.D. Cal. 2013) (citing *Dukes*, 564 U.S. at 349).

7         This case presents numerous common questions of fact and law that relate to the Settling

8    Defendants' anticompetitive conduct, including whether the Defendants entered into unlawful

9    agreements in restraint of trade to prevent or delay entry of generic competition. *See* Class Cert

10   Mtn. at 21 (citing CCAC ¶ 338) (listing common questions of law and fact). The same questions

11   of law and fact also apply to all members of the Settlement Class who will necessarily use the

12   same evidence to prove the Defendants' alleged conduct "in one stroke." *Dukes*, 564 U.S. at 350.

13   As in other end-payor pharmaceutical antitrust cases,[8] the Settlement Class satisfies Rule

14   23(a)(2).

15              **c.   Typicality**

16        Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical

17   of the claims or defenses of the class." *Castillo v. Bank of America, NA*, 980 F.3d 723, 729 (9th

18   Cir. 2020). Class Plaintiffs' claims are typical of the class when they "arise[ ] from the same

19   event, practice or course of conduct that gives rise to the claims of the absent class members" and

20   is "based on the same legal or remedial theory." *In re Dynamic Random Access Memory (DRAM)

21   Antitrust Litig.*, 2006 WL 1530166, at *4 (N.D. Cal. June 5, 2006) (alteration in original) (citation

22   omitted). "[C]laims are 'typical' if they are reasonably co-extensive with those of absent class

23

24   [8] *See Lidoderm*, 2017 WL 679367, at *1 (common questions included: "Did defendants engage in
     anticompetitive conduct? Did that conduct lead to overcharges for brand and generic lidocaine
25   patches? What aggregate damages resulted from the overcharges?"); *Solodyn*, 2017 WL 4621777,
     at *12, n.12; *Teva Pharms. USA, Inc. v. Abbott Lab'ys*, 252 F.R.D. 213, 232 (D. Del. 2008); *In re
26   Relafen Antitrust Litig.*, 221 F.R.D. 260, 267 (D. Mass. 2004); *In re Flonase Antitrust Litig.*, 284
     F.R.D. 207, 217 (E.D. Pa. 2012).
27

28

1    members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. In similar delayed

2    generic competition cases, courts have found typicality satisfied where the plaintiffs asserted that

3    the defendants' conduct delayed generic competition and sought overcharges for themselves and

4    the class.[9]

5        Here, Class Plaintiffs' claims are typical of the claims of the Settlement Class because:

6    (i) their injury (supracompetitive prices) arises from the same course of conduct (Defendants'

7    anticompetitive conduct); (ii) their claims rely on the same legal theories (unlawful restraint of

8    trade and monopolization); and (iii) their claims allege damages in the form of overcharges. *See*

9    Class Cert. Mtn. at 21–22.

10                **d. Adequacy**

11       Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect

12   the interests of the class." Fed. R. Civ. P. 23(a)(4); *see also Amchem Products, Inc. v. Windsor*,

13   521 U.S. 591, 625 (1997) (finding Rule 23(a)(4) "serves to uncover conflicts of interest between

14   named parties and the class they seek to represent"). To determine whether the representation

15   meets this standard, courts ask two questions: (i) do named plaintiffs have any conflicts of interest

16   with other class members; and (ii) will they prosecute the action vigorously on behalf of the class.

17   *See Boston Retirement System v. Uber Technologies, Inc.*, 2022 WL 2954937 * 4 (N.D. Cal.

18   2022) (Seeborg, J.); *accord Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (applying this

19   analysis to a settlement).

20       No conflicts of interest exist between Class Plaintiffs and class members. *Staton*, 327 F.3d

21   at 957. Class Plaintiffs and the class members have the same objective, proving: the Defendants

22   acted unlawfully; that they paid, and continue to pay, overcharges as a result; and the total

23   amount of aggregate damages. And adequacy is also presumed where, as here, a fair settlement

24   was negotiated at arm's length. 2 *Newberg on Class Actions,* § 11.28, 11-59.

