UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE XYREM (SODIUM OXYBATE) ANTITRUST LITIGATION

Case No. 20-md-02966-RS

**FINAL APPROVAL ORDER AND JUDGMENT; ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR ENTRY OF SET-ASIDE ORDER**

## I. MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

On February 28, 2023, Class Representative Plaintiffs[1] entered into a settlement agreement with Defendants Amneal Pharmaceuticals LLC ("Amneal") and Lupin Ltd., Lupin Pharmaceuticals Inc., and Lupin, Inc. ("Lupin," and, collectively, the "Settling Defendants").[2] The Amneal/Lupin Settlement resolved Class Representative Plaintiffs' antitrust, consumer protection, and unjust enrichment claims against the Settling Defendants for allegedly engaging in a course of conduct to prevent or delay generic competition and maintain a monopoly with

---

[1] The capitalized terms used in this Order shall have the same meaning as defined in the Class Settlement Agreement except as otherwise noted.

[2] The proposed settlement does not include Jazz Pharmaceuticals Plc, Jazz Pharmaceuticals, Inc., and Jazz Pharmaceuticals Ireland Limited (collectively, "Jazz"), Hikma Labs, Inc. (formerly known as Roxane Laboratories, Inc.), Hikma Pharmaceuticals USA Inc. (formerly known as West-Ward Pharmaceuticals Corp.), Eurohealth (USA), Inc., Hikma Pharmaceuticals plc. (collectively, "Hikma"), or Par Pharmaceuticals, Inc. ("Par"). Par remains a Defendant in this action, but proceedings as to Par were stayed in August 2022, due to its Notice of Suggestion of Bankruptcy Upon the Record. *See* ECF 311. No class or individual claims against the non-settling Defendants will be released, and the litigation against those Defendants will continue.

respect to brand name prescription drug Xyrem. On March 3, 2023, Class Representative Plaintiffs moved for preliminary approval of the proposed class action settlement, the terms and conditions of which are set forth in the Settlement Agreement filed with the Court. Preliminary approval was granted on May 12, 2023.

Class Representative Plaintiffs now seek final approval of the proposed class action settlement. For the reasons described more fully below, final approval of the Amneal/Lupin Settlement is granted, and the Settlement Class is certified for settlement purposes only.

## I.     FINDINGS OF FACT AND CONCLUSIONS OF LAW

### 1.     Notice and Administration

Following entry of the preliminary approval order, the Class Settlement Administrator established a settlement website at inrexyremantitrustlitigation.com, which included, among other things: the long-form notice (which explained the procedures for class members to object or exclude themselves), contact information for the Class Settlement Administrator, the Settlement Agreement, and Court documents related to the Form and Manner of Notice. The Settlement Administrator also operated a toll-free number for Settlement Class member inquiries.

Notice of the Amneal/Lupin Settlement was provided by: (1) direct notice via USPS First-Class Mail to entities in A.B. Data's TPP Database; (2) direct notice to the consumers identified in the pharmacy dispensing data for Xyrem via email and, for those whose email was not available, via mail; (3) publication notice, which comprised approximately 12 million impressions and targeted likely settlement class members, on relevant websites and social media platforms; and (4) publication on the settlement website.

The Notice Plan provides the best practicable notice to the Settlement Class members and satisfies the requirements of due process. Settlement Class members were given until November 27, 2023, to object or to exclude themselves from the proposed Settlement. Twenty-seven requests for exclusion were submitted and no objections have been filed.

**2.     Certification of the Settlement Class**

For purposes of the Class Settlement only and this Order and Judgment, Class Representative Plaintiffs have moved to certify the following Settlement Class:

> "All persons and entities in the United States that, for consumption by themselves, their families, their members, employees, insureds, participants, or beneficiaries, and other than for resale, paid and/or provided reimbursement for some or all the purchase price for Xyrem and/or Xywav during the time from January 1, 2015, through the Execution Date."

