# EXHIBIT 1

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: XYREM (SODIUM OXYBATE) ANTITRUST LITIGATION | Case No. 3:20-md-02966-RS-SVK |

**Expert Report of James W. Hughes, Ph.D.**

**June 12, 2024**

# TABLE OF CONTENTS

**I.     Introduction and Background** ........................................................................... 1

**II.    Identification and Analysis of Uninjured Payor Class members** .................................... 2

    A.   Data are now available for a longer time period following January 2023 generic entry ...................................................................................................................... 3

    B.   A review of the updated data allows for identification of uninjured Payor Class members that have not reimbursed for the generic product ......................................... 6

        i.   A substantial share of Payor Class members is brand loyal based on an analysis of actual ESSDS data ........................................................................................ 6

        ii.  A substantial share of Payor Class members will likely remain brand loyal, and thus would likely have been brand loyal even with alleged earlier generic entry ................................................................................................................. 10

    C.   An analysis of ESSDS data demonstrates that factors unique to Xyrem decrease the likelihood of generic switching and increase the share of brand loyal payors within the class ............................................................................................................ 16

        i.   The limited number of patients taking Xyrem results in many Payor Class members reimbursing for only one or a few members ................................... 17

        ii.  Limited generic price discounting and substantial usage of coupons curb economic incentives to switch to generic Xyrem ............................................ 22

        iii. The substantial DAW rates on brand Xyrem prescriptions help explain the high brand loyalty rate ............................................................................................. 25

## I. INTRODUCTION AND BACKGROUND

1. My name is James W. Hughes, Ph.D. On February 17, 2023 I submitted an initial report in this matter (referenced herein as "Initial Report").[1] My background and qualifications are described in my Initial Report, and I incorporate that report here by reference. In that report, I reserved the right to supplement and/or amend my report if new evidence became available.[2]

2. In light of updated data from Express Scripts Specialty Distribution Services ("ESSDS")[3] that are now available, I have been asked by counsel to reevaluate the ability of common evidence to show classwide injury. Specifically, I have been asked by counsel to review and analyze the updated data from ESSDS, which now include claims through mid-April 2024 and determine the impact on the analyses in my Initial Report. While the methodology and arguments set forth in my Initial Report remain sufficient to evaluate the ability of common evidence to show classwide injury, I have updated my analyses using these new data and have incorporated adjustments in light of Plaintiffs' expert Dr. Rena Conti's March 21, 2023 reply report, September 29, 2023 opening merits report, and March 8, 2024 merits reply report.[4] These updates demonstrate that, despite Dr. Conti's critiques of my Initial Report, her proposed methodology to evaluate classwide harm using a common method fails to identify and remove numerous uninjured class members.

3. I understand that the court in this matter has previously credited Dr. Conti's critiques of my Initial Report.[5] However, the actual world experience to date and the updated ESSDS data

---

1. Expert Report of James W. Hughes, Ph.D., United States District Court Northern District of California, No. 3:20-md-02966-RS-SVK, February 17, 2023.

2. Initial Report, ¶ 12.

3. See Initial Report, ¶ 26 for a description of the ESSDS data.

4. Reply Expert Report of Rena Conti, Ph.D. In Support of Class Certification and the Calculation of Damages for the Class of End-Payor Purchases, United States District Court Northern District of California, No. 5:20-md-02966-LHK, March 21, 2023 (hereafter "Conti Class Reply Report"); Merits Expert Report of Rena Conti, Ph.D., United States District Court Northern District of California, No. 3:20-md-02966-RS, September 29, 2023 (hereafter "Conti Merits Report"); Reply Merits Expert Report of Rena Conti, Ph.D., United States District Court Northern District of California, No. 3:20-md-02966-RS, March 8, 2024 (hereafter "Conti Merits Reply Report").

