[*Submitting Counsel on Signature Page*]

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: XYREM (SODIUM OXYBATE) ANTITRUST LITIGATION<br><br>THIS FILING RELATES TO: ALL ACTIONS | Case No. 3:20-md-02966-RS<br><br>**MOTION TO AMEND CLASS DEFINITION AND FOR LEAVE TO SERVE SUPPLEMENTAL EXPERT DAMAGES REPORTS**<br><br><u>**ORAL ARGUMENT REQUESTED**</u><br><br>Date:      TBD<br>Time:      TBD<br>Courtroom: 3, 17th Floor<br><br>The Honorable Richard Seeborg |

**TABLE OF CONTENTS**

I. Introduction ............................................................................................................................- 1 -

II. Background .............................................................................................................................- 2 -

    A. The Court's Class Certification Order. ............................................................................- 2 -

    B. Plaintiffs' Experts' Damages Analyses. ............................................................................- 3 -

    C. The Court's December 6, 2023 Order. .............................................................................- 4 -

III. Argument ................................................................................................................................- 5 -

    A. The Court Should Amend the Damages Class Definition. ..............................................- 5 -

    B. Plaintiffs Should Be Permitted to Submit Supplemental Damages Expert Reports. ......................................................................................................................- 8 -

        1. Supplementation to Update Damages Estimates is Warranted ................- 8 -

        2. Supplementation Before Trial Will Update the Record on Generic Penetration and Generic Pricing ............................................................- 11 -

IV. Conclusion ...........................................................................................................................- 12 -

# TABLE OF AUTHORITIES

**Cases**

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
  568 U.S. 455 (2013) ................................................................................................- 5 -

*Andrews v. Plains All Am. Pipeline, L.P*,
  2019 WL 6647928 (C.D. Cal. Nov. 22, 2019) ........................................................- 6 -

*ASC Engineered Sols., LLC v. Island Indus., Inc.*,
  2021 WL 2941989 (W.D. Tenn. July 13, 2021) ......................................................- 8 -

*Barnes v. AT & T Pension Ben. Plan-NonBargained Program*,
  273 F.R.D. 562 (N.D. Cal. 2011) .............................................................................- 7 -

*Cross-Fit, Inc. v. Nat'l Strength & Conditioning Ass'n*,
  2018 WL 3491854 (S.D. Cal. July 18, 2018) ..........................................................- 8 -

*Fosbre v. Las Vegas Sands Corp.*,
  2015 WL 3722496 (D. Nev. June 15, 2015) ...........................................................- 8 -

*Gen. Tel. Co. of Sw. v. Falcon*,
  457 U.S. 147 (1982) ................................................................................................- 5 -

*Holiday Resales, Inc. v. Hartford Cas. Ins. Co.*,
  2008 WL 11343449 (W.D. Wash. Oct. 2, 2008) .....................................................- 9 -

*In re Pharm. Indus. Average Wholesale Price Litig.*,
  588 F.3d 24 (1st Cir. 2009) .....................................................................................- 6 -

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  267 F.R.D. 583 (N.D. Cal. 2010) .............................................................................- 6 -

*Minter v. Wells Fargo Bank, N.A.*,
  280 F.R.D. 244 (D. Md. 2012) ................................................................................- 7 -

*Ms. L. v. U.S Immigr. & Customs Enf't*,
  330 F.R.D. 284 (S.D. Cal. 2019) ............................................................... - 5 -, - 6 -

*Munguia-Brown v. Equity Residential*,
  2021 WL 4951460 (N.D. Cal. Oct. 25, 2021) .........................................................- 7 -

*Oracle USA, Inc. v. Rimini St., Inc.*,
  2015 WL 4508722 (D. Nev. July 23, 2015) ............................................................- 9 -

*Perrigo Co. v. Merial Ltd.*,
  2018 WL 11350563 (N.D. Ga. Apr. 30, 2018) ........................................... - 9 -, - 10 -

*Plymouth Grain Terminals, LLC v. Lansing Grain Co., LLC*,
  2013 WL 12177094 (E.D. Wash. Nov. 21, 2013) ...................................................- 9 -

*Semtech Corp. v. Royal Ins. Co. of Am.*,
  2005 WL 6192906 (C.D. Cal. Sept. 8, 2005) ........................................................- 10 -

*Sitts v. Dairy Farmers of Am., Inc.*,
  2019 WL 3298537 (D. Vt. July 23, 2019) ...............................................................- 9 -

*Wechsler v. Macke Int'l Trade, Inc.*,
  221 F.R.D. 619 (C.D. Cal. 2004) .................................................................................... - 10 -

*WhereverTV, Inc. v. Comcast Cable Commc'ns, LLC*,
  2023 WL 2734332 (M.D. Fla. Mar. 31, 2023) ................................................................. - 9 -

