United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEW YORK STATE TEAMSTERS COUNCIL HEALTH AND HOSPITAL FUND, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>JAZZ PHARMACEUTICALS, INC., et al.,<br><br>Defendants. | Case No. 20-md-02966-RS<br><br>**ORDER DENYING MOTIONS TO OPT OUT AND FOR RECONSIDERATION** |

## I. INTRODUCTION

A group of Administrative Services Organizations ("ASOs") urges the court to enforce their requests to opt nearly 2,000 Plaintiffs out of the classes in this multi-district litigation, the details of which have been thoroughly explained in prior orders. *See, e.g.*, *In re Xyrem (Sodium Oxybate) Antitrust Litig.*, 555 F. Supp. 3d 829, 836 (N.D. Cal. 2021). An earlier order granted summary judgment against the ASOs. *See In re Xyrem (Sodium Oxybate) Antitrust Litig.,* No. 20-md-02966-RS, 2024 WL 4023561, at *16 (N.D. Cal. Aug. 26, 2024). The ASOs subsequently sought reconsideration of the summary judgment against them in a motion opposed by both Defendants and Plaintiffs. For the reasons explained below, the ASOs' motion to enforce their opt-out requests is denied, as is their motion for reconsideration.

## II. BACKGROUND

Sodium oxybate is a drug prescribed to treat narcolepsy since the 1960s. In this case, sodium oxybate purchasers aver that Jazz Pharmaceuticals, Inc. ("Jazz"), which manufactures the

drug under the brand name Xyrem, conspired with other drug manufacturers to delay market entry of cheaper generic alternatives. After several years of litigation, Plaintiffs reached a settlement with two Defendant drug manufacturers, Amneal Pharmaceuticals LLC and Lupin, Inc. The order approving the settlement certified two classes for continued litigation against Jazz and the remaining defendants. *In re Xyrem (Sodium Oxybate) Antitrust Litig.,* No. 20-md-02966-RS, 2023 WL 3440399, at *15 (N.D. Cal. May 12, 2023). These classes of plaintiffs comprise individual Xyrem consumers as well as health insurance plans, or Third Party Payors ("TPPs"), who allegedly overpaid for the drug. *Id.* (describing certification of a TPP-only Damages Class and an Injunctive Relief Class that includes individual consumers).

To alert potential class members of their rights and options regarding the settlement and continuing litigation, counsel for Plaintiffs sent out a court-approved notice. The notice provided instructions to any class member wishing to "exclude myself from the Certified Damages or Settlement Classes." Long Form Notice, Dkt. No. 511-2 at 7. The instructions stated that "a member of the class" who "wish[ed] to be excluded must submit a written request for exclusion to the Notice Administrator." *Id.* Required information included, among other things, "a statement, signed by you or an authorized representative if you are an entity, that you are a member of the Class and wish to be excluded from the Class." *Id.* The instructions added that any ASOs wishing to opt out any TPP represented by the ASO "must provide a declaration from its authorized representative . . . executed specifically in connection with this litigation, attesting to the entity's authority to opt the [TPP's] claims out of the Damages Class and/or Settlement Class." Notice re: Revisions to Long Form Notice, Dkt. No. 533-1 at 8–9. The court order approving the notice explicitly stated that "Each *Class member* who wishes to be excluded . . . must submit to the Notice Administrator a written statement requesting exclusion from *the class*." June 28, 2023 Order, Dkt. No. 524 at 2 (emphases added).

**A. ASOs Attempt to Exclude Nearly 2,000 Class Members**

On November 27, 2023 (the last day to file exclusion requests), a group of ASOs, including Humana Inc. ("Humana"), Health Care Service Corp. ("HCSC"), Blue Cross Blue

Shield of Florida, Inc. and Health Options, Inc. ("Florida Blue"), and Aetna Inc. ("Aetna") sought to exclude 1,848 TPP plaintiffs from the Settlement and Damages Classes. ASOs Opt-Out Mot., Dkt. No. 571 at 1. These ASOs administer self-funded employer health benefit plans pursuant to "administrative services only" contracts that authorize them to facilitate and monitor the health plans' drug purchases and to seek recoveries for overcharges. *Id.* According to a sworn declaration by an attorney representing all four ASOs, each one submitted requests that identified by name and number the customers it sought to exclude. St. Philip, Jr. Decl., Dkt. No. 571-1 at 2. None of the requests, however, contained written statements by the underlying class members, executed specifically in connection with this litigation, authorizing the ASOs to opt them out. *See* Plaintiffs' Opp., Dkt. No. 579-2–8 (providing copies of each ASOs November 27 opt-out attempt). In notifying the court about the ASOs' requests, Plaintiffs highlighted the fact that "the ASOs that submitted the exclusion requests represent class members and request exclusion on their behalf." Plaintiffs' Notice, Dkt. No. 554 at 1. Anticipating these requests might be invalid, Plaintiffs stated they were "dutifully investigating the ASOs' authority to seek exclusion" so as "[t]o preserve the rights of those class members." *Id.*

