UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: XYREM (SODIUM OXYBATE) ANTITRUST LITIGATION | Case No.  20-md-02966-RS |
| This Document Relates To: All Actions | **ORDER REGARDING PRECLUSION OF EVIDENCE** |

## I. INTRODUCTION

"Attorney-client privilege issues lie at the heart of litigation over a settlement alleged to be anticompetitive when a party's lawyers are the principal negotiators and advisors regarding the agreement." *In re Lidoderm Antitrust Lit.*, No. 14-md-2521-WHO, 2016 WL 4191612, at *1 (N.D. Cal. 2016).  At issue here is a motion by Class Plaintiffs ("Plaintiffs") to preclude certain evidence at trial.  They argue that, because Defendants asserted privilege at various points of this litigation, Defendants must be precluded from introducing evidence about topics related to the privileged communications they previously withheld.  For the reasons explained below, the motion is granted in part and denied in part.

## II. BACKGROUND

Plaintiffs first sought to preclude evidence informed by privileged attorney client communications more than two years ago, when they asked Defendants to identify any subjective beliefs they intended to introduce at trial.  When Defendants did not respond, Plaintiffs moved to compel such production.  The magistrate judge assigned to this case denied that motion in a

1  decision that this court affirmed.  At the time, it was noted that the "specter of implied waiver is

2  not without merit" and that it was "preferable to clarify waiver ahead of trial, rather than resort to

3  'innumerable side bars' during trial."  Order, Dkt. No. 527 at 3 (quoting *In re Zetia (Ezetimibe)*

4  *Antitrust Litig.*, No. 2:18-md-2836, 2022 WL 4354620, at *5 (E.D. Va. Aug;. 15, 2022)).

5          Plaintiffs later redoubled their efforts with a motion for preclusion of evidence about

6  subjective beliefs based on attorney advice.  The motion was denied without prejudice, and the

7  parties were directed to file detailed witness disclosures to inform any renewed preclusion motion.

8          Now filed, Defendants' pretrial witness disclosures are the subject of the instant motion.

9  According to Plaintiffs, eight topics identified in the disclosures touch on evidence over which

10  Defendants have asserted privilege.  These topics include:

11      1.  The business impact of pursuing and resolving the Xyrem patent litigations, as testified to

12          by Bruce Cozadd, Jazz's CEO, and P.J. Honerkamp, Jazz's current Senior Vice President

13          and Head of Jazz's Sleep Business Unit;

14      2.  Jazz's patent litigations against ANDA filers that referenced Xyrem and the resources

15          spent on or budgeted for the litigations, as testified to by Cozadd and Honerkamp;

16      3.  Jazz's decision-making about whether to launch its own authorized generic of Xyrem, as

17          testified to by Honerkamp;

18      4.  Business motivations and perspectives about settling the patent litigation, as testified to by

19          Brian Hoffman, Hikma's former President;

20      5.  Negotiations between Hikma and Jazz about the patent litigation, including the business

21          strategy and considerations relating to the settlement negotiations, as testified to by

22          Hoffman;

23      6.  Hikma's business and commercial understanding of the settlement terms, including

24          whether they allowed Jazz to launch its own AG during the exclusivity period, as testified

25          to by Hoffman;

26      7.  Jazz's legal right to launch its own Xyrem authorized generic, as testified to by

27          Christopher Bonny, former Vice President of Marketing of Hikma Pharmaceuticals USA;

ORDER REGARDING PRECLUSION OF EVIDENCE
CASE NO. 20-md-02966-RS

United States District Court
Northern District of California

United States District Court
Northern District of California

8.  The relative negotiating positions of a reasonable pharmaceutical company in Jazz's position versus reasonable pharmaceutical companies in the position of the ANDA filers at the times of the parties' settlements, as well as whether various terms in the parties' patent litigation settlements were unusual or commercially reasonable, as testified to by Robert Armitage, Defendants' expert on the reasonableness of Jazz's position during settlement.

Plaintiffs say such evidence should be precluded from trial because Defendants have asserted privilege over approximately 17,000 documents related to the patents and their related litigation and another 7,500 documents regarding the settlements.  Defendants also asserted privilege when their witnesses were asked during depositions about subjective beliefs relative to the patents, the infringement litigation, and the related settlements.

