UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: XYREM (SODIUM OXYBATE) ANTITRUST LITIGATION | Case No. 20-md-02966-RS |
| This Document Relates to All Actions | **ORDER RE REQUESTS FOR LEAVE TO MOVE FOR RECONSIDERATION** |

## I. INTRODUCTION

Defendant Jazz Pharmaceuticals has responded to the court's preclusion order. *See* Dkt. No. 915; *see also In re: Xyrem (Sodium Oxybate) Antitrust Lit.*, No. 20-md-02966-RS, 2025 WL 860505, at *1 (N.D. Cal. Mar. 19, 2025). So too has Defendant Hikma Pharmaceuticals. *See* Dkt. No. 916. Jazz states that it will not present the subset of testimony as to Topics 1 and 2 that would put "at issue" privileged information and thus constitute an implied waiver of such privilege. Hikma, meanwhile, agrees to waive privilege as to Topics 4 and 5 inasmuch as they concern its former President's subjective beliefs as to the merits of Jazz's Xyrem patents and, accordingly, his subjective beliefs as to Hikma's likelihood of prevailing against Jazz in the Xyrem patent litigation. In both instances, the Defendants will proffer, *i.e.*, "inform[] the trial court of what counsel expects to prove by the excluded evidence and preserve[] the record so that an appellate court can review the trial court's decision for reversible error." *Heyne v. Caruso*, 69 F.3d 1475, 1481 (9th Cir. 1995).

Although both Defendants have complied with the court's preclusion order by signaling

whether they will forego certain testimony or waive privilege, each also asks for permission to file reconsideration motions about certain aspects of the order. Hikma separately seeks its own preclusion order against Plaintiffs. For the reasons explained below, these requests are denied.

## II. DISCUSSION

The court's prior order in this case elaborated the facts and details relevant to evidentiary preclusion and implied waiver of privilege. *See In re Xyrem*, 2025 WL 860505, at *1–4. At issue here are several discrete topics on which the court ordered Defendants either to waive privilege or forego certain testimony.

### A. Topic 3

Jazz takes issue with the court's order regarding Topic 3—"Jazz's decision-making about whether to launch its own authorized generic of Xyrem, as testified to by" P.J. Honerkamp, Jazz's current Senior Vice President and the Head of Jazz's Sleep Business Unit. It contends that Honerkamp's expected testimony would concern "Jazz's post-settlement decision not to launch its own authorized generic." Dkt. No. 915 at 3. Jazz distinguishes this topic from Topic 1—*i.e.*, the business impact of pursuing and resolving the Xyrem patent litigations—and accuses the court of misunderstanding the parties' contentions and the relevant legal authority. In Jazz's view, Plaintiffs failed to demonstrate that it discussed its intentions to launch an authorized Xyrem generic with counsel.

Not so. First, Jazz's witness disclosures states that Honerkamp would discuss "Jazz's decision-making regarding whether to launch its own authorized generic of Xyrem." *See* Dkt. No. 871-2 at 16. The disclosure did not limit the decision-making to the post-settlement period, as Jazz now suggests. Moreover, Plaintiffs highlighted that, during Honerkamp's deposition, they asked him about "whether Jazz publicly disclosed the quantum of the royalty rates for any of the settlements it had with generic companies." *See* Ex. C., Dkt. No. 875-3, at 24. After he said that Jazz did not disclose those rates publicly, Plaintiffs' counsel asked why. At that point, Honerkamp's counsel instructed him "not to answer to the extent your answer would reveal the contents of any communications that you had with Jazz in-house or outside counsel." *Id.* So

informed, Honerkamp said he could not answer the question. Plaintiffs' counsel subsequently asked whether one of the reasons Jazz chose not to disclose the royalty rates in any of its settlements with generic companies was that it did not want to get sued for antitrust violations; once again, Honerkamp refused to answer, citing privileged communications with counsel.

This evidence demonstrates that Honerkamp testifying about his business judgment and experience regarding Jazz's decision not to launch a generic would necessarily put at issue privileged communications. The royalty rates that Jazz kept confidential implicate its decision not to launch competing generics that might have cut into its royalties, but Honerkamp said he couldn't talk about why Jazz kept those rates secret without waiving privilege. Now Jazz says he should be able to testify about why it didn't launch a generic, citing only his business judgment, without Plaintiffs being allowed to examine the advice Jazz received about disclosing the rate of return from other pharmaceutical companies' generic sales.

