[*Submitting counsel on signature page*]

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: XYREM (SODIUM OXYBATE) ANTITRUST LITIGATION | Case No. 3:20-md-02966-RS-SVK |
| | **DEFENDANTS' STATEMENT REGARDING TRIAL STRUCTURE** |
| This Document Relates to: | |
| All Actions | Judge:     Chief Judge Richard Seeborg |
| | Date:      April 9, 2025 |
| | Time:      10:00 a.m. |
| | Courtroom: Courtroom 3, 17th Floor |

**TABLE OF CONTENTS**

STATEMENT OF ISSUES .................................................................................................... iv

INTRODUCTION ................................................................................................................... 1

ARGUMENT ........................................................................................................................... 2

   I.   Holding Two Trials Is Inefficient, Unfair, and Burdensome. ................................. 2

      *A.*  *Class Plaintiffs' Proposal Is Inefficient* ............................................... 3

      *B.*  *Class Plaintiffs' Proposal Would Prejudice Defendants* ..................... 5

      *C.*  *Continued Consolidation Does Not Prejudice Class Plaintiffs* ......................... 8

  II.  Bifurcating the Amount of Damages from Liability with a Brief Pause Provides Benefits, Including an Additional Opportunity for Settlement. ........................................... 12

CONCLUSION ...................................................................................................................... 14

# TABLE OF AUTHORITIES

*Aetna v. Jazz Pharms.*, No. 22CV010951 (Cal. Sup. Ct.), Tentative Ruling, June 4, 2024 .......... 7

*Am. Ad Mgmt., Inc. v. GTE Corp.*, 92 F.3d 781 (9th Cir. 1996)........................................ 8

*Am. Steel & Stairways, Inc. v. Lexington Ins. Co.*, 2013 WL 4425704 (N.D. Cal. Aug. 14, 2013) ........................................................................................................................... 3

*Aoki v. Gilbert*, 2015 WL 5734626 (E.D. Cal. Sept. 29, 2015) ....................................... 5

*Bowoto v. Chevron Corp.*, 2008 WL 2074401 (N.D. Cal. May 15, 2008) ................................. 12

*Callahan v. A.E.V., Inc.*, 182 F.3d 237 (3d Cir. 1999)................................................. 13

*Danner v. Himmelfarb*, 858 F.2d 515 (9th Cir. 1988) ................................................. 3

*Datel Holdins LTD. v. Microsoft Corp.*, 2010 WL 3910344 (N.D. Cal. Oct. 4, 2010) ................. 7

*De Anda v. City of Long Beach*, 7 F.3d 1418 (9th Cir. 1993)........................................ 12

*Hensel Phelps Const. Co. v. Tig Ins. Co.*, 2013 WL 12137101 (C.D. Cal. Oct. 29, 2013) ........... 3

*In re Brand Name Prescription Drugs Antitrust Litigation*, 1995 WL 399684 (N.D. Ill. July 7, 1995) ....................................................................................................... 11

*In re Brooklyn Navy Yard Asbestos Litig.*, 971 F.2d 831 (2d Cir. 1992)...................................... 11

*In re Cambrian Holding Co.*, 110 F.4th 889 (6th Cir. 2024)............................................. 6

*In re Generic Pharm. Pricing Antitrust Litig.*, 338 F. Supp. 3d 404 (E.D. Pa. 2018) ................. 11

*In re Lidoderm Antitrust Litig.*, No. 3:14-md-2521 (N.D. Cal.) ...................................... 13

*In re Loestrin 24 Fe Antitrust Litig.*, No. 13-md-2472 (D.R.I.)...................................... 13

*In re Mushroom Direct Purchaser Antitrust Litigation*, 2019 WL 13161415 (E.D. Pa. July 30, 2019) ....................................................................................................... 10

*In re Nexium Antitrust Litig.*, No. 1:12-md-02409 (D. Mass.) ........................................ 9, 10, 13

*In re Opana ER Antitrust Litig.*, No. 1:14-cv-10150 (N.D. Ill.) ...................................... 10, 13

*In re Processed Eggs Products Antitrust Litigation*, No. 08-md-2002 (E.D. Pa. 2017).............. 10

*In re Sortwell, Inc.*, 2011 WL 4896475 (N.D. Cal. Oct. 12, 2011)................................... 3

*In re TFT-LCD Antitrust Litig.*, 2012 WL 4858836 (N.D. Cal. Oct. 11, 2012) ....................... 6

*In re TFT-LCD Antitrust Litig.*, 820 F. Supp. 2d 1055 (N.D. Cal. 2011) ............................ 8

*Jones v. Nat'l R.R. Passenger Corp.*, 2018 WL 6606247 (N.D. Cal. Dec. 17, 2018) .................. 3

*Liberty Mut. Ins. Co. v. Hawaiya Techs., Inc.*, 2021 WL 54503 (D. Haw. Jan. 6, 2021)............... 6

*Martinez v. County of Alameda*, 2023 WL 7194873 (N.D. Cal. Nov. 1, 2023)............................. 3

*McCullough v. Xerox Corp.*, 2015 WL 7258462 (N.D. Cal. Nov. 17, 2015) ........................... 3, 5

*MySpace, Inc. v. Graphon Corp.*, 732 F. Supp. 2d 915 (N.D. Cal. 2010) ................................... 12

