1    *[Submitting Counsel on Signature Page]*

2

3

4

5

6

7

8

9    **UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
10    **SAN FRANCISCO DIVISION**

11

| | |
|---|---|
| IN RE: XYREM (SODIUM OXYBATE) ANTITRUST LITIGATION | Case No. 3:20-md-02966-RS |
| | **CLASS PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITH HIKMA** |
| THIS FILING RELATES TO: CLASS ACTION CASES | **MOTION HEARING** |
| | Date:         TBD |
| | Time:         TBD |
| | Courtroom:  3, 17th Floor |
| | Honorable Richard Seeborg |

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

Plaintiffs' Notice of Motion & Motion for Preliminary Approval of Class Action Settlement
Case No. 3:20-md-02966-RS

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL ............................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ....................................................... 3

I.    INTRODUCTION .................................................................................................... 3

II.   PROCEDURAL HISTORY ....................................................................................... 4

    A.    The MDL.................................................................................................. 4

    B.    Discovery ................................................................................................ 5

    C.    Class Certification and *Daubert*............................................................ 5

    D.    Experts, Summary Judgment, and *Daubert* ......................................... 6

    E.    Trial Preparations ................................................................................... 6

    F.    Settlement................................................................................................ 7

III.  THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT. .............. 8

    A.    Legal Standard ........................................................................................ 8

    B.    Certification of the Proposed Settlement Class is Likely....................... 10

        1.    The Proposed Settlement Class Satisfies Rule 23(a)'s Requirements. ...... 11

            a.    Numerosity ...................................................................... 11

            b.    Commonality.................................................................... 11

            c.    Typicality ........................................................................ 12

            d.    Adequacy......................................................................... 13

        2.    The Proposed Settlement Class Satisfies Rule 23(b)(3)'s Requirements. . 14

            a.    Predominance.................................................................. 14

            b.    Superiority....................................................................... 15

        3.    The Proposed Settlement Class Satisfies Other Procedural Guidelines..... 16

    C.    The Court Should Preliminarily Approve the Settlement. ........................ 18

        1.    Procedural Considerations ................................................................. 18

            a.    Adequate Representation of the Class............................. 19

            b.    Arm's Length Negotiations.............................................. 19

         2.    Substantive Considerations ............................................................... 20

            a.    Strength of Class Plaintiffs' Case and Risks of Continued Litigation ......................................................... 21

i

Plaintiffs' Notice of Motion & Motion for Preliminary Approval of Hikma Class Action Settlement
Case No. 3:20-md-02966-RS

|  |  | b. | The Settlement Provides Adequate Relief to the Proposed Settlement Class ............................................................... 22 |
|  |  | c. | Attorneys' Fees, Expenses, and Service Awards ........................ 23 |
|  |  | d. | Equitable Treatment of Class Members ....................................... 24 |
|  |  | e. | The Released Claims Are Consistent with Those Pled ................ 25 |
|  |  | f. | Supplemental Agreements ............................................................ 25 |
|  |  | g. | Reversion ..................................................................................... 26 |
|  |  | h. | Past Distributions ........................................................................ 26 |

IV.   THE NOTICE PLAN SHOULD BE APPROVED ............................................ 26

V.    THE COURT SHOULD APPOINT THE NOTICE AND CLAIMS ADMINISTRATOR AND THE ESCROW AGENT TO MAINTAIN THE SETTLEMENT FUND ........................................................................................ 28

VI.   THE COURT SHOULD APPROVE THE PAYMENT OF INITIAL EXPENSES PRIOR TO FINAL APPROVAL ...................................................... 29

VII.  THE COURT SHOULD SET A FINAL APPROVAL SCHEDULE ............... 30

VIII. CONCLUSION .................................................................................................. 30

1

## TABLE OF AUTHORITIES

2

**CASES**

3   *Alaska Airlines v. United Airlines*,
        948 F.2d 536 (9th Cir. 1991) ....................................................................................... 15
4
    *Aldapa v. Fowler Packing Co. Inc.*,
5       2016 WL 1073252 (E.D. Cal. Mar. 18, 2016) ............................................................. 27

6   *Amchem Products, Inc. v. Windsor*,
        521 U.S. 591 (1997) .............................................................................................. 13, 15
7
    *Baird v. BlackRock Institutional Tr. Co., N.A.*,
8       2021 WL 5991060 (N.D. Cal. July 12, 2021) ............................................................. 25

9   *Boston Retirement System v. Uber Technologies, Inc.*,
        2022 WL 2954937 (N.D. Cal. 2022) ........................................................................... 13
10
    *Castillo v. Bank of America, NA*,
11      980 F.3d 723 (9th Cir. 2020) ....................................................................................... 12

12  *Ferrari v. Autobahn, Inc.*
        2019 WL 295260 (N.D. Cal. Jan. 23, 2019) ............................................................... 28
13
    *G. F. v. Contra Costa Cty.*
14      2015 WL 4606078 (N.D. Cal. July 30, 2015) ............................................................. 20

15  *Garner v. State Farm. Mut. Auto. Ins. Co.*,
        2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ............................................................. 21
16
    *Giusti-Bravo v. U.S. Veterans Admin.*,
17      853 F. Supp. 34 (D.P.R. 1993) .................................................................................... 22
18
    *Hanlon v. Chrysler Corp.*,
19      150 F.3d 1011 (9th Cir. 1998) ......................................................................... 13, 14, 19

20  *Haralson v. U.S. Aviation Servs. Corp.*,
        383 F. Supp. 3d 959 (N.D. Cal. 2019) ........................................................................ 18
21
    *Harris v. Marhoefer*,
22      24 F.3d 16 (9th Cir. 1994) ........................................................................................... 23

23  *Hefler v. Pekoc*
        802 F. App'x 285 (9th Cir. 2020) ................................................................................ 20
24
    *Hefler v. Wells Fargo & Co.*
25      2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ............................................................ 20

26

27

iii

28

*Hosp. Auth, of Metro. Gov't of Nashville & Davidson Cty v. Momenta Pharm., Inc.*,
   333 F.R.D. 390 (M.D. Tenn. Sept. 20, 2019).................................................................. 10

*In re Cardizem CD Antitrust Litig.*,
   200 F.R.D. 326 (E.D. Mich. 2001)................................................................................ 13

*In re Cipro Cases I & II*,
   121 Cal. App. 4th 402 (2004)........................................................................................ 15

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
   2006 WL 1530166 (N.D. Cal. June 5, 2006) ............................................................... 12

*In re EpiPen (Epinephrine Injection, USP) Marketing, Sales Practices and Antitrust Litig.*,
   2020 WL 1180550 (D. Kan. Mar. 10, 2020) ............................................................... 10

*In re Glumetza Antitrust Litig.*,
   336 F.R.D. 468 (N.D. Cal. 2020) .................................................................................. 15

*In re High-Tech Employee Antitrust Litig.*,
   985 F. Supp. 2d 1167 (N.D. Cal. 2013)........................................................................ 12

*In re HIV Antitrust Litig.*
   2022 WL 22609107 (N.D. Cal. Sept. 27, 2022)........................................................... 10

*In re Hyundai & Kia Fuel Econ. Litig.*,
   926 F.3d 539 (9th Cir. 2019)..................................................................................... 9, 14

*In re JUUL Labs, Inc., Mkt'g, Sales Pracs., and Prods Liab. Litig.*
   2023 WL 6205473 (N.D. Cal. Sept. 19, 2023).............................................................. 25

*In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prod. Liab. Litig.*,
   2022 WL 2343268 (N.D. Cal. June 28, 2022) ............................................................. 11

*In re Lidoderm Antitrust Litig.*,
   2017 WL 679367 (N.D. Cal. Feb. 21, 2017)..................................................... 10, 12, 16

*In re Loestrin 24 FE Antitrust Litig.*,
   410 F. Supp. 3d 352 (D.R.I. Oct. 17, 2019) ................................................................ 10

*In re Lorazepam & Clorazepate Antitrust Litig.*,
   205 F.R.D. 369 (D.D.C. 2002) ..................................................................................... 10

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
   2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ............................................................. 28

*In re Namenda Direct Purchaser Antitrust Litig.*,
   462 F. Supp. 3d 307 (S.D.N.Y. 2020)........................................................................... 29

iv

*In re Namenda Indirect Purchaser Antitrust Litig.*,
    338 F.R.D. 527 (S.D.N.Y. Feb. 11, 2021) ..................................................... 10

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ........................................................ 24

*In re Opana ER Antitrust Litig.*
    2021 WL 3627733 (N.D. Ill. June 4, 2021*)*
    *as amended*, Case No. 14-cv-10150, ECF No. 746 (N.D. Ill. Aug. 11, 2021)...................... 10

*In re Puerto Rican Cabotage Antitrust Litig.*,
    269 F.R.D. 125 (D.P.R. 2010) ........................................................................ 18

*In re Ranbaxy Generic Drug Application Antitrust Litig.*,
    338 F.R.D. 294 (D. Mass. May 14, 2021) .................................................... 10

*In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*,
    335 F.R.D. 1 (E.D.N.Y. 2020*)* ................................................................ 10, 16

*In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*,
    527 F. Supp. 3d 269 (E.D.N.Y. 2021) ......................................................... 28

*In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*,
    2017 WL 4621777 (D. Mass. Oct. 16, 2017)........................................*passim*

*In re Tableware Antitrust Litig.*,
    484 F. Supp. 2d 1078 (N.D. Cal. 2007) ....................................................... 18

*In re Wal-Mart Stores, Inc. Wage & Hour Litig.*,
    2008 WL 413749 (N.D. Cal. Feb. 13, 2008) ............................................... 28

*In re Warfarin Sodium Antitrust Litig.*
    212 F.R.D. 231 (D. Del. 2002)
    *aff'd*, 391 F.3d 516 (3d Cir. 2004) ............................................................... 13

