UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: XYREM (SODIUM OXYBATE) ANTITRUST LITIGATION | Case No. 20-md-02966-RS |
| This Document Relates To: | **ORDER DENYING SEALING MOTIONS** |
| All Actions | |

## I. INTRODUCTION

In the course of this complex and hard-fought multidistrict litigation, the parties have moved to seal some component of nearly every motion they filed. Too often, in this case and others, such requests are granted because it is easier to leave something sealed than it is to explain why it should be unsealed. As a result, the records of the federal judiciary are replete with documents that the public cannot access simply because a party designated it confidential.

This order addresses the sealing motions pending on the docket. As explained in more detail below, such motions fail to meet the "compelling reason" standard that generally applies to merits-related materials in courts of the Ninth Circuit. The motions are therefore denied.

## II. LEGAL STANDARD

There is a strong presumption in favor of allowing public access when deciding whether materials should be sealed. *See Apple Inc. v. Psystar Corp.*, 658 F.3d 1150, 1162 (9th Cir. 2011). This presumption stems from the citizenry's "general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435

U.S. 589, 597 & n.7 (1978).  It also serves the purpose of "promoting the public's understanding of the judicial process and of significant public events."  *Valley Broad. Co. v. U.S. Dist. Court—D. Nev.*, 798 F2d 1289, 1294 (9th Cir. 1986).

In this court, to overcome the strong presumption in favor of public access, a request to seal must be, *inter alia*, narrowly tailored.  Civ. L.R. 79-5(c)(3).  More generally, in the courts of the Ninth Circuit, a party seeking to seal court records must satisfy one of two standards.  Where the material is "unrelated to the merits of a case," the party seeking to seal "need only satisfy the less exacting 'good cause' standard."  *See Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1097 (9th Cir. 2016).  If the material *is* related to the merits, however, a higher burden applies, and sealing is only proper if the court finds "a compelling reason and articulate[s] the factual basis for its ruling, without relying on hypothesis or conjecture."  *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178–79 (9th Cir. 2006) ("The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records.").  Where a litigant presents compelling reasons to seal material, supported by articulated facts, the court must then balance the interests of the public and the party seeking sealing.  *Ctr. for Auto Safety*, 809 F.3d at 1096–97.  This balancing test involves such factors as the public's interest in understanding the functioning of the judicial process and the volume of material sought to be sealed.  *See Zakinov v. Ripple Labs, Inc.*, No. 18-cv-6753-PJH, 2023 WL 5280193, at *1 (N.D. Cal. Aug. 15, 2023).

### III. DISCUSSION

#### A.  Sealing of Decertification Motion Practice

##### 1.  Dkt. No. 706

When Defendants moved to decertify the damages class, they asked the court to seal various aspects of the motion and its underlying support.  *See* Dkt. No. 706.  In fact, Defendants sought to seal nearly the entire supplemental expert report that supported the motion.  *Id.* at 3

(seeking to seal "Page 4-Page 28, ¶ 34; and Page 29 ¶ 36" of a document that was 30 pages long). The material needs sealing, Defendant argues (here and elsewhere), because it contains confidential business information of the sort "that might harm a litigant's competitive standing [if disclosed]." *In re Elec. Arts, Inc.*, 298 F. App'x 568, 569 (9th Cir. 2008) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)); *Asuragen, Inc. v. Accuragen*, No. 16-CV-5440-RS, 2018 WL 4855435, at *1 (N.D. Cal. Jan. 30, 2018) (sealing in their entirety exhibits "disclos[ing] proprietary trade secret information and confidential business strategies").

