[*Submitting counsel on signature page*]

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE XYREM (SODIUM OXYBATE) ANTITRUST LITIGATION<br><br>This Document Relates to:<br>Class Action Cases | CASE NO. 3:20-md-02966-RS<br><br>**CLASS PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS AND CERTIFICATION OF SETTLEMENT CLASS**<br><br>**MOTION HEARING**<br><br>DATE: October 23, 2025, or earlier, at the Court's convenience<br>TIME: 1:30 pm<br>LOCATION: Courtroom 3, 17th Floor<br><br>HON. RICHARD SEEBORG |

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL ........................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................ 1

I.      INTRODUCTION ................................................................................. 1

II.     BACKGROUND AND PROCEDURAL HISTORY ..................................... 2

      A.     Terms of the Settlement ................................................................ 4

      B.     Preliminary Approval and Notice to the Class ................................ 4

      C.     Settlement Administration Expenses .............................................. 5

III.    ARGUMENT ....................................................................................... 5

      A.     The Settlements are Fair, Adequate, and Reasonable ...................... 5

           1.     Rule 23 (e)(2)(A): Class Plaintiffs and Class Counsel Have Adequately Represented the Proposed Settlement Class .......................... 6

           2.     Rule 23 (e)(2)(B): The Settlements Were Negotiated at Arm's Length ............................................................................... 7

           3.     Rule 23 (e)(2)(C): The Cash Payments Provide Adequate Recovery to the Proposed Settlement Class ................................ 8

                a)     The Risks of Continued Litigation ............................... 10

                b)     Method of Distribution of Settlement Funds .............................. 11

                c)     Attorneys' Fees and Expenses ..................................... 11

                d)     Other Agreements ..................................................... 12

            4.     Rule 23 (e)(2)(D): The Plan of Allocation is Reasonable and Treats Proposed Settlement Class Members Equitably Relative to Each Other ................................................................................. 12

           5.     The Class Settlement Satisfies the Remaining Ninth Circuit Approval Factors ............................................................ 13

                 a)     Class Counsel Endorses the Settlement ....................... 14

                 b)     Reaction of the Class ................................................. 14

i

6.    The Court-Approved Notice Plan Satisfies Due Process and Adequately Provided Notice to Proposed Settlement Class Members .... 15

B.    The Court Should Certify the Proposed Settlement Class .................................. 17

C.    Costs of Administering the Settlements Are Reasonable .................................. 21

IV.    CONCLUSION ............................................................................................................ 21

CLASS PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENTS
CASE NO. 3:20-md-02966-RS

1

**TABLE OF AUTHORITIES**

2

**Cases**

3

*Alaska Airlines v. United Airlines*,
948 F.2d 536 (9th Cir. 1991)..................................................................................................19

4

5

*Churchill Village, L.L.C. v. Gen. Elec.*,
361 F.3d 566 (9th Cir. 2004)............................................................................................6, 13

6

7

*Free Range Content, Inc. v. Google, LLC*,
2019 WL 1299504 (N.D. Cal. Mar. 21, 2019)....................................................................16

8

*G. F. v. Contra Costa Cty.*,
2015 WL 4606078 (N.D. Cal. July 30, 2015).......................................................................7

9

10

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998)..............................................................................................8

11

12

*Hefler v. Wells Fargo & Co.*,
2018 WL 6619983 (N.D. Cal. Dec. 17, 2018), *aff'd sub nom.*
*Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020)......................................................passim

13

14

*In re Capacitors Antitrust Litig.*
2023 WL 2396782 (N.D. Cal. Mar. 6, 2023)......................................................................11

15

16

*In re Cardizem CD Antitrust Litig.*,
200 F.R.D. 326 (E.D. Mich. 2001) ......................................................................................18

17

*In re Cathode Ray Tube (CRT) Antitrust Litig.*
2016 WL 3648478 (N.D. Cal. July 7, 2016).........................................................................8

18

19

*In re Cipro Cases I & II*,
121 Cal. App. 4th 402 (2004)...............................................................................................19

20

21

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
2006 WL 1530166 (N.D. Cal. June 5, 2006) ......................................................................18

22

23

*In re Glumetza Antitrust Litig.*,
336 F.R.D. 468 (N.D. Cal. 2020) .........................................................................................19

24

*In re High-Tech Empl. Antitrust Litig.*
2015 WL 5159441 (N.D. Cal. Sept. 2, 2015) .......................................................................8

25

26

*In re Hyundai & Kia Fuel Econ. Litig.*,
926 F.3d 539 (9th Cir. 2019)..........................................................................................11, 19

27

*In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prod. Liab. Litig.*
609 F. Supp. 3d 942 (N.D. Cal. 2022) .................................................................................17

28

CLASS PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENTS
CASE NO. 3:20-md-02966-RS

*In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prods. Liab. Litig*.
    2023 WL 6205473 (N.D. Cal. Sept. 19, 2023) ...................................................13

*In re MyFord Touch Consumer Litig.*
    No. 13-cv-03072-EMC (N.D. Cal. Mar. 28, 2019).............................................13

*In re Pac. Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995)...............................................................................14

*In re Volkswagen "Clean Diesel" Mkt'g, Sales Pracs., and Prods. Liab. Litig.*,
    2016 WL 6248426 (N.D. Cal. Oct. 25, 2016)....................................................14

*In re Warfarin Sodium Antitrust Litig.*
    212 F.R.D. 231 (D. Del. 2002)
    *aff'd*, 391 F.3d 516 (3d Cir. 2004).....................................................................18

*Morrison v. Ross Stores, Inc*.
    2022 WL 17592437 (N.D. Cal. Feb. 16, 2022)....................................................5

*Nat'l Rural Telecomm. Coop. v. DIRECTV*
    221 F.R.D. 523 (C.D. Cal. 2004) ........................................................................8

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ......................................................................14

*Rieckborn v. Velti PLC*,
    2015 WL 468329 (N.D. Cal. Feb. 3, 2015).........................................................13

*Rodriguez v. W. Publ'g Corp*.
    563 F.3d 948 (9th Cir. 2009)...............................................................................8

*Schneider v. Chipotle Mexican Grill, Inc.*
    336 F.R.D. 588 (N.D. Cal. 2020) ......................................................................16

*Shay v. Apple Inc.*
    2024 WL 1184693 (S.D. Cal. Mar. 19, 2024) ...................................................12

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003)...............................................................................18

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016) ...........................................................................................19

Wal-Mart Stores, Inc. v. Dukes,
    564 U.S. 338 (2011).....................................................................................17, 18

**Statutes**

28 U.S.C. § 1715 ......................................................................................................13

CLASS PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENTS
CASE NO. 3:20-md-02966-RS

**Other Authorities**

2 Newberg on Class Actions, § 11.28 ................................................................................16

*Newberg on Class Actions* § 12:18 (6th ed. 2023) .........................................................10

**Rules**

Fed. R. Civ. P. 23 ....................................................................................................passim

CLASS PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENTS
CASE NO. 3:20-md-02966-RS

## NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL

**PLEASE TAKE NOTICE THAT** on a date and time convenient for the Honorable Richard Seeborg of the United States District Court for the Northern District of California, San Francisco Division, located in Courtroom 3, 17th Floor at 450 Golden Gate Avenue, San Francisco, CA 94102, Class Plaintiffs,[1] by and through their undersigned counsel of record, will and hereby do move for entry of an order and judgment granting final approval of the Settlement, certifying the proposed Settlement Class for settlement purposes, and appointing Co-Lead Counsel and Class Plaintiffs to represent the Proposed Settlement Class. A copy of a [Proposed] Order Granting Motion for Final Approval of the Settlements and Judgment is separately submitted with this Motion.

