UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: XYREM (SODIUM OXYBATE) ANTITRUST LITIGATION | Case No. 20-md-02966-RS |
| THIS FILING RELATES TO: ALL CLASS ACTIONS | **FINAL APPROVAL ORDER AND JUDGMENT** |

## I. INTRODUCTION

On August 15, 2025, Class Plaintiffs[1] in this multi-district litigation moved for final approval of settlement agreements with Jazz Pharmaceuticals Ireland Limited ("Jazz") and Hikma Labs, Inc. (formerly known as Roxane Laboratories, Inc.), Hikma Pharmaceuticals USA Inc. (formerly known as West-Ward Pharmaceuticals Corp.), Eurohealth (USA), Inc., and Hikma Pharmaceuticals PLC (collectively, "Hikma"). Having held a hearing on October 23, 2025 and considered the motion and related briefing, and good cause appearing, Class Plaintiffs' Motion for Final Approval is granted, and Judgment is entered in accordance with the terms of this Order effective as of this date.

## II. BACKGROUND

The factual background of this litigation has been thoroughly discussed in prior orders and

---

[1] The capitalized terms used in this Order shall have the same meaning as defined in the Settlement Agreements except as otherwise noted.

need not be recounted at length here. *See, e.g.*, Dkt. 138. To recap, Defendant Jazz developed generic Xyrem, a sodium oxybate drug used to treat narcolepsy and sought related patents. Plaintiffs, a mix of insurers and individual consumers, brought antitrust and conspiracy claims against Jazz, Hikma, and other pharmaceutical companies based on alleged schemes to share supracompetitive profits, delay entry of generic Xyrem, and prevent competition in the market. In December 2020, the Judicial Panel on Multidistrict Litigation centralized all pending end-payor class actions, thirteen member cases, in the Northern District of California for pretrial proceedings.

The present motion for final settlement approval is between defendants Jazz and Hikma (together, "Defendants") and Class Plaintiffs on behalf of themselves and the proposed settlement class, entities that paid and/or provided reimbursement for Xyrem and Xywav prescriptions (the "Settlement Class" or "Class"). Class Plaintiffs settled with Jazz in April 2025 and with Hikma a month later in May 2025, just before trial was set to begin for Class Plaintiffs against Hikma. With the exception of the Settlement Amounts—$145 million for Jazz and $50 million for Hikma—the terms of the Settlement Agreements are the same for Jazz and Hikma.[2] Class Plaintiffs filed motions for preliminary approval of the Settlements. On May 16, 2025, the Court preliminarily approved the Settlements, provisionally certified the Settlement Class for settlement purposes only, and appointed A.B. Data as the Claims Administrator.

### III. LEGAL STANDARD

The Ninth Circuit maintains a "strong judicial policy that favors settlements" in class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). Under Rule 23(e), parties may seek approval of classes "proposed to be certified for the purposes of settlement." Fed. R. Civ. P. 23(e). First, the proposed settlement class must meet the criteria for certification under Rule 23(a)—numerosity, commonality, typicality, and adequacy—as well as one of the Rule 23(b) categories. Here, Plaintiff relies on Rule 23(b)(3), which permits certification of a class where "questions of law or fact common to class members predominate over any questions

---

[2] The terms and conditions are set forth in the agreements filed with the Court. *See* Dkt. 958-2, Ex. 1; Dkt. 1010-2, Ex. 1.

affecting only individual members, and [where] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Under Rule 23(e), courts must also determine whether the settlement agreement is "fair, adequate, and reasonable to all concerned." *Uschold v. NSMG Shared Servs., LLC*, 333 F.R.D. 157, 169 (N.D. Cal. 2019). This requires assessing the following factors:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (quoting *Churchill Vill. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)).

