UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: XYREM (SODIUM OXYBATE) ANTITRUST LITIGATION | Case No. 20-md-02966-RS |
| THIS FILING RELATES TO: ALL CLASS ACTIONS | **ORDER GRANTING ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARDS** |

## I. INTRODUCTION

Plaintiffs have filed a motion for attorneys' fees, reimbursement of expenses, and plaintiff service awards. Dkt. 1034. The fairness hearing was held on October 23, 2025, and the motion for attorneys' fees, reimbursement of expenses, and plaintiff service awards is granted as set forth below.

## II. BACKGROUND

The factual background of this litigation has been thoroughly discussed in prior orders and need not be recounted at length here. *See, e.g.*, Dkt. 138. To recap, Plaintiffs, a mix of insurers and individual consumers, aver violations of federal and state antitrust laws by Defendants, a group of pharmaceutical manufacturers, surrounding the alleged delay of a generic version of Xyrem, a narcolepsy drug. The litigation began in June 2020 with the filing of the *Blue Cross Blue Shield Association v. Jazz Pharmaceuticals* action in the Northern District of Illinois. No. 1:20-cv-3543 (N.D. Ill.), and other complaints followed. In December 2020, the Judicial Panel on Multidistrict Litigation centralized all pending end-payor class actions in the Northern District of California for

pretrial proceedings.

In February 2021, the Court appointed Dena Sharp of Girard Sharp LLP and Michael M. Buchman of Motley Rice LLC as Interim Co-Lead Class Counsel and six other law firms to the Plaintiffs' Steering Committee as counsel for end-payor Class Plaintiffs. Dkt. 59. Since that time, Co-Lead Counsel directed the overall conduct of the litigation and worked with the Plaintiffs' Steering Committee and a limited number of additional counsel to prosecute this litigation.

In April and May 2025, defendants Jazz Pharmaceuticals Ireland Limited ("Jazz") and Hikma Labs, Inc. (formerly known as Roxane Laboratories, Inc.), Hikma Pharmaceuticals USA Inc. (formerly known as West-Ward Pharmaceuticals Corp.), Eurohealth (USA), Inc., and Hikma Pharmaceuticals PLC (collectively, "Hikma") settled with Class Plaintiffs[1] on behalf of themselves and the proposed settlement class, entities that paid and/or provided reimbursement for Xyrem and Xywav prescriptions (the "Settlement Class" or "Class").[2] On July 10, 2025, Class Plaintiffs moved for attorneys' fees of one-third the Net Settlement Fund; reimbursement of $3,482,847.12 for expenses advanced for the Class; and service awards of $40,000 for each of the four Class Representatives that were preparing to testify at trial and $25,000 for the two other Class Plaintiffs (a combined $210,000).

### III. ATTORNEYS' FEES

**A. Legal Standard**

Awards of attorneys' fees in class action cases are governed by Federal Rule of Civil Procedure 23(h), which provides that, after a class has been certified, the court may award reasonable attorneys' fees and nontaxable costs. "[C]ourts have an independent obligation to ensure that the [attorneys' fee] award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset*, 654 F.3d 935, 941 (9th Cir. 2011).

---

[1] The capitalized terms used in this Order shall have the same meaning as defined in the Settlement Agreements except as otherwise noted.

[2] Class Plaintiffs have also reached previous settlements with defendants Amneal and Lupin. *See* Dkt. 423.

When deciding to award attorneys' fees and costs in a common fund case, courts have discretion to choose to award based on either (1) the lodestar method, multiplying the number of hours reasonably spent by a reasonable hourly rate, or (2) a percentage of the settlement fund. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). Courts may "adjust [the lodestar figure] upward or downward by an appropriate positive or negative multiplier," considering "the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues present, and the risk of nonpayment." *In re Bluetooth Headset*, 654 F.3d at 941-42 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998)).

Awarding fees as a percentage of the common settlement fund may be appropriate where "the benefit to the class is easily quantified." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 260 (N.D. Cal. 2015) (quoting *Bluetooth*, 654 F.3d at 942). The selection of a percentage must "take into account all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048. When assessing the reasonableness of a fee award under the common fund theory, courts consider factors such as (1) the results achieved, (2) the risk of litigation, (3) the complexity of the case and skill required, (4) the contingent nature of the litigation, and (5) awards made in similar cases. *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008); *Vizcaino*, 290 F.3d at 1048–50.

**B. Discussion**

Class Counsel here request one-third of the Net Settlement Fund[3] plus interest accrued on the amount for their combined efforts over five years, including 57,523.9 attorney hours, litigating this case from beginning through to the eve of trial and eight months of settlement negotiations, foregoing other opportunities, and taking on the risk of no recovery. While this award is large, it is reasonable for the reasons set forth below including analysis under the lodestar method, the complexity of the case and Class Counsel's vigorous and effective litigation efforts, and the

---

[3] The requested fees should be calculated based on the Net Settlement Fund (after deducting expenses, service awards, and settlement administration costs), as opposed to the gross settlement amount.

prevalence of one-third fee awards in similar cases.