25   ───────────────

26   [9] *See, e.g., Solodyn*, 2017 WL 4621777 at*12 n.12; *TriCor*, 252 F.R.D. at 232; *Relafen*, 221
     F.R.D. at 267; *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 326, 335 (E.D. Mich. 2001);

27   *Warfarin*, 212 F.R.D. at 250.

28

2. **The Settlement Class Satisfies Rule 23(b)(3)'s Requirements.**

Under Rule 23(b)(3), certification is appropriate where "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The proposed Settlement Class easily satisfies these requirements.

### a. Predominance

Predominance exists when plaintiffs' claims "depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350. "Even if just one common question predominates, 'the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately.'" *Hyundai & Kia*, 926 F.3d at 557 (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442 (2016)).

The predominance inquiry is less demanding in the settlement context because, unlike certification for litigation, "manageability is not a concern in certifying a settlement class where, by definition, there will be no trial." *Id.* at 556–57. The predominant question at this stage will be whether this settlement is fair, adequate, and reasonable. *See Hanlon*, 150 F.3d at 1026-27. And even if the Court examines the disputed questions that would be tried absent settlement, predominant issues exist concerning whether Defendants' conduct violated the antitrust and consumer protection laws, as well as whether delayed generic entry of Xyrem resulted in overcharges to Class Plaintiffs and members of the Settlement Class. *See* Class Cert. Mtn. at 23–24. "[C]ommon issues usually predominate in cases where the defendants are alleged to have engaged in collusive, anticompetitive conduct resulting in artificially high market-wide prices for a product." *In re Cipro Cases I & II*, 121 Cal. App. 4th 402, 411 (2004) (collecting cases). The focus is on Defendants' conduct and the effect on the market, which are common to all class

12

1   members. The focus is not on the actions of individual class members. *See In re Glumetza*

2   *Antitrust Litig.*, 336 F.R.D. 468, 475 (N.D. Cal. 2020) (citing *Alaska Airlines v. United Airlines*,

3   948 F.2d 536, 540 (9th Cir. 1991)); *see also id.* ("the illegality of defendants' scheme turns on

4   details of the payment and defendants' purposes — evidence common to every purchaser").

5   Courts routinely find the predominance requirement met for antitrust claims.[10]

6   ### b.  Superiority

7      The "superiority" requirement of Rule 23(b)(3) "ensures that litigation by a class action

8   will 'achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to

9   persons similarly situated, without sacrificing procedural fairness or bringing about other

10  undesirable results.'" *Solodyn*, 2017 WL 4621777, at *21 (quoting *Amchem*, 521 U.S. at 615).

11  But in a certification for settlement, "a district court need not inquire whether the case, if tried,

12  would present intractable management problems, *see* Fed. Rule Civ. Proc. 23(b)(3)(D), for the

13  proposal is that there be no trial." *Amchem*, 521 U.S. at 620.

14     Certifying the Settlement Class is superior to resolving class members' claims through

15  individual litigation. Considerations of judicial efficiency favor concentrating this litigation in

16  one forum. Allowing this case to move forward as a class action would: (i) avoid congesting a

17  court with the need to repetitively adjudicate such actions; (ii) prevent the possibility of

18  inconsistent results; and (iii) allow class members an opportunity for redress they might otherwise

19  be denied. This is consistent with the approach taken by other courts in end-payor generic

20  suppression cases.[11] A handful of large health benefit plans have effectively opted-out of the class

21

22  [10] *See, e.g.*, *Solodyn* 2017 WL 4621777, at *6 (quoting *Amchem,* 521 U.S. at 624) ("In antitrust
    actions, 'predominance is a test readily met.'"); *Natchitoches Par. Hosp. Serv. Dist. v. Tyco Int'l,*
23  *Ltd.*, 262 F.R.D. 58, 61 (D. Mass. 2008) (quoting 6 Herbert B. Newberg & Alba Conte, Newberg
    on Class Actions §18.25 (4th ed. 2002) ("In antitrust cases, common liability issues such as
24  conspiracy or monopolization have, almost invariably, been held to predominate over individual
    issues.").