The Execution Date, and thus the end of the settlement class period, is February 28, 2023. Excluded from the Settlement Class are: (1) Defendants and their counsel, officers, directors, management, employees, parents, subsidiaries, and affiliates; (2) Express Scripts Specialty Distribution Services, Inc. and any of its counsel, officers, directors, management, employees, parents, subsidiaries, and affiliates; (3) federal and state governmental entities, not including cities, towns, municipalities, counties or carriers for Federal Employee Health Benefit plans; (4) any "single flat co-pay" consumers whose benefit plan requires a co-payment that does not vary based on the drug's status as a brand or generic; (5) all judges assigned to this case and any members of their immediate families; and (6) the entities that submitted requests for exclusion from the Settlement Class.[3]

The Court has certified for litigation purposes similar classes asserting antitrust and consumer protection claims against the Remaining Defendants. The Settlement Class is co-

---

[3] These entities are: New Jersey Healthcare Specialists, P.C.; Radadvantage, A Professional Corporation; Northside Emergency Associates, P.C,; Florida EM-I Medical Services; Wabash EM-I Medical Services; Emergency Medical Associates of New Jersey; HCA-Emcare Holdings, LLC; Anesthesia Physician Solutions of South Florida; Infinity Healthcare Physicians, S.C.; Envision Healthcare Corporation; Arizona EM-I Medical Services, P.C.; Envision Physician Services, LLC; Nevada EM-I Silver/Homansky Medical; Exotic Rubber & Plastics Corp.; Citation Oil & Gas Corp. (COGC); Central Painting & Sandblasting, INC; United Healthcare Services, INC & its subsidiaries; Aetna, Inc. (on behalf of itself and its administrative services only (ASO) clients); Health Care Service Corporation (on behalf of itself and its ASO clients); Humana, Inc. (on behalf of itself and its ASO clients); Mars, Incorporated Health Care Plan; Mars, Incorporated Retiree Health Care and Life Plan; Molina Healthcare, Inc.; Donegal Mutual Insurance; and Klick USA, Inc.

extensive with the certified classes, except that the Settlement Class claims have a different end date, have an earlier start date, include purchasers nationwide, and include purchases of Xywav in addition to Xyrem. The end date based on when the parties settled is appropriate and necessary for administration purposes. *See Foster v. Adams & Assocs.*, No. 18-cv-2723, 2021 WL 4924849, at *3 (N.D. Cal. Oct. 21, 2021) (granting modification to the previously certified class to specify end date). And the start date is similarly justifiable. The class period in the operative complaint began in 2015, and as such, this date was the date the parties had in mind when they negotiated the settlement. There is also good reason to settle the claims of purchasers nationwide, particularly in light of the certified nationwide injunctive relief class. Including nationwide and Xywav purchases in the settled claims does not change the overall common nature of the claims or the benefits derived from the Settlement, and does not alter the Court's class certification analysis, except that the predominance analysis operates differently and is more relaxed in the settlement context. *See In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 558 (9th Cir. 2019). The Settlement Class largely overlaps with the certified classes and, for settlement purposes only, there is a sound basis for the differences in the Settlement Class definition.

Accordingly, for purposes of Settlement only:

a. Members of the Settlement Class are so numerous as to make joinder impracticable. Express Scripts Specialty Distribution Service, the sole pharmacy which dispenses all Xyrem and Xywav, confirms that tens of thousands of prescriptions for Xyrem and/or Xywav are filled each month. Accordingly, the proposed Settlement Class likely contains hundreds or thousands of members.

b. There are questions of law and fact common to the Settlement Class. The litigation will focus on Defendants' alleged anticompetitive conduct, including whether the Defendants entered into unlawful agreements in restraint of trade to prevent or delay entry of generic competition. *See In re High-Tech Emp. Antitrust Litig.*, 985 F. Supp. 2d 1167, 1180 (N.D. Cal. 2013) ("Antitrust liability alone constitutes a common question that 'will resolve an issue that is central to the validity' of each class member's claim 'in one stroke . . . because proof . . . will focus

on defendants' conduct and not on the conduct of individual class members.'") (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)).