5. Order Granting Class Certification, Denying *Daubert* Motion, and Granting Motion for Preliminary Approval of Class Settlement, *In Re Xyrem (Sodium Oxybate) Antitrust Litigation*, United States District Court Northern District of California, No. 20-md-02966-RS, May 12, 2023 (hereafter "Class Certification Order"), pp. 10-15.

now demonstrate the flaws in Dr. Conti's arguments. Based on my review of the updated data produced in this case, I have found further evidence that the class contains many uninjured Payor Class members because many payors are or would likely be "brand loyal" due to a lack of reimbursements for the generic product when available, resulting from a lack of consumer switching to an earlier alleged generic product.[6]

4.      I have been assisted in this matter by employees of the consulting firm Analysis Group, working under my direction. A list of materials incremental to my Initial Report that I relied on in this report is attached as **Appendix A**. I continue to reserve the right to supplement and/or amend my report if and as new evidence becomes available.

## II.      IDENTIFICATION AND ANALYSIS OF UNINJURED PAYOR CLASS MEMBERS

5.      At the time of my Initial Report, the ESSDS data I had available did not cover the period after generic entry, which occurred in January 2023. With ESSDS data now available through mid-April 2024, I can fully consider the generic product's experience in forming my opinions, based on almost 16 months of generic availability to Xyrem patients and Payor Class members. A review of these data has not changed the conclusions in my Initial Report and, in fact, provides further evidence of the existence of uninjured payors in the class. Further, these real-world data demonstrate that the outcomes I predicted in my Initial Report have materialized. Thus, the updated data underscore that Dr. Conti's alleged "classwide" approach cannot be used to assess injury in this matter.

6.      In Section II.A, I begin with a brief explanation of the new data. In Section II.B, I present analyses demonstrating the existence of uninjured payors and explaining why it is likely many payors in the class will continue to be uninjured and would have likely been uninjured even in a but-for world where generic Xyrem was available earlier. Lastly, in Section II.C I discuss the characteristics of Xyrem, evident in the updated data, which make the existence of uninjured payors unsurprising.

---

[6]      Dr. Conti refers to payors as "Health Benefit Plan Payors." To simplify, I call them Payor Class members. Further, a payor's "brand loyalty" is ultimately driven by the decisions of its members, but I use the nomenclature of "brand loyal" for payors as shorthand to describe payors that do not reimburse for a generic version of the product. See, for example, Conti Class Reply Report, ¶ 6.

**A. Data are now available for a longer time period following January 2023 generic entry**

7.    The ESSDS data provide detailed information on all brand and generic Xyrem and Xywav prescriptions filled from January 2017 through mid-April 2024. ESSDS data productions are available both directly from Express Scripts and from Jazz and it is necessary to rely on both productions given slight differences in the prescription-level information provided.[7] For example, the ESI ESSDS data include payment information used to calculate prices paid by payors and the Jazz ESSDS data contain information necessary to identify payors.[8] **Exhibit 1** plots the monthly bottles shipped of sodium oxybate in each month between January 2017 and March 2024 and provides a visual representation of the additional months of data now available for my analyses.[9] The chart includes Xyrem, Xywav, and both the Hikma and Amneal authorized generic Xyrem products.

---

[7]    The updated ESSDS data refers to two distinct productions. The first includes prescription-level data directly from Express Scripts ("ESI ESSDS data"), which are available through April 26, 2024, and include detailed payment and pricing information. The other production includes shipment-level data from Jazz ("Jazz ESSDS data"), which are available through April 15, 2024, and detail the same prescriptions covered by the ESI ESSDS data but lack certain payment and pricing information. The Jazz ESSDS data also include separate prescription fill data that provide additional prescription detail such as Dispense as Written (DAW) instructions. I rely on each of these productions in this report.