**Rules**

Fed. R. Civ. P. 23 .......................................................................................................................- 6 -

Fed. R. Civ. P. 23(b)(3) ..............................................................................................................- 2 -

Fed. R. Civ. P. 23(c)(1)(C) ............................................................................................... - 2 -, - 5 -

Fed. R. Civ. P. 26(e) ......................................................................................................... - 8 -, - 9 -

Fed. R. Civ. P. 26(e)(1) ..............................................................................................................- 2 -

Fed. R. Civ. P. 26(e)(2) ..............................................................................................................- 8 -

Pursuant to the Court's December 6, 2023 Order (ECF 557), Plaintiffs[1] file this Motion to amend the Damages Class definition and to supplement their expert damages reports.

I. **Introduction**

By this motion, Plaintiffs (collectively) seek to bring current the record and proceedings in advance of trial to ensure Plaintiffs may seek redress for the harms incurred through April 2024—consistent with Plaintiffs' assertions since day one in this case that Defendants' conduct has caused *ongoing* harm.[2]

First, Class Plaintiffs ask the Court to amend the Damages Class definition to bring it up to date on case developments by (i) including damages for prescriptions of generic Xyrem and (ii) extending the class period to April 26, 2024. The Court's May 12, 2023, order certifying the Damages Class included entities that paid and/or provided reimbursement for Xyrem from January 17, 2017, through May 12, 2023. ECF 500 at 28. Since then, class members have continued to incur substantial overcharges stemming from the same conduct at issue. Those damages will go unredressed if the Damages Class definition is not updated.

Second, all Plaintiffs seek leave for their respective damages experts—Dr. Rena Conti, Dr. Leemore Dafny, and Dr. Richard Stoner—to submit supplemental reports (attached as Exhibits A, B, and C respectively) under Rule 26(e)(1) that update their damages analyses to reflect and support the ongoing damages incurred since the preparation of their original reports.[3]

---

[1] Plaintiffs bringing this motion are City of Providence, Rhode Island, UFCW Local 1500 Welfare Fund, New York State Teamsters Council Health and Hospital Fund, Self-Insured Schools of California, Government Employees Health Association, Inc., Ruth Hollman, and A.F. of L. – A.G.C. Building Trades Welfare Plan ("Class Plaintiffs"); United HealthCare Services, Inc. ("United"); Humana Inc. ("Humana"); Molina Healthcare Inc. ("Molina"); and Health Care Services Corp., a Mutual Legal Reserve Company ("HCSC") (collectively "Plaintiffs").

[2] *See, e.g.,* Teamsters Compl., Case No. 5:20-cv-04056, ECF 1 (N.D. Cal. June 18, 2020) ¶¶ 5 ("the plaintiff health plan and all members of the proposed class have paid, and continue to pay, massive overcharges"), 296 (referring to the "supracompetitive prices the plaintiff and members of the classes paid and continue to pay"); United Compl. ¶¶ 75 ("anticompetitive effects of the conduct are still ongoing"), 243 ("UHS's injury consists of having paid and continuing to pay higher prices"), 243 (UHS "continues to be harmed").

[3] Class Plaintiffs also propose to make one additional modification to their damages calculations to more fully account for the January 17, 2017 class period start date, which will have the net effect of reducing estimated damages under certain scenarios.

- 1 -
MOTION TO AMEND THE CLASS DEFINITION AND FOR LEAVE TO SERVE SUPPLEMENTAL EXPERT DAMAGES REPORTS
CASE NO. 20-MD-2966-RS

1    Plaintiffs and Defendants met and conferred and both sides agreed to produce the updated

2    underlying sales and purchase data through April 2024, and did so.

3        The relief requested is proper and necessary to avoid injustice and undue prejudice. As to

4    the class motion, Rule 23(c)(1)(C) and Supreme Court precedent expressly allow the Court to

5    update its class certification order prior to final judgment based on case developments. And the

6    definition of the Damages Class should be amended for two reasons. First, the definition should

7    include generic Xyrem, which was not on the market at the time Plaintiffs moved for class

8    certification on November 17, 2022. As such, Plaintiffs did not seek to include prescriptions of

9    generic Xyrem in the Damages Class, and the Court therefore did include them. The first generic

10   version of Xyrem was released in January 2023 and the Damages Class should be able to pursue

11   damages for generic Xyrem purchases. Second, more than a year has now passed since the Court

12   certified the Damages Class. Because the harms from Defendants' anticompetitive conduct are

13   ongoing and true competition from generic Xyrem will not occur until 2026, class members'

14   damages are continuing to accrue. The class period for the Damages Class should therefore be

15   updated to bring it closer to the trial date.