Each ASO request for exclusion was soon deemed deficient by the Notice Administrator, as explained in letters dated December 22, 2023. *See* St. Philip, Jr. Decl., Dkt. No. 571-1 at 83 (regarding Aetna's requests); *Id.* at 88 (regarding Florida Blue's requests); *Id.* at 93 (regarding HCSC requests); and *Id.* at 97 (regarding Humana requests). The notices explained two grounds for the Administrator's deficiency finding. First, the ASOs' *en masse* requests "did not include a separate exclusion request for each class member you seek to exclude." *Id.* Second, the requests "did not include a Declaration from an authorized representative of each class member you seek to exclude . . . executed specifically in connection with this litigation, attesting to your authority to opt other class members out of the Class." *Id.*

The ASOs responded to these notices on January 5, 2024 by asserting that their requests *do* "declare that [the ASO] is authorized[.]" *See, e.g.*, St. Philip, Jr. Decl., Dkt. No. 571-1 at 95. The ASOs further claimed that their requests provided "sufficient information to separately identify the

individual entities seeking exclusion." *Id.* They also bemoaned the timeline laid out by the December 22 notices, which had required responses (replete with the necessary individualized authorizations for thousands of TPPs) within two weeks. *Id.* Four days later, instead of correcting the identified deficiencies, the ASOs moved for an order to enforce their exclusion requests. *See, e.g.*, ASOs Opt-Out Mot., Dkt. No. 571. The parties stipulated that the ASO class members would be excluded from the class for the Amneal and Lupin settlements (which reserved settlement funds for ongoing litigation, and not for distribution to class members). April 17, 2024 Order, Dkt. No. 641 at 2–3. As to excluding the class members from the Damages Class, however, the parties deferred resolution to a later date. *Id.*

### B. ASOs Seek Reconsideration of Summary Judgment

In a subsequent motion for summary judgment, Defendants highlighted that the ASOs had not actually paid for Xyrem—they only provided administrative services to TPPs that paid for Xyrem. Asserting that their lack of payment equated to a lack of injury, Defendants contended that the ASOs could not proceed without evidence of authority or standing to sue on the TPPs' behalf, which they had failed to provide. In opposition to that argument, the ASOs[1] cited the court's prior order on a motion to dismiss, which had found that "Class Plaintiffs have Article III standing to represent individuals affected by Xyrem overcharges[.]" *In re Xyrem*, 555 F.Supp.3d at 888. The ASOs also urged the court to defer consideration of the summary judgment motion against them, arguing that the question of who may properly assert the ASO customers' claims in a representative capacity was already pending in connection with their earlier Opt-Out Motion. **[Dkt. No. 690-2 at 49.]** On reply, Defendants clarified their argument by contending that (1) the ASOs lacked standing due to the dearth of evidence that they paid the alleged overcharges for their clients and (2) the ASOs lacked capacity to sue due to the dearth of evidence that their clients had

---

[1] For some reason, the ASOs stopped including Aetna in their midst, as reflected by the brief they filed in opposition to summary judgment (which only referenced Humana, HCSC, and Blue Florida) and by their motion for reconsideration (which likewise drops all references to Aetna). Because Aetna joined in the original motion to enforce exclusion requests, however, this order applies to it as well.

ORDER DENYING MOTIONS TO OPT OUT AND FOR RECONSIDERATION
CASE NO. 20-md-02966-RS
4

authorized them to sue on their behalf. Summary judgment was later granted against the ASOs because they "appear[ed] to lack authority to pursue non-class claims on behalf of ASO clients they purport to represent'" and had failed to "cite any contractual provision granting them authority to sue." *In re Xyrem*, 2024 WL 4023561, at *16 (internal quotation marks omitted).