### III. LEGAL STANDARD

"The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) (citation omitted).  Yet, "[t]he privilege . . . may not be used both as a sword and a shield" and "may be implicitly waived" if "a party raises a claim which in fairness requires disclosure of the protected communication." *Kaiser Found. Health Plan, Inc. v. Abbott Labs., Inc.*, 552 F.3d 1033, 1042 (9th Cir. 2009) (citing *Chevron Corp. v. Pennzoil Co.,* 974 F.2d 1156, 1162 (9th Cir.1992)).  "In practical terms, this means that parties in litigation may not abuse the privilege by asserting claims the opposing party cannot adequately dispute unless it has access to the privileged materials." *Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003) (*en banc*) (citation omitted). The party asserting the claim is said to have implicitly waived the privilege." *Lidoderm*, 2016 WL 4191612, at *3 (N.D. Cal. 2016) (quoting *Bittaker*, 331 F.3d at 719).  In that instance:

> [The] court imposing the waiver does not order disclosure of the materials categorically; rather, the court directs the party holding the privilege to produce the privileged materials if it wishes to go forward with its claims implicating them.  The court thus gives the holder of the privilege a choice: If you want to litigate this claim, then you must waive your privilege to the extent necessary to give your opponent a fair opportunity to defend against it.

*Bittaker*, 331 F.3d at 720.

United States District Court
Northern District of California

In the Ninth Circuit, determining whether an implied waiver of the attorney-client privilege has occurred requires applying a standard from *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D. Wash. 1975). *See Home Indem. Co. v. Lane Powell Moss & Miller*, 43 F.3d 1322, 1326 (9th Cir. 1995). Under *Hearn*, implied waiver occurs when "(1) the party asserts the privilege as a result of some affirmative act, such as filing suit; (2) through this affirmative act, the asserting party puts the privileged information at issue; and (3) allowing the privilege would deny the opposing party access to information vital to its defense." *Id.* at 1326. A component of the third *Hearn* prong involves examining whether privileged information "would be only one form of indirect evidence." *In re Geotherman Res. Int'l*, 93 F.3d 648, 653 (9th Cir. 1996). In other words, "[t]he information sought must be *directly* relevant and *necessary* to allow a party to fully challenge the claims or defenses of the party asserting the privilege, and the information cannot be secured through other sources." *In re Lidoderm*, 2016 WL 4191612, at *4.

## IV. DISCUSSION

At the outset, Defendants contend that evidentiary preclusion is warranted only if the privilege-holder asserts a claim or defense that "touch[es] directly upon the substance or content of an attorney-client communication." *In re Geotherman Res. Int'l*, 93 F.3d at 653. In their view, merely "discuss[ing] the existence" of privileged communications does not effectuate an implied waiver; only "us[ing] their contents as a basis for any claims or defenses" can do so. *Rich v. Bank of America*, 666 F. App'x 635, 641–42 (9th Cir. 2016).

Plaintiffs correctly reply that a party need not "utilize . . . privileged information to advance a claim or defense" in order for an implied waiver to occur. *Bittaker*, 331 F.3d at 720–21. Instead, the *Hearn* analysis recognizes that, "even if a party does not attempt to make use of a privileged communication, he may waive the privilege if he asserts a factual claim the truth of which can only be assessed by examination of a privileged communication." *Bowne, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 488 (S.D.N.Y. 1993) (discussing a Second Circuit case that relied on *Hearn*). In *Bowne* itself, the court considered a situation in which a defendant's attorneys played "a major role" in the delayed mailing of a proxy statement relevant to a stock purchase

ORDER REGARDING PRECLUSION OF EVIDENCE
CASE NO. 20-md-02966-RS

1    agreement.  *Id.* at 489.  The defendant claimed the delay resulted from actions or inactions by the

2    printer and the mailer, which the court found to have "put into issue the discussions that it had

3    with its attorneys as to the arrangement, preparation and printing of the materials, as well as the

4    actions of the attorneys, including their instructions to other participants concerning the timing and

5    management of the events leading to the mailing[.]"  *Id.*  Because the defendant had asserted

6    privilege over those actions and communications, the situation presented "at least an arguable

7    basis for a waiver," *id.* at 489, and the court therefore ordered the defendant to produce certain

8    documents.  *Id.* at 492.