Jazz relies on *In re Lidoderm Antitrust Litig.*, No. 14-md-2521-WHO, 2016 WL 4191612, at *19 (N.D. Cal. Aug. 9, 2016) to suggest that the court should "reject[] the notion that rationales driving decisions on launching or not launching an authorized generic necessarily implicate legal advice regarding settlement." Dkt. No. 915 at 4. It is true that, in *Lidoderm*, "there was only thin evidence that defendants discussed any aspect of [their] intent to launch an authorized generic of Lidoderm with their counsel." *In re Lidoderm*, 2016 WL 4191612, at *19. Here, by contrast, there *is* evidence that Jazz discussed with counsel the royalty rates it received from other pharmaceutical companies' generic sales—a topic that is interrelated with whether Jazz thereafter intended to launch its own authorized generic of Xyrem. In this regard, the preclusion order does not rest on the notion that rationales driving decision-making about launching a generic necessarily implicate legal advice regarding settlement; it rests on the fact that Honerkamp cited privilege in refusing to answer questions about royalty rates that directly implicate Jazz's decision not to launch competing generics. As the *Lidoderm* court recognized, when a defendant's position is essentially "Trust us. The justifications we are putting forward here *are* why we settled," the plaintiffs "should be given access to contemporaneous information regarding those topics that

necessarily implicate attorney-client advice." *Id.* at *6.

Jazz also complains that Plaintiffs never asked, specifically, about what Jazz considered when deciding whether to launch its own generic as of January 2023. *See* Dkt. No. 915 at 4 (citing Honerkamp Decl., Dkt. 684-10 at 3–4). Honerkamp has sworn that, had the question been asked, he would have explained that Jazz's focus by January 2023 was on the success of its new Xywav medicine: "By January 2023, it did not make sense for Jazz to commit resources to the launch of an additional Xyrem AG product at a time when Jazz was focused on the success of the clinically superior Xywav product." Honerkamp Decl., Dkt. 684-10 at 4. This is all well and good, but the case is not limited to Jazz's decision-making in January 2023. The settlement at issue occurred in April 2017, years before Xywav's launch. Why didn't Jazz attempt to launch its own Xyrem generic between 2017 and 2023? Honerkamp's declaration doesn't answer that question. Plaintiffs sought to get at that answer by inquiring about the royalty rates Jazz negotiated; Honerkamp refused on privilege grounds. Permitting trial testimony regarding his beliefs about Jazz's business motivations to refrain from launching a generic, without permitting Plaintiffs to inquire about the legal advice that also appears to have informed that decision, would allow the company to wield privilege as a shield and a sword—precisely what it cannot do. Reconsideration is not warranted here, nor is any modification of the preclusion order's instructions regarding Topic 3.

### B. Topics 4 and 5

Hikma complains about the preclusion order inasmuch as it pertains to Topics 4 and 5—"Business motivations and perspectives about settling the patent litigation" and "Negotiations between Hikma and Jazz about the patent litigation, including the business strategy and considerations relating to the settlement negotiations." Hikma disclosed that its former President Brian Hoffmann expected to testify about these matters, but because privilege precluded him from answering numerous questions about the patent litigation and his views of it, Hikma was ordered either to forego that testimony or to turn over relevant privileged materials. *See In re Xyrem*, 2025 WL 860505, at *6.