*Onyx Pharm., Inc. v. Bayer Corp.*, 2011 WL 4527402 (N.D. Cal. Sept. 21, 2011) ...................... 4

*Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 330–31 (1979)....................................................... 6

*Pierce v. County of Orange*, 526 F.3d 1190 (9th Cir. 2008)........................................................ 2

*Richardson v. Marsh*, 481 U.S. 200 (1987) ............................................................................... 10

*The Jeanery, Inc. v. James Jeans, Inc.*, 849 F.2d 1148 (9th Cir. 1988)......................................... 4

*UFCW Local 1776 v. Teikoku Pharma USA, Inc.*, 74 F. Supp. 3d 1052, 1065 (N.D. Cal. 2014) ......... 4

*Willis v. Vasquez*, 648 F. App'x 720 (9th Cir. 2016) .................................................................. 5

*Zhu v. UCBH Holdings, Inc.*, 682 F. Supp. 2d 1049 (N.D. Cal. 2010)........................................... 2

**OTHER AUTHORITIES**

Wright & Miller, Fed. Prac. & Proc. (3d Ed.)........................................................................ 3, 12

*Model Jury Instructions in Civil Antitrust Cases*, American Bar Association (2016)................. 12

1

## STATEMENT OF ISSUES

2        1.     Whether severance of Class Plaintiffs and Opt-Out Plaintiffs' claims against

3  Defendants is appropriate where severance would demand two separate trials with two separate juries

4  and delay the ultimate resolution of claims against Defendants, while a consolidated trial poses

5  minimal risk of juror confusion.

6        2.     Whether, in the event that Defendants were found liable to Plaintiffs, this Court should

7  afford the parties one last opportunity to settle their claims by instituting a day-long pause between

8  the liability and damages phases of trial, while maintaining the same jury.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# INTRODUCTION

At the March 17, 2025 Pretrial Conference, the Court expressed its preference for this case to proceed as "one trial, one time, with [the currently scheduled] block of time." Mar. 17 2025 Hr'g Tr. 20:15–16. Defendants share that preference. The parties have expected a consolidated trial since September 2022, when this Court consolidated Plaintiffs Humana, Molina, and HCSC ("Opt-Out Plaintiffs") into this multidistrict litigation, alongside the cases brought by Class Plaintiffs, "for all purposes, *including for trial*." ECF 318 ¶ 1 (emphasis added). That consolidation has served judicial economy and minimized prejudice to the parties.

With about two months left to trial, Class Plaintiffs now seek to end these efficiencies. They posit that continued consolidation would lead to juror confusion because Class Plaintiffs have settled their claims against Jazz, but Opt-Out Plaintiffs have not. Class Plaintiffs—alone—urge the Court to hold two different trials, at two different times, before two different juries. Under their proposal, Class Plaintiffs would bump Opt-Out Plaintiffs and Jazz from the trial currently scheduled on May 19, 2025, leaving Opt-Out Plaintiffs, Jazz, and Hikma to try nearly identical claims, in this same Court, before a different jury, at some unspecified time in the future.

Class Plaintiffs' proposal should be rejected—it is inefficient, prejudicial, and unnecessary. The evidence, witnesses, exhibits, claims, and defenses would be nearly identical in the two proposed trials. After all, Class Plaintiffs' antitrust conspiracy claims against Hikma are identical to those that Opt-Out Plaintiffs assert against Hikma and Jazz. Opt-Out Plaintiffs' additional unilateral conduct claim against Jazz does not alter this analysis. First, as Defendants argued in the jury instruction briefing, that claim should not be presented to a jury anyway. Second, there is minimal risk of juror confusion from the additional unilateral conduct claim. Jurors need not be informed of any discrepancy between claims brought by the Class and Opt-Out Plaintiffs to decide this case, and any perceived confusion can be alleviated with simple jury instructions. Third, much of the same evidence related to the unilateral conduct claim would likely be introduced in a trial between just Class Plaintiffs and Hikma anyway. Class Plaintiffs' proposal is, therefore, inconvenient, prejudicial, and a waste of time for the Court, the second set of jurors, Defendants, Opt-Out Plaintiffs, and the witnesses. It should be denied.

Defendants, on the other hand, propose a traditional trial structure—one trial, one jury—with just one tweak: Defendants propose the trial be divided into two phases. In Phase 1, the jury would hear evidence on and then determine liability. If the jury returned a liability verdict, then, after a one-day break, the parties would proceed to a single-day Phase 2: presenting evidence on the calculation of damages. The brevity of the pause would allow the parties to try the case within the 50 total hours (25 per side) allotted by the Court while keeping the same jury. The split would serve two purposes. First, if Plaintiffs lose on liability, the split would obviate the need for putting on damages evidence altogether, thereby slightly shortening the trial. Second, in the event that Plaintiffs were to win on liability, the day-long détente between phases would give the parties another opportunity to settle their dispute (thereby eliminating the damages phase, post-trial proceedings, and appeal). In the interest of finally resolving this case, Defendants propose a trial structure that is best able to lead to a timely, efficient, and fair resolution of the claims before this Court.