*In re: Lithium Ion Batteries Antitrust Litig.*
    2020 WL 7264559 (N.D. Cal. Dec. 10, 2020)
    *aff'd* 2022 WL 16959377 (9th Cir. Nov. 16, 2022) ..................................... 17

*In re: Zetia (Ezetimibe) Antitrust Litig.*,
    2021 WL 3704727 (E.D. Va. Aug. 20, 2021) ............................................. 10

*Massey v. Star Nursing, Inc.*,
    2022 WL 14151758 (N.D. Cal. Oct. 24, 2022) ........................................... 26

*Nat'l Rural Telecomm. Coop. v. DIRECTV*,
    221 F.R.D. 523 (C.D. Cal. 2004) ................................................................. 19

v

*Natchitoches Par. Hosp. Serv. Dist. v. Tyco Int'l, Ltd.*,
   262 F.R.D. 58 (D. Mass. 2008) ........................................................................................ 15

*Nichols v. SmithKline Beecham Corp.*,
   2005 WL 950616 (E.D.Pa. Apr. 22, 2005) ...................................................................... 27

*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615 (9th Cir. 1982) .......................................................................................... 21

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985) ........................................................................................................ 27

*Pierce v. Novastar Mortg., Inc.*,
   2007 WL 1046914 (W.D. Wash. Apr. 2, 2007) ............................................................. 28

*Rodriguez v. West Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) .................................................................................... 19, 21

*Sheet Metal Workers Local No. 20 Welfare and Benefit Fund v. CVS Pharmacy, Inc.*,
   540 F. Supp. 3d 182 (D.R.I. May 18, 2021) .................................................................. 10

*Smith v. Kaiser Found. Hosps.*,
   2020 WL 5064282 (S.D. Cal. Aug. 26, 2020) ............................................................... 18

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) .......................................................................................... 13

*Tyson Foods, Inc. v. Bouaphakeo*,
   577 U.S. 442 (2016) ........................................................................................................ 14

*Vasquez v. Coast Valley Roofing, Inc*.
   670 F.Supp.2d 1114 (E.D. Cal. 2009) ............................................................................ 28

*Vista Healthplan, Inc. v. Warner Holdings Co. III, Ltd.*,
   246 F.R.D. 349 (D.D.C. 2007) ....................................................................................... 10

*Vista Healthplan, Inc. v. Warner Holdings Company III, Ltd.*,
   246 F.R.D. 349 (D.D.C. 2007) ....................................................................................... 27

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) .................................................................................................. 12, 14

*Wren v. RGIS Inventory Specialists*,
   2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) ................................................................. 23

**OTHER AUTHORITIES**

2 *Newberg on Class Actions*, § 11.28 ...................................................................................... 14

vi

4 A. Conte & H. Newberg on Class Actions at § 11.24 (4th ed. 2002) ....................................... 19

5 *Moore's Federal Practice*, §23.85[2][e] (Matthew Bender 3d ed.) .......................................... 20

6 Herbert B. Newberg & Alba Conte, Newberg on Class Actions §18.25 (4th ed. 2002) .................................................................................................................................. 15

Fed. Judicial Ctr., *Manual for Complex Litigation* § 21.311 (4th ed. 2004) .............................. 27

*Manual for Complex Litigation, Third* § 30.42 (1995) ................................................................. 20

**RULES**

Fed. R. Civ. P. 23 ................................................................................................................ *passim*

Plaintiffs' Notice of Motion & Motion for Preliminary Approval of Hikma Class Action Settlement
Case No. 3:20-md-02966-RS

## NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

**PLEASE TAKE NOTICE THAT** Class Plaintiffs,[1] by and through their undersigned counsel of record, will and hereby do move for entry of an order:[2]

(1)    preliminarily approving the Settlement with Defendant Hikma Labs, Inc. (formerly known as Roxane Laboratories, Inc.), Hikma Pharmaceuticals USA Inc. (formerly known as West-Ward Pharmaceuticals Corp.), Eurohealth (USA), Inc., and Hikma Pharmaceuticals plc (collectively, "Hikma") (the "Settlement");

(2)    finding that certification of the following Proposed Settlement Class for purposes of settlement is likely: all entities that paid and/or provided reimbursement for some or all of the purchase price for brand or generic Xyrem in Alaska, Arizona, Arkansas, California, Connecticut, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Puerto Rico, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin ("Class States"), for consumption by their members, employees, insureds, participants, or beneficiaries, and other than for resale, during the time from January 1, 2017, through and until the date the Court enters an order granting preliminary approval of the Settlement Agreement ("Class Period");[3]

---

[1] Class Plaintiffs for the purposes of this settlement are A.F. of L. – A.G.C. Building Trades Welfare Plan; City of Providence, Rhode Island; Government Employees Health Association, Inc.; New York State Teamsters Council Health and Hospital Fund; Self-Insured Schools of California; and UFCW Local 1500 Welfare Fund.

[2] Capitalized terms in this Motion incorporate defined terms from the Settlement Agreement.

[3] Excluded from the Proposed Settlement Class are: (1) Defendants and their counsel, parents, subsidiaries, and affiliates; (2) federal and state governmental entities; (3) United HealthCare

---

(3)    conditionally appointing Class Plaintiffs to represent the Proposed Settlement Class;

(4)    conditionally appointing Dena C. Sharp of Girard Sharp LLP and Michael M. Buchman of Motley Rice LLC as Co-Lead Counsel for the Settlement Class;

(5)    staying litigation brought by Class Plaintiffs as against Hikma until the Court renders a final decision regarding the approval of the Settlement;

(6)    preliminarily approving the proposed Plan of Allocation (which will apply to both the Jazz and Hikma settlements);

(7)    approving and ordering the implementation of the proposed notice plan (which will apply to both the Jazz and Hikma settlements);

(8)    appointing A.B. Data, Ltd. as the Notice and Claims Administrator;

(9)    appointing Citibank, N.A. the escrow agent to maintain the settlement fund;

(10)    authorizing the payment of initial notice and settlement administration expenses as provided for in the Settlement Agreement; and

(11)    setting a schedule for final approval, including for a final approval hearing (which will apply to both the Jazz and Hikma settlements).

A copy of Class Plaintiffs' [Proposed] Order Granting Preliminary Approval of Class Action Settlement is separately submitted with this Motion.

Class Plaintiffs respectfully request that the Honorable Richard Seeborg of the United States District Court for the Northern District of California, San Francisco Division, located in Courtroom 3, 17th Floor at 450 Golden Gate Avenue, San Francisco, CA 94102, hear the Motion on the same date and time as Class Plaintiffs' Motion for Preliminary Approval of the Class

---

Services, Inc.; Humana Inc.; Molina Healthcare, Inc.; Health Care Service Corporation, Inc.; Aetna, Inc.; Blue Cross Blue Shield of Florida, Inc.; and Health Options, Inc. (each of these entities in (3) on behalf of themselves but not on behalf of any of their so-called "Administrative Services Only" clients (the "ASO Clients")); and (4) any entities that elect to opt out of the Settlement Class. For avoidance of doubt, included in the Settlement Class definition are cities, towns, municipalities, or counties or carriers for Federal Employee Health Benefit plans.

1    Action Settlement with Jazz Pharmaceuticals Ireland Limited ("Motion for Preliminary Approval

2    of the Jazz Settlement") (ECF No. 958) or as soon as practicable.

3        Class Plaintiffs' motion is based on Federal Rule of Civil Procedure 23, the Northern

4    District's Procedural Guidance for Class Action Settlement ("District Guidelines"), this Notice of

5    Motion, the incorporated Memorandum of Points and Authorities, the Joint Declaration of Dena

6    C. Sharp and Michael M. Buchman, and the pleadings and papers on file in MDL No. 3:20-md-

7    02966-RS (the "Litigation"), and any other matter this Court may take notice of.

8                    **MEMORANDUM OF POINTS AND AUTHORITIES**

9    **I.    INTRODUCTION**

10       Class Plaintiffs, on behalf of the Proposed Settlement Class, seek preliminary approval of

11   a settlement with Hikma, the last Defendant in this litigation. The settlement is memorialized in

12   the Settlement Agreement (Exhibit 1 ("Settlement Agreement" or "Settlement") to the Joint

13   Declaration of Dena C. Sharp and Michael M. Buchman in Support of Preliminary Approval

14   ("Preliminary Approval Declaration")).[4] The Hikma Settlement provides for a cash settlement

15   fund totaling $50,000,000.00, which is in addition to the proposed cash settlement with Jazz that

16   is presently before this Court pending preliminary approval, and is set to be heard on May 15.

17       The proposed Settlement with Hikma was reached only after extensive litigation as

18   overseen by this Court, including significant fact discovery and expert work; extensive motion

19   practice, including summary judgment proceedings; intense trial preparations; and arm's length

20   negotiations between experienced antitrust counsel over nearly a year, under the supervision of a

21   seasoned and well-respected mediator. In exchange for the cash settlement with Hikma, Class

22   Plaintiffs and the Proposed Settlement Class agree to release all claims against Hikma that arise

23   out of the alleged conduct in this litigation. Given the relevant considerations, the Settlement is in

24   the best interests of the Proposed Settlement Class, and meets the criteria for approval under

25   Federal Rule of Civil Procedure 23(e).

26   ───────────────────

27   [4] The Settlement does not include claims against Hikma brought by non-Class plaintiffs.

28

For the Hikma settlement, as with the Jazz settlement, proposed Settlement Class Members will be eligible for payments from the settlement fund based on the amount they paid for brand or generic Xyrem or Xywav during the relevant time period. The notice plan will advise Proposed Settlement Class Members of their rights and options. Payments will be distributed to Proposed Settlement Class Members in accordance with the proposed plan of allocation. And as explained in Class Plaintiffs' Motion for Preliminary Approval of the Jazz Settlement (ECF No. 958), while the Proposed Settlement Class and release are broader than the certified Damages Class, the claims resolved by the proposed Settlement were all asserted in the Consolidated Class Action Complaint ("CCAC") in this matter, and under the proposed plan of allocation, payment will be weighted based on the strength of claims asserted. The Settlement offers Proposed Settlement Class Members a streamlined claims process supervised by Class Counsel and an experienced settlement administrator. Attorneys' fees, expenses, and service awards will be paid from the settlement fund in amounts subject to this Court's discretion.