The materials Defendants identify, *see* Dkt. No 706 at 3, do not meet the compelling reasons threshold for sealing in the context of a motion for class decertification. *See Zakinov*, 2023 WL 5280193, at *1. No information therein seems likely to cause undue harm if disclosed. It does not resemble "any formula, pattern, device, or compilation of information which is used in one's business, and which gives [one] an opportunity to obtain an advantage over competitors who do not know or use it." *See In re Elec. Arts, Inc.*, 298 F. App'x at 569 (citing the definition of "trade secrets" from the Restatement of Torts § 757, cmt. b). Although sales and pricing data about Xyrem could be used in business, that does not make it susceptible to "becom[ing] a vehicle for improper purposes." *Id.* (qoting *Nixon*, 435 U.S. at 598). Indeed, the materials comprise mere expert opinions about data that is highly relevant to material issues of triable fact—i.e., the extent of competition in the sodium oxybate market following the agreements at the heart of this case. Inasmuch as some of the information describes the activities of non-party Express Scripts Specialty Distribution Services, Inc. ("ESSDS"), it similarly fails to meet the relatively "more lenient" standard for sealing third party information. *See Epic Games, Inc. v. Apple Inc.*, No. 4:20-cv-5640, 2021 WL 1925460, at *1 (N.D. Cal. 2021). The parties hired experts to analyze the ESSDS data and reach conclusions for the ultimate purpose of arguing before a jury in a trial open to the public. To seal them from the record is therefore antithetical to the exercise of a public judicial system.

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Claiming they acquired this data "on the understanding that [it] would be kept confidential," Defendants cite a paragraph of a stipulated protective order that does not support the premise. *See* Dkt. No. 706 at 2 (citing Dkt. No. 286 ¶ 10). Defendants acquired the information and *then* filed the stipulated protective order, which the magistrate judge later granted. In other words, any understanding that the data would be kept confidential arose *after* its acquisition. Plus, the relevant language arises in a section that pertains to data security, not sealing records. At any rate, that protective order is not binding on the court's sealing authority.

To be sure, the court has previously ordered the sealing of similar data and forecasts. *See* Dkt. No. 510 at 3, 5. Yet, the parties cite no case for the premise that, if a court seals some records, it must therefore seal other similar records. More fundamentally, the reasons given for sealing the materials at issue in this motion do not contain the "specific factual findings" required to support a compelling reason. *See Kamakana*, 447 F.3d at 1178. For instance, it is not at all apparent how Defendants could be competitively harmed by the disclosure of pricing and sales data about the sodium oxybate market during the class period; no explanation is provided in the motion. *See* Dkt. No. 706 (citing *In re Elec. Arts, Inc.*, 298 F. App'x 568, 569 (9th Cir. 2008) for the proposition that the compelling reasons standard is met if the information "might harm a litigant's competitive standing [if disclosed]," but failing to provide any description of how the at-issue information could harm any litigant's competitive standing). The cases cited to support the argument that this particular data could be harmful if disclosed, moreover, lack any reasoning to that effect. *See, e.g., Ojmar US, LLC v. Sec. People, Inc.*, No. 16-cv-4948, 2017 WL 772613, at *2 (N.D. Cal. Nov. 29, 2017) (agreeing to seal material described only as "confidential business information" without examining the degree to which that information could harm any litigant's competitive standing).

In this court, and in the context of this case, the fact that parties designated particular information as confidential does not *ipso facto* warrant sealing it. In fact, "[r]eference to a

stipulation or protective order that allows a party to designate certain documents as confidential is not sufficient to establish that a document, or portions thereof, are sealable." Civ. L.R. 79-5(c). The relevant standard is only met once a party provides compelling reasons, supported by facts, to explain why the risk of harm that spurred the confidential designation overcomes the traditional presumption of public access. Such reasons are lacking here. The motion is denied.

2. Dkt. No. 707

In this motion, Defendants ask the court to consider whether certain of Plaintiffs' materials, referenced in the motion to decertify and accompanying exhibits, ought to be sealed. *See* Dkt. No. 707. Plaintiffs appear not to have responded. At any rate, and for the reasons described *supra*, the lines in the motion that refer to Plaintiffs' expert economist do not appear worthy of sealing, nor are the report and deposition transcript that Defendants attached. *See* Dkt. No. 707-2 at 18; Dkt. Nos. 707-3, 707-4. The motion is denied.