Class Plaintiffs' motion is based on Federal Rule of Civil Procedure 23, the Northern District's Procedural Guidance for Class Action Settlement ("District Guidelines"), this Notice of Motion, the supporting Memorandum of Points and Authorities, the Joint Declarations of Dena C. Sharp and Michael M. Buchman in Support of Class Plaintiffs' Motions for Preliminary Approval of Class Action Settlement (ECF Nos. 958-1, 1010-1), the Supplemental Declaration of Eric J. Miller Regarding Dissemination of Settlement Notice (filed concurrently with this motion), the declaration filed in support of the Motion for Attorney Fees, Expenses, and Service Awards (ECF No. 1034-1), the pleadings and papers on file in Case No. 3:20-cv-02966-RS, and any other matter this Court may take notice of.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

Class Plaintiffs move for final approval of proposed class action settlements with Defendants Hikma Labs, Inc. (formerly known as Roxane Laboratories, Inc.), Hikma Pharmaceuticals USA Inc. (formerly known as West-Ward Pharmaceuticals Corp.), Eurohealth (U.S.A.), Inc., and Hikma

---

[1] Class Plaintiffs for the purposes of this settlement are: A.F. of L. – A.G.C. Building Trades Welfare Plan; City of Providence, Rhode Island; Government Employees Health Association, Inc.; New York State Teamsters Counsel Health and Hospital Fund; Self-Insured Schools of California; and UFCW Local Welfare Fund, as defined in the Settlement Agreements. *See* ECF Nos. 958-2, 1010-2. Unless otherwise stated, capitalized terms in this Motion incorporate defined terms from the Settlement Agreements. *See id.* With the exception of the Settlement Amounts—which are $145,000,000 for Jazz and $50,000,000 for Hikma—the terms of the Settlement Agreements are the same. *Compare* ECF Nos. 958-2 *with* 1010-2.

Pharmaceuticals plc (collectively, "Hikma"); and Jazz Pharmaceuticals Ireland Limited ("Jazz", and together, with Hikma, "Defendants") on behalf of themselves and the Proposed Settlement Class. Under the Settlement Agreements, the Proposed Settlement Class will receive $195,000,000 in exchange for releasing their claims. *See* Settlement Agreements, ECF Nos. 958-2, 1010-2.

The Court previously granted preliminary approval of the proposed Settlements and directed notice to the Proposed Settlement Class. ECF No. 1016. The Settlements provide a tangible benefit to Proposed Settlement Class Members. The Settlements are the product of extensive arm's-length negotiations after years of hard-fought litigation among experienced lawyers familiar with the legal and factual issues in this case, including an acute awareness of the risks of trial and likely appeals. The terms of the Settlements treat Proposed Settlement Class Members equitably relative to each other. Class Plaintiffs and Class Counsel believe these Settlements are fair, reasonable, adequate, in the best interests of the Proposed Settlement Class, and respectfully request that the Court grant final approval of the Settlements and certify the Proposed Settlement Class.

## II.    BACKGROUND AND PROCEDURAL HISTORY

The background of the litigation has been detailed in briefing and declarations submitted in connection with Class Plaintiffs' motions for preliminary approval and Class Counsel's motion for attorneys' fees. *See, e.g.*, ECF Nos. 958 (motion for preliminary approval of the class settlement with Jazz), 1010 (motion for preliminary approval of the class settlement with Hikma), 1034 (motion for attorneys' fees, expenses, and service awards), 1034-1 (Joint Declaration of Dena C. Sharp and Michael M. Buchman), 958-1 (same); 1010-1 (same). Class Plaintiffs do not repeat the litigation history in detail here and instead highlight key components of the litigation.

In 2020, Class Plaintiffs filed several class actions against Jazz and Hikma, as well as Amneal, Lupin, and Par. On March 8, 2021, Class Plaintiffs filed the Consolidated Class Action Complaint ("CCAC"), which contains seventeen counts asserting various antitrust and consumer protection claims under federal and state law. *See* ECF No. 62 at 88-121. In the CCAC, Class Plaintiffs seek damages on behalf of classes consisting of all purchasers of Xyrem in thirty-six states and territories.

This case was initially assigned to the Honorable Lucy H. Koh, who directed the parties early in the litigation to identify ten causes of action that would proceed through initial resolution, with litigation

2

of the remaining causes of action to be discussed with the Court thereafter. ECF No. 66 at 2. On March 30, 2021, Judge Koh entered an Order identifying those causes of action. ECF No. 83. Judge Koh later denied Defendants' motion to dismiss Class Plaintiffs' state law claims, but dismissed the federal Sherman Act damages claims. ECF No. 138 at 80-81.

Discovery was heavily contested and continued for years. Class Counsel reviewed millions of pages of documents produced by Defendants, as well as thousands of additional pages of documents and data produced by non-parties. Class Counsel also conducted more than twenty depositions of Defendants' employees and third parties, briefed numerous discovery disputes, and litigated numerous complex privilege issues. *See* ECF No. 1034 at 11.

In 2022, Class Plaintiffs filed a motion for class certification, which the Court granted. ECF No. 353. The motion was heavily contested, involving multiple expert depositions and *Daubert* motions, an unsuccessful motion to decertify the class, and a petition to appeal of the order denying the motion to decertify (which was also denied). *See* ECF No. 1034 at 12-13.

Expert work in this matter was complex, wide-ranging, and multifaceted. Class Counsel retained and worked closely with 15 expert witnesses who covered the spectrum of regulatory, patent, industry, and antitrust issues. *Id.* at 13. Defendants retained 13 expert witnesses to whom plaintiffs' experts responded. *Id.* The majority of the parties' experts were deposed.