## IV. CLASS CERTIFICATION

For purposes of the Settlements only and this Order and Judgment, Class Plaintiffs have moved to certify the following Settlement Class:

> All entities that paid and/or provided reimbursement for some or all of the purchase price for brand or generic Xyrem in Alaska, Arizona, Arkansas, California, Connecticut, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Puerto Rico, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin, for consumption by their members, employees, insureds, participants, or beneficiaries, and other than for resale, during the time from January 1, 2017, through and until the date the Court enters an order granting preliminary approval of the Settlement Agreement.[3]

Rule 23(a) and Rule 23(b)(3) are satisfied. The Settlement Class is sufficiently numerous with thousands of prescriptions for Xyrem filled each month. Questions of fact and law relating to

---

[3] The following persons or entities are excluded from the Settlement Class: (1) Defendants and their counsel, parents, subsidiaries, and affiliates; (2) federal and state governmental entities; (3) United HealthCare Services, Inc.; Humana Inc.; Molina Healthcare, Inc.; Health Care Service Corporation, Inc.; Aetna, Inc.; Blue Cross Blue Shield of Florida, Inc.; and Health Options, Inc. (each of these entities in (3) on behalf of themselves but not on behalf of any of their so-called "Administrative Services Only" clients (the "ASO Clients")); and (4) any entities that elect to opt out of the Settlement Class. For avoidance of doubt, included in the Settlement Class definition are cities, towns, municipalities, or counties or carriers for Federal Employee Health Benefit plans.

1   Defendants' alleged anticompetitive conduct, including whether Defendants entered into an
2   unlawful agreement in restraint of trade to delay entry of or restrict generic competition, are
3   common to the Class. *See* Fed. R. Civ. P. 23(a)(2). *See also Wal-Mart Stores, Inc. v. Dukes*, 564
4   U.S. 338, 350 (2011) (finding a common question is one that "is capable of classwide resolution—
5   which means that determination of its truth or falsity will resolve an issue that is central to the
6   validity of each one of the claims in one stroke"). Typicality is met here where the Class Plaintiffs'
7   claims (i) arise from the same course of conduct, i.e., Defendants' alleged anticompetitive conduct;
8   (ii) rely on the same legal theories, i.e., allegedly unlawful restraint of trade and monopolization;
9   and (iii) allege damages in the form of overcharges. Finally, Class Plaintiffs and Class Counsel
10  "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). There is no
11  apparent conflict between the Class Plaintiffs and Settlement Class Members, and Class Plaintiffs
12  and Class Counsel have vigorously pursued this action on behalf of the Class. *See Hanlon v.*
13  *Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

14        The proposed Settlement Class also meets the predominance and superiority requirements
15  in Rule 23(b). The common questions raised by Settlement Class Members' claims sufficiently
16  predominate over any individual questions because they focus on the market-wide impacts of
17  Defendants' allegedly coordinated and anticompetitive conduct on the price and availability of
18  sodium oxybate drugs. Class action is a superior vehicle considering the large class because it
19  conserves Court and attorney resources and reduces costs to the Settlement Class.

20        Classes certified under Rule 23(b)(3) must also receive the best notice practicable under
21  the circumstances. Notice of the Settlements here satisfies these requirements. Notice was
22  provided by direct notice, email and postcard, to potential class members who appeared on the
23  proprietary database of A.B. Data, the Claims Administrator, and by widespread publication notice
24  on relevant websites and print media. In total, the notice plan is estimated to have reached at least
25  80% of Settlement Class Members. The settlement website, to which the notices directed potential
26  claimants, includes a long-form notice explaining the procedures for Settlement Class Members to
27  submit claims, object, or exclude themselves, the Settlement Agreements, online and printable

versions of the claim forms and the opt-out forms, and answers to frequently asked questions. The Claims Administrator also operated a toll-free number for Settlement Class Member inquiries. As of October 3, 2025, a total of 581 claim forms—where a single claim form by a claim submission company likely reflects claims by multiple class members[4]— had been submitted. Another eleven claims were received after the October 3, 2025, deadline.[5] No objections were received, nor were there any opt-outs.

## V. SETTLEMENT APPROVAL

A court may approve a proposed class action settlement only "after a hearing and on finding that it is fair, reasonable, and adequate considering" the factors mentioned above. Fed. R. Civ. P. 23(e)(2). In reviewing the proposed settlement, the Court need not address whether the settlement is ideal or the best outcome, but only whether the settlement is fair, free of collusion, and consistent with plaintiff's fiduciary obligations to the class. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998). For the reasons detailed below, the proposed settlement is fair, reasonable, and adequate under the Rule 23(e)(2) factors.