### i. The Lodestar Method

#### 1. Lodestar Hours

The lodestar reflects 57,523.9 hours spent litigating the case. This is reasonable considering Co-Lead Counsel's explicit efforts to reduce duplicative work;[4] Co-Lead Counsel's frequent review of time and expense records, including over 800 hours of review which are not included in the hours or lodestar here; the exclusion of the JPML transfer motion and appointment of counsel from the lodestar hours; and the future hours, not included here, that Co-Lead Counsel will spend administering and distributing the settlements.

#### 2. Lodestar Rates

Class Counsel's rates are reasonable. They used lower "historic" rather than higher "current" billing rates: the rates ranged from $525 to $1500 for partners, $240 to $950 for associates, $240 to $1100 for senior counsel and of counsel, and $150 to $650 for litigation support staff, resulting in a lodestar or $36,820,800.25. Dkt. 1034, Mot. for Attorney's Fees, at 19-21; Dkt. 1065-2, Proposed Order, at 3. These rates are consistent with other rates approved in recent class actions in the Northern District of California.[5] Moreover, Co-Lead Counsel set reasonable hour rate caps on certain work such as document review and work by contract attorneys.

---

[4] Sharp took the lead on briefing, discovery of defendants, and expert work while Motley Rice oversaw plaintiff discovery, class certification and supported expert and trial preparations. The other support firms were assigned specific workstreams based on experience and expertise.

[5] *E.g., In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) (approving rates of $275 to $1600 for partners, $150 to $790 for associates, and $80 to $490 for paralegals); *In re JUUL Labs, Inc.*, 2023 WL 11820531, at *4 (N.D. Cal. Dec. 18, 2023) (finding rates "facially reasonable" where for the vast majority of partner hourly rates ranged between $275 and $1,200 and associate rates ranged between $175 and $800); *In re MacBook Keyboard Litig.*, 2023 WL 3688452, at *15 (N.D. Cal. May 25, 2023) (approving partner rates up to $1,195, associate rates up to $850, $425 for contract attorneys, and $325 for paralegals).

### 3. Lodestar Multiplier Adjustment

The lodestar figure may be adjusted based on the quality of representation, complexity and novelty of the case, the risk of nonpayment, and results achieved for the class. The latter is the "foremost" consideration. *In re Bluetooth*, 654 F.3d at 942. The lodestar multiplier associated with the lodestar here, $36,820,800.25, is 1.77. This is reasonable in light of the results achieved and quality of representation. The $195 million settlement fund represents 46% of the Xyrem-purchases damage estimate prepared for trial.[6] Forty-six percent is comparable to or better than settlement recoveries in other antitrust class actions in this circuit. *See e.g., Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 964-65 (9th Cir. 2009) (Antitrust settlement with bar review course providers for 30% of plaintiffs' estimated damages was "fair and reasonable."); *In re Lidoderm Antitrust Litig.*, No. 14-MD-02521-WHO, 2018 WL 4620695, at *2 (N.D. Cal. Sept. 20, 2018) (Forty-six percent of the damages estimate plaintiffs were prepared to seek at trial was a "significant benefit" in an end-payer generic delay class action settlement.); *In re Glumetza Antitrust Litig.*, No. C 19-05822 WHA, 2022 WL 327707, at *3 (N.D. Cal. Feb. 3, 2022) (Dollar recovery that was 50-90% of class's estimated aggregate single damages and 17-30% of the class's estimated aggregate treble damages was fair and reasonable in a pharmaceutical antitrust action.). Further, this recovery is the second largest recovery on behalf of end-payers in generic drug delay cases in federal court in the past two decades. *See* Dkt. 1034, Mot. for Attorney's Fees, at 22 (chart citing cases). The response of the Class, with no opt-outs or objections and 592 claims,[7] further reflects the strength of this recovery.

The case also raises complex and novel issues, including demonstrating an overarching anticompetitive scheme and specific conduct therein across a range of players, and presented a substantial risk of loss. Pay-for-delay cases that have gone to trial in the last ten years have

---

[6] While this estimate does not include damage estimates for Xywav purchases, those claims were considerably less likely to succeed.

[7] 581 claims were timely submitted with another 11 submitted after the deadline, which nonetheless were deemed valid and eligible.

1  resulted in defendant victories in almost every case. *See* Dkt. 1034, Mot. for Attorneys' Fees, at
2  24. Moreover, Class Counsel achieved their results without the benefit of a government
3  investigation or a direct purchaser plaintiff class.
4        As discussed below, the 1.77 multiplier is also reasonable in light of other multipliers in
5  similar cases. The Ninth Circuit has surveyed common fund cases with settlements ranging from
6  $50-200 million and found reasonable lodestar multipliers ranging from 1.0 all the way up to 4.0.
7  *See also Vizcaino*, 290 F.3d at 1052, n.4.