25  [11] *See, e.g., Restasis*, 335 F.R.D. at 39; *Solodyn*, 2017 WL 4621777, at *21; *Lidoderm*, 2017 WL
26  679367, at *13; *Flonase*, 284 F.R.D. at 232; *Relafen*, 221 F.R.D. at 287 ("resolution of the end
    payor plaintiffs' numerous claims by class action would provide substantial savings in time,

27

28
Plaintiffs' Notice of Motion & Motion for Preliminary Approval of Class Certification Settlement
Case No. 3:20-md-02966-RS

by filing their own cases. This is not unusual in these types of cases and further emphasizes the benefits of aggregating and pursuing on a common basis the claims of other end-payors, including the thousands of smaller health benefit plans included in the proposed Settlement Class definition.

Accordingly, the proposed Settlement Class satisfies each certification requirement, and Plaintiffs respectfully submit that the Court should find that the Settlement Class is likely to be certified. *See* Fed. R. Civ. 23(e)(1).

### 3. The Settlement Class Satisfies Other Procedural Guidelines.

Under Rule 23 and the Northern District of California's Guidelines, courts must also consider: (i) any differences between the claims in the operative complaint and the released claims; (ii) differences between the settlement class and the class proposed in the operative complaint; and (iii) whether any other cases will be affected by the settlement. *See* Fed. R. Civ. P. 23 2018 committee notes subdivision(e)(1); District Guidelines ¶ 1(a), (b), (d).

The claims released by the Settlement are consistent with those alleged in the operative Complaint as the Release is limited to claims that arise out of "the conduct alleged in the Action." Settlement Agreement at § 13. No other cases will be affected by this settlement. Although several class members have filed individual complaints (as noted above), they will be free to opt-out of the Settlement.

The differences between the proposed Settlement Class and the classes pled in the operative Complaint are not material and are consistent with the facts as they have developed in the litigation. Two primary differences merit explanation: (i) expansion of the proposed Settlement Class to include Xywav (as well as Xyrem) purchasers, and (ii) the start date for the proposed Settlement Class.    With regard to the inclusion of Xywav purchases, the operative Complaint alleges that Jazz sought to switch patients from Xyrem to Xywav by 2023; *i.e.* prior to

---

effort, and expense") (citing 7B Federal Practice and Procedure § 1781 ("since antitrust actions typically present many complicated issues, the courts should utilize these … provisions to settle the common issues on a representational basis to avoid congesting the courts with separate actions requiring the repetitive adjudication of the same matters")).

1  the launch of generic Xyrem under the terms of the settlement agreements. CCAC at ¶¶ 277–84.

2  Had generic Xyrem launched earlier, as Class Plaintiffs allege, then patients who have paid

3  supracompetitive prices for Xywav would have instead been prescribed the much less expensive

4  generic Xyrem. *See* Class Cert Mot. at 11. Class Plaintiffs believe that discovery supports this

5  conclusion. Adding Xywav purchases to the Class is consistent with their claims. Thus, this

6  modification to the proposed Settlement Class is "warranted." *See Cottle v. Plaid Inc*., 340 F.R.D.

7  356, 378 (N.D. Cal. 2021) (granting preliminary approval and finding the addition of fintech apps

8  to new definition warranted and finding "Ninth Circuit law supports the elimination of the

9  California subclass in favor of a single nationwide class").

10  As to the relevant time period, the Settlement Class as proposed begins on January 17,

11  2017, six months earlier than the date proposed in the operative Complaint. The first generic

12  manufacturer received FDA approval on January 17, 2017, and Class Plaintiffs have sought to use

13  that date as the start date for their proposed litigation classes as well. This change is likewise

14  warranted and rooted in the facts of the case.