  c. The common questions of law and fact predominate over any questions affecting only individual Settlement Class members for purposes of the Settlement because the Defendants' conduct—*i.e.* whether it was illegal and what impact it had on the prices paid by class members—will drive the litigation. That is particularly true in the settlement context. As the Ninth Circuit has held, "predominance is easier to satisfy in the settlement context." *Jabbari v. Farmer*, 965 F.3d 1001, 1006 (9th Cir. 2020); *see also Sullivan v. DB Inv., Inc.*, 667 F.3d 273, 304 n.29 (3d Cir. 2011) (*en banc*) (courts are "more inclined to find the predominance test met in the settlement context") (cleaned up). That is because "[s]ettlement may 'obviate the need to litigate individual issues that would make a trial unmanageable,' making common questions more important in the relative analysis." *Jabbari*, 965 F.3d at 1005-06 (quoting *Hyundai*, 926 F.3d at 558). While the certification order excluded Xywav from the litigation classes (*see* ECF 500 at 16), this does not preclude certification of the Settlement Class as the settlement obviates the need to determine which Xywav patients would or could have been prescribed Xyrem instead. *See In re ZF-TRW Airbag Control Units Prod. Liab. Litig.*, No. LA ML19-02905 JAK, 2023 WL 6194109, at *12 (C.D. Cal. July 31, 2023) ("A class may be certifiable for settlement even though it may not be certifiable for litigation where the settlement obviates the need to litigate individualized issues that would make a trial unmanageable.") (internal quotations and citations omitted).

  d. Class Representative Plaintiffs' claims are typical of the claims of the Settlement Class members for purposes of the Settlement. Class Representative Plaintiffs' injuries (supracompetitive prices) stem from the same course of conduct (Defendants' alleged anticompetitive conduct) and seek to recover pursuant to the same legal theories (unlawful restraint of trade and monopolization).

  e. Class Representative Plaintiffs and their counsel have fairly and adequately protected the interests of the Settlement Class members in this action and will continue to do so.

Each plaintiff has the same goal as members of the Settlement Class (*i.e.*, proving the Defendants acted unlawfully and that they paid, and continue to pay, overcharges as a result). Class Representative Plaintiffs' interests are aligned with, and not in conflict with, those of Settlement Class members. The record reflects that each Class Representative Plaintiff has dedicated substantial time and effort to this litigation by working with their counsel; reviewing pleadings; responding to discovery; searching for, collecting, and producing documents; and preparing to sit for depositions, among other things.

  f. A class action is superior to all other available methods for fairly and efficiently resolving this action. A class action avoids congesting the Court with the need repeatedly to adjudicate such actions; prevents the possibility of inconsistent results; and allows class members an opportunity for redress that might otherwise be denied.

For the reasons stated in the Motion, Class Representative Plaintiffs and Co-Lead Class Counsel should be appointed to represent the Settlement Class. Accordingly, Dena C. Sharp of Girard Sharp LLP and Michael M. Buchman of Motley Rice LLC are appointed as Co-Lead Class Counsel for the Settlement Class.

**3. Final Approval of Settlement**

A court may approve a proposed class action settlement only "after a hearing and on finding that it is fair, reasonable, and adequate after considering whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).[4] In reviewing the proposed settlement, the Court need not address whether the settlement is ideal or the best outcome, but only whether the settlement is fair, free of collusion, and consistent with plaintiff's fiduciary obligations to the class. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

For the reasons detailed below, the proposed settlement is fair, reasonable, and adequate under the Rule 23(e)(2) factors. Continued litigation against the Settling Defendants involves substantial risks and would complicate the litigation against the Remaining Defendants. Defendants dispute Class Representative Plaintiffs' theories of anticompetitive harm and causation. There would also have been a battle of the experts regarding, among other things, whether the Settling Defendants' agreements with Jazz were anticompetitive; the anticompetitive effects of Settling Defendants' conduct; and what damages, if any, should be awarded. Proceeding to trial as against the Settling Defendants would have been costly, recovery was not guaranteed, and there was the possibility of protracted appeals. The Amneal/Lupin Settlement avoids these risks while providing substantial benefits to the Settlement Class, represents the product of arms-length negotiations among experienced counsel, and is free of any apparent any allegation of collusion or self-dealing.

---

[4] Prior to the amendments to Rule 23, which took effect December 1, 2018, the Ninth Circuit had enumerated a similar list of factors to consider in evaluating a proposed class settlement. *See Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (enumerating the following factors: "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement"). In the notes accompanying the Rule 23 amendments, the Advisory Committee explained that the amendments were not designed "to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Accordingly, this Court applies the framework of Rule 23 while "continuing to draw guidance from the Ninth Circuit's factors and relevant precedent." *Hefler v. Wells Fargo & Co.*, No. 16-cv-5479, 2018 WL 6619983, at *4 (N.D. Cal. Dec. 17, 2018), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020).