[8]    Plaintiffs' expert Dr. Rena Conti processed both the ESI and Jazz ESSDS data as part of her September 29, 2023, opening merits report. In order to present analyses at the Payor Class member level, I leverage her data processing in this report and follow her methodology to process the updated ESSDS data and remain consistent with Plaintiffs' approach to analyzing these data. Dr. Conti excludes claims associated with "cash payers and the following governmental and non-class Primary-Payor entities: Medicaid, Patient Assistance Programs (including Nord, Alphascrip Pharm-Nord, and Caring Voice Coalition), Tricare, Department of Veterans Affairs, Worker's Comp, Jazz Voucher, Bridge Program, and Discount Card (including Netcard and Benecard)." See notes to Attachment C.1.a in the Conti Merits Report. However, when using the "SDS_XS_PAYER_NAME2" from the Jazz ESSDS data to identify payors, certain claims associated with these payors remain in Dr. Conti's overcharge analyses after she processes the data. I have conservatively included most of these remaining claims but have removed claims marked with the following in this report: Benecard, Bridge, Jazz, Jazz-Voucher Exception, No Insurance, Self-Pay, and Unknown. Certain of my analyses are also limited to claims in the following Class states, consistent with Dr. Conti's analyses: Arizona, California, Connecticut, District of Columbia, Florida, Hawaii, Iowa, Kansas, Maine, Maryland, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Puerto Rico, Rhode Island, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin.

[9]    Exhibit 8 from my Initial Report uses Jazz ESSDS data containing observations through January 2023. However, the rest of the analyses in my Initial Report were based on data through March 2022. This is because I requested updated data containing information on the DAW status of Xyrem prescriptions filled in the six months leading up to and including generic entry (i.e., August 2022 to January 2023) after Dr. Conti's February 2023 deposition. See Initial Report, ¶ 94.





























































35. I understand that Dr. Conti has continued to argue that the prescription forms used to prescribe Xyrem are misleading and led prescribers to unintentionally specify that the product should be dispensed as written.[41] I note that Dr. Conti has no expertise qualifying her to opine on why patients, physicians, or plans would request their prescriptions to be

---

[41]    Conti Merits Report, ¶ 119.

dispensed as written. I, similarly, do not have this expertise and defer to the physician experts in this matter. For example, Dr. Bains, who has prescribed Xyrem to patients, has asserted that the form is not confusing and that he signs "where appropriate based on the instructions."[42] Dr. Conti argues that this is unconvincing because Dr. Bains discusses only his own experience and does not touch on the behavior of other prescribers.[43] However, Dr. Bains does note that "any responsible physician" would act just as he does.[44] Additionally, Dr. Stultz indicates "[t]he signature line on the left side of the form clearly indicates that a prescriber should sign there only if she intends to prescribe Xyrem DAW" and that she "do[es] not find the Xyrem prescription form confusing."[45] I also note that Plaintiffs have produced no medical testimony or documentation supporting Dr. Conti's uninformed claim that the prescription form is in any way confusing or has caused *any*, much less a significant number of "accidental" DAW prescriptions. Dr. Conti remains the only source of this speculation, speculation that is far outside her area of expertise.

36. I cannot and will not comment on why a physician would or would not mark a prescription as DAW. However, I can and did look to the data to assess whether there have been changes in DAW prescribing that would be indicative of increased awareness of generic products or attempts by payors or others to push DAW prescriptions downward. As shown in **Exhibit 9**, through March 2024, the share of prescriptions marked as DAW ████ ██████████ It transcends credulity to conclude, even if the prescription form is deficient somehow, that a substantial fraction of prescribing doctors, as well as payors, PBMs and patients themselves remain unaware and/or incapable of counteracting such a deficiency, especially over such a prolonged period. Dr. Conti first raised her concerns about the allegedly misleading prescription form in her initial expert report, which was filed *before generic entry even occurred*. Her suggestion that the medical community, payors, and patients have remained unaware and unable to counteract what she claims was

---

[42] Rebuttal Expert Report of Oneil Bains, In Re: Xyrem (Sodium Oxybate) Antitrust Litigation, United States District Court Northern District of California, No. 3:20-md-02966-RS-SVK, January 19, 2024 ("Bains Rebuttal"), ¶¶ 74-75.

[43] Conti Merits Reply Report, ¶ 24.

[44] Bains Rebuttal, ¶ 74.