16       Similarly, the Court should allow all Plaintiffs' damages experts to submit the

17   supplemental reports attached to this Motion to provide updated damages calculations based on

18   the continuing payment of overcharges. To be clear, the damages experts use the exact same

19   damages models as in their prior reports (and in the case of Dr. Conti, her class certification

20   report), and the updates simply input the additional data that has since become available into the

21   models. These updates fall squarely within the proper scope of supplemental reports under Rule

22   26(e)(1). The Court should grant Plaintiffs leave to file them, as is routinely done in cases like

23   this that assert ongoing harms.

24   **II.    Background**

25       **A.    The Court's Class Certification Order.**

26       On May 12, 2023, the Court entered an Order Granting Class Certification that, among

27   other things, certified the following Damages Class under Rule 23(b)(3):

28

> All entities in Arizona, California, Connecticut, District of Columbia, Florida, Hawaii, Iowa, Kansas, Maine, Maryland, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Puerto Rico, Rhode Island, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin that, for consumption by their members, employees, insureds, participants, or beneficiaries, and other than for resale, paid and/or provided reimbursement for some or all the purchase price for Xyrem during the time from January 17, 2017, through and until May 12, 2023.

ECF 500 at 28. In its opinion, the Court rejected Defendants' argument that Plaintiffs were impermissibly expanding the class definition beyond what was included in the CAC by moving the start date of the Class Period to an earlier date, noting that Defendants were on notice and therefore could "hardly complain of any surprise or prejudice from this shift[.]" *Id.* at 23. While Defendants expressed concern that the Class Period would be moved back further, the Court noted that any further modifications would require Plaintiffs to bring a motion to modify the class definition. *Id.* at 24.

### B. Plaintiffs' Experts' Damages Analyses.

On September 29, 2023, Plaintiffs submitted reports from three economists—Dr. Conti (on behalf of Class Plaintiffs), Dr. Dafny (on behalf of United), and Dr. Stoner (on behalf of HCSC, Humana, and Molina)—to provide estimates of damages due to the delayed and restriction of competition from generic versions of Xyrem. Dr. Conti estimated damages through May 12, 2023, the end of the class period as set forth in the Order Granting Class Certification (and the date through which the necessary data was available at the time). Dr. Dafny and Dr. Stoner estimated damages through June 2023 and July 2023, respectively (the dates through which they had the necessary data at the time). Each of the damages experts used standard techniques to estimate damages: comparable "yardstick" products, Defendants' forecasts, and literature and studies concerning the effects of competition in prescription drug markets. Conti Rpt., ECF 655-12, ¶¶ 4, 59-125; Dafny Rpt., ECF 655-21, ¶¶ 96-108; Stoner Rpt., ECF 655-52, ¶¶ 39-73. And each of the experts has calculated damages based on sales of both brand Xyrem and generic Xyrem, and Dr. Dafny and Dr. Stoner also calculated damages based on sales of brand Xywav (which are not included in the Damages Class). Defendants have not sought to

1  exclude the opinions of the damages experts on the grounds that their methodologies are
2  unreliable.[4]

3  Dr. Conti also used the same methodologies in the reports she offered in support of class
4  certification. As the Court explained in its Order Granting Class Certification, "Dr. Conti
5  calculates damages stemming from the alleged delayed entry of generic Xyrem, using the
6  narcolepsy drug Provigil as a 'yardstick' to 'estimate what would have happened absent the
7  alleged anticompetitive conduct.'" ECF 500 at 3 (quoting Conti Rpt. ¶ 106). Defendants filed a
8  *Daubert* motion challenging portions of Dr. Conti's testimony, including her use of Provigil as a
9  yardstick but the Court denied the motion, finding that "Dr. Conti's report provides not only
10 adequate but ample reasons for selecting Provigil." *Id.* at 24-25. Dr. Conti did not calculate
11 generic purchase damages in her class certification report because generic Xyrem had not
12 entered the market yet.

### C. The Court's December 6, 2023 Order.

On December 1, 2023, the parties filed a Joint Case Management Statement in which Plaintiffs asked the Court to set a June 19, 2024, deadline to file any motions to amend the class definition and to supplement expert reports from Plaintiffs' economists concerning impact, damages, and market power. ECF 555 at 7. Defendants opposed the request to set a briefing schedule. *Id.* at 10. On December 6, 2023, the Court entered an order requiring Plaintiffs to file any motion to amend the Damages Class definition or to supplement expert reports by June 19, 2024 (which was later continued to June 28, 2024). ECF 557 at 2. It also ruled that it would be premature to reopen discovery related to, among other things, market power because such discovery would only become relevant if the Court granted this motion. Plaintiffs have therefore not submitted a supplemental report from their market power expert, Dr. Martha Starr, but reserve the right to do so in advance of trial should the Court grant the relief requested in this motion.