The ASOs moved for leave to file a motion for reconsideration. Based on the nature of the cases Defendants cited, the ASOs argued that Defendants raised antitrust standing only in their reply brief—after focusing on Article III standing in their original motion—and, thus, that the ASOs had no reason to attach ASO contracts or cite to contract provisions in support of their arguments. Attached to the reconsideration motion, the ASOs provided the following evidence of their purported authority to represent their TPP clients:

- As to HCSC's authority, the ASOs provided a template contract HCSC purportedly uses, which provides that the administrative services provider has authority to pursue antitrust claims on the contracted counterpart's behalf. The identified document, however, is titled "Blue Cross Blue Shield of Illinois," and says nothing about HCSC.
- As to Florida Blue's authority, the ASOs provided a contract with one of its customers that delegated to Florida Blue the customer's right to opt it out of any class action. The ASOs also provided a sworn declaration by a Florida Blue employer attesting that the company has the express or implied authority to initiate litigation on behalf of all its ASO customers.
- As to Humana's authority, the ASOs provided an agreement with one of its clients that provides it the right to file and prosecute legal proceedings against any appropriate party.
- The ASOs did not provide any contracts relating to Aetna's authority to represent TPPs.

The ASOs received leave to file the motion for reconsideration, and the Defendants and Class Plaintiffs subsequently filed their own papers. The Defendants urged the court to deny the motion, explaining that they had asked the ASOs to provide authority to sue on behalf of their clients before the granting of summary judgment, only to be told that such authority was not relevant. The Class Plaintiffs, meanwhile, highlighted Ninth Circuit case law that prohibits mass opt-out requests. In reply, the ASOs requested that the Court defer ruling on their Opt-Out Motion

until after deciding the Reconsideration Motion. They also argued that triable issues of fact remained regarding their contractual authority to recover on behalf of their TPP clients.

### III. LEGAL STANDARD

#### A. Opting Out of a Class

"In the context of a class action predominantly for money damages . . . absence of [an] opt-out violates due process." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 363 (2011). That said, "[t]here is no class action rule, statute, or case that allows a putative class plaintiff or counsel to exercise class rights *en masse*, either by making a class-wide objection or by attempting to effect a group-wide exclusion from an existing class. Indeed, to do so would infringe on the due process rights of the individual class members, who have the right to intelligently and individually choose whether to continue in a suit as class members." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1024 (9th Cir. 1998) (overruled on other grounds by *Wal-Mart Stores*, 564 U.S. 338). "[T]o allow representatives in variously asserted class actions to opt a class out without the permission of individual class members would lead to chaos in the management of class actions." *Id.* (internal quotation marks omitted).

#### B. Moving for Reconsideration

"Reconsideration is an 'extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources.'" *Divino Grp. LLC v. Google LLC*, No. 19-cv-4749-VKD, 2023 WL 218966, at *1 (N.D. Cal. Jan. 17, 2023) (quoting *Kona Enters., Inc. v. Est. of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000)). "Under Rule 54(b), '[r]econsideration is appropriate if the district court is (1) presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law.'" *Denicolo v. Viking Servs.*, No. 19-cv-210-YGR, 2020 WL 6318723, at *1 (N.D. Cal. Oct. 27, 2020) (quoting *Sch. Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993)).

Civil Local Rule 7-9 requires leave of court before moving for reconsideration. For reconsideration under that rule, ASO Providers must show (1) "reasonable diligence in bringing the motion" and, in the absence of new facts or a change in law, (2) "[a] manifest failure by the

1   Court to consider material facts or dispositive legal arguments which were presented to the Court
2   before such interlocutory order." Mere "disagree[ment] with the Court does not render the Court's
3   analysis a manifest failure." *AF Holdings LLC v. Trinh*, No. 12-cv-2393-CRB, 2012 WL
4   6087269, at *1 (N.D. Cal. Dec. 6, 2012). Courts routinely deny motions for reconsideration after
5   granting leave to file them when, "[u]pon closer inspection," it is clear that the movant "ha[s] not
6   satisfied the standard for reconsideration detailed in Civil Local Rule 7-9." *Aquino v. Cnty. of*
7   *Monterey Sheriff's Dep't*, No. 5:14-cv-03387-EJD, 2018 WL 3845718, at *1 (N.D. Cal. Aug. 12,
8   2018); *see also Divino Grp. LLC*, 2023 WL 218966, at *1–2 (denying reconsideration after
9   granting leave because movant had failed to meet the requirements of Local Rule 7-9(b)).