9         The *Bowne* analysis is a useful guide in this instance, where—based on the robust privilege

10   log and repeated privilege assertions during depositions—Defendants' attorneys appear to have

11   played a major role in the allegedly anticompetitive reverse-payment settlement agreement at the

12   heart of this case.  Defendants having disclosed the intent to discuss their reasons for settling the

13   at-issue litigation, the discussions they had with their attorneys about those same topics are now at

14   issue.  As the *Lidoderm* court observed, "when the record shows that attorney-client advice played

15   a significant role in formulating a party's subjective beliefs on central issues in the case, the

16   adversaries are entitled to disclosure of the otherwise privileged material and to test the credibility

17   of those subjective beliefs."  2016 WL 4191612, at *1. That said, "if a party relies solely on

18   objective evidence, or subjective beliefs derived exclusively from business judgment and

19   experience, the attorney-client privilege should be protected."  *Id.*; *see also Home Indem.*, 43 F.3d

20   at 1327 ("[S]o long as the reasonableness of the settlement amount was defended at trial on

21   objective terms apart from the advice of counsel, the attorney-client privilege would be

22   protected.").

23        Here, like in *Lidoderm*, "[t]here is no doubt—given the question at issue is whether

24   anticompetitive goals motivated [D]efendants' settlement—that business advice and non-legal

25   facts were considered by settlement decisionmakers."  2016 WL 4191612, at *5.  "But if

26   [D]efendants inject their subjective beliefs on specific topics as part of their defense of the []

27   settlement—like a subjective belief that patent litigation is inherently uncertain—where evidence

ORDER REGARDING PRECLUSION OF EVIDENCE
CASE NO.  20-md-02966-RS

United States District Court
Northern District of California

*establishes* that the subjective belief was also informed by attorney advice, it would be unfair to not allow [P]laintiffs access to [D]efendants' contemporaneous attorney-client information to test the veracity of the [D]efendants' justifications in this litigation even though that belief is based *in part* on business judgment and executive experience." *Id.*

The above principles guide the following *Hearn* analysis, which examines each disclosed topic for witness testimony that Plaintiffs seek to preclude. "[I]f defendants choose to rely on a subjective belief identified below that the record shows directly implicate[s] attorney-client advice, defendants will have effectuated an at-issue waiver for that belief and will be required to produce withheld privileged documents" about that belief. *Id.* at 6.

### A. Cozadd and Honerkamp

#### 1. Topic 1

Defendants expect Cozadd and Honerkamp to testify about "the business impact (including market, investor, and financial) of pursuing and resolving the Xyrem patent litigations, including the impact of developments in the litigation on Jazz's business." Dkt. No. 871-2 at 5, 13. Defendants concede that these witnesses may have received legal advice about the litigations but assure the court that their testimony "will not rely on, disclose, or be informed by that advice." *Id.* In opposing Plaintiffs' motion to preclude such testimony, Defendants reiterate that "Cozadd will *not* testify about his 'subjective beliefs' informed by attorney advice regarding the 'merits of the underlying patents and patent infringement litigation' or 'why Jazz sought certain settlement provisions' with the later ANDA filers." Opp. Br. at 9 (quoting Mot. at 7, 12). They also cite *Kaiser* for the proposition that "a defendant in a reverse payment case did not waive privilege by presenting that the reason the company settled was that it did 'not want to undertake the business risk' of launching its generic drug before patent litigation was resolved. *Id.* at 10 (citing 552 F.3d at 1043).

What Defendants elide is the extent to which attorney advice played a role in these witnesses' understanding of the Xyrem patent litigations—unlike in *Kaiser*, where evidence demonstrated that a generic company's decision not to launch its product during pending litigation

was undertaken "without regard to, or even contrary to, what counsel advised." 552 F.3d at 1043. Here, the record shows both Cozadd and Honerkamp confirming in depositions that attorney advice informed their beliefs about the litigations and developments therein. Jazz's counsel, however, instructed them not to answer questions about what their attorneys said based on privilege grounds. *See* Ex. C, Dkt. No. 875-3, at 2–5, 15–16, 24 (excerpts of depositions in which Cozadd and Honerkamp were told not to answer questions about the strengths and weaknesses of Jazz's patents and the witness's subjective views thereof). Jazz's decision to withhold as privileged nearly 17,000 documents about the settlement likewise confirms that attorney advice informed Cozadd and Honerkamp's views about the topic of their expected testimony. To be sure, non-privileged evidence is available on this topic, including pleadings and expert reports from the litigations as well as company-wide emails, communications with industry participants, and reports by certain analysts. Yet "defendants cannot avoid waiver by offering to rely at . . . trial solely on non-legal justifications for certain subjective beliefs." *Lidoderm*, 2016 WL 4191612, at *5. Even if some of their testimony is based solely on business judgments or available analyst reports, "the problem is that in order to test the veracity of [a] belief. . . . other justifications that plaintiffs have shown relied on attorney-client advice are also directly implicated." *Id.* In other words, Defendants are essentially saying "Trust us. The justifications we are putting forward here *are* why we settled." *Id.* To rebut such assertions, Plaintiffs must, in all fairness, "be given access to contemporaneous information regarding those topics that necessarily implicate attorney-client advice." *Id.*