Hikma now seeks modification of the preclusion order so that Plaintiffs cannot elicit from Hoffmann subjective belief testimony about these two topics. In its view, Plaintiffs "should not be permitted to present Mr. Hoffmann with patent litigation or settlement materials, where Mr. Hoffmann is precluded from testifying about his subjective beliefs on those topics." Dkt. No. 916 at 3. This argument is misguided. As the preclusion order clearly states, "objective evidence as to th[ese] topic[s] may be admissible." *In re Xyrem*, 2025 WL 860505, at *6. Hikma fears Plaintiffs will introduce its mediation statement from the patent litigation—which "positioned Hikma's case in the most favorable light," Dkt. No. 916 at 3—but that document is objective evidence, so it is permissible. Hoffmann may respond by describing that he believed there were significant risks of losing the case, despite the positions Hikma asserted in court. Yet, in the process and in all fairness, Hikma must then also reveal the privileged communications that led him to refuse answering questions about, *inter alia*, Hikma's views regarding its strongest defenses with each of the at-issue patents; his own views about defending the patents; and what legal advice he received in conversations about the litigation. *See generally* Dkt. No. 875-7 at 2–10. It may well be the case that Hoffmann did not think Hikma had a strong patent case even when counsel was telling him that it did. If so, however, the jury ought to know what the lawyers were telling him—information which Hikma has, so far, withheld as privileged. There is no cause for modifying the preclusion order to limit Plaintiffs.[1]

Perhaps sensing that its bid for reconsideration might be denied, Hikma offers to effectuate a limited privilege waiver as to Hoffmann's "subjective beliefs as to the merits of Jazz's Xyrem

---

[1] Hikma cites caselaw supporting the premise that it is unfairly prejudicial to suggest that an opposing party is hiding the truth by asserting privilege. *See, e.g.*, *Park W. Galleries Inc. v. Glob. Fine Art Registry, LLC*, 2010 WL 11520485, at *10 (E.D. Mich. Aug. 16, 2010). Although this concept may hold water, it does not support Hikma's bid to prevent Plaintiffs from examining Hoffmann's beliefs about the patent litigation. At trial, if Plaintiffs appear to be "elicit[ing] privilege objections for the sole purpose of invoking a privilege objection," *see In re Lidoderm Antitrust Litig.*, No. 3:14-md-02521-WJO, 2018 WL 7814761, at *5 (N.D. Cal. Feb. 7, 2018), the court will address it at that time. This issue may well be solved by Hikma's agreement to disclose some privileged materials—a decision which will enable Hikma to elicit testimony rebutting the adverse inferences it fears Plaintiffs will draw.

patents and, accordingly, Mr. Hoffmann's subjective beliefs as to Hikma's likelihood of prevailing against Jazz in the Xyrem patent litigation." Dkt. No. 916 at 4. Apparently, this narrowly tailored waiver will involve producing a subset of the 1,959 documents Plaintiffs identified in their motion. Hikma believes that such waiver will permit Plaintiffs to examine Hoffmann about the mediation statement such that Hoffmann could respond fully and accurately about his subjective beliefs regarding the patent litigation, and then Plaintiffs could follow up by delving into privileged advice he received on that topic.

Plaintiffs are directed to respond to Hikma's offer of a narrow waiver within seven days of this order.

### C. Topic 6

Hikma also seeks leave to file for reconsideration as to Topic 6, which concerns Hoffmann's subjective beliefs as to "whether the settlement documents allowed for Jazz to launch its own AG during the exclusivity period." Dkt. No. 871-2 at 12. It contends that Plaintiffs failed to establish that Hoffmann relied on privileged advice for his beliefs about this topic, highlighting that the chart Plaintiffs provided does not identify Topic 6 as being at issue in any of Hoffmann's deposition testimony.

Labelling aside, this contention fails to persuade. Plaintiffs established that Hoffmann's views about the settlement documents, and his understanding of why Hikma settled, were informed by counsel in communications that Hikma has withheld as privileged. *See* Dkt. No. 875-7 at 8–9, 9–10. A key component of those documents and Hoffmann's understanding necessarily involves the degree to which the settlement enabled Jazz to launch its own AG during the exclusivity period. If Hoffmann is to testify about his understanding on that issue, Hikma must, in all fairness, divulge the privileged communications that informed such understanding. There is no cause for reconsideration.

### III. CONCLUSION

As explained above, leave to file motions to reconsider is denied. Jazz is to refrain from introducing subjective belief evidence as to Topic 3. Plaintiffs are not precluded from asking

Hoffmann about Topics 4 and 5, but they are to respond to Hikma's offer of a limited privilege waiver within seven days of this order.

**IT IS SO ORDERED**.

Dated: March 28, 2025

_____
RICHARD SEEBORG
Chief United States District Judge

ORDER RE REQUESTS FOR LEAVE TO MOVE FOR RECONSIDERATION
CASE NO. 20-md-02966-RS