## ARGUMENT

### I.     Holding Two Trials Is Inefficient, Unfair, and Burdensome.

Courts have broad discretion to consolidate actions, *Pierce v. County of Orange*, 526 F.3d 1190, 1203 (9th Cir. 2008), and exercise that discretion by "weigh[ing] the interest of judicial convenience against the potential for delay, confusion, and prejudice." *Zhu v. UCBH Holdings, Inc.*, 682 F. Supp. 2d 1049, 1052 (N.D. Cal. 2010). In September 2022, the Court exercised its discretion and consolidated "for all purposes, *including for trial*," the cases filed by Opt-Out Plaintiffs Humana, Molina, and HCSC into the multi-district litigation made up of cases originally brought by the Class Plaintiffs. ECF 318 ¶ 1 (emphasis added). The parties have litigated this case ever since on the premise that trial would be consolidated. Not until earlier this month did Class Plaintiffs first raise the idea of severing the trial in their case against Hikma from the Opt-Out Plaintiffs' case against both Defendants.

Class Plaintiffs contend that their recent settlement in principle with Jazz changed things. It did not: Class Plaintiffs' remaining claims against Hikma largely overlap with the claims the Opt-Out Plaintiffs assert against both Jazz and Hikma. Class Plaintiffs bear the burden of showing that

such severance[1] is warranted.  *See Jones v. Nat'l R.R. Passenger Corp.*, 2018 WL 6606247, at *4 (N.D. Cal. Dec. 17, 2018).  That burden is heavy—severance "is the exception rather than the rule of normal trial procedure."  *In re Sortwell, Inc.*, 2011 WL 4896475, at *2 (N.D. Cal. Oct. 12, 2011) (citation omitted).  "The Court must also consider prejudice to Defendants."  *Martinez v. County of Alameda*, 2023 WL 7194873, at *5 (N.D. Cal. Nov. 1, 2023).  Class Plaintiffs cannot meet that burden where severance would mean two trials, before two separate juries, hearing much of the same evidence, from the same witnesses, with the same exhibits, and deciding almost entirely the same issues.

Class Plaintiffs' proposal is inefficient, prejudicial, and unnecessary.  Rather than resolve these claims piecemeal over two trials, Defendants ask this Court to deny Class Plaintiffs' motion to sever and proceed with the currently scheduled consolidated trial on May 19.

### A.  Class Plaintiffs' Proposal Is Inefficient

Splitting this case into two trials would impose significant costs, with no countervailing benefit.  Class Plaintiffs' proposal requires empaneling two separate juries, which is inherently inefficient.  *See* Wright & Miller, 9A Fed. Prac. & Proc. § 2391 (3d ed.) (describing use of a single jury as the "certainly . . . safer course" and "better and preferred practice").  Using a single jury, by contrast, avoids repetitive jury selection and reeducation.  *McCullough v. Xerox Corp.*, 2015 WL 7258462, at *2 (N.D. Cal. Nov. 17, 2015) (refusing to separate the plaintiffs' causes of action into two trials because "[b]y necessarily empaneling two separate juries, there is only a risk of duplication and waste of judicial and public resources").

Moreover, separate trials for Class Plaintiffs and Opt-Out Plaintiffs would cover the same evidence, witnesses, and claims.  As a result, Class Plaintiffs' proposal would "lead to unnecessary repetition in evidence and arguments."  *Am. Steel & Stairways, Inc. v. Lexington Ins. Co.*, 2013 WL

---

[1] The terms "bifurcation" and "severance" are occasionally used interchangeably to refer to splitting a case into multiple trials within the same action.  *Hensel Phelps Const. Co. v. Tig Ins. Co.*, 2013 WL 12137101, at *6 (C.D. Cal. Oct. 29, 2013) ("[T]he term 'sever' can be used to refer either to separate actions or separate trials and can also be referred to as bifurcation."); *cf., e.g., Danner v. Himmelfarb*, 858 F.2d 515, 522 (9th Cir. 1988) (discussing the district court's use of Rule 42(b) to "sever[] . . . cross-claims for separate trial").  For ease of reference and to avoid confusion with the bifurcation of damages discussion below, Class Plaintiffs' proposal for a separate trial against Hikma will be referred to as "severance."

4425704, at *3 (N.D. Cal. Aug. 14, 2013). Although Class Plaintiffs have settled their claims against Jazz (in principle, subject to Court approval), their remaining claims against Hikma are fully encompassed by the claims that Opt-Out Plaintiffs continue to assert against both Jazz and Hikma: (1) conspiracy to violate state antitrust laws in relation to the Jazz-Hikma settlement agreement, and (2) conspiracy among Jazz, Hikma, Amneal, Lupin, and Par to violate state antitrust laws related to their settlements. The evidence required to prove conspiracy against Hikma alone is duplicative of the evidence required to prove conspiracy against both Jazz and Hikma. Both a Class Plaintiff jury and an Opt-Out Plaintiff jury would, therefore, have to hear evidence on and determine many of the same issues, including:

- Whether the Jazz-Hikma patent litigation settlement contained a "reverse payment";
- Whether the Jazz-Hikma settlement was unreasonably anticompetitive;
- Whether Hikma would have launched a generic Xyrem before January 1, 2023 had the Jazz-Hikma settlement not occurred; and
- Whether Jazz would have won the underlying patent litigation.