The Proposed Settlement Class meets the requirements of Rule 23(e) and is likely to be certified for settlement purposes. Class Plaintiffs' claims are typical of those of all Proposed Settlement Class members and present numerous common questions of fact and law. And these common issues predominate over any questions that may affect individual class members. Accordingly, a class action is superior to other methods of adjudication.

Class Plaintiffs respectfully ask the Court to find that the Hikma Settlement is likely to be approved, that the Proposed Settlement Class is likely to be certified for settlement purposes, and to direct notice to the Proposed Settlement Class.

## II.    PROCEDURAL HISTORY

### A.    The MDL

In 2020, Class Plaintiffs filed several class actions against Hikma, as well as Jazz, Amneal, Lupin, and Par. On March 8, 2021, Class Plaintiffs filed the CCAC, which contains seventeen counts asserting various antitrust and consumer protection claims under federal and

Plaintiffs' Notice of Motion & Motion for Preliminary Approval of Class Action Settlement
Case No. 3:20-md-02966-RS

state law. *See* ECF No. 62 at 88-121. In the CCAC, Class Plaintiffs seek damages on behalf of classes consisting of all purchasers of Xyrem in thirty-six states and territories.

This case was initially assigned to the Honorable Lucy H. Koh, who directed the parties early in the litigation to identify ten causes of action that would proceed through initial resolution, with litigation of the remaining causes of action to be discussed with the Court thereafter. ECF No. 66 at 2. On March 30, 2021, Judge Koh entered an Order identifying those causes of action. ECF No. 83. Judge Koh later denied Defendants' motion to dismiss Class Plaintiffs' state law claims, but dismissed the federal Sherman Act damages claims. ECF No. 138 at 80-81.

**B.    Discovery**

Discovery began before motions to dismiss were filed and concluded on January 30, 2023. Defendants have produced millions of pages of documents, provided written discovery and information, and the parties conducted thirty depositions of Defendants' employees and third parties. In addition, depositions were conducted in connection with over twenty-eight expert witnesses in this case. Class Plaintiffs have produced relevant documents, searched their files using the parties' agreed-upon search terms, responded to multiple sets of interrogatories, and sat for depositions. The parties also briefed and argued numerous discovery disputes. *E.g.* ECF Nos. 392, 507.

**C.    Class Certification and *Daubert***

On November 16, 2022, Class Plaintiffs moved to certify two classes of purchasers of Xyrem and Xywav, one proposed class seeking damages under Rule 23(b)(3) and one seeking injunctive relief under Rule 23(b)(2). ECF Nos. 351–53. On February 17, 2023, Defendants filed a motion opposing certification and also moved to exclude portions of Class Plaintiffs' expert testimony. Class Plaintiffs replied on March 21, 2023. ECF Nos. 448-50. The Court heard argument on the motions in April 2023, and on May 12, 2023, the Court certified damages and injunctive relief classes with respect to Xyrem prescriptions and denied Defendants' *Daubert* motions. ECF No. 500. Defendants later filed a motion to decertify the Damages Class, which the

1  Court denied. ECF No. 816. The Court granted Class Plaintiffs' motion to amend the class

2  definition to (1) extend the end date of the class period and (2) include purchases for generic

3  Xyrem. *Id*. Defendants sought appellate review under Federal Rule of Civil Procedure Rule 23(f),

4  but the Ninth Circuit denied the petition.

5     **D.    Experts, Summary Judgment, and *Daubert***

6     In September 2023 and January 2024, the parties collectively disclosed twenty-eight

7  experts on a wide range of issues including patents, the agreements, economics, market power,

8  regulatory frameworks, and damages. Expert depositions were taken during the first several

9  months of 2024.

10    In April 2024, both sides moved for summary judgment on a range of issues, with

11 Defendants seeking summary judgment as to the majority of Plaintiffs' claims. ECF Nos. 657-1;

12 658-1; 661-2. At the same time, both sides filed *Daubert* motions, with Defendants seeking to

13 exclude many of Plaintiffs' experts in whole or in part. ECF Nos. 659-3; 660-2. The Court largely

14 denied the parties' summary judgment and *Daubert* motions, paving the way for Class Plaintiffs'

15 claims to proceed to trial. ECF Nos. 800 and 801.

16    **E.    Trial Preparations**

17    The parties have engaged in extensive trial preparations. Among other things, the parties

18 exchanged exhibit lists, witness lists, and depositions designations; submitted multiple rounds of

19 proposed jury instructions and verdict forms; and exchanged, and filed motions *in limine*. Class

20 Plaintiffs have also developed their trial strategy, including working with their experts and others

21 witnesses on trial testimony, and held multiple pretrial conferences with the Court.

22    Over the course of nearly a year, the parties have also engaged in motion practice

23 concerning Plaintiffs' motion to preclude evidence at trial due to Defendants' privilege

24 withholdings. The Court granted Class Plaintiffs' Motion to Preclude in part and denied in part.

25 ECF No. 896. Pursuant to the Court's order, Hikma chose to partially waive privilege as to one

26 topic. ECF No. 916. At the time of settlement, the parties had engaged in multiple conferences

27

28
Plaintiffs' Notice of Motion & Motion for Preliminary Approval of Class Action Settlement
Case No. 3:20-md-02966-RS

regarding the scope of that waiver, Hikma submitted documents *in camera*, and Hikma was preparing to produce documents as a result of its election to partially waive privilege.

### F.    Settlement

On May 12, 2023, the Court granted preliminary approval of Class Plaintiffs' settlement with Defendants Amneal and Lupin. ECF No. 500. The Court granted final approval on April 17, 2024. ECF No. 642.

In July 2024, plaintiffs, Jazz, and Hikma attended an in-person, two-day mediation before the Hon. Layn Phillips (Ret.). That mediation session led to continued discussions through the mediator and his staff over the remainder of 2024 and the beginning of 2025. Class Plaintiffs reached a settlement with Jazz on April 7, 2025, and filed their motion for preliminary approval of the Jazz settlement on April 17, 2025. ECF No. 958.

Class Plaintiffs and Hikma continued intensive trial preparation after the Jazz/Class settlement, again with the assistance of the mediator and his staff. On April 29, 2025, the day before the final pretrial conference, Class Plaintiffs and Hikma executed a binding term sheet, and executed a formal Settlement Agreement on May 7, 2025.

The proposed Settlement now before the Court was the result of hard-fought and adversarial litigation. During discovery, the parties produced and reviewed millions of documents, served and responded to interrogatories, took numerous depositions of fact and percipient expert witnesses, and briefed and argued various disputes. Class Plaintiffs also successfully briefed the motions to dismiss, and both briefed and argued class certification, summary judgment, and numerous pretrial issues. Class Plaintiffs are thus well-versed in the strengths and weaknesses of their case and are well-positioned to assess and balance the risks of continuing to litigate their claims against Hikma versus settling those claims.

Class Plaintiffs have entered into the Settlement on behalf of themselves and the proposed Settlement Class. The Proposed Settlement Class is defined as:

> All entities that paid and/or provided reimbursement for some or all of the purchase price for brand or generic Xyrem in Alaska, Arizona, Arkansas, California,

7

Connecticut, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Puerto Rico, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin, for consumption by their members, employees, insureds, participants, or beneficiaries, and other than for resale, during the time from January 1, 2017, through and until the date the Court enters an order granting preliminary approval of the Settlement Agreement.

The following persons or entities are excluded from the Proposed Settlement Class:

(1) Defendants and their counsel, parents, subsidiaries, and affiliates;

(2) federal and state governmental entities;

(3) United HealthCare Services, Inc.; Humana Inc.; Molina Healthcare, Inc.; Health Care Service Corporation, Inc.; Aetna, Inc.; Blue Cross Blue Shield of Florida, Inc.; and Health Options, Inc. (each of these entities in (3) on behalf of themselves but not on behalf of any of their so-called "Administrative Services Only" clients (the "ASO Clients")); and

(4) any entities that elect to opt out of the Settlement Class. For avoidance of doubt, included in the Settlement Class definition are cities, towns, municipalities, or counties or carriers for Federal Employee Health Benefit plans.

As discussed below, the Proposed Settlement Class diverges from the certified Damages Class in two material ways: (i) the relevant states of purchase;  and (ii) the relevant time period. These differences are modest, and the broader Proposed Settlement Class is consistent with the claims that Class Plaintiffs pled.

## III.    THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT.

### A.    Legal Standard

At the preliminary approval stage, the Court may direct notice of a proposed settlement to the class if it concludes that it will likely be able to certify the settlement class under Rule 23(e)(1) and to approve the settlement as fair, reasonable, and adequate under Rule 23(e)(2).

To assess the proposed settlement class under 23(e)(1), the Court conducts a two-step analysis under Rules 23(a) and 23(b).

*First*, the Court must determine whether the proposed class meets the Rule 23(a)

8

1    requirements:

2        (1) the class is so numerous that joinder of all members is impracticable;

3        (2) there are questions of law or fact common to the class;

4        (3) the claims or defenses of the representative parties are typical of the claims or defenses

5            of the class; and

6        (4) the representative parties will fairly and adequately protect the interests of the class.

7    Fed. R. Civ. P. 23(a).

8        *Second,* if those four conditions are satisfied, the Court considers whether the proposed

9    settlement class satisfies one of the requirements listed in Rule 23(b). In relevant part, under Rule

10   23(b)(3), a proposed settlement class may be "maintained if questions of law or fact common to

11   class members predominate over any questions affecting only individual members, and . . . a class

12   action is superior to other available methods for fairly and efficiently adjudicating the

13   controversy." Fed. R. Civ. P. 23(b)(3). The predominance inquiry is less demanding in the

14   settlement context than in the litigation context. *See In re Hyundai & Kia Fuel Econ. Litig.*, 926

15   F.3d 539, 556-57 (9th Cir. 2019) (*en banc*) (finding that manageability concerns are not an issue

16   for a settlement class).