3. Dkt. No. 741

Plaintiffs ask the court to consider whether certain materials in their opposition to Defendants' motion to decertify the damages class ought to be sealed given that Defendants had designated their contents as confidential. In Defendants' response, *see* Dkt. No. 748, they largely rehash the reasoning from the motion to seal portions of the initial decertification motion, *see* Dkt. No. 706 described *supra*. For the same reasons already explained, the rationale for sealing this information is not compelling enough to satisfy the Ninth Circuit standard. Nothing in the Plaintiffs' opposition, nor in the attached Exhibit A, need be sealed—the motion at Dkt. No. 741 is denied.

4. Dkt. No. 754

Defendants move to seal portions of their own reply to the motion for decertification of the damages class. *See* Dtk. No. 754. Their basis for sealing is effectively the same as that proffered in support of sealing portions of Plaintiffs' opposition and the initial motion, and it is unpersuasive

for the same reasons.  The motion is denied.

**B.  Sealing of Motion Practice over Relief from Magistrate Judge's Motion to Strike Order**

    1.  <u>Dkt. No. 679</u>

In this motion, Plaintiffs ask the court to consider whether to seal certain materials referenced in their motion for relief from the magistrate judge's order regarding a motion to strike. *See* Dkt. No. 679.  The materials at issue are voluminous, and Defendants have responded to ask the court to seal most of it.  *See* Dkt. No. 682.  Their primary reason for sealing reiterates the reasoning rejected elsewhere in this order; because they had deemed portions of the information concerning future products as confidential, they argue that revealing it to the public would cause irreversible damage.

Remaining unexplained, however, is how allowing public access to the expert reports and other materials in this filing will encourage "business competitors seeking to replicate [any party's] business practices and circumvent the considerable time and resources necessary in product and marketing development." *See id.* at 2–3 (quoting *Bauer Bros, LLC v. Nike, Inc.*, No. 09-cv-500-WQH-BGS, 2012 WL 1899838, at *2 (C.D. Cal. May 24, 2012).  In *Bauer*, the court confronted materials about how Nike formed marketing plans and strategies, its customer lists, and summaries of information about specific Nike products.  Accordingly, the court recognized that unsealing it "could result in improper use by business competitors seeking to replicate Nike's business practices and circumvent the considerable time and resources necessary in product and marketing development." *Bauer Bros*, 2012 WL 1899838, at *2.  Here, by contrast, no party has shown that the material poses such risks.  Defendants fail to explain how, exactly, revealing the expert reports and underlying data would cause irreversible damage.

Defendants also argue that the material needs to be sealed because some of it reflects confidential communications with the FDA.  This reason likewise falls flat because the likelihood of such information being misused appears too spectral to support the harm to the public interest

that such sealing would cause.  As noted elsewhere in this order, the fact remains that a jury could yet hear about the details these documents describe.  The courtroom will not be sealed in that instance, and neither should the record be sealed here.

    2.  <u>Dkt. No. 710</u>

In this motion, Defendants move to seal portions of their opposition to Plaintiffs' motion for relief from the magistrate judge's order on the motion to strike.  *See* Dkt. No. 710.  The motion is denied for the reasons described *supra*.  Most of the material is expert opinion, and none of it appears to contain the sort of personally identifying information or trade secrets that could harm any party in this case.

    3.  <u>Dkt. No. 726</u>

Here, Plaintiff seek sealing consideration as to certain materials cited in the reply brief supporting their motion for relief.  *See* Dkt. No. 726.  This information, much of it in the form of entire expert reports, need not be sealed—not least because the request is not narrowly tailored. Defendants do not appear to have replied, but regardless, the motion is denied for substantially the same reasons explained elsewhere in this order.