The summary judgment and *Daubert* briefing was similarly extensive, including more than 250 pages of briefing and 321 exhibits. *Id.* On summary judgment, the Court denied defendants' motions, finding triable issues related to Jazz's REMS conduct and the defendants' anticompetitive agreement, which acted as a reverse payment and a market allocation. ECF No. 779. And, while the Court largely denied plaintiffs' motion for summary judgment, it made key findings of law regarding what must be shown for antitrust injury and whether a showing of a large, unjustified payment must be shown prior to the rule of reason analysis. *Id*. Class Counsel also successfully defended nearly all of plaintiffs' experts, with only a few of plaintiffs' experts' testimony being slightly narrowed, along with the testimony of certain defense experts. ECF 778.

Leading up to trial, Class Plaintiffs engaged in substantial pretrial efforts and were fully prepared to proceed to trial. The parties exchanged drafts of and submitted witness and exhibit lists, deposition

designations, disputed legal issues, the final pretrial conference statement, jury instructions, verdict forms, and motion *in limine* topics. *See* 1034 at 14. Class Plaintiffs also further developed their trial strategy, including working with their experts and other witnesses on trial testimony, drafting outlines and exams for fact and expert witnesses at trial, developing their order of proof, conducting multiple jury focus group exercises, and participating in multiple pretrial conferences with the Court. *See id.* Following the settlement with Jazz, Class Plaintiffs also successfully moved to sever their Hikma-only trial from the opt-out plaintiffs, and adjusted their trial presentations for a Hikma-only trial. *Id.*; ECF Nos. 924, 943.

In July 2024, Class Plaintiffs and Defendants participated in a two-day in-person mediation under the auspices of the Honorable Layn R. Phillips, and were in regular contact with the mediator thereafter. In the spring of 2025, Class Plaintiffs reached resolutions with first Jazz and then Hikma that were facilitated and overseen by the mediator from start to finish. ECF No. 1034 at 14-15.

### A. Terms of the Settlement

The parties reached the Proposed Settlements as a result of hard-fought and adversarial litigation. The Settlements provide for monetary recovery (no portion of which will revert to Defendants), include an appropriately tailored release, and do not encumber other, separate claims that class members might have. Defendants have already deposited the $195,000,000 cash payment into escrow accounts pursuant to the terms of the agreements. *See* District Guidelines, Preliminary Approval ¶ 1(g). In exchange, Proposed Settlement Class Members agree to release the Released Claims against Defendants. ECF Nos. 958-2 at ¶¶ 1.25, 13; 1010-2 at ¶¶ 1.24, 13.

### B. Preliminary Approval and Notice to the Class

On May 16, 2025, the Court preliminarily approved the Settlements, provisionally certified the Proposed Settlement Class for settlement purposes only, and appointed A.B. Data as the Settlement Administrator. ECF No. 1016.

Notice of the Settlements was provided by direct notice (email and postcard) to potential class members who appeared on A.B. Data's proprietary database, and by widespread publication notice on relevant websites and print media, resulting in approximately 524,027 impressions. Supplemental Declaration of Eric J. Miller ("Miller Supp. Decl.") at ¶ 5.

All notices directed Proposed Settlement Class Members to a website dedicated to this matter and included a toll-free telephone number to use to obtain information concerning the Settlements. ECF No. 1010-6 at ¶¶ 20-21. The website provides case-specific information, which includes answers to frequently asked questions and contains contact information should a Proposed Settlement Class Member wish to speak or correspond with an agent. *Id.* The website also hosts downloadable copies of the long form and summary notices, claim forms, and opt-out forms, and provides an online portal for filing claims. *Id.* The papers filed in connection with Class Counsel's motions for attorneys' fees and expenses were posted on the website on July 11, 2025, and further papers filed in connection with the final approval of the Settlements will similarly be promptly posted on the website once they are filed. *See* Miller Supp. Decl. at ¶ 8.

### C.    Settlement Administration Expenses

Through August 15, 2025, A.B. Data has incurred $118,560.54 in costs related to notice and administering the Settlements. *Id*. ¶ 13. A.B. Data will continue to incur costs administering claims related to the Settlements and distributing funds to eligible claimants. Class Counsel is mindful of and is carefully monitoring the expenses associated with these efforts. To that end, Class Counsel has continued to receive regular updates on costs incurred by A.B. Data and is working closely with the Claims Administrator to monitor and limit expenses where possible. Administration costs are estimated to be between $200,000 and $300,000 total. ECF No. 1010-6 at ¶ 31; *see* District Guidelines, Preliminary Approval ¶ 2(b).

## III.    ARGUMENT

Final approval is a multi-step inquiry: first, the Court must determine whether the settlement proposal is "fair, reasonable, and adequate;" second, it must determine whether notice has been provided in a manner consistent with Rule 23 and due process; and third, it must decide whether to certify the proposed settlement class. *See* Fed. R. Civ. P. 23 (e)(2); *Morrison v. Ross Stores, Inc.*, 2022 WL 17592437, at *3 (N.D. Cal. Feb. 16, 2022). The Settlements satisfy each of these requirements.

### A.    The Settlements are Fair, Adequate, and Reasonable

A court may approve a proposed class action settlement only "after a hearing and on finding that it is fair, reasonable, and adequate after considering whether: (A) the class representatives and class

counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2).[2]

As explained more fully below, the proposed Settlements are fair, reasonable, and adequate. Class Counsel are experienced in complex class action litigation (and pharmaceutical antitrust cases like this one), actively litigated the case for almost four years, and reached an arms-length settlement under the supervision of a respected mediator. The Settlements provide significant recoveries for Proposed Settlement Class Members, particularly when balanced against the risks and expenses of continued litigation and trial. A class trial against some or all Defendants would have been costly, recovery was not guaranteed, and there was the possibility of protracted appeals that could result in any class certification or final judgment being overturned.

### 1.    Rule 23 (e)(2)(A): Class Plaintiffs and Class Counsel Have Adequately Represented the Proposed Settlement Class

Class Plaintiffs and Class Counsel vigorously prosecuted this case at all stages, through discovery, motion practice, trial preparation, and mediation. The Settlement Agreements were reached on a fully developed record and on the eve of trial. Class Counsel reviewed millions of pages of documents produced by Defendants, as well as thousands of additional pages of documents and data produced by non-parties. Class Counsel also conducted over twenty depositions of Defendants'

---

[2] Before Rule 23 was amended in December 2018, the Ninth Circuit had enumerated a similar list of factors to consider in evaluating a proposed class settlement. *See Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). In the notes accompanying the 2018 amendments to Rule 23, the Advisory Committee explained that the amendments were not designed "to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Accordingly, courts apply the framework of Rule 23 while "continuing to draw guidance from the Ninth Circuit's factors and relevant precedent." *Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 WL 6619983, at *4 (N.D. Cal. Dec. 17, 2018), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020).