First, representation is adequate. Class Counsel have extensive antitrust and complex litigation experience, particularly in antitrust class actions involving pharmaceutical products, and they have pursued diligently Class Plaintiffs' claims. Further, there is no Class Counsel and Class conflict based on the request for attorneys' fees made in a separate motion because the Settlement Agreements are not contingent on the request for attorneys' fees. Class Plaintiffs adequately represent the Class because they suffered the same overcharge injuries and have the same interest in proving that Defendants acted unlawfully as Class members.

Second, the negotiation was arms-length. The Settlements resulted from eight months of negotiation before Hon. Lan Phillips (Ret.), an experienced mediator, that was conducted arms-

---

[4] In pharmaceutical antitrust matters, it is typical for certain claim submission companies to submit a single "claim" on behalf of multiple of their class member clients. *See* Dkt. 1062 at 2.

[5] As discussed at the October 23, 2025 hearing, the late-submitted claims are deemed valid and eligible claims.

length and informed by complete discovery, summary judgment rulings, and trial preparation.

Third, the relief to the Class is adequate. The $195 million monetary payment represents a 46% recovery on the $422 million damages estimate that the Class was prepared to take to trial[6] and is the second largest recovery on behalf of end-payers in generic drug delay cases in federal court in the past two decades. Dkt. 1034, Mot. for Attorney's Fees, at 22 (chart citing cases). A forty-six percent recovery is comparable to or better than other settlement funds in antitrust class actions. *See e.g., Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 964-65 (9th Cir. 2009) (Antitrust settlement with bar review course providers for 30% of plaintiffs' estimated damages was "fair and reasonable."); *In re Lidoderm Antitrust Litig.*, No. 14-MD-02521-WHO, 2018 WL 4620695, at *2 (N.D. Cal. Sept. 20, 2018) (Forty-six percent of the damages estimate plaintiffs were prepared to seek at trial was a "significant benefit" in an end-payer generic delay class action settlement); *In re Glumetza Antitrust Litig.*, No. C 19-05822 WHA, 2022 WL 327707, at *3 (N.D. Cal. Feb. 3, 2022) (Dollar recovery that was 50-90% of class's estimated aggregate single damages and 17-30% of the class's estimated aggregate treble damages was fair and reasonable in a pharmaceutical antitrust action.). These recoveries are significant particularly when balanced against the risks and expenses of continuing litigation. A class trial would have been costly, recovery was not guaranteed, and there was the possibility of protracted appeals that could result in any class certification or final judgment being overturned.

Fourth, the Class members are treated equitably. Distribution of the Settlement Fund will be made on a *pro rata* basis according to the weighted value of the class member's claim with Xywav purchases and purchases made in non-repealer states weighing substantially less than Xyrem purchases in repealer states.

Lastly, the reaction of the Class reflects that this relief is adequate and weighs in favor of approval. As of October 23, 2025, three weeks after the October 3, 2025 objection deadline, no

---

[6] While this estimate does not include damage estimates for Xywav purchases, those claims were considerably less likely to succeed.

Class Members had opted out of or objected to the Settlements.

## VI. RELEASES AND EFFECT OF THIS ORDER

The scope of the Released Claims is consistent with the conduct pled in the class action complaint. The claims are limited to those "arising out of the facts, occurrences, transactions, or other matters alleged or asserted in the Pre-Consolidation Complaints, the Complaint or in this Action[.]" *See* Dkt. 958-2, Settlement Agreement, ¶1.25. By releasing claims in all states and territories and those related to Xywav purchases, the scope here is broader than those included in the Damages Class and Proposed Settlement Class. These claims are comparatively weaker than claims related to Xyrem purchases in the Class States, but the proposed Plan of Allocation address this by giving substantially less weight to purchases of Xywav and purchases in non-Class States.

## VII. CONCLUSION

For the foregoing reasons, the Court certifies the Settlement Class and grants final approval of the Settlements and enters Judgment in accordance with the terms of this Order as of the date of this Order. The Court directs consummation of the Settlements pursuant to their terms. The Action is dismissed with prejudice, and the Court's judgment is final.

**IT IS SO ORDERED**.

Dated: October 27, 2025

_____
RICHARD SEEBORG
Chief United States District Judge