      **ii.**      **Percentage Award Cross-Check and Megafund Cases**

9        Here, Class Counsel seeks attorneys' fees of one-third the Net Settlement Fund. "[W]here
10  awarding 25% [or more, as here,] of a megafund would yield windfall profits for class counsel in
11  light of the hours spent on the case, courts should adjust the benchmark percentage or employ the
12  lodestar method instead." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir.
13  2011). Percentage awards, however, only represent a windfall where the "recovery…stem[s] more
14  from class size than attorney effort." *See In re T-Mobile Customer Data Sec. Breach Litig.*, 111
15  F.4th 849, 860 (8th Cir. 2024). As the 1.77 lodestar multiplier here reflects, this is not such a case.
16  Antitrust class actions and drug delay cases require substantial effort and risk by counsel, and a
17  one-third fee award or 1.77 lodestar multiplier is consistent with other large settlements in these
18  types of cases. *See e.g., In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust
19  Litig.*, No. 17-MD-2785-DDC-TJJ, 2022 WL 2663873, at *4 (D. Kan. July 11, 2022) (largest
20  recovery on behalf of end-payers in generic drug delay cases in the last two decades with fee
21  award representing one-third the settlement fund); *In re Ranbaxy Generic Drug Application
22  Antitrust Litig.*, 630 F. Supp. 3d 241, 248 (D. Mass. 2022) (third largest recovery in such cases
23  with a fee award representing one-third the end-payor settlement fund with a lodestar multiplier of
24  2.10); *In re Lidoderm Antitrust Litig.*, 2018 WL 4620695, at *2 (N.D. Cal. Sept. 20, 2018) (fourth
25  largest recovery, which was 46% of estimated damages, with a fee award representing one-third
26  the end-payor settlement fund with a lodestar multiplier of 1.37); *In re Zetia (Ezetimibe) Antitrust
27  Litig.*, 699 F. Supp. 3d 448, 460 (E.D. Va. 2023) (fifth largest recovery with a fee award

representing one-third the settlement fund with a lodestar multiplier of 1.23); *In re Solodyn Antitrust Litig.*, No. 14-md-2503, 2018 WL 7075881, at *2 (D. Mass. July 18, 2018) (fee award representing one-third end-payor settlement fund); *In re Prograf Antitrust Litig.*, 2015 WL 13908415, at *1 (D. Mass. May 20, 2015) (lodestar multiplier of 2.35 in direct-purchaser class action settlement). Further, other circuits have found that "fee awards in antitrust cases…are almost always one-third" which "is a strong indication that [one-third] should be considered the 'market rate.'" *See In re Broiler Chicken Antitrust Litig.*, 80 F.4th 797, 801 (7th Cir. 2023).

## IV. LITIGATION EXPENSES

Class Counsel are entitled to reimbursement of reasonable out-of-pocket costs advanced for the Class. *See* Fed. R. Civ. P. 23(h); 18 U.S.C. § 2520(b)(3); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989). Class Counsel request reimbursement $3,482,847.12 in out-of-pocket expenses advanced for the Class. The request is granted. Class Counsel have accounted for their expenses which include categories of expenses routinely reimbursed. Class Counsel were also careful to conserve expenses by cost-sharing with Opt-Out Plaintiffs, limiting travel, and conducting many remote depositions. Although, the expenses are great, this is common in complex antitrust class actions, and they represent only 1% of the Settlement Fund.

## V. SERVICE AWARDS

Service awards are "intended to compensate class representatives for work undertaken on behalf of a class" and "are fairly typical in class action cases." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015) (cleaned up). Courts have discretion to approve service awards based on the amount of time and effort spent, the duration of the litigation, and the personal benefit (or lack thereof) as a result of the litigation. *See Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995).

Class Counsel request incentive awards of $40,000 for each of the four Class Representatives that were preparing to testify at trial and $25,000 for the two other Class Plaintiffs (a combined $210,000). In total this is only 0.001% of the overall Settlement. These awards are consistent with service awards in other end-payer generic drug delay cases where service awards

ORDER AWARDING FEES, EXPENSES, AND SERVICE AWARDS
CASE NO. 20-md-02966-RS
7

of $40,000 are not uncommon. *See, e.g., In re Namenda Direct Purchaser Antitrust Litig.*, No. 15 CIV. 7488 (CM), 2020 WL 3170586, at *2 (S.D.N.Y. June 15, 2020) (service awards of $75,000 each); *In re Asacol Antitrust Litig.*, 2017 WL 11475275, at *4 (D. Mass. Dec. 7, 2017) ($100,000 each); *In re Skelaxin (Metaxalone) Antitrust Litig.*, 2014 WL 2946459, at *4 (E.D. Tenn. June 30, 2014) ($50,000 each).

## VI. CONCLUSION

For the foregoing reasons, the Plaintiffs' motion is granted. Class Counsel are awarded attorneys' fees of one-third of the Net Settlement Fund plus interest accrued on the amount and reimbursement for $3,482,847.12 in expenses. The four Class Representatives that were preparing to testify at trial are awarded service awards of $40,000 each and the two other Class Representatives are awarded $25,000 each for a combined total $210,000 in service awards.

By June 15, 2026, Class Counsel shall submit to the Court a post-distribution report. A template of such a report may be obtained from the Court's website.

**IT IS SO ORDERED**.

Dated: October 27, 2025

_____
RICHARD SEEBORG
Chief United States District Judge