15  **C.      The Court Should Preliminarily Approve the Settlement.**

16  At the preliminary approval stage, the Court "need not make a final determination

17  regarding the fairness, reasonableness or adequateness of the proposed settlement." *In re Puerto*

18  *Rican Cabotage Antitrust Litig*., 269 F.R.D. 125, 140 (D.P.R. 2010); *see also* Fed. R. Civ. P.

19  23(e)(2). Rather, at this stage, the court need only determine whether it "**will likely be able to** . . .

20  approve the proposal [as fair, reasonable, and adequate] under Rule 23(e)(2)[,]" at final approval.

21  *Smith v. Kaiser Found*. *Hosps*., No. 18CV780-KSC, 2020 WL 5064282, at *5 (S.D. Cal. Aug. 26,

22  2020) (emphasis in original); *see also Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp. 3d

23  959, 966 (N.D. Cal. 2019) ("The court's task at the preliminary approval stage is to determine

24  whether the settlement falls 'within the range of possible approval.'") (citing *In re Tableware*

25  *Antitrust Litig*., 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007)). The Settlement is well within the

26  range of fair, reasonable, and adequate.

27

28

### 1.  Procedural Considerations

The Court may consider whether "the class representatives and class counsel have adequately represented the class" and whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(A)-(B). As the Advisory Committee notes suggest, these are "matters that might be described as 'procedural' concerns, looking to the conduct of the litigation and the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e)(2)(A)-(B) advisory committee's note to 2018 amendment. These concerns implicate factors such as the non-collusive nature of the negotiations, as well as the extent of discovery completed and stage of the proceedings. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011,1026 (9th Cir. 1998).

### a.  Adequate Representation of the Class

As described above, Class Plaintiffs are adequate representatives of the Settlement Class. Class Plaintiffs and class members suffered the same injuries in the form of overcharges, and have the same interest as every other member of the proposed Settlement Class in proving that Defendants acted unlawfully. Furthermore, Class Plaintiffs are represented by seasoned counsel with extensive antitrust and complex litigation experience, particularly in pay-for-delay cases. They have pursued Class Plaintiffs' claims in the case for over two years, and will continue to zealously prosecute those claims against the remaining Defendants. The efforts undertaken thus far in this case, together with the outcomes achieved by Interim Co-Lead Class Counsel in similar cases on behalf of similar classes, should give the Court confidence in the adequate representation of the Settlement Class.

### b.  Arm's Length Negotiations

The Ninth Circuit "put[s] a good deal of stock in the product of an arm's length, non-collusive, negotiated resolution" in approving a class action settlement. *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). Class settlements are presumed fair when they are reached "following sufficient discovery and genuine arm's length negotiation[.]" *See Nat'l Rural Telecomm. Coop. v. DIRECTV*, 221 F.R.D. 523, 528 (C.D. Cal. 2004); 4 A. Conte & H. Newberg

on Class Actions at § 11.24 (4th ed. 2002). "The extent of discovery [also] may be relevant in determining the adequacy of the parties' knowledge of the case." *DIRECTV*, 221 F.R.D. at 527 (quoting *Manual for Complex Litigation, Third* § 30.42 (1995)). "A court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case." *Id*. (quoting 5 *Moore's Federal Practice*, §23.85[2][e] (Matthew Bender 3d ed.)).

Class Plaintiffs and the Settling Defendants engaged in arm's length negotiations in an effort to resolve the claims of the Class Plaintiffs and the proposed Settlement Class. The negotiations spanned several months and took into account information learned during discovery, which is nearly complete. Accordingly, Class Plaintiffs and Interim Co-Lead Counsel were well-positioned to evaluate the parties' respective positions, having reviewed millions of pages of documents produced in discovery; obtained voluminous information pursuant to interrogatories and stipulations; taken over 30 depositions of Defendants and third parties; briefed a motion to dismiss; and filed a motion for class certification and several expert reports.