### a. Class Representative Plaintiffs and Class Counsel Have Adequately Represented the Settlement Class

In the Preliminary Approval Order, the Court found that the Class Representative Plaintiffs, as well as Co-Lead Class Counsel and members of the Plaintiffs' Steering Committee ("Class Counsel"), adequately represented the interests of the certified classes. Nothing contradicts that previous finding, and it is reconfirmed here. Class Counsel "possessed sufficient information to make an informed decision about settlement." *Hefler*, 2018 WL 6619983, at *6 (cleaned up).

### b. The Class Settlement Was Negotiated at Arm's Length

The Amneal/Lupin Settlement is the product of serious, non-collusive, arm's length negotiations by experienced counsel. Prior to reaching a settlement, the parties engaged in extensive fact discovery. The record was thus sufficiently and fully developed to inform the parties and enable them to evaluate the strengths and weaknesses of their respective positions. *See Nat'l Rural Telecomm. Coop. v. DIRECTV*, 221 F.R.D. 523, 528 (C.D. Cal. 2004). A careful review of the record reveals no signs of collusion or self-dealing. Class Counsel did not compromise the claims of the Settlement Class in exchange for higher fees as there has been no agreement concerning attorneys' fees or otherwise disadvantaging the Settlement Class.

### c. The Settlement Provides Adequate Recovery to the Class

In the Rule 23(e) analysis, "[t]he relief that the settlement is expected to provide to class members is a central concern." Fed. R. Civ. P. 23(e)(2)(C)-(D) advisory committee's note to 2018 amendment. "The Court therefore examines 'the amount offered in settlement.'" *Hefler*, 2018 WL 6619983, at *8 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

The Settling Defendants have agreed to pay $3.4 million, which will be used to pay costs and expenses incurred in the ongoing litigation against the Remaining Defendants. The terms provide substantial benefit to Settlement Class members, as the proceeds of the Settlement will be used to advance the pursuit of recoveries from the Remaining Defendants. The Amneal/Lupin Settlement does not encumber other, separate claims that class members might have, nor does it prevent the Settlement Class from seeking the full measure of the anticompetitive overcharge damages that may be recovered from the remaining Defendants. This recovery therefore is fair,

1  reasonable, and adequate given the risks of proceeding to trial against the Settling Defendants and
2  the continued availability of recoveries from the Remaining Defendants.

### d. The Risk of Continued Litigation

The amount provided for in the Amneal/Lupin Settlement is also reasonable in light of the risks of continued litigation. There are substantial disputes as to whether Class Representative Plaintiffs will be able to prove at trial that Amneal and Lupin's conduct, as later-filing generics, caused the anticompetitive overcharges that the Class has paid. Both sides believed they had persuasive facts to support their positions. Defendants would have attacked Class Representative Plaintiffs' theories of anticompetitive harm and causation at summary judgment. Trial would have involved a clash of expert analysis as to: whether the Settling Defendants' agreements with Jazz were anticompetitive; the anticompetitive effects of Settling Defendants' conduct; and what damages, if any, should be awarded. Success at trial was far from guaranteed. Amneal and Lupin were prepared to assert procompetitive justifications and causation and injury affirmative defenses. Even if Class Representative Plaintiffs succeeded at trial, appeals would undoubtedly have followed.

### e. Attorneys' Fees and Expenses

The parties have reached no agreement regarding the amounts of attorneys' fees, expenses, and service awards to be paid. *See, e.g.*, *Hyundai*, 926 F.3d at 569-70 (rejecting fairness objection because class counsel "did not reach an agreement with the automakers regarding the amount of attorney's fees to which they were entitled," which "[p]rovid[es] further assurance that the agreement was not the product of collusion"). Class Representative Plaintiffs and Class Counsel have not sought the payment of any attorneys' fees or the reimbursement of any expenses accrued prior to settlement from the Settlement Fund. Class Counsel have requested the right to use such monies for litigation expenses. This factor thus weighs in favor of approval.

### f. Other Agreements

The Court is required to consider "any agreements required to be identified under Rule 23(e)(3)." The Amneal/Lupin Settlement provides for the creation of an escrow account to hold

1  assets on behalf of the Settlement Class and for use in the continued litigation against the
2  Remaining Defendants for the benefit of the Settlement Class. Such an agreement is appropriate.