[45] Stultz Declaration, ¶ 13.

purposeful subversion of the prescribing process is entirely speculative and unsubstantiated.

37. Furthermore, Dr. Conti ignores that numerous other prescription forms with similar traits to the Xyrem form exist without challenge. I have identified a number of examples from CVS Specialty Pharmacy that demonstrate that Jazz's form is not unique in its layout and format. The CVS Specialty Pharmacy forms are available online. Each of these has a signature line on the left-hand side that, if signed, marks the prescriptions as "Dispense As Written", while the signature line to allow substitution is on the right.[46] This is almost identical to the allegedly confusing form Dr. Conti critiques.[47] Clearly, the Xyrem prescribing form design is not unique, and Dr. Conti's suggestion that Jazz manipulated the form in a unique way is contradicted by these examples.

_____

James W. Hughes, Ph.D.
June 12, 2024

---

[46] CVS Specialty, "Download Enrollment Forms," *available at* https://www.cvsspecialty.com/specialty-enrollment-forms.html. I have provided the Cardiology Enrollment Form in my backup materials, as an example. CVS Specialty, "Cardiology Enrollment Form," *available at* https://www.cvsspecialty.com/content/dam/enterprise/specialty/enrollment_forms/us/US_Cardiology.pdf.

[47] Conti Merits Reply Report, Figure 7.

# APPENDIX A

## MATERIALS RELIED UPON

### Court Documents

Order Granting Class Certification, Denying *Daubert* Motion, and Granting Motion for Preliminary Approval of Class Settlement, *In Re Xyrem (Sodium Oxybate) Antitrust Litigation,* United States District Court Northern District of California, No. 20-md-02966-RS, May 12, 2023.

### Plaintiffs Expert Reports (Including Backup Files and Materials Considered)

Reply Expert Report of Rena Conti, Ph.D. In Support of Class Certification and the Calculation of Damages for the Class of End-Payor Purchases, United States District Court Northern District of California, No. 5:20-md-02966-LHK, March 21, 2023.

Merits Expert Report of Rena Conti, Ph.D., United States District Court Northern District of California, No. 3:20-md-02966-RS, September 29, 2023.

Rebuttal Expert Report of Oneil Bains, In Re: Xyrem (Sodium Oxybate) Antitrust Litigation, United States District Court Northern District of California, No. 3:20-md-02966-RS-SVK, January 19, 2024.

Reply Merits Expert Report of Rena Conti, Ph.D., United States District Court Northern District of California, No. 3:20-md-02966-RS, March 8, 2024.

Declaration of Debra J. Stultz, United States District Court Northern District of California, No. 3:20-md-02966-RS-SVK, June 12, 2024.

### Bates Stamped Documents and Data

ESSDS000001

ESSDS0000003

ESSDS000007

JP-XYREM-MDL-493142

JP-XYREM-MDL-510010

JP-XYREM-MDL-569529

JP-XYREM-MDL-2-2150788

JP-XYREM-MDL-2-2167330

JP-XYREM-MDL-2-2167335

JP-XYREM-MDL-2-2158596

JP-XYREM-MDL-2-2155991

**Publicly Available Documents**

CVS Specialty, "Cardiology Enrollment Form," *available at* https://www.cvsspecialty.com/content/dam/enterprise/specialty/enrollment_forms/us/US_Cardiology.pdf.

CVS Specialty, "Download Enrollment Forms," *available at* https://www.cvsspecialty.com/specialty-enrollment-forms.html.

National Council for Prescription Drug Programs, "The Proper Use of the NCPDP Telecommunication Standard Version D.0 as it applies to the Implementation of Medicaid Reimbursement Methodologies Based on Actual Acquisition Cost (AAC) Plus a Professional Dispensing Fee," *available at* https://www.ncpdp.org/NCPDP/media/pdf/WhitePaper/Proper-Use-of-NCPDP-Telecommunication-Standard-in-Implementation-of-Medicaid-Reimbursement-Methodologies-v1-2.pdf?ext=.pdf.