---

[4] Jazz has, however, challenged the ability of UHS, HCSC, Humana, and Molina to seek damages based on Xywav purchases (*see* ECF 657-1 (Jazz's motion for summary judgment) at 16-17), and the record basis for an assumption underlying Dr. Dafny's estimate of Xywav-based damages (*see* ECF 659-3 at 2). Plaintiffs have opposed Jazz's motions. *See* ECFs 690-2 at 45-47 and 689-2 at 2-3.

### III. Argument

#### A. The Court Should Amend the Damages Class Definition.

Class Plaintiffs ask the Court to amend the Damages Class definition to (i) include damages for prescriptions of generic Xyrem and (ii) extend the class period to April 26, 2024 (the last date through which the relevant data is available). Class Plaintiffs propose the following amended Damages Class[5], with alterations in red text:

> All entities that paid and/or provided reimbursement for some or all the purchase price for brand or generic Xyrem in Arizona, California, Connecticut, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Maryland, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Puerto Rico, Rhode Island, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin, for consumption by their members, employees, insureds, participants, or beneficiaries, and other than for resale, during the time from January 17, 2017, through and until ~~May 12, 2023~~ April 26, 2024.

The amended definition also reflects a reordering of some of the wording of the definition to make clear that the list of states applies to the location of purchase, and not the location of the entity. This is the understanding of the class definition the parties have been proceeding under.

Rule 23(c)(1)(C) provides that "[a]n order that grants or denies class certification may be altered or amended before final judgment." The Supreme Court has also recognized that class certification orders can be amended as the case progresses. *See Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) ("Even after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation."); *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 479 n.9 (2013) (noting that "certifications are not frozen once made"). Therefore "modification of the class definition falls squarely within the confines of Supreme Court precedent and Rule 23(c)(1)(C), which give courts broad discretion to alter or amend a class definition considering subsequent developments in a case." *Ms. L. v. U.S Immigr. & Customs Enf't*, 330 F.R.D. 284, 292 (S.D. Cal. 2019); *see also In re TFT-LCD (Flat Panel)*

---

[5] The amended Damages Class includes damages related to purchases in Illinois. Although Illinois was not included in the Damages Class set forth in the class certification order, the parties have since stipulated to, and the Court has entered, an order adding Illinois to the Damages Class. ECF 553. The class exclusions remain unchanged.

*Antitrust Litig.*, 267 F.R.D. 583, 591 (N.D. Cal. 2010) (modifying the class definition is appropriate where "the proposed modifications are minor, require no additional discovery, and cause no prejudice to defendants.").

The Damages Class should be modified to include damages for purchases of generic Xyrem because Class Plaintiffs moved for class certification on November 17, 2022 (ECF 352-1) before the first generic Xyrem came to market in January 2023. *Cf. Andrews v. Plains All Am. Pipeline, L.P*, 2019 WL 6647928, at *6 (C.D. Cal. Nov. 22, 2019) ("Courts have permitted modification of a certified class to conform to newly-discovered evidence."); *Ms. L*, 330 F.R.D. at 292 (amending the class definition to reflect subsequent developments in the case). Including generic Xyrem in the Damages Class does not amount to a "new theory" of damages, as Defendants have argued (ECF 555 at 7). Class Plaintiffs have maintained since at least June 2020 that competition would be limited even after the launch of a generic in January 2023 pursuant to the challenged market allocation agreement and that full competition could not occur until the agreements end in December 2025. *E.g.* Teamsters Compl., Case No. 5:20-cv-04056, ECF 1 (N.D. Cal. June 18, 2020) ¶¶ 5, 197, 357, 426. Plaintiffs also identified early in the case that overcharge damages based on Xyrem and generic Xyrem was a relevant discovery topic. ECF 21 at 17.

Including generic purchase damages in the Damages Class will not require the Court to revisit its class certification Order or prejudice Defendants because the central question for both brand and generics Xyrem is whether Defendants engaged in an anticompetitive scheme that resulted in class members paying overcharges. *See In re Pharm. Indus. Average Wholesale Price Litig.*, 588 F.3d 24, 40 (1st Cir. 2009) (court may rely on prior orders in later certifying an "expanded class"); *see also Andrews*, 2019 WL 6647928, at *6 ("[C]ourts have permitted the enlargement of a certified class to include new alleged victims where the new victims excluded from the class definition share common factual circumstances and have the same legal claims."). The Court's prior Rule 23 analysis therefore applies with equal force to generic Xyrem purchases. *See, e.g.*, *Barnes v. AT & T Pension Ben. Plan-NonBargained Program*, 273 F.R.D. 562, 566-69

(N.D. Cal. 2011) (permitting plaintiffs to expand class definition to include additional class members); *Minter v. Wells Fargo Bank, N.A.*, 280 F.R.D. 244, 246 (D. Md. 2012) (similar).