## IV. DISCUSSION

### A. Opt Out Requests

Assuming, for the sake of argument, that the ASOs have standing to attempt to opt out their TPP clients, the motion to enforce the exclusion requests that they filed on behalf of nearly 2,000 absent Plaintiffs would nevertheless be denied. Most obviously, the exclusion requests failed to conform to the notice approval order and the notice itself by not providing declarations "executed specifically in connection with this litigation[] attesting to the [ASOs] authority to opt the [TPP's] claims out of the Damages Class and/or Settlement Class." Notice Re: Revisions to Long Form Notice, Dkt. No. 533-1 at 8–9. *See also* June 28, 2023 Order, Dkt. No. 524 at 2 (affording "each Class member who wishes to be excluded" the ability to opt out by submitting a statement requesting "exclusion from the class"). The language in the order reinforces the language in the notice requiring the evidence of authority to refer to "this litigation" (*i.e.* "the class" in this particular case) and to be provided *by the class member opting out*. In their exclusion requests, however, the ASOs did not provide declarations that their customers executed specifically in connection with this litigation. In fact, the declaration they provided did not even come from a class member—it came from counsel for the ASOs. *See* St. Philip, Jr. Decl., Dkt. No. 571-1.

The ASOs have conceded as much by framing their motion around the idea that the

requirement to submit individualized declarations is unfair (and not ever claiming to have satisfied said requirement). *See* ASOs Opt-Out Mot., Dkt. No. 571 at 8 (acknowledging "not providing individualized declaratory evidence of their authority to exclude" the TPPs they aim to represent). Because the exclusion requests unquestionably failed to conform to the notice and notice approval order, the ASOs' bid to enforce them is not persuasive.

Moreover, the case law that ASOs rely on in support of their arguments is inapposite. *See In re Linerboard Antitrust Litig.*, 223 F.R.D. 357 (E.D. Pa. 2004), *amended* 223 F.R.D. 370. True, that case (from another circuit) involved 140 entities opting out of a class on behalf of themselves and 3,400 other companies. Those opted-out companies, however, were "subsidiary and affiliate companies" of the entities that filed the requests, and the relevant argument concerned whether ownership of an entity is sufficient authority to opt it out of a class. *See id.* at 364. In that context, the court recognized that a party's "reasonable indication of intent to opt out is sufficient." *Id.* at 365. Here, however, there has been no indication of such intent from any of the 2,000 parties (nor their owners) that the ASOs seek to pry away from the case—only the ASOs' *own* assertions of authority to do so. While it may be true that courts use "considerable flexibility" to determine what amounts to a party's effective request to exclude its own holdings, *id.*, that does not mean courts allow parties to opt out completely distinct parties without any word from them. Similarly, citations to cases emphasizing the importance of opt-out procedures being available are besides the point; they *were* available in this instance, and the ASOs simply failed to comply with them.

Also lacking is the ASOs' explanation for why they did not comply with the notice and notice approval order requirements mandating individualized evidence of authority. They claim that coordinating the completion of nearly 2,000 declarations from the various TPPs that use them for administrative services would have been too onerous to manage in the roughly two weeks between the Administrator's deficiency notices and the January 5, 2024 deadline to cure. They should have known that such declarations were necessary, however, since at least June 2023, when the court authorized the final notice and ordered all requesters to provide individualized authority to opt out. The suggestion that the ASOs lacked time to contact their customers and secure the

ORDER DENYING MOTIONS TO OPT OUT AND FOR RECONSIDERATION
CASE NO. 20-md-02966-RS

required authorization is further undermined by the fact that they waited until the last possible date to file the requests in the first place.

The ASOs next contend that individualized authorization is unnecessary to the administration of the class. This is incorrect. Allowing *en masse* opt outs "would infringe on the due process rights of the individual class members, who have the right to intelligently and individually choose whether to continue in a suit as class members." *Hanlon*, 150 F.3d 1024.

Ultimately, the ASOs' best point is its most obvious one—in the world of multi-district litigation, a class plaintiff may be included in a class with no individualized authorization needed, but that same plaintiff may not be opted out of a class without such individualized authority. Though it may be true, this observation does not support excusing the ASOs' procedural noncompliance. The Second Circuit's non-precedential summary order in the matter *in Re: Aggrenox Antitrust Litigation*, 812 Fed.Appx. 26, 29-30 (2d Cir. May 5, 2020) is illuminating in this regard. There, like here, the class notice required that administrative service providers include with their opt-out requests "individualized proof of their authority to do so" in the form of "a declaration from an authorized representative of the Plan attesting to the administrator's authority to op the entity out of the class action settlement." *Id.* at 28. Affirming a district court's application of these requirements, the panel held that such rules "provided certainty about class membership," "preserv[ed] the rights of absent class members," and "protect[ed] the Defendants from duplicative liability." *Id.* at 29. Also persuasive is *In re: Lidoderm Antitrust Litigation,* No. 3:14-md-2521-WHO, ECF 946 (N.D. Cal. Dec. 28, 2017), where a court in this district refused to allow some of these same ASOs, represented by some of the same lawyers, to opt out their customers without individualized declarations in a similar litigation.