As to Topic 1, Plaintiffs' motion is granted. Unless Defendants agree to produce withheld privilege documents, they are precluded from introducing testimony by Cozadd and Honerkamp regarding their subjective beliefs as to why Jazz settled—including any beliefs about business impacts that implicate attorney-client advice regarding the litigation or the strength of the underlying patents. That said, information about business impact may be admissible if presented through objective evidence, such as pleadings and analyst reports, company-wide emails, or industry communications, without touching on fact witnesses' individual beliefs.

### 2. Topic 2

Defendants also expect Cozadd and Honerkamp to testify about "Jazz's patent litigations against ANDA filers referencing Xyrem (including patent office proceedings)" and "the resources spent on and budgeted for the litigations." Dkt. No. 871-2 at 7, 15. As to this topic, Defendants declare that the witnesses will testify only about objective facts, not their own beliefs. Plaintiffs reply that they have no objection to Jazz's "limit[ing] of the testimony to recitations of the objective facts of the patents and patent litigations." Reply Br. at 10–11. They also have no objection to testimony as to what the actual and expected litigation costs were. *Id.* at 11. Despite waiving the above objections, Plaintiffs reserve the right to object at trial to any testimony that directly states or implies the subjective views of Jazz, Cozadd, or Honerkamp. *Id.* Their motion as to Topic 2 is therefore denied without prejudice.

### 3. Topic 3

Defendants' disclosures reveal that they expect Cozadd and Honerkamp to discuss "Jazz's decision-making regarding whether to launch its own authorized generic of Xyrem." Dkt. No. 871-2 at 8, 16. Plaintiffs apparently seek to preclude only Honerkamp's testimony on this issue. Motion at 4 (mentioning Honerkamp but not Cozadd); *but see* Motion at 11 (requesting preclusion of this topic while noting that Cozadd and Honerkamp both disclosed it). They argue that a critical component of their claims is that Jazz and Hikma negotiated settlement terms that made it highly unlikely Jazz would launch its own generic to compete with Xyrem and Hikma's generic. Because Defendants have withheld as privileged thousands of documents related to that settlement, Plaintiffs contend that Honerkamp must be precluded from testifying about the decision-making that flowed from it.

As the *Lidoderm* court noted, "reasons, explanations, and intentions" for a settlement, like "beliefs about the impact on competition," are topics that "appear to necessarily implicate attorney-client advice because that payment [via the settlement] was a key, if not *the* central, term of the [] settlement negotiated by defendants' counsel." 2016 WL 4191612, at *10. Here, testimony about Jazz's decision-making regarding whether to launch an authorized generic

likewise puts attorney advice at issue.  For example, Jazz asserted privilege when Plaintiffs asked Cozadd about certain settlement provisions and when they asked Honerkamp about how the parties reached the royalty rates in the agreement.  See Ex. C., Dkt. No. 875-3, at 15–16, 24.  Thus, for the same reasons discussed above regarding Topic 1, Plaintiffs' motion to preclude Honerkamp from testifying about Jazz's decision-making regarding whether to launch its own authorized generic of Xyrem is granted.  If Defendants endeavor to introduce such testimony, they will be required to disclose relevant documents previously withheld as privileged.  However, objective evidence about such decision-making may be admissible.

### B.  Hoffman and Bonny

#### 1.  Topics 4 and 5

Defendants' disclosures indicate that Hoffman will testify about "negotiations between Hikma and Jazz regarding the patent litigation, including the business strategy and considerations relating to those settlement negotiations," as well as "Hikma's business motivations and perspectives regarding settlement of the patent litigation."  Dkt. No. 871-2 at 11.  Like Cozadd and Honerkamp, Hoffman was instructed not to answer numerous questions about the patent litigation and his views thereof.  *See generally*, Ex. G, Dkt. No. 875-7 (containing deposition excerpts in which Hoffman invoked privilege to avoid answering questions about Hikma's position in the patent litigation).  Plaintiffs also highlight Hoffman's prior deposition testimony that "legal was one component" of why Hikma settled, Mot. at 16, arguing that he cannot testify about business considerations that combined with legal considerations (over which privilege was asserted) to result in settlement without waiving privilege over those legal considerations.