See *UFCW Local 1776 v. Teikoku Pharma USA, Inc.*, 74 F. Supp. 3d 1052, 1065 (N.D. Cal. 2014) (listing elements of a "reverse payment" antitrust conspiracy).

Class Plaintiffs and Opt-Out Plaintiffs' joint witness list underscores the similarities between their cases. Class Plaintiffs and Opt-Out Plaintiffs jointly listed 48 of 50 witnesses. *See* ECF 871-1. The list includes current Jazz employees, nearly all of whom would be within the Court's subpoena power in a Hikma-only trial. The only two witnesses that Class Plaintiffs and Opt-Out Plaintiffs did not jointly list were their respective damages experts. *See* ECF 871-1 at 5, 8. Likewise, preliminary exhibit lists and deposition designations submitted by Class Plaintiffs and Opt-Out Plaintiffs have been filed jointly, with the exception of a handful of plaintiff-specific exhibits pertaining to damages.[2] Such repetitive testimony is inherently inefficient. *See Onyx Pharm., Inc. v. Bayer Corp.*, 2011 WL

---

[2] Ostensibly, as a result of the settlement, Class Plaintiffs may no longer seek to join Opt-Out Plaintiffs in calling certain of their expert witnesses, like Martin Lessem and Elaine Morrato, whose reports are only relevant to Opt-Out Plaintiffs' unilateral conduct claim. Regardless, Plaintiffs' witnesses and exhibits largely center on the conspiracy claims.

4527402, at *4 (N.D. Cal. Sept. 21, 2011) (finding severance inefficient where "[s]ome witnesses would . . . have to testify twice").

Airing these overlapping claims over two separate trials would not serve judicial economy. Rather, it would needlessly require the Court to call two sets of jurors and for the Court, the parties, and the witnesses to sit through the evidence twice. Class Plaintiffs' proposal "would create inconvenience without benefit." *McCullough*, 2015 WL 7258462, at *2.

### B. Class Plaintiffs' Proposal Would Prejudice Defendants

Not only would Class Plaintiffs' proposal waste judicial resources, but the duplication described above would unfairly prejudice Defendants by requiring them to dedicate resources to a repetitive second trial. Class Plaintiffs' proposal demands that Hikma defend itself before this Court twice: once against Class Plaintiffs and—regardless of whether Hikma wins that trial—for a second time on the same claims against the Opt-Out Plaintiffs. Although Jazz would not technically be a defendant in a trial against Class Plaintiffs, a trial about an agreement between Hikma and Jazz necessarily implicates Jazz witnesses, and requiring those individuals to testify multiple times would unduly prejudice Jazz. *See Willis v. Vasquez*, 648 F. App'x 720, 722 (9th Cir. 2016) (affirming denial of motion to sever claims against two categories of defendants because "the overlap in the evidence used to prove [the plaintiff's] claims against" two sets of defendants rendered severance "costly and unnecessary").

The unnecessary delay caused by the duplicative trials would also prejudice Defendants.[3] Plaintiffs' unsubstantiated accusations have hung over Defendants' heads for five years, and Defendants are eager to resolve them once and for all. Severance at the eleventh hour would require the Court to calendar a second jury trial, guaranteeing further delay before final resolution. Such delay is inherently prejudicial. *Aoki v. Gilbert*, 2015 WL 5734626, at *6 (E.D. Cal. Sept. 29, 2015) ("[P]rejudice . . . may simply amount to unfair delay of the final disposition of the matter." (citation omitted)).

---

[3] Notably, although Class Plaintiffs are the only party in favor of two trials, they are not volunteering to have their trial against Hikma be the second trial.

Class Plaintiffs' proposal is also prejudicial because it risks inconsistent verdicts. *Cf. Liberty Mut. Ins. Co. v. Hawaiya Techs., Inc.*, 2021 WL 54503, at *3 (D. Haw. Jan. 6, 2021) ("Here, the majority of the evidence relating to the fraudulent transfer claim is also central to the dispute in this case between Liberty Mutual and the HTI Defendants. Two separate trials would increase expense, cause duplication of evidence, and potentially create inconsistent verdicts."). The overlapping claims and duplicative evidence render this concern more than theoretical. By way of example, as noted above, in both a Hikma-only trial with Class Plaintiffs and a Hikma-and-Jazz trial with Opt-Out Plaintiffs, a key jury issue will be whether the Jazz-Hikma patent litigation settlement constituted a "reverse payment." If the cases are tried separately, one jury could find that the settlement did constitute a "reverse payment," whereas the other could find that it did not. That means that in the same jurisdiction, before the same judge, on the same exact bilateral agreement between the same two defendants, two opposite findings would exist.

For Hikma, these inconsistent verdict concerns are uniquely prejudicial. If Hikma achieves a favorable verdict against Class Plaintiffs, Hikma will still be forced to defend itself again against Opt-Out Plaintiffs. If Hikma does not prevail, Opt-Out Plaintiffs will undoubtedly attempt to use that outcome to estop Hikma from litigating the issues again—making all the same arguments about overlap in evidence and claims that make a severed trial unnecessary and inefficient here. To be clear, Opt-Out plaintiffs should not benefit from issue preclusion resulting from a Class Plaintiff win. *See, e.g.*, *In re TFT-LCD Antitrust Litig.*, 2012 WL 4858836, at *1, 4–5 (N.D. Cal. Oct. 11, 2012); *see also Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 330–31 (1979). But that issue will not be resolved at this early stage. *See, e.g.*, *In re Cambrian Holding Co.*, 110 F.4th 889, 897–98 (6th Cir. 2024) (holding it is typically the second court that "gets to decide whether the first judgment precludes claims or issues raised in the second case"). Where the parties have litigated the case together and prepared for trial together until the Class Plaintiffs' belated self-serving proposal, it would be particularly prejudicial to force Hikma to unnecessarily take the risk of being unable to defend itself against Opt-Outs Plaintiff' claims while at the same time guaranteeing an unnecessary second trial in the event of a Hikma victory.