17       To assess whether the proposed settlement is fair, reasonable, and adequate, under Rule

18   23(e)(2), the Court considers whether:

19       (A) the class representatives and class counsel have adequately represented the class;

20       (B) the proposal was negotiated at arm's length;

21       (C) the relief provided for the class is adequate, taking into account:

22           (i) the costs, risks, and delay of trial and appeal;

23           (ii) the effectiveness of any proposed method of distributing relief to the Class,

24               including the method of processing class-member claims;

25           (iii) the terms of any proposed award of attorney's fees, including timing of

26               payment; and

27

28

Plaintiffs' Notice of Motion & Motion for Preliminary Approval of Class Action Settlement
Case No. 3:20-md-02966-RS

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). The Court also considers the Northern District of California's Guidelines.

### B.    Certification of the Proposed Settlement Class is Likely.

The Proposed Settlement Class is cohesive, objectively defined, and likely to be certified upon entry of judgment. *See* Fed. R. Civ. 23(e)(1). Courts, including this one, routinely certify end-payor classes alleging antitrust violations with respect to pharmaceutical products, both for litigation and settlement purposes. *See* ECF No. 500 (certifying litigation class); ECF No. 642 at 3-6 (certifying Amneal and Lupin settlement class).[5] As shown below, the Proposed Settlement Class satisfies Rule 23 and other procedural guidelines and is likely to be certified.

---

[5] **Litigation Classes**: *In re HIV Antitrust Litig.*, 2022 WL 22609107 (N.D. Cal. Sept. 27, 2022); *In re Lidoderm Antitrust Litig.*, 2017 WL 679367 (N.D. Cal. Feb. 21, 2017); *In re: Zetia (Ezetimibe) Antitrust Litig.*, 2021 WL 3704727 (E.D. Va. Aug. 20, 2021); *In re Opana ER Antitrust Litig.*, 2021 WL 3627733 (N.D. Ill. June 4, 2021*), as amended*, Case No. 14-cv-10150, ECF No. 746 (N.D. Ill. Aug. 11, 2021); *Sheet Metal Workers Local No. 20 Welfare and Benefit Fund v. CVS Pharmacy, Inc.*, 540 F. Supp. 3d 182 (D.R.I. May 18, 2021); *In re Ranbaxy Generic Drug Application Antitrust Litig.*, 338 F.R.D. 294 (D. Mass. May 14, 2021); *In re Namenda Indirect Purchaser Antitrust Litig.*, 338 F.R.D. 527 (S.D.N.Y. Feb. 11, 2021); *In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 335 F.R.D. 1 (E.D.N.Y. 2020*); In re EpiPen (Epinephrine Injection, USP) Marketing, Sales Practices and Antitrust Litig.*, 2020 WL 1180550 (D. Kan. Mar. 10, 2020); *In re Loestrin 24 FE Antitrust Litig.*, 410 F. Supp. 3d 352 (D.R.I. Oct. 17, 2019); *Hosp. Auth. of Metro. Gov't of Nashville & Davidson Cty v. Momenta Pharm., Inc.*, 333 F.R.D. 390 (M.D. Tenn. Sept. 20, 2019*); In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, 2017 WL 4621777 (D. Mass. Oct. 16, 2017).

**Settlement Classes:** *In re Aggrenox Antitrust Litig.*, No. 14-MD-2516 (D. Conn. Mar 6, 2018) (ECF No. 766); *Ryan-House v. GlaxoSmithKline PLC,* No. 02-cv-442, 2005 U.S. Dist. LEXIS 33711 (E.D. Va. Jan. 10, 2005); *In re Tricor Indirect Purchaser Litig.,* No. 05-cv-360 (D. Del. May 8, 2009) (ECF No. 509); *In re Abbott Labs. Norvir Antitrust Litig.,* No. 04-cv-1511 (N.D. Cal., Aug. 27, 2008) (ECF No. 612); *Vista Healthplan, Inc. v. Warner Holdings Co. III, Ltd.,* 246 F.R.D. 349, 357 (D.D.C. 2007); *In re Children's Ibuprofen Oral Suspension Antitrust Litig.,* No. 04-mc-535 (D.D.C. Dec. 11, 2006) (ECF No. 33); *In re Remeron End Payor Antitrust Litig.*, 2005 WL 2230314 (D.N.J. Sept. 13, 2005).

---

Plaintiffs' Notice of Motion & Motion for Preliminary Approval of Class Action Settlement
Case No. 3:20-md-02966-RS

1          **1.      The Proposed Settlement Class Satisfies Rule 23(a)'s Requirements.**

2          Under Rule 23(a), certification is appropriate where: (1) the class is so numerous that

3   joinder of all members is impracticable; (2) there are questions of law or fact common to the

4   class; (3) the claims or defenses of the representative parties are typical of the claims or defenses

5   of the class; and (4) the representative parties will fairly and adequately protect the interests of the

6   class. Fed. R. Civ. P. 23(a). These requirements are readily satisfied here. In its class certification

7   opposition, Hikma did not dispute that Class Plaintiffs could satisfy Rule 23(a). Def. Opp. to

8   Class Cert. (ECF No. 409) at 7–35.

9                          **a.      Numerosity**

10         Rule 23(a)(1) requires that members of a class must be "so numerous that joinder of all

11  members is impracticable." Fed. R. Civ. P. 23(a)(1). While numerosity does not require a specific

12  number of class members, courts in the Ninth Circuit generally agree that numerosity is satisfied

13  if the class includes 40 or more members. *See In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prod.*

14  *Liab. Litig.*, 609 F. Supp. 3d 942, 959 (N.D. Cal. June 28, 2022).

15         The Proposed Settlement Class easily meets this threshold. The Proposed Settlement Class

16  includes third-party payors who paid and/or provided reimbursement for some or all of the cost of

17  brand or generic Xyrem prescriptions. Xyrem is exclusively dispensed through Express Scripts

18  Specialty Distribution Services ("ESSDS"). ESSDS data confirms that tens of thousands of

19  prescriptions for Xyrem are filled each month. *See* Motion for Class Certification (ECF No. 353)

20  at 20 (hereinafter "Class Cert. Mtn.") (citing Conti Rpt. (ECF No. 353-2) ¶ 50); ECF No. 500 at

21  6. Common sense dictates that the number of Proposed Settlement Class well exceeds 40 persons

22  throughout the class period. Accordingly, Class Plaintiffs satisfy Rule 23(a)(1).

23                         **b.      Commonality**

24         Rule 23(a)(2) requires "questions of law or fact common to the class." Fed. R. Civ. P.

25  23(a)(2). A common question is one that "is capable of classwide resolution—which means that

26  determination of its truth or falsity will resolve an issue that is central to the validity of each one

27

28

1    of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). For

2    purposes of Rule 23(a)(2), even a single common question will suffice to satisfy the requirement.

3    *Id.* at 359. "Antitrust liability alone constitutes a common question that 'will resolve an issue that is

4    central to the validity' of each class member's claim 'in one stroke'" because proof of the violation

5    "'will focus on defendants' conduct and not on the conduct of individual class members.'" *In re*

6    *High-Tech Employee Antitrust Litig.*, 985 F. Supp. 2d 1167, 1180 (N.D. Cal. 2013) (citations

7    omitted).

8         This case presents numerous common questions of fact and law that relate to Hikma's

9    alleged anticompetitive conduct, including whether Hikma entered into an unlawful agreement in

10   restraint of trade to prevent or delay entry of generic competition. *See* Class Cert. Mtn. at 21

11   (citing CCAC ¶ 338) (listing common questions of law and fact); ECF No. 500 at 7.[6] The same

12   questions of law and fact apply to all members of the Settlement Class who would necessarily use

13   the same evidence to prove the Defendants' alleged conduct "in one stroke." *Wal-Mart*, 564 U.S.

14   at 350. The Settlement Class satisfies Rule 23(a)(2).

15                        **c.    Typicality**

16        Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical

17   of the claims or defenses of the class." *Castillo v. Bank of America, NA*, 980 F.3d 723, 729 (9th

18   Cir. 2020). Class Plaintiffs' claims are typical of the class when they "arise[ ] from the same

19   event, practice or course of conduct that gives rise to the claims of the absent class members" and

20   is "based on the same legal or remedial theory." *In re Dynamic Random Access Memory (DRAM)*

21   *Antitrust Litig.*, 2006 WL 1530166, at *4 (N.D. Cal. June 5, 2006) (alteration in original) (citation

22   omitted). "[C]laims are 'typical' if they are reasonably co-extensive with those of absent class

23

24

---

25   [6] *E.g. Lidoderm*, 2017 WL 679367, at *1 (common questions included: "Did defendants engage
     in anticompetitive conduct? Did that conduct lead to overcharges for brand and generic lidocaine

26   patches? What aggregate damages resulted from the overcharges?"); *Solodyn*, 2017 WL 4621777,
     at *12, n.12.

27

28

Plaintiffs' Notice of Motion & Motion for Preliminary Approval of Class Action Settlement
Case No. 3:20-md-02966-RS

members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

Here, Class Plaintiffs' claims are typical of the claims of the Proposed Settlement Class because: (i) their injury (supracompetitive prices) arises from the same course of conduct (Defendants' alleged anticompetitive conduct); (ii) their claims rely on the same legal theories (allegedly unlawful restraint of trade and monopolization); and (iii) their claims allege damages in the form of overcharges. *See* Class Cert. Mtn. at 21–22. This Court and others have found typicality satisfied where the plaintiffs asserted that the defendants' alleged conduct delayed generic competition and sought overcharges for themselves and the class. ECF No. 500 at 7.[7]

### d.    Adequacy

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4); *see also Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 625 (1997) (finding Rule 23(a)(4) "serves to uncover conflicts of interest between named parties and the class they seek to represent"). To determine whether the representation meets this standard, courts ask two questions: (i) do named plaintiffs have any conflicts of interest with other class members; and (ii) will they prosecute the action vigorously on behalf of the class. *See Boston Retirement System v. Uber Technologies, Inc.*, 2022 WL 2954937 * 4 (N.D. Cal. 2022) (Seeborg, J.); *accord Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (applying this analysis to a settlement).