**C.  Amendment of Class Definition Motion Practice**

    1.  <u>Dkt. No. 728</u>

When Plaintiffs moved to amend the class definition, they asked the court to consider whether to seal materials the parties had marked as confidential.  *See* Dkt. No. 728.  Defendants did not respond, and there appears no good cause to seal any of the information therein designated by Defendants as confidential.  The motion to seal is denied with respect to those designations.

Plaintiff United responded to Plaintiffs' motion, *see* Dkt. No. 731, and explained why some of the material needed to be sealed.  Although United's authorities differed from those that Defendants put forward elsewhere, the thrust of the argument remained the same—that disclosure of the information could cause a competitive disadvantage.  *See id.* at 3 (describing the at issue

United States District Court
Northern District of California

trade secret as "the actual amounts United paid for each at-issue drug product"). Yet, how much the drug costs is not a trade secret of the sort that courts ought to seal; to the contrary, that information is precisely the sort that would inform a factfinder assessing whether a given fact pattern amounts to antitrust activity, and the public therefore ought to be able to access it when trying to understand this case.

United argues that "courts have also consistently found that compelling reasons exist to seal documents and information when the documents or information discuss or depict a party's non-public financial or other data, including both non-public financial or damages information and claims data." *Id.* Some of the cases cited, however, feature scarce analysis. *See, e.g.*, *Digital Reg of Texas, LLC v. Adobe Sys., Inc.*, No. 12-cv-1971-CW, 2014 WL 4246158, at *3 (N.D. Cal. Aug. 27, 2014) (granting party's motion to seal damages report that had been submitted in connection with motion to exclude expert testimony because it references the party's confidential financial information, but providing no analysis of whether that confidential information could or would actually harm anyone's competitive standing if disclosed). Others rest on a more fulsome explanation of how given information could be harmful. *See, e.g.*, *Zheng-Lawson v. Toyota Motor Corp.*, No. 17-cv-6591-BLF, 2019 WL 6841324, at *2–3 (N.D. Cal. 2019) (agreeing to seal confidential sales data after Defendants explained that disclosure could allow competitors to calibrate pricing and distribution methods to undercut Defendants in the market). Such explanation is simply lacking here: United says competitors could use the information to "undercut United's competitive standing in current and future contract negotiations" but fails to show how. *See* Dkt. No. 731 at 4–5. That third parties can use information they find in the public records of the judiciary is not, standing alone, a reason to keep that information secret. Ultimately, none of this information needs to be sealed, and the motion is denied.

    2. Dkt. No. 756

Defendants move to seal portions of their opposition to Plaintiffs' bid to amend the class

definition and for leave to serve supplemental expert damages reports.  *See* Dkt. No. 756.  As described above, the reasons for this sealing request are that the information therein reflects sales, pricing and purchasing data about Xyrem.  As held above, those reasons are not sufficiently supported to be compelling, and so this motion is denied.  None of the attachments need be redacted or otherwise withheld from the public record.

> 3.  Dkt. No. 757

Defendants also ask the court to consider whether other material in their opposition and supporting papers needs to be sealed.  Dkt. No. 757.  Humana, HCSC, and Molina responded, *see* Dkt. No. 770.[1]  As should be clear from the general tenor of this order, the reasoning provided fails to support the finding of a compelling need to seal this information.  The motion to seal is denied.

> 4.  Dkt. No. 769

In filing their reply brief in support of amending the class definition, Plaintiffs filed a motion to consider whether other material in their papers should be sealed.  *See* Dkt. No. 769.  For the reasons already explained, the motion is denied.

**D.  Sealing of Summary Judgment and *Daubert* Motion Practice**

In connection with the parties' competing motions for summary judgment and to exclude various expert opinions and testimony, many motions to seal were filed.  *See, e.g.*, Dkt. Nos. 655, 684, 715.  By stipulation, these materials were filed conditionally under seal.  *See* Dkt. No. 652 (stipulation); Dkt. No. 836 at 1–2 (consolidated motion describing case history).  Pursuant to the stipulation and associated order, the parties provided one consolidated motion to seal featuring a chart that identifies what information should remain under seal, which party requested such

---

[1] This document also offered less-than-compelling reasons to seal material identified at Dkt. No. 769, 728.