1    employees, briefed numerous discovery disputes, and litigated numerous complex privilege issues. *See*

2    ECF No. 1034 at 11.

3        Class Counsel fully briefed and argued multiple motions to dismiss, cross-motions for summary

4    judgment, the motion for class certification, a motion to amend the class definition, a motion to decertify

5    the class, and over a dozen *Daubert* motions. *See* ECF Nos. 138, 353, 499, 800-801, 816, 1034. Class

6    Counsel thus "possessed sufficient information to make an informed decision about settlement." *Hefler*

7    *v. Wells Fargo & Co.*, 2018 WL 6619983, at *6 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom. Hefler v.*

8    *Pekoc*, 802 F. App'x 285 (9th Cir. 2020). Against this backdrop, in its Preliminary Approval Order, the

9    Court found that Class Plaintiffs and Class Counsel adequately represented the interests of the Proposed

10   Settlement Class. ECF 1016 at 4. The implementation of the notice program and Class Counsel's other

11   work to advance the Settlements (such as overseeing the notice and claims process with A.B. Data)

12   further confirm the Court's previous finding and support a finding that this element is satisfied.

13       **2.        Rule 23 (e)(2)(B): The Settlements Were Negotiated at Arm's Length**

14       The Settlements are the product of serious, non-collusive, arm's length negotiations by

15   experienced counsel with the assistance of a well-respected, experienced mediator, Honorable Layn R.

16   Phillips (Ret.). *See, e.g., G. F. v. Contra Costa Cty.*, 2015 WL 4606078, at *13 (N.D. Cal. July 30, 2015)

17   (noting that "[t]he assistance of an experienced mediator in the settlement process confirms that the

18   settlement is non-collusive"); *Koller v. Med Foods, Inc.*, 2018 WL 9619436, at *3 (N.D. Cal. Aug. 29,

19   2018) (Seeborg, J.) (finding the settlement fair, adequate, and reasonable in part because it was "the

20   product of informed, arms-length negotiations between competent, able counsel and conducted with the

21   oversight and involvement of an independent, well respected, and experienced mediator"). Class

22   Counsel acted in the best interests of the Proposed Settlement Class, and there is no suggestion to the

23   contrary—for example, there is no evidence of a compromise of the claims of the Proposed Settlement

24   Class in exchange for higher fees—and there has been no agreement concerning attorneys' fees or

25   otherwise disadvantaging the Proposed Settlement Class.

26       Before agreeing on the terms of the Settlement, the parties engaged in extensive factual

27   investigation, motion practice, and pretrial work, which included over thirty party fact witness

28

7

CLASS PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENTS
CASE NO. 3:20-md-02966-RS

depositions, the production and review of millions of pages of documents, extensive written discovery, robust expert discovery, comprehensive pretrial exchanges, the negotiation and submission of a joint pretrial conference statement, and the development of a trial strategy. *See* ECF No. 1034-1 at ¶¶ 34-54, 67-74, 89-129. The record was thus sufficiently developed to fully inform the parties and enable them to adequately evaluate the strengths and weaknesses of their respective positions and risks to both sides if the case did not settle. *See Nat'l Rural Telecomm. Coop. v. DIRECTV*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) ("A court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case." (internal citation and quotation omitted)); *see also In re Apple iPhone/iPod Warranty Litig.*, 2014 WL 12640497, at *3 (N.D. Cal. May 8, 2014) (Seeborg, J.) (finding the record sufficiently developed to warrant final approval where fact discovery had not yet closed).

### 3.     Rule 23 (e)(2)(C): The Cash Payments Provide Adequate Recovery to the Proposed Settlement Class

In the Rule 23(e) analysis, "[t]he relief that the settlement is expected to provide to class members is a central concern." Fed. R. Civ. P. 23 (e)(2)(C)-(D) advisory committee's note to 2018 amendment. "The Court therefore examines 'the amount offered in settlement.'" *Hefler*, 2018 WL 6619983, at *8 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

Defendants have agreed to collectively pay $195 million, which will be distributed to Proposed Settlement Class Members as set forth in the Plan of Allocation. *See* ECF No. 1010-3 at ¶ 13-14. The $195 million Settlement represents a 46% recovery on the $422 million damages estimate that the class was prepared to take to trial. ECF No. 1034 at 21; *see also* District Guidelines, Preliminary Approval ¶ 1(c). This percentage is at the high end of typical recoveries in antitrust cases. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 964-65 (9th Cir. 2009) (antitrust settlement for 30% of plaintiffs' estimated damages was "fair and reasonable no matter how you slice it"); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2016 WL 3648478, at *7 n.19 (N.D. Cal. July 7, 2016) (describing survey of 71 settled cartel cases where weighted mean settlement recovery was 19% of single damages); *In re High-Tech Empl. Antitrust Litig.*, 2015 WL 5159441, at *4 (N.D. Cal. Sept. 2, 2015) (approving total settlements that were 14% of the class damages estimate, and noting that "[d]istrict courts in the Ninth Circuit routinely

8

approve settlements with much larger differences between the settlement amount and estimated damages"). And the recovery here is among the largest recoveries on behalf of end-payors in a generic delay case in federal court in at least the past two decades, to Class Counsel's knowledge. *See* ECF No. 1034 at 22.

| Case (District and Settlement Year) | Recovery (MM) |
|---|---|
| *EpiPen* (D. Kan 2022) | $609 |
| ***Xyrem* (N.D. Cal. 2025)** | **$195** |
| *Ranbaxy* (D. Mass 2022) | $145 |
| *Lidoderm* (N.D. Cal. 2018) | $104.75 |
| *Zetia* (E.D. VA. 2023) | $70 |
| *Paxil* (E.D. PA 2005) | $65 |
| *Tricor* (D. Del. 2009) | $65.7 |
| *Provigil* (E.D. PA. 2019) | $65.88 |
| *Loestrin* (D.R.I. 2020) | $63.5 |
| *Namenda* (S.D.N.Y. 2022) | $56 |
| *Aggrenox* (D. Conn. 2018) | $54 |
| *Solodyn* (D. Mass. 2018) | $43 |
| *Remeron* (D.N.J 2005) | $36 |
| *Flonase* (E.D. Pa 2013) | $35 |
| *Thalomid & Revlimid* (D.N.J. 2020) | $34 |
| *Suboxone* (E.D. Pa 2023) | $30 |
| *Restasis* (E.D.N.Y. 2021) | $30 |
| *Remicade* (E.D. Pa. 2023) | $25 |
| *Wellbutrin SR* (E.D. Pa. 2013) | $21.5 |

CLASS PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS
CASE NO. 3:20-md-02966-RS

| *Prograf* (D. Mass. 2013) | $13.25 |
| *Ovcon* (D.D.C 2007) | $12.5 |
| *Wellbutrin XL* (E.D. Pa. 2013) | $11.75 |
| *Toprol XL* (D. Del. 2012) | $11 |
| *Skelaxin* (E.D. Tenn. 2015) | $9 |
| *Doryx* (E.D. Pa 2014) | $8 |
| *DDAVP* (S.D.N.Y. 2013) | $9 |
| *Asacol* (D. Mass. 2019) | $2.7 |

Although the Settlements would provide for payment related to class members' Xyrem and Xywav purchases (whereas the certified damages class was limited to Xyrem purchases), class members' Xywav-related claims are relatively weaker than those related to Xyrem purchases[3], and the Proposed Plan of Allocation accounts for this fact. *See* ECF No. 1010 at 18; *see also* District Guidelines, Preliminary Approval ¶ 1(a).