### 2.    Substantive Considerations

Rules 23(e)(2)(C) and (D) set forth factors for preliminarily conducting "a 'substantive' review of the terms of the proposed settlement." Fed. R. Civ. P. 23(e)(2)(C)-(D) advisory committee's note to 2018 amendment. In determining whether "the relief provided for the class is adequate," courts consider: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C). In addition, the Court must consider whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D).

---

17

### a. Strength of Class Plaintiffs' Case and Risks of Continued Litigation

In determining the likelihood of a plaintiff's success on the merits of a class action, "the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) (internal quotations omitted). The court may "presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery." *Garner v. State Farm. Mut. Auto. Ins. Co.,* 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010) (citing *Rodriguez*, 563 F.3d at 965).

Although Class Plaintiffs and their counsel have confidence in Class Plaintiffs' claims, a favorable outcome at trial against the Settling Defendants was far from assured. Class Plaintiffs would need to prevail on class certification and maintain it through entry of a final judgment, overcome numerous substantive defenses at trial, and possibly succeed on appeal. Defendants, and experts they are likely to offer, would surely contest every theory of liability and measure of damages. There are, for example, substantial disputes as to: (i) whether the Settling Defendants' agreements with Jazz were anticompetitive, (ii) whether the alleged conduct resulted in overcharges to Xyrem and Xywav purchasers, and (iii) whether the lawsuit is blocked by the statute of limitations and/or laches. At trial, competing experts would have offered conflicting opinions as whether the Settling Defendants' conduct had procompetitive benefits and resulted in overcharges to Class Plaintiffs and members of the proposed class. Importantly, as later-filed generic applicants, Amneal and Lupin are not the central defendants for trial purposes—instead, Jazz and Hikma are. And Amneal and Lupin have offered their cooperation as to both depositions and existing written discovery. *See* Settlement Agreement at § 7. The proposed Settlement therefore offers to streamline the Class Plaintiffs' case, ease discovery burdens, and facilitate preparation for a focused trial.

18

### b. The Settlement Provides Adequate Relief to the Settlement Class

The proposed Settlement provides substantial consideration for the benefit of the Settlement Class. The Settlement Fund of $3,400,000, together with any accrued interest or earnings after deposit, will be held in escrow. Settlement Agreement at § 6. Given the depth of experience they have in prosecuting pay-for-delay and other complex antitrust cases, Interim Co-Lead Class Counsel's recommendation that the Settlement is in the best interests of the Settlement Class is entitled to substantial weight.[12] This is particularly true where, as here, counsel have conducted significant discovery and had the ability to understand the pros and cons of proceeding with the litigation. *See Giusti-Bravo v. U.S. Veterans Admin.*, 853 F. Supp. 34, 40 (D.P.R. 1993) ("In view of the fact that competent and experienced counsel have been able to conduct ample discovery which allowed them to properly assess the probability of success on the merits of the putative class claim . . . their recommendation should be entitled to substantial weight"). Interim Co-Lead Counsel, relying on their years of experience and their efforts in this litigation, recommend approval of the proposed Settlement. The proposed Settlement will not deprive Class Plaintiffs from pursuing the full measure of overcharge damages incurred by class members against Jazz and Hikma.

### c. Attorney Fees and Service Awards

If the Court approves Class Plaintiffs' request to use the Settlement Fund for costs and expenses incurred in the ongoing litigation, Class Plaintiffs do not intend to move for an award of

---

[12] *See, e.g., In re Imprelis Herbicide Mktg., Sales Practices, & Prods. Liability Litig.,* 296 F.R.D. 351, 364 (E.D. Pa. 2013) ("Because a settlement represents the result of a process by which opposing parties attempt to weigh and balance the factual and legal issues that neither side chooses to risk taking to final resolution, courts have given considerable weight to the views of experienced counsel as to the merits of a settlement."); *Rolland v. Celluci*, 191 F.R.D. 3, 10 (D. Mass. 2000) ("When the parties' attorneys are experienced and knowledgeable about the facts and claims, their representations to the court that the settlement provides class relief which is fair, reasonable and adequate should be given significant weight."); *In re Se. Milk Antitrust Litig.*, No. 2:08-MD-1000, 2013 WL 2155379, at *5 (E.D. Tenn. May 17, 2013) ("[Class Counsel's] collective judgment that the settlement is in the best interest of class members weighs heavily in favor of the Court's final approval of the agreement.").