###    g.    The Settlement is Reasonable and Treats Class Members Equitably

The Settlement Fund of $3,400,000.00 and any accrued interest or earnings after deposit will be held in escrow and used to pay litigation costs and expenses incurred in Class Representative Plaintiffs' continued litigation against the remaining Defendants. The relief thus treats class members equitably relative to each other because the Class will benefit from the continued litigation against the Remaining Defendants.

###    h.    The Response of Class Members

Out of the thousands of notices delivered and the millions of impressions from banner and social media ads, twenty-seven opt-outs and no objections have been received. These figures represent a very positive response from the Class. *See Churchill,* 361 F.3d at 577 (noting a court may infer appropriately that a class action settlement is fair, adequate, and reasonable when few class members object to it); *Zepeda v. PayPal, Inc*., No. 10-cv-2500, 2017 WL 1113293, at *16 (N.D. Cal. Mar. 24, 2017) ("[T]he indisputably low number of objections and opt-outs, standing alone, presents a sufficient basis upon which a court may conclude that the reaction to settlement by the class has been favorable); *Cruz v. Sky Chefs, Inc.*, No. 12-cv-2705, 2014 WL 7247065, at *5 (N.D. Cal. Dec. 19, 2014) ("A court may appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it."). Accordingly, the response of the Settlement Class weighs in favor of approval.

### 4.    Releases and Effect of This Order

By operation of this Order and Judgment, once the Settlement becomes Final as set forth in the Settlement Agreement, Settlement Class members, including the Class Representative Plaintiffs, release and forever discharge and hold harmless the Settling Defendants and the Released Parties of any and all Released Claims. The claims of Class Representative Plaintiffs against the Settling Defendants are hereby dismissed with prejudice.

**5.      Costs of Administering the Settlement**

The Settlement Administrator has submitted $195,926.52 in invoices to-date and projects that it will incur approximately $5,000.00 in additional billing to complete the notice program and related activities. Given the uncertainty in the final amounts needed to complete settlement administration, the Court authorizes payment to the Settlement Administrator of *up to* $203,000.00. Class Counsel shall, however, only authorize payments to the Settlement Administrator for actual costs incurred. Any difference between the actual costs incurred by the Settlement Administrator and the $203,000.00 approved amount shall remain a part of the Settlement Fund.

**6.      Other Effects of This Order**

No action taken by the parties, either previously or in connection with the negotiations or proceedings connected with the Settlement, shall be deemed or construed to be an admission of the truth or falsity of any claims or defenses heretofore made or an acknowledgment or admission by any party of any fault, liability or wrongdoing of any kind whatsoever to any other party. Neither the Settlement nor any act performed or document executed pursuant to or in furtherance of the Settlement: (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any claim made by the Settlement Class members or Class Counsel, or of any wrongdoing or liability of the persons or entities released under this Order and Judgment and the Settlement, or (b) is or may be deemed to be, or may be used as an admission of, or evidence of, any fault or omission of any of the persons or entities released under this Order and Judgment and the Settlement, in any proceeding in any court, administrative agency, or other tribunal.

This Order and Judgment shall constitute a final judgment under Federal Rule of Civil Procedure 54(b) binding the Released Parties and Settlement Class members with respect to the Released Claims.

No payments shall be made from the Settlement Fund, or from any account holding the Settlement Fund, without the written authorization of Class Counsel.

1  No Settlement Class member or any other person may sue or have any claim or cause of
2  action against the Class Representative Plaintiffs, Class Counsel or any person designated by
3  Class Counsel, or the Settlement Administrator arising from or relating to the Settlement, the
4  Released Claims, or the litigation.

5  Without affecting the finality of the Judgment hereby entered, the Court reserves
6  exclusive jurisdiction over the implementation of the Settlement.

## II.  MOTION FOR ENTRY OF SET-ASIDE ORDER

Class Counsel request a set-aside order to compensate for common benefit work in this multidistrict litigation ("MDL"). The theory underlying this request is not a novel one: in an MDL, lead counsel often contribute significant time and resources to develop a case such that other plaintiffs might benefit. Class Counsel have spent years shepherding this case through discovery and developing a litigation strategy. While a set-aside order is appropriate here, there is some dispute over the appropriate size and scope of any potential order. Counsel for Aetna Inc. and its assignor affiliates (which have opted out of the Settlement Class and Damages Class) filed a letter brief objecting to Class Counsel's proposed set-aside order on the grounds of its proposed scope.[5] Similarly, Plaintiffs Blue Cross and Blue Shield of Florida, Inc., and Health Options Inc. (which have opted out of the Damages Class only) filed an objection to the size (12.5%) of Class Counsel's proposed set-aside.