The end of the class definition should also be extended from May 12, 2023, to April 26, 2024, because the current end date for the Damages Class is a reflection of when the Court issued its class certification ruling, but Defendants' alleged conduct is ongoing and therefore damages are continuing to accrue. In *Munguia-Brown v. Equity Residential*, Judge White granted the plaintiffs' request to "modify the Court's order granting certification of the class" because "[p]laintiffs have consistently raised the same claims and causes of action under the same general set of operative facts and on behalf of generally the same people seeking the same relief against the same defendants. The changes in representative plaintiff and the extension of the period for compensation due to the continued implementation of the policy does not change the central theme of this case." 2021 WL 4951460, at *3 (N.D. Cal. Oct. 25, 2021). Extending the end of the class period here similarly will not alter the central themes of this case focusing on Defendants' antitrust violations, and Class Plaintiffs are continuing to pursue overcharge damages.

As with including generic Xyrem purchases in the class definition, extending the class period will not unfairly prejudice Defendants. In the CAC, Plaintiffs originally proposed the following Nationwide Class:

> All persons and entities in the United States and its territories that purchased, paid for and/or provided reimbursement for some or all of the purchase price of Xyrem from Jazz or ESSDS, or any agents, predecessors, or successors of Jazz or ESSDS, other than for resale, during the time period from July 17, 2017, *until the anticompetitive effects of the Defendants' unlawful conduct cease* (the "Class Period").

CAC ¶ 329 (emphasis added).  Defendants have been on notice for years that Plaintiffs are alleging that the anticompetitive effects of the alleged scheme are ongoing and will not cease until after 2025. *See id*. ¶ 8 (noting that "full generic competition" will not commence until December 2025). And because the end date for the current class period was only established by the Court in May 2023 and fact discovery closed in January 2023, the parties proceeded through all of discovery without any specific expectation as to the end of the class period, including that the

class period could extend as far into the future as Defendants' conduct continued to cause harm. The Court should therefore also extend the class period for the Damages Class. *See Fosbre v. Las Vegas Sands Corp.*, 2015 WL 3722496, at *6 (D. Nev. June 15, 2015) (granting motion to expand the class period). Nor would the requested amendments require the reopening of discovery except for in a few, discrete areas that Plaintiffs previewed in the December Case Management Conference Statement. The parties and Express Scripts Specialty Distribution Services (the sole pharmacy that dispenses Xyrem) made supplemental productions of data and other documents in May, in anticipation of this motion, which are incorporated into the proposed supplemental report.

  **B.** **Plaintiffs Should Be Permitted to Submit Supplemental Damages Expert Reports.**

    **1.** **Supplementation to Update Damages Estimates is Warranted**

More than a year has passed since Court's class certification ruling (and initial class period end date of the same day), nearly a year has passed since the June 2023 end date of the prior underlying data used by Non-Class Plaintiffs (as to permit the modeling and preparation of the damages reports), and nearly nine months have passed since Plaintiffs' opening damages reports were served in September 2023. Because it is "understandable that damages may increase and damages assessments may change over time," Plaintiffs should be permitted to supplement their expert damage calculations through April 2024. *Cross-Fit, Inc. v. Nat'l Strength & Conditioning Ass'n*, 2018 WL 3491854, at *11 (S.D. Cal. July 18, 2018).

Rule 26(e) requires experts to submit a supplemental report "if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing" or "as ordered by the court" (Fed. R. Civ. P. 26(e)), but "[a]mended or supplemental expert reports are also permitted where the expert is correcting a damages calculation based on information that was not available when the expert prepared the initial report, as long as the expert does not rely on an entirely new legal theory in correcting his supplementation." *ASC Engineered Sols., LLC v. Island Indus., Inc.*, 2021 WL 2941989, at *2 (W.D. Tenn. July 13, 2021); *accord. Holiday Resales, Inc. v. Hartford Cas. Ins. Co.*, 2008 WL

1  11343449, at *2 (W.D. Wash. Oct. 2, 2008) (finding plaintiff may submit supplemental damages
2  report within 30 days of trial to "update its damages report" without reopening discovery, and
3  indeed had "an obligation to do so" under Rule 26(e)(2)).