### B. Motion for Reconsideration

At any rate, the ASOs bid to re-enter the case through the reconsideration of the summary judgment order is denied. Although they do provide some documents purporting to grant them standing to represent the class members they aim to represent (unlike in the context of their motion to enforce the exclusion requests discussed *supra*), the motion fails to satisfy the high bar

for granting the "extraordinary remedy" of reconsideration. *Divino Grp. LLC*, 2023 WL 218966 at *1.[2]

First and foremost, the ASOs have failed to show "reasonable diligence in bringing the motion." Civil Local Rule 7-9. As discussed *supra*, they have known since June 2023 that they needed to provide the court with individualized authorization from their customers in order to opt those customers out of this MDL. They have instead chosen to argue that such authorization is so unnecessary that they should be allowed to proceed without it. At the summary judgment hearing, counsel for the ASOs urged the court to address their authority through the context of the opt out requests, not summary judgment, demonstrating a keen awareness that the two questions are merely different sides of the same issue—whether the ASOs had been individually authorized to represent their customers in opting them out. That it took until summary judgment in order for them to present any source of authority further underscores the lack of diligence demonstrated in bringing this motion.

Second, the ASOs fail to show "a manifest failure to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order." Civil Local Rule 7-9. The facts they now present, in the form of a handful of exemplar contracts, were not presented to the Court before its summary judgment order. Nor are the documents materially new (or even necessarily material, as discussed *infra*).

In addition to noncompliance with the local rules, the motion for reconsideration is denied because the evidence provided is lacking. The attached contracts that purport to grant standing to

---

[2] The ASOs filed administrative motions to file their reconsideration papers under seal, citing commercially sensitive trade secrets in the agreements they attached that purport to bind TPP clients. See Dkt. Nos. 810, 847. Based on the compelling reasons presented by the ASOs, their administrative motions to file under seal are granted. Of the Motion for Leave to Move for Reconsideration, Dkt. No. 811, the clerk shall maintain under seal the redacted portions of pages 9, 10, and 11. Also to remain under seal are the attached Weiler Declaration and its Exhibits 1, 2, 4, and 5. *See* Dkt. Nos. 811-1, 811-2, 811-3, 811-5, and 811-6. The same reasoning applies to the ASOs' reply in support of reconsideration, of which the clerk shall maintain under seal Page 1, footnotes 2, 3, and 4; Page 3 (the bulleted paragraphs), and Page 4, footnote 10. Dkt. No. 847-1. Also to remain under seal are the following exhibits to the Weiler Declaration attached on reply: Exhibits 1 through 3; Exhibit 6; and Exhibit 8. *See* Dkt. Nos. 847-3, 847-4, 847-5, 847-8, 847-10.

the ASOs do not speak to all 1,848 customers that they seek to exclude.  Several explicitly state that they are either subject to negotiation or signed by one particular customer—demonstrating that they do not reflect all the parties that would be affected by allowing the ASOs to stand in for their customers.  One appears to concern a completely distinct administrative services organization from the one that the ASOs claim that it concerns, containing no reference whatsoever to the identified provider.  There is also no evidence as to Aetna's authority to opt its customers out of the case.  At the end of the day, even if pursuing legal claims such as these might typically fall into an ASO's bucket of responsibilities, the fact remains that in this litigation, *these* ASOs failed to do the ground-level work of securing their customers' authorization and presenting it to the court in a timely manner.  Although the ASOs received leave to file this motion, they have not satisfied the reconsideration standard detailed in Civil Local Rule 7-9 for such motion to be granted.

## V. CONCLUSION

Inasmuch as the ASOs had standing to file their motion to enforce exclusion requests, Dkt. No. 571, it is denied for the reasons explained in this order.  The ASOs' motion for reconsideration of the summary judgment order, Dkt. No. 811, is likewise denied as described *supra*.

**IT IS SO ORDERED**.

Dated: December 16, 2024

_____
RICHARD SEEBORG
Chief United States District Judge