As the *Lidoderm* court recognized, testimony about whether generic entry would be "early" would directly implicate attorney advice about the patent litigation and settlement.  2016 WL 4191512, at *10.  Even with otherwise objective evidence about the negotiations available, Plaintiffs would suffer manifest unfairness if foreclosed from examining Hoffman's subjective views about why (and when) Hikma settled.  Their motion to preclude Hoffman's testimony on this topic is therefore granted.  If Defendants seek to introduce his subjective views about the

United States District Court
Northern District of California

1  settlement negotiations, they will be required to turn over relevant privileged materials.  As with

2  the topics described above, however, objective evidence as to this topic may be admissible.

3          2.  **Topics 6 and 7**

4       Hoffman is also expected to testify about "Hikma's business and commercial

5  understanding of the agreed-upon settlement terms, including whether the settlement documents

6  allowed for Jazz to launch its own AG during the exclusivity period."  Dkt. No. 871-2 at 12.

7  Bonny, meanwhile, is expected to testify about "Jazz's right to launch its own authorized generic

8  of Xyrem."  Dkt. No. 871-2 at 4.  Plaintiffs do not object to objective descriptions of the

9  settlement terms but maintain their concerns about any testimony regarding Hikma's beliefs—

10  including its view as to whether Jazz would launch its own authorized generic.

11       As to Hoffman, Plaintiffs have sufficiently demonstrated that Defendants asserted

12  attorney-client privilege during relevant portions of his deposition and over certain documents he

13  drafted.  Unless Defendants agree to waive that privilege, it would be manifestly unfair to permit

14  Hoffman to testify as to subjective beliefs about the settlement.  Plaintiffs' motion as to this

15  component of Hoffman's testimony is therefore granted.  As to Bonny, however, Plaintiffs have

16  failed to show that Defendants asserted privilege over his views about Jazz's right to launch its

17  own generic, nor that such views were even informed by counsel.  Plaintiffs' motion as to Bonny's

18  testimony is therefore denied without prejudice.

19      **C.  Armitage and Topic 8**

20       Defendants disclosed that expert witness Armitage will testify about "relative negotiating

21  positions of a reasonable pharmaceutical company in Jazz's position versus reasonable

22  pharmaceutical companies in the position of the ANDA filers at the times of the parties'

23  settlements, as well as whether various terms in the parties' patent litigation settlements were

24  unusual or commercially reasonable."  Dkt. No. 871-2 at 20.  Plaintiffs complain that allowing this

25  expert to discuss what he would expect a company in Hikma's position to say or do is the

26  functional equivalent of allowing him to testify about Hikma's own beliefs—testimony that

27  Plaintiffs could not challenge without access to privileged information.

1        As in *Lidoderm*, Armitage can testify about how a "rational market observer" would have

2   perceived various statements. No. 14-md-2521-WHO, Dkt. No. 795 at 5 (July 17, 2017).  He

3   cannot, however, "suggest[]" what Defendants actually believed.  *Id.* at 4.  As noted in earlier

4   rulings, "[t]he most efficient path here is to defer decisions about state of mind testimony to trial,"

5   allowing for objections as need arises.  Dkt. No. 778 at 27 (citing *In re Juul Lab'ys, Inc. Mktg.,*

6   *Sales Pracs. & Prods. Liab. Litig.*, 2022 WL 1814440, at *14 (N.D. Cal. June 2, 2022)).

7   Plaintiffs' motion is therefore denied without prejudice.

## V. CONCLUSION

9        For the reasons explained above, Plaintiffs' motion is granted in part and denied in part

10  without prejudice.  Although Plaintiffs urge the court to preclude the identified testimony without

11  providing Defendants the opportunity to produce documents previously withheld as privileged,

12  such a path would unfairly hamper Defendants' arguments at trial.  At the same time, allowing

13  such production, Defendants suggest, might trigger the need to continue trial, depending upon the

14  nature of any follow-up depositions of Cozadd, Honerkamp, and Hoffman.  To resolve this issue

15  properly, Defendants are to submit a brief within 7 days of this order electing whether to produce

16  the documents identified in Plaintiff's motion so as to avoid preclusion.  *See* Mot. at 20.  If they

17  agree to produce the documents, the parties are directed to meet and confer regarding what

18  discovery remains necessary.  Given the relatively narrow universe of at-issue topics and

19  witnesses, there is no present need to continue trial.

21  **IT IS SO ORDERED**.

23  Dated: March 19, 2025

_____

RICHARD SEEBORG
Chief United States District Judge