During the March 17 Pretrial Conference, Class Plaintiffs attempted to downplay the prejudice of multiple trials, arguing that Defendants must already defend themselves against claims against "many" other opt-out plaintiffs that seek to try their claims separately. Mar. 17, 2025 Hr'g Tr. 14:16–24. "Many" is a stretch—but the fact that Defendants may face up to two additional trials is in no way a justification for adding a third. A consolidated trial before this Court would resolve all related claims against Defendants to be tried in this Court. All that would remain are claims from two plaintiffs who have opted out of the class and this District: BCBS Florida, which has expressed an intent to be remanded for trial in the Middle District of Florida, and Aetna, which filed a separate case in California state court. But BCBS Florida and Aetna have not been on track to go to trial with Class Plaintiffs for over two years; for the reasons set forth below, BCBS Florida and Aetna's cases against Defendants do not pose the same kind of drain on witness time and company resources as two cases before this Court would.

*First*, a trial against BCBS Florida in the Middle District of Florida would implicate fewer fact witnesses than a second trial before this Court. Plaintiffs' joint witness list includes numerous former employees of Jazz that reside in the San Francisco Bay Area. As a result, many are within the trial subpoena power of this Court, but not that of the Middle District of Florida.

*Second*, in the Aetna case, the parties are engaged in jurisdictional discovery. *Aetna v. Jazz Pharms., Inc.*, No. 22CV010951 (Cal. Sup. Ct.), Tentative Ruling, June 4, 2024. At the conclusion of discovery, Hikma plans to file a renewed motion to quash service of summons for lack of personal jurisdiction. Depending on the outcome, it is quite possible that Aetna's claims against Hikma would be resolved long before Hikma would try its case.

*Third*, trials in the Aetna and BCBS Florida cases have yet to be scheduled; there will be ample time for BCBS Florida and Aetna to potentially resolve their claims in the shadow of an earlier trial before this Court.

Because Class Plaintiffs' proposal would unfairly prejudice Defendants, the Court should deny it. *See Datel Holdins LTD. v. Microsoft Corp.*, 2010 WL 3910344, at *2 (N.D. Cal. Oct. 4, 2010) ("[Severance] should be ordered only when the separation will result in judicial economy and will not unduly prejudice any party.").

### C. Continued Consolidation Does Not Prejudice Class Plaintiffs

At the March 17 Pretrial Conference, Class Plaintiffs argued that a trial between Defendants, Class Plaintiffs, and Opt-Out Plaintiffs would pose "an insurmountable and incurable juror confusion issue." Mar. 17, 2025 Hr'g Tr. 14:1–4. Class Plaintiffs' concerns are exaggerated. A consolidated trial can be administered without juror confusion.

#### 1. There is no risk of juror confusion

Plaintiffs specifically argued that the juror confusion would occur because the jury would need to "pars[e] the evidence as to one defendant versus the other." Mar. 17, 2025 Hr'g Tr. 14:1–4. But no such parsing would be required. There is no reason for jurors even to be told that Jazz and Class Plaintiffs resolved their claims. And if jurors were told at some point that Class Plaintiffs do not have pending claims against Jazz, there is no reason to believe that jury instructions cannot effectively resolve any purported confusion from proceeding with the consolidated trial.

Participants in an anticompetitive conspiracy are "jointly and severally liable for actions taken in furtherance of the conspiracy." *In re TFT-LCD Antitrust Litig.*, 820 F. Supp. 2d 1055, 1059 (N.D. Cal. 2011) (citations omitted). As a result, antitrust conspiracy claims turn on the reasonableness of an *agreement*, not the specific intent or conduct of a particular *defendant* that entered into the agreement. *See Am. Ad Mgmt., Inc. v. GTE Corp.*, 92 F.3d 781, 788 (9th Cir. 1996) (listing elements of an antitrust conspiracy).

The parties' proposed verdict forms show how this principle would play out before the jury. None of the parties' proposed verdict forms present questions that would ask that jurors parse out liability between Jazz and Hikma. Defendants' proposal would ask jurors to determine whether the patent settlement between Jazz and Hikma "included a 'reverse payment' from Jazz to Hikma so that Hikma would delay its entry into the market and Jazz could thereby avoid the risk of generic competition." ECF 889-4, Question No. 2(a). And Plaintiffs' proposal would ask jurors to determine whether "Jazz and Hikma enter[ed] into an agreement that unreasonably restrained trade for Xyrem in the U.S." ECF 888-4, Question No. 2. These questions focus on the terms of the agreement, not on the specific intent or conduct of each defendant. Jurors do not have the option to give different answers for Jazz and Hikma; the only possible answers are "Yes" and "No." Whatever that answer

is, it relies on the same proof from both Class Plaintiffs and Opt-Out Plaintiffs. To that end, the answer resolves Class Plaintiffs' claims against Hikma in the same way that it resolves Opt-Out Plaintiffs' claims against both Defendants.