No conflicts of interest exist between Class Plaintiffs and class members. Class Plaintiffs and the class members have the same objective, in proving: the Defendants acted unlawfully; that they paid, and continue to pay, overcharges as a result; and the total amount of aggregate damages. *See* ECF No. 700 at 7-8 (finding adequacy satisfied). And adequacy is also presumed

---

[7] *E.g. Solodyn*, 2017 WL 4621777 at*12 n.12;  *In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 267 (D. Mass. 2004); *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 326, 335 (E.D. Mich. 2001); *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 250 (D. Del. 2002), *aff'd*, 391 F.3d 516 (3d Cir. 2004).

where, as here, a fair settlement was negotiated at arm's length. 2. A. Conte & H. Newberg, *Newberg on Class Actions* § 11.28, 11-59 (4th ed. 2002).

### 2. The Proposed Settlement Class Satisfies Rule 23(b)(3)'s Requirements.

Under Rule 23(b)(3), certification is appropriate where "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Proposed Settlement Class satisfies these requirements.

### a. Predominance

Predominance exists when plaintiffs' claims "depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350. "Even if just one common question predominates, 'the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately.'" *Hyundai & Kia*, 926 F.3d at 557 (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)).

The predominance inquiry is less demanding in the settlement context because, unlike certification for litigation, "manageability is not a concern in certifying a settlement class where, by definition, there will be no trial." *Id.* at 556–57. The predominant question at this stage will be whether this settlement is fair, reasonable, and adequate. *See Hanlon*, 150 F.3d at 1026-27. And even if the Court examines the disputed questions that would be tried absent settlement, predominant issues exist concerning whether Hikma's conduct violated antitrust and consumer protection laws, as well as whether it restricted or delayed timely entry of generic Xyrem, thereby causing Class Plaintiffs and members of the Proposed Settlement Class to sustain overcharges damages. *See* Class Cert. Mtn. at 23–24; ECF No. 500 14-15. "[C]ommon issues usually predominate in cases where the defendants are alleged to have engaged in collusive,

14

1    anticompetitive conduct resulting in artificially high market-wide prices for a product." *In re*

2    *Cipro Cases I & II*, 121 Cal. App. 4th 402, 411 (2004) (collecting cases). The focus is on

3    Hikma's alleged conduct and the effect on the market, which are common to all class members.

4    The focus is not on the actions of individual class members. *See In re Glumetza Antitrust Litig.*,

5    336 F.R.D. 468, 475 (N.D. Cal. 2020) (citing *Alaska Airlines v. United Airlines*, 948 F.2d 536,

6    540 (9th Cir. 1991)); *see also id.* ("the illegality of defendants' scheme turns on details of the

7    payment and defendants' purposes — evidence common to every purchaser"). This court and

8    others have found the predominance requirement met for antitrust claims.[8]

9                          **b.    Superiority**

10          The "superiority" requirement of Rule 23(b)(3) "ensures that litigation by a class action

11   will 'achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to

12   persons similarly situated, without sacrificing procedural fairness or bringing about other

13   undesirable results.'" *Solodyn*, 2017 WL 4621777, at *21 (quoting *Amchem*, 521 U.S. at 615).

14   But in a certification for settlement, "a district court need not inquire whether the case, if tried,

15   would present intractable management problems, *see* Fed. Rule Civ. Proc. 23(b)(3)(D), for the

16   proposal is that there be no trial." *Amchem*, 521 U.S. at 620.

17          Certifying the Proposed Settlement Class is superior to resolving class members' claims

18   through individual litigation. Considerations of judicial efficiency favor concentrating this

19   litigation in one forum. Allowing this case to move forward as a class action would: (i) avoid

20   congesting a court with the need to repetitively adjudicate such actions; (ii) prevent the possibility

21   of inconsistent results; and (iii) allow class members an opportunity for redress they might

22   otherwise be denied. This is consistent with the approach taken by this and other courts in

23

---

24   [8] *E.g.*, *Solodyn* 2017 WL 4621777, at *6 (quoting *Amchem,* 521 U.S. at 624) ("In antitrust
     actions, 'predominance is a test readily met.'"); *Natchitoches Par. Hosp. Serv. Dist. v. Tyco Int'l,*

25   *Ltd.*, 262 F.R.D. 58, 61 (D. Mass. 2008) (quoting 6 Herbert B. Newberg & Alba Conte, *Newberg
     on Class Actions* §18.25 (4th ed. 2002) ("In antitrust cases, common liability issues such as

26   conspiracy or monopolization have, almost invariably, been held to predominate over individual
     issues.").

27

28          Plaintiffs' Notice of Motion & Motion for Preliminary Approval of Class Action Settlement
                                    Case No. 3:20-md-02966-RS

pharmaceutical antitrust cases. ECF No. 500 at 15 (finding superiority satisfied).[9] A handful of large health benefit plans have effectively opted-out of the class by filing their own cases. This is not unusual in these types of cases and further emphasizes the benefits of aggregating and pursuing on a common basis the claims of other end-payors, including the smaller health benefit plans included in the Proposed Settlement Class definition.

Accordingly, the Proposed Settlement Class satisfies each certification requirement, and Plaintiffs respectfully submit that the Court should find that the Proposed Settlement Class is likely to be certified. *See* Fed. R. Civ. 23(e)(1).

### 3. The Proposed Settlement Class Satisfies Other Procedural Guidelines.

Under Rule 23 and the Northern District of California's Guidelines, courts must also consider: (i) any differences between the settlement class and certified class; (ii) any differences between the claims in the operative complaint and the claims certified for class treatment; and (iii) whether any other cases will be affected by the settlement. *See* Fed. R. Civ. P. 23 2018 committee notes subdivision(e)(1); District Guidelines ¶ 1(a), (b), (d).

With respect to the first issue, there are only two differences between the proposed Settlement Class and the certified Damages Class, neither of which affects the predominance analysis. The first difference is the time period. The certified class ends in April 2024 due to Class Plaintiffs not having data after that point to model classwide damages. Those data limitations are not relevant for the purposes of settlement, so extending the Class Period through the date of preliminary approval is appropriate. As to the Class Period start date (which is January 1, 2017, as opposed to January 17, 2017, for the Damages Class), Class Plaintiffs have allegations (that survived summary judgment) that could have resulted in entry as early as 2016, meaning that a January 1, 2017, entry date falls within Class Plaintiffs' allegations. *See* ECF No. 801 at 8-9 (denying summary judgment concerning Class Plaintiffs' at-risk launch theory).

---

[9] *E.g. Restasis*, 335 F.R.D. at 39; *Solodyn*, 2017 WL 4621777, at *21; *Lidoderm*, 2017 WL 679367, at *13.

Plaintiffs' Notice of Motion & Motion for Preliminary Approval of Class Action Settlement
Case No. 3:20-md-02966-RS

The Proposed Settlement Class also includes entities who purchased in states that were not included in the Damages Class. That is because certain state law claims asserted in the CACC were stayed at the outset of the litigation but, had Class Plaintiffs prevailed at trial, would have been litigated to resolution thereafter under the same theories of liability. *See* ECF No. 83 (selecting initial causes of action).

As to the release, the scope of the claims covered by the release is broader than those included in the Damages Class or the Proposed Settlement Class, the release is consistent with the conduct alleged in the CACC, as it is limited to claims "arising out of the facts, occurrences, transactions, or other matters alleged or asserted in the Pre-Consolidation Complaints, the Complaint or in this Action[.]" Settlement ¶1.25. As a result, and as a practical matter, the Proposed Settlement Class does not meaningfully expand the universe of entities beyond those included in the Damages Class (subject to the minor deviations discussed above), but those entities will release all of their claims related to the conduct at issue in this litigation unless they exclude themselves. The two material differences between the released claims and the Damages Class are: (i) the release of claims in all states and territories; and (ii) the inclusion of Xywav (as well as Xyrem) purchases.

The Class States for the Proposed Settlement Class encompass many, but not all, states and jurisdictions in the United States. The Settlement would release Proposed Settlement Class Members' claims nationwide. The scope of the release reflects the fact that class members could conceivably pursue claims for all states under unjust enrichment or similar theories. Given the limited viability of those claims, the Settlement releases claims nationwide but the Plan of Allocation provides substantially less weight for purchases in states whose laws do not traditionally provide antitrust causes of action for indirect purchasers. Other courts in this District have approved of settlements with similar terms. *See In re: Lithium Ion Batteries Antitrust Litig.*, 2020 WL 7264559, at *26 (N.D. Cal. Dec. 10, 2020) ("The Court finds the distribution plan to allocate 90% of settlement funds to class members from repealer states and 10% of settlement

17

1  funds to class members from non-repealer states . . . to be fair and equitable."); *aff'd* 2022 WL

2  16959377 (9th Cir. Nov. 16, 2022).

3  Claims related to Xywav were included in the CACC, although the Court declined to

4  certify them and later precluded the individual plaintiffs from pursuing them as well. ECF Nos.

5  500; 801 at 9-10. Class Plaintiffs, however, maintained appellate rights as to their claims for

6  damages related to Xywav purchases. The proposed Plan of Allocation reflects the Court's

7  determinations by giving Xywav purchases substantially less weight in the allocation of the

8  settlement fund that Xyrem purchases. *See* Section III.C.2.d, below. As with the approach to the

9  release of claims in non-repealer jurisdictions, the weighting of Xywav purchases provides

10 "structural assurances of fairness inherent in the proposed distribution plan." *Id*. at *9.