United States District Court
Northern District of California

sealing, and the basis for the request. *See* Dkt. No. 740 (the chart). Following further orders and hearings, the parties submitted an updated motion and sealing chart. Dkt. No. 836-1 (the updated chart). Various parties submitted related statements to support the sealing requests. As explained in more detail *infra*, these materials are sufficiently related to the merits of the case that only compelling reasons which outweigh the public interest in this case may warrant sealing. Here, the support for sealing provided by the parties does not satisfy that standard. As a result, nothing need remain sealed from the summary judgment and *Daubert* practice.[2]

      1.  Dkt. No. 836-2: Justifications by Jazz and Hikma

The information that Jazz and Hikma seek to seal can be broadly categorized into four groups: (A) what they call "competitively sensitive material" about their research, design, and manufacturing; (B) regulatory filings and communications regarding the REMS program; (C) negotiations and terms of settlements between Jazz and the generic manufacturers; and (D) financial, pricing, and business information.

As to the first category, Defendants' argument is not compelling. They say the documents disclose confidential details about Jazz and/or Hikma's manufacturing processes and abilities related to sodium oxybate, arguing this information would cause irreversible harm if revealed. *See* Dkt. No. 836-2 at 4. They also highlight the court's prior order to seal some of the material in light of similar justifications. Notwithstanding that order, the fact remains that Defendants have not provided facts to explain how, exactly, disclosing at-issue information would cause competitive harm of the sort that disclosing a trade secret can cause. It is simply unclear what irreversible harm will result if the public (even competitors) can access this information. As just

_____

[2] Disposing of the consolidated motion at Dkt. No. 836 allows the termination of the following pending motions, which are understood to be subsumed therein: Dkt. Nos. 684, 685, 686, 689, 690, 691, 715, 716, 717, 719, 720, 721, 737, and 740.

one example, Defendants suggest that the court keep from public view the information that Hikma's subsidiary had considered launching a generic Xyrem drug in 2014 but ultimately did not do so.  See Dkt. No. 655-3 at ¶¶ 97–99.  Any harm that might flow from disclosure of that information, however, is unstated.

Upon close review of the other entries in the chart that share this sealing justification, no need for sealing is evident.  Even *if* it could be considered compelling, the R&D/manufacturing justification still fails to outweigh the public interest in being able to access the underlying information.

The same flaws infect Jazz and Hikma's other justifications.  As for regulatory communications, disclosing the details of, i.e., when Hikma filed certain materials with the FDA, *see* Dkt. No. 655 ¶¶ 45–51, does not appear even slightly likely "to frustrate continuing development efforts and regulatory strategies."  *See* Dkt. No. 836-2 at 5.  With respect to settlement terms, negotiations, and strategies, the public interest in such materials—in the context of a case about whether the relevant settlements were anticompetitive—far outweighs the ambiguous concern that bad actors might misuse the data.  This situation is quite unlike *In re. Elec. Arts*, where the Ninth Circuit deemed a leasing agreement sealable in the context of a case about whether one of the parties to the agreement violated fiduciary duties to their membership. *See* 298 Fed. App'x at 569–70.  There, the material to be sealed was one paragraph unrelated to the merits of the case, *id.*, whereas here, Defendants seek to seal the entire agreements averred to be anticompetitive.  *See, e.g.*, Dkt. No. 836-1 at 12 (seeking to seal the entirety of Exhibit 211, the authorized generic agreement between Jazz and Hikma, located at Dkt. No. 658-14).  What's more, Defendants do not flesh out how the fact that certain information informed or concerned a confidential settlement amounts to a compelling reason to seal it.[3]  Finally, as to financial

---

[3] Admittedly, in the nascent stages of this litigation, the court saw fit to seal information about the

United States District Court
Northern District of California

information, that "Jazz itself produced a long-term forecast in 2019 that assumed Xyrem's price would not increase after generic entry," *see* Dkt. No. 655-22 ¶ 27, is not the type that warrants sealing—nor is any of the other information identified as sealable on that basis.