As detailed further below, the Settlements provide adequate relief to the Proposed Settlement Class, particularly when weighed against the risks of continued litigation.

### a)        The Risks of Continued Litigation

Although Class Plaintiffs and Class Counsel have confidence in Class Plaintiffs' claims against Defendants, a favorable outcome at trial is not assured. Class Plaintiffs would need to overcome numerous substantive defenses at trial, and likely on appeal as well. Defendants and the experts they would have offered at trial would have contested every theory of liability and measure of damages. There are, for example, substantial disputes as to: (i) whether Jazz and Hikma's agreement was anticompetitive, (ii) whether the alleged conduct resulted in overcharges to Xyrem purchasers, and (iii) the viability of various causation defenses at trial. Competing experts would have offered conflicting

---

[3] Claims related to Xywav were included in the Consolidated Class Action Complaint, although the Court declined to certify that class and later precluded the individual plaintiffs from pursuing them as well. ECF Nos. 500; 801 at 9-10. Class Plaintiffs, however, maintained appellate rights as to their claims for damages related to Xywav purchases. *See* District Guidelines, Preliminary Approval ¶¶ 1(a)-(b).

10

opinions on whether Defendants' conduct had procompetitive benefits and resulted in overcharges to the class. The Proposed Settlements, on the other hand, assures a favorable outcome for the Proposed Settlement Class. *See* ECF Nos. 958 at 29; 1010 at 25.

### b)    Method of Distribution of Settlement Funds

The process for distributing funds is straightforward and readily accessible to Proposed Settlement Class Members. In recognition of the different types of claims in play (claims related to Xyrem and Xywav, claims covering the class states and non-class states) and the relative strength of those claims, the Net Settlement Fund shall be distributed on a *pro rata* basis according to the weighted value of their eligible purchases, as described in the Plan of Allocation and as discussed further below. ECF No. 1010-3 at ¶ 13. Specifically, the weighted value for each qualifying claim is as follows: eligible purchases of Xyrem (brand and generic) in the class states will be valued at 100% of the eligible purchase amounts; Xywav purchases in class states and Xyrem (brand and generic) purchases in non-class states will be valued at 5% of the eligible purchase amounts; and Xywav purchases in non-class states will be valued at 2.5% of the eligible purchase amounts. *See id.* ¶ 7.

To the extent Proposed Settlement Class Members have questions about the claims submission process, A.B. Data has a toll-free number with interactive voice response technology and live operators, and the settlement website has an online FAQ to help resolve any Proposed Settlement Class Member questions. ECF No. 1010-6 at ¶ 21. The method of distribution, therefore, poses no impediments to getting money into the hands of eligible claimants.

### c)    Attorneys' Fees and Expenses

The payment of attorneys' fees and expenses, if any, is subject to approval of this Court, based on findings that such amount is fair and reasonable. The parties have reached no agreements regarding the amounts of attorneys' fees, expenses, and service awards to be paid. *See, e.g.*, *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 569-70 (9th Cir. 2019) (*en banc*) (rejecting objection because counsel "did not reach an agreement with the automakers regarding the amount of attorney's fees to which they were entitled," which "[p]rovid[es] further assurance that the agreement was not the product of collusion"). There is thus no aspect of the payment of attorneys' fees and expenses that raises any concern about the reasonableness, fairness, or adequacy of the Settlement. This is particularly true

because, even if this Court grants Class Counsel's fee and expense reimbursement requests in full, Class Counsel will receive fees and expenses well within the ranges routinely approved in this Circuit and in similar antitrust litigation. *See* ECF No. 1034 at 21-30; *see also In re Capacitors Antitrust Litig.*, 2023 WL 2396782, at *2 (N.D. Cal. Mar. 6, 2023) (awarding multiplier of 1.81, 33% of the settlement fund); *In re Glumetza Antitrust Litig.*, 2022 WL 327707, at *9 (N.D. Cal. Feb. 3, 2022) (awarding 2.2 multiplier); *In re Telescopes Antitrust Litig.*, 2025 WL 1093248, at *10 (N.D. Cal. Apr. 11, 2025) (finding fee award of one-third of the fund to be "consistent with Ninth Circuit precedent"); *In re Lidoderm Antitrust Litig.*, 2018 WL 4620695, at *2-4 (N.D. Cal. Sept. 20, 2018) (awarding 33.3% of the settlement fund).

### d)    Other Agreements

The Court is required to consider "any agreements required to be identified under Rule 23 (e)(3)." *Hefler*, 2018 WL 6619983 at *7. No other agreements have been made in connection with the Settlements. ECF Nos. 958 at 34; 1010 at 33-34.

### 4.    Rule 23 (e)(2)(D): The Plan of Allocation is Reasonable and Treats Proposed Settlement Class Members Equitably Relative to Each Other

The claims process and distribution method are reasonable. Proposed Settlement Class Members must provide information regarding their purchases of Xyrem and Xywav, including the amount paid. *See* ECF No. 1010-6 at 48. Proposed Settlement Class Members who claim over $10,000 must also provide proof of purchase. *Id.* Proposed Settlement Class Members can submit their claim forms online or via mail. *Id.* at 22; *see also* William B. Rubenstein, *Newberg on Class Actions* § 12:18 (6th ed. 2023) (noting that "a claiming process is inevitable" when "[t]here would be no way of distributing a settlement fund to the class members without a process by which the class members identified themselves, their mailing addresses, etc."); *Shay v. Apple Inc.*, 2024 WL 1184693, at *9 (S.D. Cal. Mar. 19, 2024) ("[A]ll class members were required to provide proof of purchase at one point in the process . . . [t]his proof of purchase requirement was successful at weeding out many fraudulent claims[.]"). Further, the claim process is no more onerous than would be required after trial.

The method for distributing funds is also reasonable. The payment will be based on the strength of the claims asserted. Under the Plan of Allocation, distribution will be made on a *pro rata* basis

12

according to the weighted value of the claim. ECF No. 1010-3 at ¶ 13. The Plan of Allocation gives

Xywav purchases and purchases made in non-repealer states substantially less weight in the allocation of

the settlement fund than Xyrem purchases in repealer states. *See id.* ¶ 7. This weighting of claims

provides "structural assurances of fairness inherent in the proposed distribution plan." *In re Lithium Ion*

*Batteries Antitrust Litig.*, 2020 WL 7264559, at *9 (N.D. Cal. Dec. 10, 2020) ("The Court finds the

distribution plan to allocate 90% of settlement funds to class members from repealer states and 10% of

settlement funds to class members from non-repealer states . . . to be fair and equitable."); *aff'd* 2022

WL 16959377 (9th Cir. Nov. 16, 2022); *see also Rieckborn v. Velti PLC*, 2015 WL 468329, at *8 (N.D.