19

Plaintiffs' Notice of Motion & Motion for Preliminary Approval of Class Certification Settlement
Case No. 3:20-md-02966-RS

attorneys' fees or service awards from the Settlement. Instead, the entire Settlement Fund (less any administrative expenses) would be used for the payment of common expenses (*i.e.* expert fees, database hosting, depositions, etc.) in connection with the continued prosecution of this litigation on behalf of the Xyrem and Xywav purchasers.

Only in the event the Court denies that request and instead directs Class Plaintiffs to distribute the Settlement Fund to class members, would Class Plaintiffs seek an award for attorneys' fees and service awards. Interim Co-Lead Class Counsel would seek the payment of attorney fees not to exceed one-third of the Settlement Fund, as well as costs and expenses incurred in the prosecution of this action to date of up to $500,000, both of which are well below the total lodestar and costs incurred to date.[13] District Guidelines ¶ 6. As to service awards, Interim Co-Lead Class Counsel would seek modest awards for the eight named Plaintiffs, not to exceed $5,000 each. The service awards are subject to this Court's discretion, and their approval (in whole or in part) is not a material term of the Settlement.[14] The remainder of the Settlement fund would be distributed to members of the Settlement Class pursuant to a plan of allocation ordered by the Court.

### d.  Equitable Treatment of Class Members

Reserving the proceeds of the proposed Settlement will result in equitable treatment of Settlement Class members, by facilitating the continued prosecution of this matter and avoiding the administrative costs and potential confusion associated with notice at this time to the Class.

---

[13] While time and expense submissions by Class Plaintiffs' counsel, and Interim Co-Lead Counsel's review of those submissions, are ongoing, based on information received to date, the total lodestar incurred by counsel representing Class Plaintiffs to date significantly exceeds the entire $3,4,000,000 Settlement Amount, and costs and expenses already incurred substantially exceed $500,000. Joint Decl., ¶ 9.

[14] As would be further explained at final approval if the Court is inclined to order distribution of the Settlement Fund, service awards are appropriate to compensate Class Plaintiffs for the substantial time and effort they spent participating in this litigation, including the risk of negative publicity and notoriety. Each class representative has collected and produced documents in response to Defendants' discovery requests, answered interrogatories, and appeared for a deposition.

1  This is particularly true because class members will be able to obtain full relief from the

2  remaining non-settling Defendants in the litigation, and class certification briefing is underway.

3          Even if, on the other hand, the Court orders the Settlement Fund to be distributed to

4  members of the Settlement Class, the plan of allocation governing that distribution will be based

5  directly on the overcharges to each claimant, thus ensuring equitable treatment among class

6  members. *See* Fed. R. Civ. P. 23(e)(2)(C)(iv). Class Plaintiffs intend to submit a formal plan of

7  allocation for Court approval prior to the commencement of notice to the Settlement Class.

8              **e.   The Released Claims Are Consistent with Those Pled in the
                        Litigation**
9

10         The Released Claims include all claims (under any theory or statute) that "arise from, refer

11  to, or relate in any way to any act or omission alleged or that could have been alleged" against the

12  Settling Defendants, so long at those claims arise from the conduct alleged in the CCAC.

13  Settlement Agreement at § 13. The Releases extend to matters raised or that could have been

14  raised in the litigation, but do not prevent Settlement Class Members from pursuing unrelated

15  claims or claims against the Settling Defendants or other non-released parties. In sum, the

16  released claims are no broader than those pled in the CCAC.