### A.  Appropriateness of a Set-Aside Order

A set-aside is appropriate in this case. It is well-established that a court managing an MDL like this one has the authority to compensate common benefit work via set-aside order. *See In re Roundup Prods. Liab. Litig.*, 544 F. Supp. 3d 950 (N.D. Cal. 2021) (explaining the bases for such authority). Neither of the parties objecting to the terms of Class Counsel's proposed set-aside order claim the Court lacks authority to enter such an order provided it is sufficiently limited in

---

[5] Aetna is currently engaged in litigation against several defendants also present in this MDL in California Superior Court.

ORDER
CASE NO. 20-md-02966-RS
12

size and scope.

### B. Size of Set-Aside Percentage

Under the terms of Class Counsel's proposed order, 12.5% of any opt-out or tag-along plaintiff's recovery would be set aside in an escrow account to be available to compensate counsel for common benefit work at the Court's discretion. Courts have set a wide range of set-aside percentages in MDLs, and the parties, unsurprisingly, highlight those cases setting higher or lower percentages according to their respective interests. Class Counsel cite several cases to support a 12.5% set-aside. *See, e.g.*, *In re Genetically Modified Rice Litig.*, No. 4:06 MD 1811 CDP, 2010 WL 716190, at *6 (E.D. Mo. Feb. 24, 2010) (noting "courts have ordered contributions between 9% and 17% in MDLs for common benefit work"); *In re Aggrenox Antitrust Litig.*, No. 3:14 MD 2516 (SRU), 2018 WL 10705542, at *6 (D. Conn. July 19, 2018) (ordering 10% set-aside).

Blue Cross and Health Options, on the other hand, invoke antitrust class actions in which set-aside orders fixed percentages that were relatively lower, such as 5% (two cases), 10% (two cases), and 12.5% (one case). *See, e.g.*, *In re Zetia (Ezetimibe) Antitrust Litig.*, No. 2:18-md-2836, 2022 WL 18108387, at *4 (E.D. Va. Nov. 8, 2022) (approving 5% set-aside). In this District, set-aside orders have often fallen beneath Class Counsel's 12.5% request. *See, e.g.*, *In re Lidoderm Antitrust Litig.*, No. 14-md-2521, 2017 WL 3478810, at *3 (N.D. Cal. Aug. 14, 2017) (10%); *In re Roundup Prods. Liab. Litig.*, 544 F. Supp. 3d 950 (8%).

Recognizing a certain degree of arbitrariness involved in fixing a specific set-aside percentage, a 10% set-aside is appropriate here given the specific facts of this case and set-aside orders entered in comparable MDLs. Of course, this set-aside percentage serves as a ceiling, and any amount eventually awarded to Class Counsel may fall beneath 10%. Any set-aside must come from the portion of a settlement allocated to attorney fees.

### C. Scope of Set-Aside Order

The scope of actions to which any set-aside order could apply is limited. For instance, it is likely this Court generally lacks authority to set aside funds from parties' recoveries in state court actions. *See In re Lidoderm Antitrust Litig.*, No. 14-md-2521, 2017 WL 3478810, at *3 (N.D. Cal. Aug. 14, 2017) (agreeing with Eighth Circuit that absent special circumstances it had no authority

to apply set-aside to non-MDL proceedings); *see also In re Roundup Prods. Liab. Litig.*, 544 F. Supp. 3d 950 (investigating limits of court's authority in entering set-aside).[6] Accordingly, counsel for Aetna Inc. argues any set-aside order should exclude settlements obtained in actions outside this MDL. Class Counsel, for their part, claim their proposed set-aside order contains such limiting language, but their original motion suggests otherwise. *See* Dkt. 513, n.6 ("In contrast, any plaintiffs in parallel proceedings pending outside the MDL, such as the *Aetna, Inc. v. Jazz Pharm., Inc.*, pending in 22-cv-010951, and any other Damages Class members who have not to date filed their own independent cases in the MDL or have filed in some other forum, may be subject to Class Counsel's application on any eventual Set-Aside Order."). Either way, the parties now appear to agree on the proper scope of any set-aside order. In an attempt to eliminate any confusion, this set-aside order applies only to recoveries by plaintiffs in actions that are part of this MDL or that may be transferred to this MDL in the future.[7]