4        The proposed reports from Plaintiffs' damages experts fall squarely within the permissible
5  scope of a supplemental report under Rule 26(e). They each use the same methodology—*i.e.*,
6  their "yardstick" models, analysis of Defendants' forecasts, and academic literature and studies—
7  outlined in their initial reports, just with the additional data that has become available.[6] Courts
8  have repeatedly held that providing updated damages calculations based on newly available data
9  using the same methodology the expert used earlier is a proper supplement. *See, e.g.*,
10 *WhereverTV, Inc. v. Comcast Cable Commc'ns, LLC*, 2023 WL 2734332, at *2 (M.D. Fla. Mar.
11 31, 2023) (noting the "supplemental report appears to merely update Mr. Elam's prior
12 calculations through the date of trial" and finding it permissible); *Perrigo Co. v. Merial Ltd.*, 2018
13 WL 11350563, at *7 (N.D. Ga. Apr. 30, 2018) ("The changes Dr. Schwartz made based on
14 revised data do not change his underlying model of the use of a scaling factor to calculate
15 damages, it only changes which set of data is entered into the model. . . ."); *Oracle USA, Inc. v.
16 Rimini St., Inc.*, 2015 WL 4508722, at *2 (D. Nev. July 23, 2015) ("Oracle only seeks to
17 supplement its expert report for additional damages attributable to those customers to account for
18 the nearly two and a half years of continued litigation between the parties during which Rimini
19 allegedly continued to engage in copyright infringement."); *Plymouth Grain Terminals, LLC v.
20 Lansing Grain Co., LLC*, 2013 WL 12177094, at *3 (E.D. Wash. Nov. 21, 2013) (supplemental
21 report was proper where the expert used the same analysis as prior reports but simply substituted
22 newly available data).

23       The supplemental expert reports will cause Defendants no prejudice. *See Sitts v. Dairy
24 Farmers of Am., Inc.*, 2019 WL 3298537, at *6 (D. Vt. July 23, 2019) ("Defendants face a higher
25 damages calculation if the Supplemental Report is allowed is not the type of prejudice that weighs
26 in favor" of not excluding a supplemental report). Defendants already had a chance to depose Dr.

---

[6] Dr. Conti has also reduced her damages calculations to account for entities that have excluded themselves from the Damages Class. This data was only partially available in September 2023 when Dr. Conti submitted her opening merits report.

- 9 -

Conti, Dr. Dafny, and Dr. Stoner and respond to their opinions and challenge their models and methodologies. *See, e.g.*, ECF 500 at 13-14 (discussing Defendants' criticisms of the yardstick methodology); *see also Perrigo*, 2018 WL 11350563, at *7 ("Merial had the opportunity to depose Dr. Schwartz about how his scaling-factor model works. . . .").

Because the supplemental reports will simply update existing methodologies, there would be no need for further depositions. Even if it is somehow necessary for Defendants to further depose the experts there is sufficient time to do so because the trial will not begin until October 28, 2024. ECF 540; *see Semtech Corp. v. Royal Ins. Co. of Am.*, 2005 WL 6192906, at *2 (C.D. Cal. Sept. 8, 2005) (opposing party was not prejudiced by new calculations since it had more than a month to prepare for trial).[7] And Defendants cannot claim to be surprised that Plaintiffs are requesting to supplement their reports—the experts explicitly reserved the right to update their conclusions if more data became available (Conti Rpt., ECF 655-12, ¶ 4; Dafny Rpt., ECF 655-21, ¶¶ 9, 15; Stoner Rpt., ECF 655-52, ¶ 109) and Plaintiffs have maintained throughout this litigation that they and class members are continuing to pay overcharges because of ongoing Defendants' conduct. *See Wechsler v. Macke Int'l Trade, Inc.*, 221 F.R.D. 619, 622 (C.D. Cal. 2004) (noting that expert's initial report sufficiently put other party on notice by reserving the right to update the report based on new information). In addition, with respect to Class Plaintiffs, the supplemental report would go hand-in-hand with amending the Damages Class definition. Though the current definition of the Damages Class does not include purchases of generic Xyrem, in her merits report Dr. Conti modeled damages based on generic Xyrem sales to provide Defendants a full and transparent opportunity to understand and challenge her methodology during expert discovery well prior to the filing of this motion.

The Court should allow Plaintiffs' damages experts to supplement their damages reports.

---

[7] Any claims of prejudice by Defendants would also ring hollow given that they filed a motion to decertify the Damages Class—including two new expert reports—without providing more than 3 days of notice to Plaintiffs and no prior notice to the Court. The filing of that motion has delayed the filings of this motion and other litigation events, and has caused Class Plaintiffs to brief the motion in middle of summary judgment, pretrial proceedings, mediation, and other litigation events scheduled long ago. Defendants cannot feign concern for the case schedule when it comes to Plaintiffs' motion while expressing no regard for the schedule when it comes to their own motion.