Damages do not require any kind of individualized inquiry as to Jazz and Hikma, either. Because damages against Defendants are jointly and severally liable, the damages inquiry centers on overcharges paid by Plaintiffs, irrespective of each Defendant's role in the alleged conspiracy. To that end, neither verdict form asks jurors to quantify injuries caused by Jazz compared to those caused by Hikma. Class Plaintiffs' verdict form asks whether Class Plaintiffs and Opt-Out Plaintiffs "incur[red] some overcharges as a result of the violation(s)" that jurors identified. ECF 888-4, Questions No. 5–6. Likewise, Defendants' proposal asks whether Defendants' conduct "caused any one or more" of Plaintiffs to "pay some amount more for Xyrem and/or generic Xyrem than they would have paid if generic entry had not been delayed." ECF 889-4, Question No. 6. The answers to these questions depend on *Plaintiffs'* injuries, which, if proven, would stem from the *agreement* between Jazz and Hikma, not each Defendant's independent conduct.

Lastly, although Opt-Out Plaintiffs' remaining unilateral conduct claim against Jazz faces its own issues, *see* ECF 889-1 at 14–17 (explaining why Opt-Out Plaintiffs "cannot take their monopolization claim to the jury" (capitalization omitted)), those issues do not demand that jurors be informed of any resolution of claims between Jazz and Class Plaintiffs. To be sure, in a consolidated trial, Opt-Out Plaintiffs' unilateral conduct claim (if permitted to proceed) could foreseeably prejudice Hikma to the extent that jurors incorrectly blame Hikma for Jazz's unilateral conduct. But confusion on this point, if any, is inherent to *any* trial in which Jazz and Hikma are tried together, regardless of whether Class Plaintiffs are present. Moreover, it is prejudice against *Hikma*, not Class Plaintiffs.

Even if jurors needed for some reason to be told that Class Plaintiffs do not have pending claims against Jazz, there is no reason to believe that jury instructions cannot effectively resolve any purported confusion that would occur. That is particularly true in the case of settlement, which occurs often (including in "reverse payment" cases like this one). In *In re Nexium Antitrust Litigation*, for example, one of the defendants, Teva, settled near the end of trial. The parties had advanced

arguments relevant only to claims against Teva, and certain documents had been "admitted only as to Teva." 1:12-md-02409 (D. Mass. Dec. 11, 2014), ECF 1432 at 68:14–16. To cure any resultant confusion, the court instructed the jurors that exhibits admitted as to Teva were "out" of the case and explained that the verdict form would have "fewer questions." *Id.* at 4:16, 19–20. And in the Opana ER "reverse payment" trial, the generic Impax settled on the fifth day of trial, after argument and some evidence about and against it. *In re Opana ER Antitrust Litig.*, No. 1:14-cv-10150, ECF 1017, (N.D. Ill. June 24, 2022) at 847:10–13. The jurors were told, pursuant to Seventh Circuit Pattern Instruction 1.26, that Impax was "no longer a defendant in this case," that they "should not consider any claims against Impax," and that they should "not speculate on the reasons" why Impax was out of the case. *Id.* at 855:17–20. Complex litigation routinely demands that jurors reach a verdict even under complex arrangements, and jurors are presumed to understand the instructions given along the way. *Cf. Richardson v. Marsh*, 481 U.S. 200, 206 (1987) ("Ordinarily, a witness whose testimony is introduced at a joint trial is not considered to be a witness 'against' a defendant if the jury is instructed to consider that testimony only against a codefendant. This accords with the almost invariable assumption of the law that jurors follow their instructions.").

### 2. *Class Plaintiffs' examples of severance are readily distinguishable*

In conferrals in advance of briefing, Class Plaintiffs disclosed three cases that they claim support their proposal for separate trials. These cases hinged on issues not present here and, for that reason, are readily distinguishable.

In *In re Processed Eggs Products Antitrust Litigation*, there were three groups of plaintiffs, each with different claims and sets of proof. *See* No. 08-md-2002, ECF 1491 (E.D. Pa. Feb. 2, 2017) at 7; *id.* ECF 1493 at 2–3. These distinctions were compounded by a complicated network of settlements; whereas this case has only two remaining defendants, *Processed Eggs* had thirteen. Different coalitions of those defendants had settled with each plaintiff—the direct purchaser plaintiffs had settled their claims against all but three defendants, whereas the other sets of plaintiffs had claims remaining against six and seven defendants. *See id.* ECF 1491 at 2–3. With so many parties involved, a consolidated trial would be understandably unwieldy. This problem is not present here, where there are two Defendants and two groups of Plaintiffs.