11 No other cases will be affected by this Settlement. Although several class members have

12 filed individual complaints, they have been excluded from the Settlement.

13 **C.    The Court Should Preliminarily Approve the Settlement.**

14 At the preliminary approval stage, the Court "need not make a final determination

15 regarding the fairness, reasonableness or adequateness of the proposed settlement." *In re Puerto*

16 *Rican Cabotage Antitrust Litig*., 269 F.R.D. 125, 140 (D.P.R. 2010); *see also* Fed. R. Civ. P.

17 23(e)(2). Rather, at this stage, the court need only determine whether it "will likely be able to . . .

18 approve the proposal [as fair, reasonable, and adequate] under Rule 23(e)(2)[,]" at final approval.

19 *Smith v. Kaiser Found. Hosps*., 2020 WL 5064282, at *5 (S.D. Cal. Aug. 26, 2020) (emphasis in

20 original); *see also Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp. 3d 959, 966 (N.D. Cal.

21 2019) ("The court's task at the preliminary approval stage is to determine whether the settlement

22 falls 'within the range of possible approval.'") (citing *In re Tableware Antitrust Litig*., 484 F.

23 Supp. 2d 1078, 1080 (N.D. Cal. 2007)). The Settlement is well within the range of fair,

24 reasonable, and adequate.

25 **1.    Procedural Considerations**

26 The Court may consider whether "the class representatives and class counsel have

27

28
Plaintiffs' Notice of Motion & Motion for Preliminary Approval of Class Action Settlement
Case No. 3:20-md-02966-RS

1  adequately represented the class" and whether "the proposal was negotiated at arm's length." Fed.

2  R. Civ. P. 23(e)(2)(A)-(B). As the Advisory Committee notes suggest, these are "matters that

3  might be described as 'procedural' concerns, looking to the conduct of the litigation and the

4  negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e)(2)(A)-(B) advisory

5  committee's note to 2018 amendment. These concerns implicate factors such as the non-collusive

6  nature of the negotiations, as well as the extent of discovery completed and stage of the

7  proceedings. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011,1026 (9th Cir. 1998).

8  **a.      Adequate Representation of the Class**

9        Class Plaintiffs are adequate representatives of the Proposed Settlement Class. Class

10  Plaintiffs and class members suffered the same injuries in the form of overcharges stemming from

11  the delay and restriction of generic competition, and have the same interest as every other

12  member of the Proposed Settlement Class in proving that Defendants acted unlawfully.

13  Furthermore, Class Plaintiffs are represented by counsel with extensive antitrust and complex

14  litigation experience, particularly in antitrust class actions involving pharmaceutical products.

15  They have pursued Class Plaintiffs' claims in the case for nearly five years. The efforts

16  undertaken thus far in this case, together with the outcomes achieved by Co-Lead Counsel in

17  similar cases on behalf of similar classes, should give the Court confidence in the adequate

18  representation of the Proposed Settlement Class.

19  **b.      Arm's Length Negotiations**

20        The Ninth Circuit "put[s] a good deal of stock in the product of an arm's length, non-

21  collusive, negotiated resolution" in approving a class action settlement. *Rodriguez v. West Publ'g*

22  *Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). Class settlements are presumed fair when they are

23  reached "following sufficient discovery and genuine arm's length negotiation[.]" *See Nat'l Rural*

24  *Telecomm. Coop. v. DIRECTV*, 221 F.R.D. 523, 528 (C.D. Cal. 2004); 4 A. Conte & H. Newberg,

25  *Newberg on Class Actions* § 11.24 (4th ed. 2002). "The extent of discovery [also] may be relevant

26  in determining the adequacy of the parties' knowledge of the case." *DIRECTV*, 221 F.R.D. at 527

27

28
19

1    (quoting *Manual for Complex Litigation, Third* § 30.42 (1995)). "A court is more likely to

2    approve a settlement if most of the discovery is completed because it suggests that the parties

3    arrived at a compromise based on a full understanding of the legal and factual issues surrounding

4    the case." *Id*. (quoting 5 *Moore's Federal Practice*, §23.85[2][e] (Matthew Bender 3d ed.)).

5        Class Counsel is experienced in pharmaceutical antitrust cases, and is well aware of the

6    potential risks of taking cases to trial. Class Plaintiffs and Hikma engaged in arm's length

7    negotiations over a period of eight months in an effort to resolve the claims of the Class Plaintiffs

8    and the Proposed Settlement Class. Those efforts were overseen by an experienced mediator,

9    Hon. Layn Phillips (Ret.) and his team, which further suggests the fairness and reasonableness of

10   the Settlement. *G. F. v. Contra Costa Cty*., 2015 WL 4606078, at *13 (N.D. Cal. July 30, 2015)

11   (noting that "[t]he assistance of an experienced mediator in the settlement process confirms that

12   the settlement is non-collusive"); *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *6 (N.D.

13   Cal. Dec. 18, 2018), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020) (noting that

14   the settlement "was the product of arm's length negotiations through two full-day mediation

15   sessions and multiple follow-up calls" supervised by a mediator).

16       The negotiations also took into account information learned during discovery and as the

17   case proceeded through the Court's summary judgment rulings and the parties' trial preparation

18   efforts. Accordingly, Class Plaintiffs and Co-Lead Counsel were well-positioned to evaluate the

19   parties' respective positions, having reviewed millions of pages of documents produced in

20   discovery; obtained voluminous information pursuant to interrogatories and stipulations; taken

21   over 30 depositions of Defendants and third parties; briefed motions to dismiss, for class

22   certification, and for summary judgment; and served extensive expert reports.

23       ## 2.    Substantive Considerations

24       Rules 23(e)(2)(C) and (D) set forth factors for preliminarily conducting "a 'substantive'

25   review of the terms of the proposed settlement." Fed. R. Civ. P. 23(e)(2)(C)-(D) advisory

26   committee's note to 2018 amendment. In determining whether "the relief provided for the class is

27

28

20

1  adequate," courts consider: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness

2  of any proposed method of distributing relief to the class, including the method of processing

3  class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of

4  payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P.

5  23(e)(2)(C). In addition, the Court must consider whether "the proposal treats class members

6  equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D).

7          a.      **Strength of Class Plaintiffs' Case and Risks of Continued
8                  Litigation**

9          In determining the likelihood of a plaintiff's success on the merits of a class action, "the

10  district court's determination is nothing more than an amalgam of delicate balancing, gross

11  approximations and rough justice." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625

12  (9th Cir. 1982) (internal quotations omitted). The court may "presume that through negotiation,

13  the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering

14  Plaintiff's likelihood of recovery." *Garner v. State Farm. Mut. Auto. Ins. Co.,* 2010 WL 1687832,

15  at *9 (N.D. Cal. Apr. 22, 2010) (citing *Rodriguez*, 563 F.3d at 965).

16          Although Class Plaintiffs and their counsel have confidence in Class Plaintiffs' claims

17  against Hikma, a favorable outcome at trial is not assured. Class Plaintiffs would need to

18  overcome numerous substantive defenses at trial, and possibly succeed on appeal. Defendants,

19  and experts they would offer at trial, would contest every theory of liability and measure of

20  damages. There are, for example, substantial disputes as to: (i) whether Hikma's agreement with

21  Jazz was anticompetitive; (ii) whether the alleged conduct resulted in overcharges to Xyrem

22  purchasers; and (iii) the viability of various causation defenses at trial. Competing experts would

23  have offered conflicting opinions as to whether Hikma's conduct had procompetitive benefits and

24  resulted in overcharges to the class. The proposed Settlement, on the other hand, assures a

25  favorable outcome for the Proposed Settlement Class.

26

27

28

### b. The Settlement Provides Adequate Relief to the Proposed Settlement Class

The proposed Settlement provides substantial consideration for the benefit of the Proposed Settlement Class. The settlement fund of $50,000,000, together with any accrued interest or earnings after deposit, will be held in escrow. Settlement ¶¶ 7.2 and 8.2. As far as Co-Lead Counsel is aware, the proposed settlement with Hikma, together with the settlements with other Defendants,[10] is among the largest federal indirect purchaser settlements to date in antitrust cases involving pharmaceutical products. *E.g. In re Lidoderm Antitrust Litig.*, No. 14-md-251 (N.D. Cal. Sept. 20, 2018) (ECF No. 1056) ($104.75 million); *In re Aggrenox Antitrust Litig.*, No. 14-MD-2516 (D. Conn. Mar 6, 2018) (ECF No. 766) ($54,000,000); *In re Flonase Antitrust Litig.*, 291 F.R.D. 93, 98 (E.D. Pa. 2013) ($46,000,000); *In re Remicade Antitrust Litig.*, 2023 WL 2530418, at *16 (E.D. Pa. Mar. 15, 2023) ($25,000,000).

The Settlements recover a significant portion of Class Plaintiffs' estimated single damages at trial (payable by both Jazz and Hikma) of $422 million if the jury returned a verdict based on a 2021 entry date (a relatively conservative scenario).

Given the depth of experience they have in prosecuting complex antitrust cases, particularly those involving pharmaceutical products, Co-Lead Counsel's recommendation that the Settlement is in the best interests of the Proposed Settlement Class merits substantial weight. This is particularly true where, as here, counsel have conducted significant discovery and are well-versed in the pros and cons of proceeding with the litigation. *See Giusti-Bravo v. U.S. Veterans Admin.*, 853 F. Supp. 34, 40 (D.P.R. 1993) ("In view of the fact that competent and experienced counsel have been able to conduct ample discovery which allowed them to properly assess the probability of success on the merits of the putative class claim . . . their

---

[10] Class Plaintiffs' Settlement with Jazz, pending approval of the Court, is $145,000,000. ECF No. 958. The settlements with Amneal and Lupin together were $3,400,000, but were not not distributed and used for continuing litigation expenses. ECF No. 423. The remaining funds will be distributed to the Proposed Settlement Class together with the Jazz and Hikma distributions. Thus, in total, Class Plaintiffs have reached settlements with Defendants totaling $198,400,000 (the "Settlements").