In short, nothing that Jazz and Hikma seek to seal in these briefings warrants such treatment.

### 2.  Dkt. No. 836-3: Justifications by Opt Out Plaintiffs

HCSC, Humana, and Molina make stronger arguments than Defendants in support of sealing certain material, as their statement explains precisely how harm could flow from certain disclosures. *See* Dkt. No. 836-3.  Nevertheless, and for the reasons already stated, the risk of competitive harm in future negotiations regarding rebates with drug manufacturers is not, standing alone, sufficient to seal the material.  That risk is relatively small, especially in light of the fact that much of the information in question is merely expert opinion.  *See, e.g.*, Dkt. No. 655-52 ¶¶ 37–39.  Thus, although the insurers do a better job connecting the dots between disclosure and potential harm, their reasoning ultimately fails to outweigh the public interest.

### 3.  Dkt. No. 836-4: Justifications by United

United, filing separately from the other opt-out insurers, argues for the sealing of certain transactional claims data, non-public financial information, internal coverage analyses, and competitively sensitive clinical and economic decision-making.  Dkt. No. 836-4.  On close review, however, the material to be sealed merely refers to and analyzes such data.  *See, e.g.*, Dkt. No. 655-21 ¶ 13.  Where such data is revealed, *see id.* ¶ 77, it is generally aggregated.  Moreover, if

---

underlying settlements, largely because Defendants said they were highly confidential.  *See, e.g.*, Dkt. No. 139 (agreeing to seal portions of the relevant agreements during motion to dismiss proceedings).  Upon further reflection, however, it is not clear why such a settlement need remain confidential even after it becomes evidence in separate litigation.  Moreover, the earlier request was more narrowly tailored than the requests currently before the court.

United States District Court
Northern District of California

United is concerned about the prospect of its competitors learning it paid over $1 billion for Xyrem, Xywav, and generic Xyrem from 2015 through 2023 Q2, *id.*, it says nothing about the fact that many of its fellow Plaintiffs *are* such competitors and thus *already know this information.* If those competitors have known about this data as a result of this litigation, it is unclear why other competitors should be prevented from the same knowledge—especially in light of United's failure to raise any examples where disclosing such information has proved damaging to a litigant.

    4.  <u>Non-Party Justifications</u>

**Amneal:** Amneal's statement in support of its sealing requests reiterates the reasons put forth by Jazz and Hikma. Dkt. No. 836-5. Amneal, a non-party, contends that the to-be-sealed material falls into categories including regulatory filings and REMS strategies; information about the at-issue settlements; communications about financial information; and documents about Amneal's drug development and manufacturing processes. As with the Jazz and Hikma statement, Amneal's statement fails to provide facts that could support the finding that this information is likely to cause competitive harm if disclosed; to the contrary, it only highlights the information's confidential designations and then raises the hypothetical specter of competitors frustrating and jeopardizing its work. For the same reasons explained with respect to Jazz and Hikma's rationales, Amneal's fall short of the standard.

**ESSDS:** ESSDS is a specialty pharmacy whose sole business is dispensing brand and generic Xyrem and Xywav. It argues that data about total sales "reflects the totality of ESSDS' financials" and therefore requires sealing. Dkt. No. 836-6. The risk, ESSDS complains, is that a competitor might bid on the pharmacy contract for these drugs in the future, using the data in the briefing. The court is unpersuaded that this fear rises to the compelling reason standard. Moreover, even if it did, it would not outweigh the public interest in this litigation and the justice system more generally. Because so much of this case hinges on the contours of the sodium oxybate market, pricing and sales information is especially relevant to material questions of fact

still at issue.