Cal. Feb. 3, 2015) (citation omitted) ("[A]n allocation formula need only have a reasonable, rational

basis, particularly if recommended by experienced and competent counsel."); *In re MyFord Touch*

*Consumer Litig.*, No. 13-cv-03072-EMC (N.D. Cal. Mar. 28, 2019), Dkt. 526 at 4-5 (granting approval

of settlement plan that pays a lower dollar amount based on the relative strength of certain claims); *In re*

*JUUL Labs, Inc., Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2023 WL 6205473, at *6-7 (N.D. Cal. Sept.

19, 2023) (approving settlement allocating enhanced payments to certain class members).

After an initial distribution, if there are substantial residual funds from uncashed payments, the

remaining funds will, where economically rational, be redistributed to the Proposed Settlement Class

Members who made claims, cashed their checks, and would receive at least $5.00 from the

redistribution, after payment of any additional costs or fees incurred in administering the Net Settlement

Fund for the redistribution. ECF No. 1010-3 at ¶ 15. Only if the distribution of residual funds becomes

uneconomical would Class Counsel propose distribution to a *cy pres* or other similar recipient, subject to

the Court's approval. *Id.* ¶ 16.

## 5. The Class Settlement Satisfies the Remaining Ninth Circuit Approval Factors

In addition to the framework of Rule 23 as amended in 2018, courts in this District "continu[e] to

draw guidance from the Ninth Circuit's factors and relevant precedent," as well as the District

Guidelines regarding Final Approval, in evaluating a proposed class settlement. *Hefler*, 2018 WL

6619983, at *4; *Churchill,* 361 F.3d at 575 (courts should consider "(1) the strength of the plaintiffs'

case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of

13

1   maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent

2   of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7)

3   the presence of a governmental participant; and (8) the reaction of the class members to the proposed

4   settlement").

5        Many of these factors and District Guidelines, such as the strength of Class Plaintiffs' case, the

6   risk and duration of further litigation, and the amount offered, overlap with the Rule 23(e)(2)(C) factors

7   and are addressed above. The remainder favor final approval as well, as described below.[4]

8                        a)    **Class Counsel Endorses the Settlement**

9        In considering whether to grant final approval, courts afford significant weight to the opinions of

10  experienced class counsel who are familiar with the litigation. *See In re Volkswagen "Clean Diesel"*

11  *Mkt'g, Sales Pracs., and Prods. Liab. Litig.*, 2016 WL 6248426, at *14 (N.D. Cal. Oct. 25, 2016)

12  ("Courts afford 'great weight to the recommendation of counsel, who are most closely acquainted with

13  the facts of the underlying litigation.'") (quoting *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 528).

14  This is because "[p]arties represented by competent counsel are better positioned than courts to produce

15  a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enters. Sec.*

16  *Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

17       Class Counsel is experienced in complex class action litigation and settlements, including in

18  pharmaceutical antitrust cases like this one. ECF Nos. 958 at 27; 1010 at 27. Based on this experience,

19  Class Counsel firmly believes that the Settlements provide a positive outcome for Proposed Settlement

20  Class Members and, in light of the uncertainties and risks in continued litigation, strongly recommends

21  its approval.

22                        b)    **Reaction of the Class**

23       July 28, 2025, was the deadline to opt out or object to the Settlements, and file an opposition to

24  Class Counsel's Motion for Attorney Fees, Expenses, and Service Awards. *See* ECF Nos. 1017, 1034.

25

26  ───────────────────
27  [4] The deadline to submit claims is October 3, 2025. Once A.B. Data has processed the submitted claims,
    Class Plaintiffs will file a motion to authorize the distribution of the settlement funds to eligible
28  claimants. Once the distribution is complete, Class Plaintiffs will submit a Post-Distribution Accounting
    as contemplated by the District Guidelines.

CLASS PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENTS
CASE NO. 3:20-md-02966-RS

A.B. Data has received zero opt-out requests and zero objections as of August 15, 2025.[5] Miller Supp. Decl. at ¶¶ 10-11. And no opposition to the Motion for Attorney Fees, Expenses, and Service Awards was filed. *See Chang v. Wells Fargo Bank, N.A.*, 2023 WL 6961555, at *6 (N.D. Cal. Oct. 19, 2023) (finding no objections or exclusion requests "strongly supports the settlement's fairness, reasonableness, and adequacy") (cleaned up); *Juarez v. Soc. Fin., Inc.*, 2023 WL 3898988, at *6 (N.D. Cal. June 8, 2023) ("The Court finds that the lack of objections and opt-outs indicates overwhelming support among the Class Members and weighs in favor of approval of the settlement."); *Franco v. E-3 Sys.*, 2021 WL 2333851, at *5 (N.D. Cal. June 8, 2021) ("lack of any objections to or requests for exclusion from the proposed settlement—during the notice period or at the final fairness hearing—supports final approval."); *Wilson v. Tesla, Inc.*, 2019 WL 2929988, at *9 (N.D. Cal. July 8, 2019), *aff'd*, 833 F. App'x 59 (9th Cir. 2020) (lack of any "objection to the settlement or the award" weighs in favor of granting Plaintiffs' motion for final settlement approval).

The deadline to submit a claim is not until October 3, 2025, but 59 Proposed Settlement Class Members have filed claims thus far. Miller Supp. Decl. at ¶ 12; *see also* District Guidelines, Final Approval ¶ 1. Based on their experience in similar cases, A.B. Data and Class Counsel anticipate that the majority of claims will be submitted closer to the October 3 deadline. *Id.* Class Counsel has communicated with many of the largest class members to ensure they are apprised of the October 3 deadline.

### 6.    The Court-Approved Notice Plan Satisfies Due Process and Adequately Provided Notice to Proposed Settlement Class Members

Rule 23 requires that prior to final approval, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23 (e)(1)(B). For classes certified under Rule 23 (b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23 (c)(2)(B). The Rule provides that "notice may be by one or more of the following: United States mail, electronic means, or other appropriate means." *Id.*

---

[5] A.B. Data has advised Class Counsel that any objections or exclusion requests postmarked by July 28, 2025, would likely have been received by August 5, 2025.

---

CLASS PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS
CASE NO. 3:20-md-02966-RS

A.B. Data has carried out a thorough notice campaign. A.B. Data provided individual notice to potential Proposed Settlement Class Members who appeared on A.B. Data's proprietary database via email and physical postcards. Miller Supp. Decl. at ¶ 3. A.B. Data sent over 42,000 direct notices to potential class members, which included 829 emails and 42,005 postcard notices via USPS first class mail. *Id*. ¶¶ 3-4.