17                      **f.   Supplemental Agreements**

18         Rule 23(e)(3) requires disclosure of any agreements "made in connection" with the

19  settlement. Fed. R. Civ. P. 23(e)(3). Class Plaintiffs have included the Settlement Agreement as

20  an exhibit to this motion (*see* Joint Decl., Ex. 1), and there are no other agreements made in

21  connection with the Settlement.

22                      **g.   Reversion**

23         The Northern District's Guidelines require disclosure of any circumstances in which

24  "money originally designated for class recovery will revert to any defendant." District Guidelines

25  ¶ 1(g). Here, the Settlement Fund will only revert to Settling Defendants if the Court denies final

26  approval or if an appellate court sets aside the Settlement or materially modifies it. *See* Settlement

27  Agreement at §§ 15–16.

28

#### h.  Past Distributions

The information sought by District Guidelines paragraph 11 regarding past distributions in class settlements is provided in Exhibit 3 to the joint declaration.

## IV.   NOTICE AND SCHEDULING A FINAL APPROVAL HEARING SHOULD BE DEFERRED.

The Settlement Class would not benefit from the immediate dissemination of notice of the Settlement. Class Plaintiffs' class certification motion is set to be heard in mid-April, and the Court has indicated that it expects to issue a decision promptly. If the Court certifies any of the proposed litigation classes, Class Plaintiffs will need to provide notice of that decision. Providing notice now and then, potentially, in a few months' time, would likely cause confusion among class members, and would be inefficient and expensive.

Class Plaintiffs therefore request that the approval, implementation, and dissemination of notice to the Settlement Class be deferred until a date following a ruling on Class Plaintiffs' pending class certification motion or any later settlement. *See Newberg on Class Actions* § 8:16 (5th ed. 2011) (Federal Rule of Civil Procedure 23(e)(1) "does not dictate any specific time frame in which the notice must be dispatched"). Such deferment will preserve the Settlement Fund for the Settlement Class, and eliminate the prospect of unnecessary confusion among class members. This is the most efficient use of the resources. Notably, the Settling Defendants do not object to this approach.

No later than 21 days after the Court's ruling on Class Plaintiffs' pending class certification motion, Class Plaintiffs will move this Court to approve a notice plan and any proposed plan of allocation if applicable (both of which will be provided to the Court as part of that motion), schedule a fairness hearing, and set corresponding deadlines.

## V.   THE COURT SHOULD APPOINT CITIBANK AS THE ESCROW AGENT.

With 15 days of an entry of preliminary approval, Settling Defendants shall deposit the settlement amounts into an escrow account, held and administered by Citibank. Settlement Agreement at § 6. Citibank is well qualified to serve as the escrow agent, having regularly served

22

in that role in many other class action settlements.

## VI.    CONCLUSION

For the foregoing reasons, Class Plaintiffs and Interim Co-Lead Counsel respectfully request that the Court enter the proposed order granting preliminary approval and setting a date for the fairness hearing.

Dated:  March 3, 2023

Respectfully submitted,

By: /s/ Dena C. Sharp
Dena C. Sharp (State Bar No. 245869)
Scott Grzenczyk (State Bar No. 279309)
Tom Watts (State Bar No. 308853)
Jordan Isern (State Bar. No. 343159)
**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
dsharp@girardsharp.com
scottg@girardsharp.com
tomw@girardsharp.com
jisern@girardsharp.com

By: /s/ Michael M. Buchman
Michael M. Buchman
**Motley Rice LLC**
777 Third Avenue, 27th Floor
New York, NY 10017
(212) 577-0040
mbuchman@motleyrice.com

*Interim Class Counsel and Proposed Settlement Class Counsel*

23

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 3, 2023, I caused the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will automatically send notification of the filing to all counsel of record.


By: /s/ *Dena C. Sharp*
Dena C. Sharp

Plaintiffs' Notice of Motion & Motion for Preliminary Approval of Class Certification Settlement
Case No. 3:20-md-02966-RS