### D. Conclusion

For the foregoing reasons, it is ordered:

1. In the event a person or entity that opts out of the Damages Class or Settlement Class (an "opt-out plaintiff") obtains a settlement or judgment in this MDL or later transferred to this MDL related to claims arising from Defendants' alleged efforts to delay the introduction of generic Xyrem, Defendants shall establish and thereafter maintain an insured escrow account entitled "Xyrem Class Fee and Expense Account";

2. For any settlement or judgment obtained by such an opt-out plaintiff, Defendants shall set

---

[6] Some courts have held that where counsel litigating a state court case previously entered into a participation agreement with MDL class counsel to trade common benefit work for a share in any potential recovery, that participation agreement is enforceable by the MDL court. *See In re Bard IVC Filters Prods. Liab. Litig.*, 603 F. Supp. 3d 822, 833 (D. Ariz. 2022).

[7] Aetna also suggests the Long Form Notice in this case is misleading because any set-aside would bind class members who opt out despite the notice's representation to the contrary. Dkt. 561, at 2. As Class Counsel points out, however, the Long Form Notice informs class members of Class Counsel's intention to seek a set-aside order and its implications. Dkt. 564, at 2. Moreover, though not controlling authority, it is worth noting another court in this District has rejected this precise argument. *See In re Lidoderm*, 2017 WL 3478810, at *2.

aside and place into the Xyrem Class Fee and Expense Account 10% of the total monetary value of such settlement or judgment. This 10% must come from the portion of any recovery allocated to attorney fees and not from the clients' portion of any settlement;

3. No amounts shall be paid from the Xyrem Class Fee and Expense Account unless and until approved by the Court;

4. The set-aside funds shall be available, at the Court's discretion, to pay attorney fees and expenses incurred by Class Counsel for their common benefit work, subject to a showing by Class Counsel of entitlement to such payments;

5. The common benefit work eligible for compensation from the Xyrem Class Fee and Expense Account includes the work billed pursuant to the Court's February 22, 2021, Order Appointing Interim Co-Lead Class Counsel and Plaintiffs' Steering Committee Pursuant to Rule 23(g) (ECF No. 59);

6. Class Counsel and counsel for the opt-out plaintiff shall meet and confer and attempt in good faith to agree on an appropriate allocation of the set-aside funds. If counsel reach agreement, they shall report to the Court and seek Court approval of the agreed-upon allocation. If no agreement is reached, Class Counsel shall file with the Court within 14 days of reaching impasse an application for compensation supported by a showing of relevant common benefit work performed and expenses incurred. Any opposition(s) may be filed within 14 days of the filing of the initial application, with any replies due no more than 7 days later;

7. Any set-aside funds not paid to Class Counsel for common benefit work shall be remitted pro rata to the opt-out plaintiffs from whose settlements or judgments the set-aside funds were withheld;

8. Subject to the following paragraph, this Order shall apply to all actions included in this MDL or otherwise transferred to this MDL that assert claims that are the same or substantially similar to those asserted by Class Plaintiffs in this MDL and shall continue to apply after any remand of such actions;

9. United HealthCare Services, Inc., Humana Inc., Molina Healthcare, Inc., and Health Care

Service Corporation, Inc., shall not be considered an "opt-out plaintiffs" for purposes of this Order, shall not be subject to the terms of this Order, and their counsel shall not be entitled to compensation pursuant to this Order;

10. The scope of this Order is without prejudice to Class Plaintiffs' right to seek the payment of fees and expenses from settlements or judgments in untransferred federal cases or state cases; and

11. Nothing in this Order shall prevent Class Counsel from applying for and receiving an award of attorneys' fees and expenses for any recovery or other relief obtained on behalf of the Damages Class, Injunctive Relief Class, or Settlement Class.

**IT IS SO ORDERED**.

Dated: April 17, 2024

_____
RICHARD SEEBORG
Chief United States District Judge