### 2. Supplementation Before Trial Will Update the Record on Generic Penetration and Generic Pricing.

As noted above, in connection with this motion the parties agreed to supplement the record with additional data related to the sales and pricing of Xyrem, generic Xyrem, and Xywav. The information was produced in lengthy spreadsheets and the only way for it to be summarized for, and reasonably presented to, the jury is through expert analysis. Thus, in addition to using the updated sales and pricing data as the basis for Plaintiffs' experts' updated damages assessments, Plaintiffs' experts would also summarize that data for the jury. Specifically, the proposed reports summarize the supplemental data on two key issues in the case: (1) the generic penetration rate for Xyrem (*i.e.* the share of prescriptions filled with the generic instead of the brand) since a generic (though importantly, an authorized generic on the market pursuant to the challenged agreement terms) has become available; and (2) the continued pricing of brand and generic Xyrem (and Xywav). As discussed below, there is good cause to allow supplemental expert analysis that summarizes the data related to these two issues.

*Generic Penetration*: Defendants' expert, Dr. Cremieux, argues that absent the challenged conduct and for any potential entry date, the generic penetration rate for Xyrem would have been the same as has been actually observed since the January 2023 launch of Hikma's authorized generic version of Xyrem. Cremieux Rpt., ECF 655-19, ¶¶ 259-63. As part of that opinion, Dr. Cremieux assumed that the generic penetration rate for Xyrem would never have gone above that which existed in the last two months of 2023. *Id*. But the updated data shows that the generic penetration rate has increased significantly in the first few months of 2024. *See* Ex. A (Conti Supp. Rpt.) ¶ 7, Table 1. Plaintiffs' experts should be able to summarize this new information to facilitate its presentation to the jury.

*Price Discounts*: Plaintiffs claim that the restricted nature of generic competition pursuant to the challenged settlement agreements has not resulted in meaningful price competition, to the detriment of Xyrem purchasers such as Plaintiffs and class members. Dr. Conti analyzed pricing data through May 2023 (the last date classwide pricing data was previously available), and Dr. Dafny and Dr. Stoner analyze pricing data for their clients through June 2023 and July 2023,

respectively. Conti Rpt., ECF 655-12, ¶ 3(c); Dafny Rpt., ECF 655-21, ¶¶ 15, 95, 116; Stoner Rpt., ECF 655-52, ¶¶ 80, 90. Dr. Cremieux relied on the same pricing data. Cremieux Rpt., ECF 655-19, ¶¶ 259-67. The recently-produced classwide pricing data shows that, since June 2023, the price of authorized generic Xyrem has *increased* and that the difference in price between authorized generic Xyrem and the brand price before generic entry has *decreased*. Ex. A (Conti Supp. Rpt.) ¶ 9, 10, Tables 2, 3. Plaintiffs should be allowed to present this updated information to the jury in support of their assertions that the challenged agreements have failed to result in meaningful price competition, and to rebut any assertions by Defendants to the contrary.

Defendants can hardly complain about having experts supplement the record with recently produced information. They have repeatedly and unilaterally inserted into the record—after the close of fact discovery—information relevant to ongoing issues in the case. Jazz, for example, included some updated Xyrem sales data with its rebuttal expert reports (on which Dr. Cremieux then relied). And Hikma likewise put into the record in connection with Defendants' rebuttal expert reports additional information related to the "dimer" issue that has become one of the Defendants' central defenses (as seen by their motion for summary judgment, ECF 657-1 at 3-4, 28-30). And Defendants submitted new expert reports in connection with their June 13, 2024, motion for decertification which they had never informed Plaintiffs or the Court that they would file (as compared to this motion, which Plaintiffs raised with the Court over nine months ago). In none of these instances did Defendants seek agreement from Plaintiffs to supplement the record or relief from the Court to do so. Here, by contrast, the supplemental evidence was put into the record pursuant to the agreement of the parties, and Plaintiffs should be allowed to present summaries of that evidence to the jury through the supplemental expert reports and related testimony.

**IV.    Conclusion**

For the reasons set forth above, the Court should amend the Damages Class definition and permit Plaintiffs' damages experts to file supplemental expert reports.