- 10 -

1       In *In re Mushroom Direct Purchaser Antitrust Litigation*, 2019 WL 13161415 (E.D. Pa. July

2   30, 2019), the court denied a motion to consolidate an upcoming trial with an opt-out defendant that

3   had recently joined the case.  The court did so because waiting for the new defendant to complete

4   discovery would have delayed trial, thereby prejudicing defendants that were trial-ready.  *Id.* at *1

5   n.2.  Here, Opt-Out Plaintiffs' claims were consolidated with Class Plaintiffs' early in the litigation,

6   and have been on the same track to trial ever since.  Continued consolidation would not cause delay

7   as it did in *Mushroom Direct Purchaser*; rather, continued consolidation *prevents* delay.  *Mushroom*

8   *Direct Purchaser* also references potential confusion because, in light of some defendants' settlement

9   with certain plaintiffs, consolidated trial would require jurors "to parse out which claims and evidence"

10  are specific to defendants.  *Id.*  However, as explained *supra*, such parsing is unnecessary here.

11      In *In re Brand Name Prescription Drugs Antitrust Litigation*, 1995 WL 399684, at *1 (N.D.

12  Ill. July 7, 1995), defendants moved to consolidate over 100 cases into one trial.  The court denied

13  the motion, reasoning that there were "significant differences in the parties and theories involved in

14  the pending actions," as evidenced by the existence of three distinct groups of plaintiffs with different

15  claims, each of which had an entirely different set of defendants.  *Id.*  By contrast, Class Plaintiffs

16  claims entirely overlap Opt-Out Plaintiffs' claims, and, in light of the smaller number of cases, there

17  is no concern that any "party's individual rights" would be "lost in the shadow of a towering mass

18  litigation."  *Id.* at *2 (quoting *In re Brooklyn Navy Yard Asbestos Litig.*, 971 F.2d 831, 853 (2d Cir.

19  1992)).

20      Plaintiffs also provided Defendants *In re Generic Pharmaceuticals Pricing Antitrust*

21  *Litigation* as an example of a case in which different sets of plaintiffs will try the case separately.

22  2:16-md-02724, ECF 3282 (E.D. Pa. Mar. 13, 2025).  *Generic Pharmaceuticals* is a multidistrict

23  litigation that is orders of magnitude larger than this case.  It consolidates numerous separate class

24  actions and dozens of sets of plaintiffs (including over 40 state attorneys general) alleging that dozens

25  of pharmaceutical company defendants fixed prices for hundreds of different drugs.  *See generally In*

26  *re Generic Pharm. Pricing Antitrust Litig.*, 338 F. Supp. 3d 404 (E.D. Pa. 2018).  Such a trial, if

27  consolidated, would be wholly impractical.  Unlike this case, a consolidated trial in *Generic*

28  *Pharmaceuticals* was never contemplated—let alone scheduled.

## II.    Bifurcating the Amount of Damages from Liability with a Brief Pause Provides Benefits, Including an Additional Opportunity for Settlement.

Federal Rule of Civil Procedure 42(b) allows a court to bifurcate a trial into multiple phases for "convenience, to avoid prejudice, or to expedite and economize" proceedings.  Fed. R. Civ. P. 42(b).  "Whether and how to bifurcate trials is a matter left within the sound discretion of the district court."  *MySpace, Inc. v. Graphon Corp.*, 732 F. Supp. 2d 915, 917 (N.D. Cal. 2010).  In deciding whether to bifurcate claims or issues, courts consider "factors such as convenience, prejudice, judicial economy and whether the issues are clearly separable."  *Bowoto v. Chevron Corp.*, 2008 WL 2074401, at *1 (N.D. Cal. May 15, 2008).  "The separation of issues of liability from those relating to damages is an obvious use for Federal Rule 42(b).  Logically, the existence of liability must be resolved before damages are considered."  Wright & Miller, 9A Fed. Prac. & Proc. § 2390 (3d ed.); *see also De Anda v. City of Long Beach*, 7 F.3d 1418, 1421 (9th Cir. 1993) ("It is clear that Rule 42(b) gives courts the authority to separate trials into liability and damage phases.").

Defendants propose a single trial, with one jury, in two phases.  In Phase 1, all parties would try liability.  If the jury were to return a liability verdict, then the parties would take a brief (no longer than one day) break to discuss settlement.  Assuming the parties did not settle, the trial would proceed to Phase 2, in which the same jury would hear evidence on damages.  Class Plaintiffs propose a similar, but slightly different bifurcation structure.  On bifurcation, Class Plaintiffs propose that all Plaintiffs present evidence relating to violation, causation, and class-only damages.  A verdict from Class Plaintiffs' proposed Phase 1 would therefore cover (1) liability to Class Plaintiffs, (2) liability to Opt-Out Plaintiffs, and (3) damages to Class Plaintiffs.  In Phase 2, Class Plaintiffs propose having Opt-Out Plaintiffs present evidence of their antitrust injuries and associated damages and the jury return a verdict as to those issues.

Defendants' approach has several advantages.  Bifurcating trial by liability and damages may obviate the need for a separate damages phase altogether.  If the jurors find Defendants not liable, the parties would not have to introduce (and the jury will not have to hear and deliberate on) evidence of damages, cutting overall trial time.  In the event the jury did find Defendants liable, the short break between the liability and damages phases would give the parties an additional opportunity to settle,

- 12 -

which also would obviate the need for a separate damages phase (as well as post-trial proceedings and appeal).