Plaintiffs' Notice of Motion & Motion for Preliminary Approval of Class Action Settlement
Case No. 3:20-md-02966-RS

recommendation should be entitled to substantial weight"). Co-Lead Counsel, relying on their years of experience and their efforts in this litigation, recommend approval of the proposed Settlement.

### c.    Attorneys' Fees, Expenses, and Service Awards

Any fees and expenses awarded to Class Counsel by the Court will be deducted from the settlement fund. Settlement ¶ 7.2. Any reduction in requested fees and expenses will benefit the Proposed Settlement Class, not Defendants. As a result, and consistent with the District Guidelines (¶¶ 6, 9), while the Court need not decide the amount of fees and expenses to be awarded to Class Counsel at this stage, the structure of the settlement ensures that the future fee request poses no obstacle to preliminary approval.

The Settlement is not contingent on the award of any amount of fees or expenses. Settlement ¶ 12. In their motion for an award of fees and expenses, which will be heard only after Settlement Class Members have had an opportunity to object, Class Counsel will seek an award of attorneys' fees of up to one-third of the total settlement fund[11] (plus one-third of interest accrued), and out-of-pocket expenses of up to $4,500,000. District Guidelines ¶ 6; *see also Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (citation omitted) (attorneys may recover "out-of-pocket expenses that 'would normally be charged to a fee paying client'"). Before the objection deadline, Class Counsel will provide an itemized list of their expenses by category. *See Wren v. RGIS Inventory Specialists*, 2011 WL 1230826, at *30 (N.D. Cal. Apr. 1, 2011); District Guidelines ¶ 6.

Class Plaintiffs will also move as part of final approval for the payment of notice and settlement administration costs not to exceed $300,000, which would include any initial payments that the Court approves (*see* Section VI, below).[12] Class Counsel does not intend to apply for additional service awards as a result of the Settlement with Hikma.

---

[11] Class Counsel will not seek fees on any amounts related to the Amneal and Lupin settlement.

[12] This figure reflects a cap on notice and administrative costs that Co-Lead Counsel negotiated

1

### d. Equitable Treatment of Class Members

2    The proposed Plan of Allocation (Exhibit 2 to the Preliminary Approval Declaration)

3   mirrors that submitted in connection with the Motion for Preliminary Approval of the Jazz

4   Settlement (ECF No. 958-3). The proceeds of both settlements (combined with the remaining

5   amounts from the Amneal/Lupin settlement) will be distributed together. The plan of allocation

6   provides for *pro rata* payments to class members, with certain claims being given greater weight

7   than others. As noted above, the Settlement contains a release for claims related to purchases of

8   both Xyrem (brand and generic) and Xywav, as well as purchases by Class members of either

9   product nationwide (as opposed to only in the Class States). The strength of Class members'

10   claims with respect to these different purchases vary, with claims related to Xyrem purchases in

11   the Class States being by far the strongest, as evidenced by their inclusion in the Damages Class.

12   Given the possibility that indirect purchasers would lack standing to assert claims in the non-

13   Class States and given the Court's ruling dismissing claims for Xywav purchases, any claims a

14   class member may assert related to: (1) purchases in the non-Class States; and (2) Xywav

15   purchases (or both) would be substantially weaker claims.

16    As a result, under the proposed Plan of Allocation, different weights are assigned these

17   different types of purchases during the claims administration process: (1) claims for purchases of

18   Xyrem in the Class State would be counted at their full value; (2) purchases of (a) Xyrem

19   purchases in the non-Class States and (b) Xywav purchases in the Class States would be

20   multiplied by 0.05 (i.e. weighted at 5%); and (3) purchases of Xywav in non-Class States would

21   be multiplied by 0.025 (i.e. weighted at 2.5%). This weighted approach is consistent with the

22   principle that "[i]t is reasonable to allocate the settlement funds to class members based on the

23   extent of their injuries or the strength of their claims on the merits." *In re Omnivision Techs., Inc.*,

24   559 F. Supp. 2d 1036, 1045 (N.D. Cal. 2008); *see also In re JUUL Labs, Inc., Mkt'g, Sales*

25   _____

26   with the Notice and Claims Administrator. Co-Lead Counsel intend to authorize payments to the
Notice and Claims Administrator only for costs reasonably incurred given the volume of claims

27   submitted, while balancing the need to ensure a robust and effective notice and claims processes.

24

28   Plaintiffs' Notice of Motion & Motion for Preliminary Approval of Class Action Settlement
Case No. 3:20-md-02966-RS

*Pracs., and Prods Liab. Litig.*, 2023 WL 6205473, at *6-7 (N.D. Cal. Sept. 19, 2023) (approving plan of allocation that weighted the value of certain purchases more than others); *Baird v. BlackRock Institutional Tr. Co., N.A.*, 2021 WL 5991060, at *5 (N.D. Cal. July 12, 2021) (granting preliminary approval for settlement that distributed payments in proportion to class members' harm). In this case, based on the distribution of spending among the different categories of purchases,[13] Class Plaintiffs would expect that roughly 93.6% of the net settlement fund would be used to pay claims of the strongest claims: those for purchases of Xyrem in the Class States.

Lastly, the weighting of claims would apply to all Settlement Class Members; i.e. every class member's purchases of Xywav in the non-Class States would be weighted at the 2.5% level. The Plan of Allocation thus treats all Settlement Class Members equitably.

### e.    The Released Claims Are Consistent with Those Pled

The Released Claims include all claims (under any theory or statute) "arising out of the facts, occurrences, transactions, or other matters alleged or asserted in the Pre-Consolidation Complaints, the Complaint or in this Action[.]" Settlement § 1.24.  The releases extend to matters that were raised or that could have been raised in the litigation, but do not prevent class members from pursuing unrelated claims or claims against Hikma or other non-released parties. In sum, the released claims are no broader than those pled in the CCAC.

### f.    Supplemental Agreements

Rule 23(e)(3) requires disclosure of any agreements "made in connection" with the settlement. Fed. R. Civ. P. 23(e)(3). Class Plaintiffs have included the Settlement Agreement as Exhibit 1 to the Preliminary Approval Declaration, and there are no other agreements made in

---

[13] The total spending by third-party payers for each of the four groups of claims is set forth in the Settlement Declaration of Rena Conti, Ph.D. (ECF No. 958-4). The totals reflect spending between January 1, 2017 through April 26, 2024, which corresponds to the start of the proposed Class Period for the settlement and the end date through which data is available. Dr. Conti's declaration is being offered only for the purposes of Settlement review and approval, not for any trial purposes.

Plaintiffs' Notice of Motion & Motion for Preliminary Approval of Class Action Settlement
Case No. 3:20-md-02966-RS

1    connection with the Settlement. Class Plaintiffs have separately sought to seal select portions of

2    the Settlement Agreement in a Motion to Seal filed concurrently with this motion.

### g.    Reversion

4        The Northern District's Guidelines require disclosure of any circumstances in which

5    "money originally designated for class recovery will revert to any defendant." District Guidelines

6    ¶ 1(g). Here, the settlement fund will only revert to Hikma if the Court denies final approval. *See*

7    Settlement ¶¶ 3.13, 16.

### h.    Past Distributions

9        The information sought by District Guidelines paragraph 11 regarding past distributions in

10   similar class settlements is provided in Exhibit 3 to the Preliminary Approval Declaration.

## IV.    THE NOTICE PLAN SHOULD BE APPROVED

12       A court must "direct notice [of a proposed class settlement] in a reasonable manner to all

13   class members who would be bound by the proposal." *Massey v. Star Nursing, Inc.*, 2022 WL

14   14151758, at *5 (N.D. Cal. Oct. 24, 2022) (citing Fed. R. Civ. P. 23(e)(1)). "The class must be

15   notified of a proposed settlement in a manner that does not systematically leave any group

16   without notice." *Officers for Justice*, 688 F.2d at 624. Adequate notice must be "reasonably

17   calculated, under all the circumstances, to apprise the class members of the proposed settlement

18   and of their right to object or to exclude themselves as provided in the settlement agreement" and

19   otherwise comply with all other requirements of due process and applicable federal law. *Massey*,

20   2022 WL 14151758 at *5 (citation omitted).

21       Class Plaintiffs propose that notice be combined with notice of the Class-Jazz settlement

22   and replace the notice proposed in the Motion for Preliminary Approval of the Jazz Settlement.

23   The proposed notice plan meets all these requirements, and is substantially similar to the one

24   previously approved by this Court and by many other courts overseeing similar actions. *See* ECF

25   No. 524 at 1-2.[14] The notice documents use plain, easy to understand language. *See* Declaration of

26   _____

[14] *E.g., Vista Healthplan, Inc. v. Warner Holdings Company III, Ltd.*, 246 F.R.D. 349, 355-56

27

28

1   Eric J. Miller, Exhibits C (long form notice) and D (short form notice). They advise recipients

2   that they may be affected by the settlement of a class action lawsuit. The long form notice will be

3   available on the settlement website, including in an easy-to-navigate FAQ, and in hardcopy upon

4   request from the settlement administrator. The long form notice provides the key terms of the

5   Settlement, describes class members' rights and options with respect to the Settlement, and

6   advises how to opt out of the Proposed Settlement Class or object to the settlement. It also advises

7   Proposed Settlement Class Members of the Set-Aside Order (ECF No. 642 at 12-16).

8         Notice of the Settlement will be provided to potential class members through (1) directly

9   emailing and mailing the short form notice to the entities identified on A.B. Data's propriety

10  database and (2) publication notice through selected print media and internet placements, both of

11  which direct class members to a dedicated-case specific website which attaches important case

12  documents, including the long form notice. *See Manual for Complex Litigation* § 21.311 at 287

13  (4th ed. 2004) ("when the names and addresses of most class members are known, notice by mail

14  is usually preferred."). This notice program is timely and cost-effective, and it complies with the

15  recommendations of the Federal Judicial Center's Notice Checklist and Plain Language Guide.