**Lupin**:  Lupin, like Amneal, seeks to seal business materials it designated as confidential, particularly those involving its manufacturing processes or its internal analyses of anticipated generic competition.  *See* Dkt. No. 836-7.  For the reasons already explained, Lupin's justification is insufficiently compelling to warrant sealing.  The same holds true with respect to the sealing justifications submitted by Norac (Dkt. No. 836-8), Par (Dkt. No. 836-9), Sun (Dkt. No. 836-10), Teva (Dkt. No. 836-11), Veranova (Dkt. No. 836-12), and Mallinckrodt (Dkt. No. 836-13). Broadly speaking, these filings argue that, because information was designated as confidential, it would be damaging if released.  As previously noted, the local rule in this district is that referencing a stipulation or protective order permissive of confidential designations "is not sufficient to establish that a document, or portions thereof, are sealable."  Civ. L.R. 79-5(c).  To view the issue otherwise would be entirely circular.  Thus, that a given non-party thinks certain information is highly confidential, *see, e.g.*, Dkt. No. 836-8 (Norac), does not make it sealable.

Some of the parties specifically target terms in the confidential settlement agreements that make up the crux of this case.  *See, e.g.*, 936-9 (Par arguing those terms should be sealed).  As already explained *supra*, however, those terms need not be sealed given that they go to the heart of litigation and in consideration of the relatively low risk that disclosing said terms could cause undue hardship, long after those agreements were executed.

In sum, none of the materials submitted as part of the summary judgment and Daubert briefing needs to be sealed.

### E.  Plaintiffs' Motion for Preclusion of Evidence

####   1.  Dkt. No. 699

Plaintiffs sought to preclude certain testimony at trial by arguing that Defendants were using the attorney client privilege as both a sword and a shield—and in the process of that motion practice, Plaintiffs asked the court to consider whether materials cited therein ought to be sealed.

Dkt. No. 699.  Defendants responded to argue that some of the material needed to be sealed, *see* Dkt. No. 702.  Primarily, they argue that the details in the motion and supporting papers contained competitively sensitive business information that could cause harm if disclosed; as described elsewhere in this order, that rationale is insufficient when unsupported by facts, particularly where, as here, it is not obvious why the information's disclosure would cause harm.  They also seek to keep secret the financial forecasts that other aspects of this order have already rendered unsealed.  Finally, they argue that some of the material reflects confidential legal and business determinations.  As already explained, that something is confidential does not make it sealable.  The motion is denied.

### 2.   Dkt. No. 738

When Defendants opposed the motion, they sought to seal certain aspects of their brief and supporting materials.  Dkt. No. 738.  The motion merely reiterates that certain content was designated as confidential and spurs non-parties to explain why sealing is warranted.  The explanations provided by the non-parties with respect to the summary judgment chart described *supra* appear to be the only ones those parties filed, and on the grounds already stated, those explanations fail to provide compelling reasons to seal.  The motion is denied.

### 3.  Dkt. No. 763

Plaintiffs replied to Defendants' opposition briefing and sought sealing consideration, spurring Defendants to file a statement to explain why certain aspects of the reply brief required sealing.  *See* Dkt. No. 771.  Their arguments reduce to the same lackluster ones that animated the summary judgment sealing chart.  Because Defendants provide no compelling reasons to seal the material, the motion is denied.

## F.  Plaintiffs' Renewed Motion for Preclusion of Evidence

### 1.  Dkt. No. 875

Plaintiffs again raised the issue just described and once more asked the court to consider

United States District Court
Northern District of California

whether materials cited therein ought to be sealed. Defendants responded with a narrower set of redactions for the motion and the attached materials. Nonetheless, on close inspection, none of the proffered reasons for sealing meet the compelling reasons standard. As just one example, Defendants seek to seal the fact that their own expert formed the opinion that Hikma had a weaker negotiating position than Jazz in the patent infringement litigation. That fact, however, is not so potentially damaging to any party that it warrants withholding from the public. Nor is the play-by-play deposition testimony about how settlement was reached (and to what extent such settlement was influenced by privileged advice). This case is ultimately about whether the settlements that ended that litigation were anticompetitive, and it risks misuse of judicial proceedings to have all this information filed and then kept secret. The sealing motion is denied.