In addition to direct notice, A.B. Data also carried out a robust publication notice campaign in online and print outlets. The program included banner advertising on selected industry-related websites, which were targeted to Proposed Settlement Class Members. ECF No. 1010-6 at ¶¶ 14-17. The digital notices served at least 524,027 impressions. Miller Supp. Decl. at ¶ 5. Additionally, A.B. Data distributed a news release via PR Newswire's US1 Newsline to reach traditional media outlets such as television, radio, newspapers, news websites, journalists, and magazines. ECF No. 1010-6 at ¶ 18. The publication notices ran from May 27, 2025, through July 26, 2025. Miller Supp. Decl. at ¶ 5. And A.B. Data shared information about the Settlements to its followers on X. ECF No. 1010-6 at ¶ 19. Both direct and indirect notice referred potential Proposed Settlement Class Members to the settlement website. Miller Supp. Decl. at ¶ 7. That settlement website contains, amongst other things, exclusion and objection filing deadlines and case documents. *Id*. The website also hosts copies of Long Form Notices, claim forms, and opt-out forms and provides an online portal for filing claims. ECF No. 1010-6 at ¶ 20.

A.B. Data also established and continues to maintain a toll-free telephone number for potential Proposed Settlement Class Members to call and obtain information about the parties' settlement and/or seek assistance in the form of answers to frequently asked questions or speak to a live operator. *Id*. ¶¶ 21-22. The telephone hotline became operational on May 27, 2025, with the recording being accessible 24 hours a day, 7 days a week, and live operators being available during standard business hours. *Id*. ¶ 22.

In short, the settlement notice represents the best notice practicable. In total, the settlement notice is estimated to have reached at least 80% of the Proposed Settlement Class Members. *Id*. ¶ 14; *see, e.g.*, *Schneider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588, 596 (N.D. Cal. 2020) (approving a notice plan reaching at least 70.69% of class members); *Free Range Content, Inc. v. Google, LLC*, 2019 WL 1299504, at *6 (N.D. Cal. Mar. 21, 2019) ("Notice plans estimated to reach a minimum of

16

CLASS PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS
CASE NO. 3:20-md-02966-RS

1    70 percent are constitutional and comply with Rule 23.") (brackets and internal quotation marks

2    omitted).

3          The notice documents are clear and concise, and directly apprise Proposed Settlement Class

4    Members of all the information they need to know to make a claim, opt out, or object. Fed. R. Civ. P. 23

5    (c)(2)(B); *see* 1010-6 at ¶ 23, Exs. B-E. The notice plan is consistent with, and exceeds, other similar

6    court-approved notice plans, the requirements of Federal Rule of Civil Procedure 23 (c)(2)(B), and the

7    Federal Judicial Center ("FJC") guidelines for adequate notice.

8          As there is no alternative method of notice that would be practicable here or would be more

9    likely to notify Proposed Settlement Class Members, the notice plan constitutes the best practicable

10   notice to Proposed Settlement Class Members and complies with the requirements of due process.

11   **B.    The Court Should Certify the Proposed Settlement Class**

12         In the Preliminary Approval Order, the Court concluded that it was likely to certify the

13   following Proposed Settlement Class:

14
15   > All entities that paid and/or provided reimbursement for some or all of the
16   > purchase price for brand or generic Xyrem in Alaska, Arizona, Arkansas,
17   > California, Connecticut, District of Columbia, Florida, Hawaii, Illinois,
18   > Iowa, Kansas, Maine, Maryland, Massachusetts, Michigan, Minnesota,
19   > Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New
20   > Mexico, New York, North Carolina, North Dakota, Oregon, Puerto Rico,
21   > Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont,
22   > West Virginia, and Wisconsin, for consumption by their members,
23   > employees, insureds, participants, or beneficiaries, and other than for resale,
24   > during the time from January 1, 2017, through and until the date the Court
25   > enters an order granting preliminary approval of the Settlement Agreement.[6]

---

[6] The following persons or entities are excluded from the Proposed Settlement Class: (1) Defendants and their counsel, parents, subsidiaries, and affiliates; (2) federal and state governmental entities; (3) United HealthCare Services, Inc.; Humana Inc.; Molina Healthcare, Inc.; Health Care Service Corporation, Inc.; Aetna, Inc.; Blue Cross Blue Shield of Florida, Inc.; and Health Options, Inc. (each of these entities in (3) on behalf of themselves but not on behalf of any of their so-called "Administrative Services Only" clients (the "ASO Clients")); and (4) any entities that elect to opt out of the Proposed Settlement Class. For avoidance of doubt, included in the Proposed Settlement Class definition are cities, towns, municipalities, or counties or carriers for Federal Employee Health Benefit plans.

17

Preliminary Approval Order, ECF No. 1016 at 3. All the factors that supported the Court's prior conclusions remain true, and the Proposed Settlement Class should be certified.

**Rule 23 (a)(1): Numerosity**. Rule 23(a)(2) requires the class to be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Courts in the Ninth Circuit generally agree that numerosity is satisfied if the class includes forty or more members. *See In re JUUL Labs, Inc., Mktg. Sales Pracs. & Prod. Liab. Litig.*, 609 F. Supp. 3d 942, 959 (N.D. Cal. 2022). The Proposed Settlement Class easily meets this threshold. The Proposed Settlement Class includes third-party payors who paid and/or provided reimbursement for some or all of the cost of brand or generic Xyrem prescriptions. Xyrem is exclusively dispensed through Express Scripts Specialty Distribution Services ("ESSDS"). ESSDS data confirms that thousands of prescriptions for Xyrem are filled each month. *See* ECF No. 353 at 20.

**Rule 23 (a)(2): Commonality**. Rule 23(a)(2) requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (finding a common question is one that "is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke"). This case presents numerous common questions of fact and law that relate to Defendants' alleged anticompetitive conduct, including whether Defendants entered into an unlawful agreement in restraint of trade to prevent or delay entry of generic competition. *See* ECF Nos. 353 at 21 (citing CCAC ¶ 338) (listing common questions of law and fact); 500 at 7. The same questions of law and fact apply to all members of the Proposed Settlement Class who would necessarily use the same evidence to prove the Defendants' alleged conduct "in one stroke." *Wal-Mart*, 564 U.S. at 350. The Proposed Settlement Class satisfies Rule 23(a)(2).