| | | |
|---|---|---|
| 1 | Dated: June 28, 2024 | Respectfully submitted, |
| 2 | | By: /s/ Dena C. Sharp |
| | | Dena C. Sharp (State Bar No. 245869) |
| 3 | | Scott Grzenczyk (State Bar No. 279309) |
| 4 | | Tom Watts (State Bar No. 308853) |
| | | Jordan Isern (State Bar. No. 343159) |
| 5 | | Namita Dhawan (SBN 326639) |
| 6 | | **GIRARD SHARP LLP** |
| | | 601 California Street, Suite 1400 |
| 7 | | San Francisco, CA 94108 |
| | | Tel: (415) 981-4800 |
| 8 | | dsharp@girardsharp.com |
| | | scottg@girardsharp.com |
| 9 | | tomw@girardsharp.com |
| 10 | | jisern@girardsharp.com |
| | | ndhawan@girardsharp.com |
| 11 | | |
| | | By: /s/ Michael M. Buchman |
| 12 | | Michael M. Buchman (*pro hac vice*) |
| 13 | | **MOTLEY RICE LLC** |
| | | 800 Third Avenue, Suite 2401 |
| 14 | | New York, NY 10022 |
| | | Tel: (212) 577-0050 |
| 15 | | mbuchman@motleyrice.com |
| 16 | | *Co-Lead Class Counsel* |
| 17 | | |
| 18 | | By: /s/ Todd M. Schneider |
| | | Todd M. Schneider (State Bar No. 158253) |
| 19 | | Jason H. Kim (State Bar No. 220279) |
| | | Matthew S. Weiler (State Bar No. 236052) |
| 20 | | **SCHNEIDER WALLACE** |
| 21 | | **COTTRELL KONECKY LLP** |
| | | 2000 Powell Street, Suite 1400 |
| 22 | | Emeryville, CA 94608 |
| | | Tel: (415) 421-7100 |
| 23 | | TSchneider@schneiderwallace.com |
| | | KJKim@schneiderwallace.com |
| 24 | | MWeiler@schneiderwallace.com |
| 25 | | |
| | | Peter D. St. Phillip (admitted *pro hac vice*) |
| 26 | | Noelle Ruggiero (admitted *pro hac vice*) |
| | | Uriel Rabinovitz (admitted *pro hac vice*) |
| 27 | | **LOWEY DANNENBERG, P.C.** |
| 28 | | 44 South Broadway, Suite 1100 |
| | | White Plains, NY 10601 |

- 13 -
MOTION TO AMEND THE CLASS DEFINITION AND FOR LEAVE TO SERVE SUPPLEMENTAL EXPERT
DAMAGES REPORTS
CASE NO. 20-MD-2966-RS

| | |
|---|---|
| 1 | Tel: (914) 997-0500 |
| 2 | PStPhillip@lowey.com<br>NRuggiero@lowey.com |
| 3 | URabinovitz@lowey.com |
| 4 | *Attorneys for Plaintiffs Humana Inc.,* |
| 5 | *Molina Healthcare, Inc., and Health Care Service Corp.,* |
| 6 | |
| 7 | By: */s/ Judith A. Zahid*<br>Judith A. Zahid (SBN 215418) |
| 8 | Eric W. Buetzow (SBN 253803)<br>Heather T. Rankie (SBN 268002) |
| 9 | **ZELLE LLP**<br>555 12th Street, Suite 1230 |
| 10 | Oakland, CA 94607<br>Tel: (415) 693-0700 |
| 11 | jzahid@zellelaw.com |
| 12 | ebuetzow@zellelaw.com<br>hrankie@zellelaw.com |
| 13 | |
| 14 | James R. Martin (SBN 173329)<br>Jennifer Duncan Hackett (*pro hac vice*) |
| 15 | **ZELLE LLP**<br>1775 Pennsylvania Avenue, NW, |
| 16 | Suite 375<br>Washington, D.C. 20006 |
| 17 | Tel: (202) 899-4100<br>jmartin@zellelaw.com |
| 18 | jhackett@zellelaw.com |
| 19 | By: */s/ Hamish P.M. Hume* |
| 20 | Hamish P.M. Hume (*pro hac vice*)<br>**BOIES SCHILLER FLEXNER LLP** |
| 21 | 1401 New York Ave, NW<br>Washington, D.C. 20005 |
| 22 | Tel: (202) 237-2727<br>hhume@bsfllp.com |
| 23 | |
| 24 | Beko O. Reblitz-Richardson (SBN 238027)<br>**BOIES SCHILLER FLEXNER LLP** |
| 25 | 44 Montgomery Street, 41st Floor<br>San Francisco, CA 94104 |
| 26 | Tel: (415) 293-6800<br>brichardson@bsfllp.com |
| 27 | |
| 28 | *Attorneys for Plaintiff United HealthCare Services, Inc.* |

- 14 -

MOTION TO AMEND THE CLASS DEFINITION AND FOR LEAVE TO SERVE SUPPLEMENTAL EXPERT DAMAGES REPORTS
CASE NO. 20-MD-2966-RS

**ATTESTATION**

I, Dena C. Sharp, am the ECF User whose identification and password are being used to file this Motion for Class Certification Pursuant to Civil L.R. 5-1(i)(3), I attest under penalty of perjury that concurrence in this filing has been obtained from all counsel.

DATED: June 28, 2024                                /s/ *Dena C. Sharp*
                                                                    Dena C. Sharp

# CERTIFICATE OF SERVICE

I hereby certify that on June 28, 2024, I electronically filed the foregoing document using the CM/ECF system, which will send notification of such filing to all counsel of record registered in the CM/ECF system.

/s/ *Dena C. Sharp*
Dena C. Sharp