Assuming a separate damages phase is necessary, Defendants' proposal would not require duplicative testimony because, in addition to not having to educate a new jury, liability is analytically distinct from the numerical calculation of the extent of alleged damages. *See Callahan v. A.E.V., Inc.*, 182 F.3d 237, 259 (3d Cir. 1999) (noting "proof of fact of damage and proof of the actual amount of damages are two distinct steps" in an antitrust action); Instruction 6.A.1, *Model Jury Instructions in Civil Antitrust Cases*, American Bar Association (2016) ("[Y]ou cannot consider the amount of damage unless and until you have concluded that plaintiff has established that it was in fact injured."); *id.* 6.B.1 ("If you reach a verdict for defendant on the issue of liability, you should not consider the issue of damages.").  In this case, Defendants expect that evidence regarding damages, if necessary, would involve only testimony from three expert witnesses: (1) Pierre Cremieux (for Defendants), (2) Rena Conti (for Class Plaintiffs), and (3) Robert Stoner (for Opt-Out Plaintiffs).  Only one witness (Pierre Cremieux) would testify in both phases, and his testimony as to liability would not overlap with his testimony on damages.  Moreover, because these phases are two parts of the same trial, the parties would simply reserve a portion of their allotted 25 hours for the damages phase. Finally, Defendants expect that all three damages experts would take no longer than a single day to testify on damages in the event of a liability verdict.

Defendants' proposal is more efficient because a trial on liability could completely eliminate the need to introduce *any* damages evidence.  Defendants' proposal also aligns with how courts in similar cases have structured trial. *See, e.g.*, *In re Opana ER Antitrust Litig.*, No. 14 C 10150, ECF 793 (N.D. Ill. April 21, 2022); *In re Lidoderm Antitrust Litig.*, No. 3:14-md-2521, ECF 912 (N.D. Cal. Nov. 13, 2017); *In re Nexium Antitrust Litig.*, No. 1:12-md-02409, ECF 846 (D. Mass. Jan. 21, 2014); *In re Loestrin 24 Fe Antitrust Litig.*, No. 13-md-2472, Text Order (D.R.I. Oct. 4, 2019). Because Defendants' proposal is easily administrable and maximizes efficiency, the Court should bifurcate trial into a liability and damages phase.

1

**CONCLUSION**

2

For the foregoing reasons, Defendants request that this Court proceed with the scheduled trial

3

date of Defendants, Class Plaintiffs, and Opt-Out Plaintiffs on May 19, 2025, and that the Court

4

bifurcate the liability and damages phases of trial.

5

Dated: March 28, 2025                    Respectfully submitted,

6

By: */s/ Jeffrey Faucette*                By: */s/ Jack E. Pace III*

7

Jeffrey Faucette (State Bar No. 193066)   Jack E. Pace III (*pro hac vice*)
**SKAGGS FAUCETTE LLP**                   **WHITE & CASE LLP**

8

Four Embarcadero Center                   1221 Avenue of the Americas
Suite 1400 PMB #72                        New York, NY 10020

9

San Francisco, CA 94111                   Telephone: (212) 819-8200
Tel: (415) 295-1197                       Fax: (212) 354-8113

10

Fax: (888) 980-6547                       jpace@whitecase.com
jeff@skaggsfaucette.com

11

                                          Kathryn J. Mims (*pro hac vice*)

12

By: */s/ Heidi K. Hubbard*                Jaclyn Phillips (*pro hac vice*)
Heidi K. Hubbard (*pro hac vice*)         **WHITE & CASE LLP**

13

Stanley E. Fisher (*pro hac vice*)        701 Thirteenth Street, NW
Benjamin M. Greenblum (*pro hac vice*)    Washington, D.C. 20005

14

Alexander S. Zolan (*pro hac vice*)       Telephone: (202) 626-3600
Teagan J. Gregory (*pro hac vice*)        Fax: (202) 639-9355

15

Lauren H. Uhlig (*pro hac vice*)          kmims@whitecase.com
**WILLIAMS & CONNOLLY LLP**               jaclyn.phillips@whitecase.com

16

680 Maine Avenue, S.W.

17

Washington, D.C. 20024                    Jeremy Kent Ostrander (SBN 233489)
Tel: (202) 434-5000                       **WHITE & CASE LLP**

18

Fax: (202) 434-5029                       3000 El Camino Real
hhubbard@wc.com                           2 Palo Alto Square, Suite 900

19

sfisher@wc.com                            Palo Alto, CA 94306-2109
bgreenblum@wc.com                         Tel: (650) 213-0375

20

azolan@wc.com                             Fax: (650) 213-8158
tgregory@wc.com                           jostrander@whitecase.com

21

luhlig@wc.com

22

                                          *Attorneys for Defendants Hikma*

23

*Attorneys for Defendants Jazz*           *Pharmaceuticals USA Inc., Hikma*
*Pharmaceuticals, Inc., Jazz Pharmaceuticals*   *Pharmaceuticals PLC, Eurohealth (U.S.A.),*

24

*Ireland Limited, and Jazz Pharmaceuticals*   *Inc., Roxane Laboratories, Inc., and*
*Public Limited Company*                  *West-Ward Pharmaceuticals Corp.*

25

26

27

28

**FILER'S ATTESTATION**

I, Alexander S. Zolan, am the docket user whose identification and password are being used to file Defendants' Statement Regarding Trial Structure.  In compliance with Local Rule 5-1(i)(3), I hereby attest that all signatories hereto concur in this filing.

*/s/ Alexander S. Zolan*