16  Federal courts routinely approve direct individual notice by email and U.S. First Class mail. *E.g.*,

17  *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985) (holding due process satisfied by a

18  descriptive notice with an explanation of the right to "opt out" sent via first class mail).

19        The proposed schedule contemplates a notice period of 30 days, followed by an opt-out

20  and objection period of 30 days. *Aldapa v. Fowler Packing Co. Inc.*, 2016 WL 1073252, at *6

21  (E.D. Cal. Mar. 18, 2016) (finding "twenty-one days is an appropriate time from the date of

22  mailing to respond to the opt-out disclosure notice. A twenty-one day opt-out disclosure period

23  

24  (D.D.C. 2007); *Nichols v. SmithKline Beecham Corp.*, No. 00-6222, 2005 WL 950616, at *10
    (E.D.Pa. Apr. 22, 2005); *In re Zetia (Ezetimibe) Antitrust Litigation*, 18-md-02836 (E.D. Va. Feb.

25  9, 2022) ECF No. 1497; *In re Aggrenox Antitrust Litig.*, No. 14-md-02516 (D. Conn. Mar. 6,
    2018) ECF No. 766; *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, No. 14-md-2503

26  (D. Mass. Dec. 14, 2017) ECF No. 838; *In re Nexium (Esomeprazole) Antitrust Litig.*, No. 12-md-
    2409 (D. Mass. June 16, 2015) ECF No. 1541.

27  

28  Plaintiffs' Notice of Motion & Motion for Preliminary Approval of Class Action Settlement
    Case No. 3:20-md-02966-RS

1    will provide putative class members with an opportunity to make an informed decision whether to

2    opt-out of the disclosure of their contact information and employment records."); *Ferrari v.*

3    *Autobahn, Inc*., 2019 WL 295260, at *10 (N.D. Cal. Jan. 23, 2019) (approving a 30-day opt out

4    period); *In re Marsh & McLennan Cos., Inc. Sec. Litig*., 2009 WL 5178546, at *23 (S.D.N.Y. Dec.

5    23, 2009) (approving 30-day notice period to class); *Vasquez v. Coast Valley Roofing, Inc*., 670

6    F.Supp.2d 1114, 1127 (E.D. Cal. 2009) (approving 30 day notice period). *In re Wal-Mart Stores,*

7    *Inc. Wage & Hour Litig.*, 2008 WL 413749, at *15 (N.D. Cal. Feb. 13, 2008) (approving 30-day

8    opt out period); *Pierce v. Novastar Mortg., Inc.*, 2007 WL 1046914, at *2 (W.D. Wash. Apr. 2,

9    2007) (same). These timeframes are particularly appropriate in this matter as notice was distributed

10   to the same group in connection with class certification and the Amneal and Lupin settlement, and

11   prospective class members are thus likely to have some degree of familiarity with the litigation

12   already. For these reasons, the notice plan constitutes the best notice practicable under the

13   circumstances. Accordingly, Class Plaintiffs respectfully request that this Court approve it.[15]

14   **V.    THE COURT SHOULD APPOINT THE NOTICE AND CLAIMS**
         **ADMINISTRATOR AND THE ESCROW AGENT TO MAINTAIN THE**
15       **SETTLEMENT FUND**

16       The Settlement Agreement will be administered by a well-known, independent claims

17   administrator, A.B. Data, Ltd. ("A.B. Data"). Class Counsel previously selected A.B. Data to

18   administer notice to the settlement class in connection with the Amneal and Lupin Settlement,

19   and the Court appointed A.B. Data to serve in that role. ECF 524 at 1. A.B. Data is well-qualified

20   to provide notice for this settlement and to oversee the claims submission and payment process.

21       A.B. Data was founded in 1981 as a full-service class action notice and claims

22   administrator, providing notice and administration services for a broad range of class actions,

23   including many antitrust class actions involving pharmaceutical products.[16] A.B. Data's experts

24
25   [15] This settlement requires notice under the Class Action Fairness Act, which Defendants are
     serving per the Act. No other notices are required.

26   [16] *See* https://abdataclassaction.com/; *see also In re Restasis (Cyclosporine Ophthalmic Emulsion)*
     *Antitrust Litig.*, 527 F. Supp. 3d 269 (E.D.N.Y. 2021); *In re Namenda Direct Purchaser Antitrust*

27

28
---
Plaintiffs' Notice of Motion & Motion for Preliminary Approval of Class Action Settlement
Case No. 3:20-md-02966-RS

create notice documents that are easily understandable and cost-efficient to produce. Accordingly, A.B. Data is familiar with, and guided by, constitutional due process and the relevant case law relating to legal notification, and should be appointed. A.B. Data's familiarity with this matter will also make the notice and claims process efficient and cost-effective.

Class Counsel also request that the Court appoint Citibank, N.A. as the escrow agent to maintain the settlement fund and authorize the establishment of the settlement fund as a "qualified settlement fund" within the meaning of Treasury Regulation Section 1.468B-1. Citibank has many years of experience managing class action settlement funds, and it maintains a dedicated team responsible for overseeing the management of settlement accounts. In this matter Citibank has served as the escrow agent for the Amneal and Lupin settlements.

## VI.    THE COURT SHOULD APPROVE THE PAYMENT OF INITIAL EXPENSES PRIOR TO FINAL APPROVAL

Class Plaintiffs and Class Counsel will file motions for the payment of attorneys' fees and expenses before the opt out and objection deadline, which gives Proposed Settlement Class Members an opportunity to be informed of the requested fees and expenses before objecting to or opting out of the Settlement. Before that point, however, money will be spent providing notice to the Proposed Settlement Class and administering claims. In consultation with A.B. Data, Class Counsel understand that these initial costs could be as much as $200,000 and therefore request that the Court authorize up to $200,000 to pay for the out-of-pocket expenses incurred in distributing notice and administering claims. These costs are reasonable and necessary to facilitate the settlement. Notice and administration costs will be paid with settlement funds based only on costs actually and already incurred. The Settlement Agreement expressly contemplates the payment of such costs from the settlement fund prior to final approval. Settlement ¶ 8.1.[17]

_Litig._, 462 F. Supp. 3d 307 (S.D.N.Y. 2020); _In re Solodyn (Micocycline Hydrochloride) Antitrust Litig._, No. 14-md-2503-DJC (D. Mass. Apr. 5, 2018), ECF No. 1145; _In re Aggrenox Antitrust Litig.,_ No. 14-md-2516-SRU (D. Conn. Mar. 6, 2018), ECF No. 766.

[17] In the event the Settlement is not ultimately approved or is overturned on appeal, the initial notice and administration costs will not be reimbursed to Hikma or billed to the Damages Class.

Plaintiffs' Notice of Motion & Motion for Preliminary Approval of Class Action Settlement
Case No. 3:20-md-02966-RS

## VII.     THE COURT SHOULD SET A FINAL APPROVAL SCHEDULE

The last step in the settlement approval process is the final approval hearing, at which Class Plaintiffs will seek final approval of the proposed Settlement. At that time, any objections to or arguments in support of final approval of the Settlement from absent class members may be heard. Class Plaintiffs request the Court issue a schedule setting forth the relevant settlement deadlines as set forth in the proposed Preliminary Approval Order filed herewith; within three days of preliminary approval Class Plaintiffs will file a notice setting specific calendar dates for each deadline. Before the objection deadline, Co-Lead Counsel will file a motion specifying the amount of attorneys' fees, expenses, and service awards requested (along with supporting information). Following the opt-out and objections deadline, any disputes related to any opt-out requests will be presented to the Court in accordance with the process agreed to by the parties in the Settlement Agreement. Settlement ¶ 17. After the Court rules on any such disputes and the deadline for Defendants to elect whether to terminate the Settlement (should such termination conditions arise), Class Plaintiffs will file their motion for final approval.

The total length of the proposed schedule—from an order granting preliminary approval to Class Plaintiffs' submission of their reply in support of final approval—is 149 days. That time period does not take into account (1) time necessary for the Court to rule on any disputes concerning opt-out requests and (2) time between Class Plaintiffs' final approval reply brief and the Final Approval Hearing. Accordingly, Class Plaintiffs propose that the final approval hearing occur in or around the first week of November, as convenient for the Court.

## VIII.   CONCLUSION

For the foregoing reasons, Class Plaintiffs and Co-Lead Counsel respectfully request that the Court enter the proposed order granting preliminary approval and setting a date for the fairness hearing.

1   Dated: May 7, 2025

2                                                   Respectfully submitted,

3                                                   By: /s/ Dena C. Sharp
                                                    Dena C. Sharp (State Bar No. 245869)
                                                    Scott Grzenczyk (State Bar No. 279309)
4                                                   Jordan Isern (State Bar. No. 343159)
                                                    **GIRARD SHARP LLP**
5                                                   601 California St., Suite 1400
                                                    San Francisco, CA 94108
6                                                   Telephone: (415) 981-4800
                                                    dsharp@girardsharp.com
7                                                   scottg@girardsharp.com
                                                    jisern@girardsharp.com
8

9                                                   By: /s/ Michael M. Buchman
                                                    Michael M. Buchman
10                                                  **MOTLEY RICE LLC**
                                                    800 Third Avenue, Ste 2401
11                                                  New York, NY 10022
                                                    (212) 577-0040
12                                                  mbuchman@motleyrice.com

13
                                                    *Class Counsel and Proposed Settlement*
14                                                  *Class Counsel*

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                                31

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 7, 2025, I caused the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will automatically send notification of the filing to all counsel of record.


By: /s/ *Dena C. Sharp*
Dena C. Sharp

32