### 2. Dkt. No. 879

Defendants opposed the motion for preclusion and in the process sought to seal certain materials cited in support. *See* Dkt. No. 879. None of the reasons provided satisfy the compelling reasons standard that sealing requires, so the motion is denied. Although it is true that some of these materials reflect financial projections, those projections are at this point nearly seven years old. Moreover, they go to the heart of why the at-issue settlements occurred, a critical and material issue of fact in this case. The records therefore must be accessible for any member of the public to glean an understanding of what was at stake in the litigation.

### 3. Dkt. No. 882

Plaintiffs filed a reply brief in support of the motion for preclusion, and in keeping with the general practice in this case, they also filed a motion for sealing consideration. None of the materials or arguments in their brief need be sealed, notwithstanding Defendants' arguments to the contrary, *see* Dkt. No 884, for the same reasons explained *supra*.

### G. Plaintiffs' Brief on Jury Instructions and Verdict Forms

As trial approached, Plaintiffs filed a motion for consideration of sealing certain materials

cited in their proposed jury instructions and verdict forms. *See* Dkt. No. 890. Defendants did not object to unsealing that information, *see* Dkt. No. 895, so the motion is denied for lack of any compelling reason to seal.

### H. Motions in Limine

Both Parties also filed motions *in limine* and related sealing motions. *See* Dkt. Nos. 899, 952, 966, 968, 984, 994. None of the arguments put forward in support of such sealing—*see, e.g.*, Dkt. Nos. 919, 979, 1001—differ substantially from those the court has already found to fall short of compelling. Thus, for the reasons already explained, the requests to seal the motions *in limine* and supporting materials are denied.

### I. Preliminary Settlement Approval

Class Plaintiffs ultimately secured settlements with Hikma and Jazz and have sought to seal portions of those agreements. Dkt. Nos. 957, 1009. Because the relevant sections reveal the percentage of opt-outs that would allow Hikma to terminate the deal, Class Plaintiffs raise the concern that third parties could use the figure for the improper purpose of obstructing settlement and obtaining higher payouts. *See generally Thomas v. Magnachip Semiconductor Corp.*, 2016 WL 3879193, at *7 (N.D. Cal. July 18, 2016). Although some courts in this district have signed off on requests to seal opt-out thresholds, *see, e.g.*, *In re Anthem, Inc. Data Breach Litig.*, 2017 WL 9614789, at *2 (N.D. Cal. Aug. 25, 2017), this court disagrees. While the parties understandably wish to forestall efforts to undermine the proposed settlement, that does not equate to keeping relevant information from putative class members. The motions are denied.

### J. Deposition Designations and Objections

With respect to sealing motions related to deposition designations and objections, *see* Dkt. Nos. 986, 987, Defendants urge the court to permit the withdrawal of those designations in light of the settlements between Jazz and Class Plaintiffs and between Hikma and Class Plaintiffs. Dkt. No. 1012. Plaintiffs do not oppose that suggestion. Good cause appearing, the deposition

designations and objections may be withdrawn, and the motions to seal them are denied as moot.

### IV. CONCLUSION

Federal courts are public. Their dockets should largely remain publicly accessible except in the relatively narrow instances where parties provide compelling reasons to the contrary. As to the above sealing motions, the parties' submissions to the court are neither compelling nor sufficiently weighty to overcome the presumption of public access. Thus, the motions are denied.

**IT IS SO ORDERED**.

Dated: July 1, 2025

_____
RICHARD SEEBORG
Chief United States District Judge