**Rule 23 (a)(3): Typicality**. Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Claims are typical of a class when they "arise[ ] from the same event, practice or course of conduct that gives rise to the claims of the absent class members" and are "based on the same legal or remedial theory." *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 2006 WL 1530166, at *4 (N.D. Cal. June 5, 2006) (alteration in original) (citation omitted). Here, Class Plaintiffs' claims are typical of the claims

of the Proposed Settlement Class because: (i) their injury (supracompetitive prices) arises from the same course of conduct (Defendants' alleged anticompetitive conduct); (ii) their claims rely on the same legal theories (allegedly unlawful restraint of trade and monopolization); and (iii) their claims allege damages in the form of overcharges. *See* ECF No. 353 at 21–22. This Court and others have found typicality satisfied where the plaintiffs asserted that the defendants' alleged conduct delayed generic competition and sought overcharges for themselves and the class. ECF No. 500 at 7.[7]

**Rule 23 (a)(4): Adequacy**. Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997) (finding Rule 23(a)(4) "serves to uncover conflicts of interest between named parties and the class they seek to represent"). Adequacy is presumed where, as here, a fair settlement was negotiated at arm's length. 2 Newberg on Class Actions, § 11.28, 11-59. There is no conflict of interest between the Class Plaintiffs and Proposed Settlement Class Members. *See Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003). Class Plaintiffs and Class Counsel have fairly and adequately protected the interests of the Proposed Settlement Class. Thus, adequacy is satisfied.

**Rule 23 (b)(3): Predominance**. Under Rule 23(b)(3), certification is appropriate where "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). Predominance is met when plaintiffs' claims "depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350. "Even if just one common question predominates, 'the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately.'" *Hyundai & Kia*, 926 F.3d 539, 557 (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 453 (2016)).

---

[7] *E.g. In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, 2017 WL 4621777, at *7 n.12 (D. Mass. Oct. 16, 2017); *In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 267 (D. Mass. 2004); *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 326, 335 (E.D. Mich. 2001); *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 250 (D. Del. 2002), *aff'd*, 391 F.3d 516 (3d Cir. 2004).

The predominance inquiry is more straightforward in the settlement context because, unlike certification for litigation, "manageability is not a concern in certifying a settlement class where, by definition, there will be no trial." *Id.* at 556–57. "[C]ommon issues usually predominate in cases where the defendants are alleged to have engaged in collusive, anticompetitive conduct resulting in artificially high market-wide prices for a product." *In re Cipro Cases I & II*, 121 Cal. App. 4th 402, 411 (2004) (collecting cases). The focus here is on Defendants' conduct and the effect on the market, which are common to all Proposed Settlement Class Members. The focus is not on the actions of individual Proposed Settlement Class Members. *See In re Glumetza Antitrust Litig.*, 336 F.R.D. 468, 475 (N.D. Cal. 2020) (citing *Alaska Airlines v. United Airlines*, 948 F.2d 536, 540 (9th Cir. 1991)); *see also id.* ("the illegality of defendants' scheme turns on details of the payment and defendants' purposes — evidence common to every purchaser"). Accordingly, the predominance requirement is satisfied.

**Rule 23 (b)(3): Superiority**. Rule 23(b)(3) also requires the class to demonstrate that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Certifying the Proposed Settlement Class is superior to resolving Proposed Settlement Class Members' claims through individual litigation and would: (i) avoid congesting a court with the need to repetitively adjudicate such actions; (ii) prevent the possibility of inconsistent results; and (iii) allow Proposed Settlement Class Members an opportunity for redress they might otherwise be denied.

***

In sum, the Proposed Settlement Class meets all relevant requirements of Rule 23(a) and (b) and should be certified for purposes of settlement. In addition, as noted above, Class Plaintiffs and Class Counsel have adequately represented the interests of the Proposed Settlement Class throughout the litigation and settlement, and the Court should appoint them to represent the Proposed Settlement Class.

1

2      ### C.    Costs of Administering the Settlements Are Reasonable

3          The Preliminary Approval Order authorized the payment of up to $300,000 in notice and

4      settlement administration costs. ECF No. 1016 at 6.[8] As of July 31, 2025, A.B. Data, the settlement

5      administrator, has submitted invoices for its expenses incurred totaling $ 118,560.54. Miller Supp. Decl.

6      at ¶ 13. The deadline to submit claims has not yet passed, and A.B. Data will therefore continue to incur

7      expenses processing claims and distributing funds. A.B. Data estimates (as it did prior to preliminary

8      approval) that total notice and administration costs will not exceed the $300,000 previously authorized

9      by the Court. *See id.* This amount is reasonable for the administration of a class action settlement in

10     which certain class members must submit proof of payment. *See Koller*, 2018 WL 9619436, at *5

11     (finding $432,700 for similar settlement administration reasonable); *see also* District Guidelines,

12     Preliminary Approval ¶ 2(b). Class Counsel will only withdraw from the Settlement Funds the amounts

13     necessary to pay A.B. Data's actual settlement notice and administration costs once they have been

14     incurred.

15         Because the anticipated notice and administration expenses are not expected to exceed the

16     amount already approved, Class Plaintiffs do not, at this time, request any further approval of notice and

17     administration costs from the Court. In the unlikely event that settlement notice and administration costs

18     exceed $300,000, Class Counsel will submit a request to the Court to authorize the payment of the

19     additional amount.

20     ## IV.    CONCLUSION

21         For the foregoing reasons, Class Plaintiffs respectfully request that the Court enter the proposed

22     order certifying the Proposed Settlement Class, appointing Dena Sharp of Girard Sharp LLP and

23     Michael M. Buchman of Motley Rice LLC as Settlement Class Counsel, appointing Class Plaintiffs to

24     represent the Proposed Settlement Class, and granting final approval of the Proposed Class Settlements

25     with Jazz and Hikma.

---

[8] The Settlement Agreements each permit the withdrawal of $200,000 from the settlement funds, or
$400,000 in the aggregate, prior to final approval.

CLASS PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENTS
CASE NO. 3:20-md-02966-RS

Dated: August 15, 2025

Respectfully submitted,

By: /s/ *Dena C. Sharp*
Dena C. Sharp (State Bar No. 245869)
Scott Grzenczyk (State Bar No. 279309)
Jordan Isern (State Bar. No. 343159)
**GIRARD SHARP LLP**
601 California St., Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
dsharp@girardsharp.com
scottg@girardsharp.com
jisern@girardsharp.com

By: /s/ *Michael M. Buchman*
Michael M. Buchman
**MOTLEY RICE LLC**
800 Third Avenue, Ste 2401
New York, NY 10022
(212) 577-0040
mbuchman@motleyrice.com

*Co-Lead Counsel and Proposed Settlement*
*Class Counsel*

CLASS PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENTS
CASE NO. 3:20-md-02966-RS

1

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on August 15, 2025, I caused the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will automatically send notification of the filing to all counsel of record.

By: /s/ *Dena C. Sharp*
    Dena C. Sharp

CLASS PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS
ACTION SETTLEMENTS
CASE NO. 3:20-md-02966-RS